**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TODD AUGENBAUM,

                Plaintiff,

                v.

ANSON INVESTMENTS MASTER FUND LP;
BRIO CAPITAL MASTER FUND LTD.; BRIO
SELECT OPPORTUNITIES FUND, LP; CVI
INVESTMENTS, INC.; EMPERY ASSET
MASTER, LTD.; EMPERY DEBT
OPPORTUNITY FUND, LP; EMPERY TAX
EFFICIENT, LP; IROQUOIS MASTER FUND
LTD.; IROQUOIS CAPITAL INVESTMENT
GROUP, LLC; L1 CAPITAL GLOBAL
OPPORTUNITIES MASTER FUND; M3A LP;
RICHARD MOLINSKY, and; GENIUS
BRANDS INTERNATIONAL, INC.,

                Defendants.

Civil Action No. 1:22-cv-00249-VM

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOVING**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Empery Funds[1] respectfully submit this reply memorandum of law on behalf of the Moving Defendants in further support of their motion to dismiss the Complaint ("Opening Memorandum" or "Defs Br.") (Dkt. 74-75) and in response to Plaintiff's Memorandum of Law in Opposition to the Moving Defendants' Motion To Dismiss ("Opposition" or "Pl. Mem.").

## INTRODUCTION

In his Opposition, Plaintiff concedes that his Section 16(b) claim rests entirely on the terms of the transaction documents governing the Moving Defendants' parallel investments in Genius Brands. However, Plaintiff fails to articulate how those documents raise any inference that any Moving Defendant *combined* with any other Moving Defendant "in furtherance of a common objective," as is necessary to adequately allege group activity among the Moving Defendants. The Complaint should be dismissed.

## PLAINTIFF HAS NOT ALLEGED THAT DEFENDANTS COMBINED IN FURTHERANCE OF A COMMON OBJECTIVE

Plaintiff asserts that the March 2020 SPA, by virtue of the Company's agreement to enter into the Voting and Lock-Up Agreements with *other* principal shareholders, "demonstrates, at a minimum, the existence of an informal understanding among Defendants." (Pl. Mem. 4.)[2] He further claims that the Leak-Out Agreements, executed *three months later,* also raise an inference of a group. However, well-settled law in this Circuit, as well as simple logic, make clear that Plaintiff is wrong on both fronts.

A.      The Rule 13d-5(b)(2) Safe Harbor is Irrelevant

Plaintiff's first argument is a red herring. He argues that the Moving Defendants' actions, as alleged in the Complaint, "eliminate the Rule 13d-5(b)(2) Safe Harbor that would otherwise exist for the purchases made through the SPA." (Pl. Mem. 2.) But Rule 13d-5(b)(2) is relevant only if group conduct is adequately alleged, which it was not, and the Moving Defendants have not otherwise invoked Rule 13d-5(b)(2)'s exemption as a defense.[3]

B.      The Lock-Up And Voting Agreements Do Not Raise An Inference Of A Group

The Voting Agreements and Lock-Up Agreements were executed between the Company

---

[1] Capitalized terms undefined herein are defined in the Memorandum of Law in Support of Moving Defendants' Motion to Dismiss Plaintiff's Complaint (the "Defs. Mem.," Dkt. 78).

[2] Plaintiff also submitted a "Notice of Supplemental Authority" (ECF No. 82), ostensibly to bring to the Court's attention a recent decision in *Donoghue v. Gad*, 2022 WL 3156181 (S.D.N.Y. Aug. 8, 2022). That decision, however, does not assist Plaintiff as there is no serious dispute that the Court can (and should) consider the terms of the transaction documents, on which Plaintiff plainly relied in his Complaint. *See Gad*, 2022 WL 3156181, at *3.

[3] Even the law cited in Plaintiffs' argument, which has nothing to do with Rule 13d-5(b)(2), is badly mischaracterized. For example, Plaintiff's contention that the appointment of a "lead lawyer to negotiate the securities purchase" in *Litzler* was "enough to survive a Rule 12(b)(6) motion to dismiss" is misplaced. *See Litzler v. CC Invs.*, *LDC*, 411 F. Supp. 2d 411, 416 (S.D.N.Y. 2006) ("I denied the Citadel Defendants' motion to dismiss the Amended Complaint *because of the two year statute of limitations…*") (emphasis added).

and certain *non-party* principal shareholders.  Importantly, the Moving Defendants were not parties to those agreements, and therefore those agreements do not raise an inference that the Moving Defendants combined in furtherance of a common objective. (Defs. Mem. 3-5.)

Plaintiff argues that the Moving Defendants "need not be formal signatories to any agreements to be members of a §13(d) group," citing *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir. 1982).  That proposition, however, only goes so far.  Indeed, *Wellman* highlights the stark contrast between well-pleaded group allegations and those made by Plaintiff.  *Wellman* involved defendants who had acted together in attempting to "induce a third-party takeover" of a company, by soliciting potential purchasers and representing to them that shares controlled by other defendants were "available and would 'go with (the) deal.'"  682 F.2d at 357.  As such, *Wellman* is a classic example of group activity since the group members acted in combination in furtherance of a common objective to jointly facilitate a takeover of the company.

This case is nothing like *Wellman.*  Plaintiff's argument is not based on the Moving Defendants having combined in connection with a common objective, but rather on their purported *status* as *implied* third-party beneficiaries to a written agreement among others. (Pl. Mem. at 2-3.)  It is undisputed that this theory has *never* been recognized to find a Section 13(d) group, and for good reason.  Plaintiffs theory would create a limitless application of Section 16(b), where parties could be swept within the ambit of a "group" by a written agreement among others even though they did not agree to anything.  Plaintiff's only response to this point is that "Defendants…cite no case to the contrary." (Pl. Mem. at 4.)  In making that argument, however, Plaintiff misses the point.  Presumably, there is no such case because Plaintiff's theory of implied third party beneficiary status giving rise to group-based liability is an oxymoron.

 As discussed above and elsewhere, to adequately allege a group, Plaintiff must assert that the Moving Defendants combined in furtherance of a common objective.  But, by alleging that the Moving Defendants were implied third party beneficiaries, Plaintiff, in effect, alleges that the Moving Defendants became a group by doing nothing at all—directly at odds with the requirements for group formation.  That makes no sense.  In any event, Plaintiff's inability to offer authority for the theory on which his entire claim is built warrants dismissal on its own.

In addition, the Lock-Up Agreements themselves do not support the notion that that the Moving Defendants acted as a group.  Plaintiff cites *Morales v. Quintel Entertainment,* 249 F.3d 115, 127 (2d Cir. 2001) which he describes as "the leading case addressing lock-up agreements." (Pl. Mem. 4.)  *Morales*, however, involved concerted conduct by parties who negotiated together, deposited their holdings together, and redeemed their investments on the same day.  And, unlike here, the defendants in *Morales were parties to the lock-up agreement.  Id.* at 127.

Although Plaintiff claims that he has plead "additional coordinated activity relating to the Lock-Up Agreement forming a §13(d) group" (Pl. Mem. 4.),  the only such "coordinated activity" he identifies are the transaction documents themselves.  According to Plaintiff, "Defendants' purchases of the Notes were conditioned on the Principal Stockholders entering into the Lock-Up Agreement with the Lock-Up Agreement being executed contemporaneously with the Voting Agreement and then followed by the Waiver Agreement, the Conversion Agreement and the Leak-Out Agreement." (Pl. Mem. 4.)  To the extent Plaintiff now attempts to

2

suggest that the Waiver, Conversion and Leak-Out Agreements were more than just parallel transactions (*i.e.,* that they were coordinated by the Moving Defendants at the time of the March 2020 Transaction), that is not alleged in the Complaint and there is no basis to do so.

C.    The Leak-Out Agreement Does Not Create an Inference of Group Activity

The Leak-Out Agreements, executed separately by each of the Moving Defendants and Genius Brands, do not create an inference of group activity. *First,* Plaintiff continues to ignore that those agreements were entered into three months after the March 2020 Transaction closed, and therefore cannot support an inference of a group formed in connection with the March 2020 Transaction.[4] *Second*, Plaintiff fails to address that each Moving Defendant entered into separate Leak-Out Agreements. That is fatal. *See Chechele v. Scheetz*, 819 F. Supp. 2d 342, 348 (parallel lock-up agreements insufficient as "the primary flaw with such an inference…is that the alleged members of the shareholder group were parties to separate Lock–Up Agreements").[5]

Plaintiff attempts to distinguish *Lowinger*, in which the Second Circuit held that allegations of standard lock-up agreements, without more, cannot suffice to state a Section 16(b) claim, by arguing that *Lowinger* is limited to "underwriters engaged in lock-up agreements as facilitators of a public offering." (Pl. Mem. 5.) Plaintiff, however, makes no effort to divorce the logic and reasoning undergirding *Lowinger* from its applicability here. A lock-up agreement and a leak-out agreement have nearly identical functions. One *prohibits* the sale of shares for a fixed period of time. The other *limits* the sale of shares for a fixed period of time. Both are often necessary for maintaining a balanced market for the "orderly disposition" of a Company's shares in connection with public or private offerings. *Lowinger* is both on point and controlling.

**THE SEC'S PROPOSAL IS CONTRARY TO SECOND CIRCUIT LAW, WHICH REQUIRES PLEADING AN AGREEMENT, AND IRRELEVANT**

Plaintiff 's reliance on the SEC's proposed rules is misplaced. Defendants' argument is not premised on the Complaint failing to allege "an agreement" as a necessary condition to the formation of a group, but rather Plaintiffs' failure to allege any actions taken together in furtherance of a common objective. Accordingly, Plaintiff's assertion that "Defendants' entire motion to dismiss…must be denied because it is premised…upon Plaintiff failing to properly allege the existence of an agreement" (Pl. Mem. 6.) is wrong. Plaintiff is also wrong when he argues that commentary concerning a *proposed* rule has the force and effect of overturning Second Circuit law (which requires pleading an agreement as a predicate to a Section 13(d) group). (Pl. Mem. at 6.) The Court in *Kissor* said nothing of the sort.

---

[4] Indeed for that reason, if the basis of the Section 13(d) group allegations is based on the Leak-Out Agreement (*i.e.* a group was formed upon the execution of the Leak-Out Agreements), then Plaintiff has not alleged matchable purchases and sales as required under Section 16(b). Plaintiff ignores that argument and has not alleged any purchases that post-date the Leak-Out Agreements. (*See* Pl. Mem. at 6.)

[5] Plaintiff attempts to side-step *Scheetz* by arguing that "the Conversion Agreement required each Defendant to enter into the Leak-Out Agreement which, in turn, requires that no Defendant be offered terms better than any other Defendant." (Pl. Mem. at 5.) But, Plaintiff cannot explain how the existence of a common "most-favored nation" provision across parallel agreements creates any inference of acts "in furtherance of a common objective," and Plaintiff points unsurprisingly to no authority supporting that assertion. (Pl. Mem. at 5.)

3

Dated:  August 22, 2022

**SCHULTE ROTH & ZABEL LLP**

Michael E. Swartz
Andrew D. Gladstein

919 Third Avenue
New York, NY 10022
(212) 756-2000
michael.swartz@srz.com
andrew.gladstein@srz.com

*Counsel for Defendants Empery Funds*

**HOGAN LOVELLS US LLP**

/s/ Dennis H. Tracey, III
Dennis H. Tracey, III

390 Madison Ave.
New York, NY 10017
(212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
catherine.bratic@hoganlovells.com
russell.welch@hoganlovells.com

*Counsel for Defendant Anson Investments
Master Fund LP*

4

**ELLENOFF GROSSMAN & SCHOLE LLP**

/s/ John Brilling Horgan

John Brilling Horgan

1345 Avenue of the Americas
11th Floor
New York, New York 10105
Phone: (646) 895-7158
Cell: (518) 339-0614
jhorgan@egsllp.com
flee@egsllp.com
jcohen@egsllp.com

*Counsel for Defendants Brio Capital Master Fund Ltd. and Brio Select Opportunities Fund LP*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

/s/ Susan Saltzstein

Susan Saltzstein

One Manhattan West
New York, New York  10001
(212) 735-4132
Fax: (917) 777-4132
susan.saltzstein@skadden.com
jeffrey.geier@skadden.com

*Counsel for Defendant CVI Investments, Inc.*

5

**LATHAM & WATKINS LLP**

/s/ William O. Reckler
William O. Reckler

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1350
chris.clark@lw.com
william.reckler@lw.com

*Counsel for Defendants Iroquois Master Fund
Ltd. and Iroquois Capital Investment Group,
LLC*

**PHILLIPS NIZER LLP**

/s/ Marc Andrew Landis
Marc Andrew Landis

485 Lexington Avenue, 14th Floor
New York, New York 10017
(212) 841-0705
Fax: (212) 262-5152
mlandis@phillipsnizer.com
jclark@phillipsnizer.com

*Counsel for Defendant L1 Capital Global
Opportunities Master Fund*

**LITMAN, ASCHE & GIOIELLA, LLP**

  /s/ Richard Asche
Richard Asche

140 Broadway #38
New York, NY 10005
(212) 809-4500
richardasche@lagnyc.com

*Counsel for Defendant M3A LP*

**STINSON LLP**

  /s/ Kiernan M. Corcoran
Kieran M. Corcoran

1325 Avenue of the Americas
27th Floor
New York, NY 10019
(212) 763-8491
kieran.corcoran@stinson.com

*Counsel for Defendant Rich Molinsky*