**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TODD AUGENBAUM,

                Plaintiff,

           v.

ANSON INVESTMENTS MASTER FUND LP;
BRIO CAPITAL MASTER FUND LTD.; BRIO
SELECT OPPORTUNITIES FUND, LP; CVI
INVESTMENTS, INC.; EMPERY ASSET
MASTER, LTD.; EMPERY DEBT
OPPORTUNITY FUND, LP; EMPERY TAX
EFFICIENT, LP; IROQUOIS MASTER FUND
LTD.; IROQUOIS CAPITAL INVESTMENT
GROUP, LLC; L1 CAPITAL GLOBAL
OPPORTUNITIES MASTER FUND; M3A LP;
RICHARD MOLINSKY, and; GENIUS
BRANDS INTERNATIONAL, INC.,

                Defendants.

Civil Action No. 1:22-cv-00249-VM

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOVING**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ........................................................................................................................2

I.     THE COMPLAINT FAILS TO RAISE A PLAUSIBLE INFERENCE OF A
GROUP AMONG THE MOVING DEFENDANTS ..........................................................2

     A.     The Rule 13d-5(b)(2) Safe Harbor is Irrelevant Because Plaintiff Has Not
Plausibly Alleged a Group ....................................................................................2

     B.     The Lock-Up And Voting Agreements Do Not Raise An Inference Of A Group ..4

          1.     The Moving Defendants' Purported Status as Third-Party
Beneficiaries Does Not Raise a Plausible Inference of a Group .................5

          2.     The Voting Agreement Do Not Raise an Inference of a Group ..................6

          3.     The Lock-Up Agreement Between the Company and Principal
Stockholders Does Not Create a Stand-Alone Inference of a Group...........6

     C.     The Waiver and Consents, Conversion Agreements and Leak-Out Agreements
Do Not Create an Inference of Group Activity........................................................8

     D.     The Opposition Cannot Address Plaintiff's Failure to Plead Purchases
Following the May and June Agreements ................................................................9

     E.     The SEC's Proposal is Not Relevant .....................................................................10

CONCLUSION..................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Am Hosp. Ass'n v. Becerra*,
   142 S. Ct. 1896 (2022)..................................................................................................10

*Chechele v. Scheetz*,
   819 F. Supp. 2d 342 (S.D.N.Y. 2011),
   *aff'd*, 466 F. App'x 39 (2d Cir. 2012)........................................................................4

*Greenberg v. Hudson Bay Master Fund Ltd.*,
   No. 14cv5226 (DLC),
   2015 WL 2212215 (S.D.N.Y. May 12, 2015) ............................................................4

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019)................................................................................................10

*Litzler v. CC Invs., L.D.C.*,
   411 F. Supp. 2d 411 (S.D.N.Y. 2006)..........................................................................4

*Lowinger v. Morgan Stanley & Co.*,
   841 F.3d 122 (2d Cir. 2016)......................................................................................2,7

*Morales v. Quintel Entm't, Inc.*,
   249 F.3d 115 (2d Cir. 2001)......................................................................................6,7

*Schaffer ex rel. Lasersight Inc. v. CC Invs., LDC*,
   No. 99 Civ. 2821(VM),
   2002 WL 31869391 (S.D.N.Y. Dec. 20, 2002) ..........................................................4

*SEC v. Savoy Indus., Inc.*,
   587 F.2d 1149 (D.C. Cir. 1978)....................................................................................8

*Wellman v. Dickinson*,
   682 F.2d 355 (2d Cir. 1982)..........................................................................................5

**Statutes, Rules & Regulations**

15 U.S.C. § 78m(d)(3) ................................................................................................3,10

17 C.F.R. §240.13d-1(b) ................................................................................................3

17 C.F.R. §240.13d-5(b)(1) ..........................................................................................10

17 C.F.R. §240.13d-5(b)(2) .......................................................................................2,3,4

17 C.F.R. § 240.13d-5(b)(2)(iv)......................................................................................3

**Other Authorities**

Filing and Disclosure Requirements Relating to Beneficial Ownership, SEC Release No. 5925, 1978 WL 170898 (Apr. 21, 1978) ...............................................................................................3

Peter Romeo & Alan Dye, *Comprehensive Section 16 Outline* § 2.03 (5th ed. 2019)          10

Defendant Empery Funds[1] respectfully submits this reply memorandum of law on behalf of the Moving Defendants in further support of their motion to dismiss the Complaint ("Opening Memorandum" or "Defs. Br.") (Dkt. 97) and in response to Plaintiff's Opposition to the Moving Defendants' Motion To Dismiss ("Opposition" or "Pl. Br.") (Dkt. 98).

## PRELIMINARY STATEMENT

The Opening Memorandum established that the Complaint fails to plead a plausible inference that a "group" exists and that, absent a "group," there can be no Section 16(b) claim. Indeed, the Complaint identifies nothing more than commonplace transactions and documents evidencing parallel investments made independently by each of the Moving Defendants.

Plaintiff's claim that a group was formed rests primarily on a never-before-recognized theory that the Moving Defendants were third-party beneficiaries of Lock-Up Agreements and Voting Agreements between the Company and certain non-party Principal Stockholders. But Plaintiff's only response to the Opening Memorandum's argument that Plaintiff's third-party beneficiary theory (i) is baseless, (ii) has never been applied by a court to conclude that a group had been formed and (iii) is entirely inconsistent with the Supreme Court's instruction that liability pursuant to Section 16(b) is to be narrowly construed, is the irrelevant observation that the "right of third-party enforcement is not some theory…but, instead, a well-settled principle of controlling New York law." Pl. Br. at 10. Likewise, Plaintiff remains unable to point to any alleged purchases following the May and June parallel agreements between the Company and each Moving Defendant, meaning that even if he could allege a group as a result of those agreements, the Complaint remains subject to dismissal for failure to allege matchable purchases and sales.

---

[1] Capitalized terms undefined herein are defined in the Memorandum of Law in Support of Moving Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt 97).

The weakness of Plaintiff's claim is further demonstrated by his reliance on arguments that ignore and distort the Moving Defendants' arguments, or that rest on misleading rhetoric and misstatements of law. Plaintiff's lead argument is that the Moving Defendants cannot satisfy the elements of a *safe harbor* to a Section 13(d) group that, at this stage, *the Moving Defendants have not even invoked*. Plaintiff also mislabels the Moving Defendants as the "Insider Trading Defendants," even though they are not alleged to have engaged in any such thing. And, notwithstanding that the Moving Defendants were not even parties to the Lock-Up Agreement, Plaintiff claims that courts have held that that the existence of a lock-up agreement is sufficient on its own to allege a group. However, as the Second Circuit recently reaffirmed in *Lowinger, the opposite is true*.

There are no plausible allegations of group activity and the Complaint should be dismissed.

## **ARGUMENT**

### I. **THE COMPLAINT FAILS TO RAISE A PLAUSIBLE INFERENCE OF A GROUP AMONG THE MOVING DEFENDANTS**

#### A. **The Rule 13d-5(b)(2) Safe Harbor is Irrelevant Because Plaintiff Has Not Plausibly Alleged a Group**

Plaintiff's first argument is a red herring in that he accuses the Moving Defendants of "seek[ing] to disregard" a safe harbor that they have not invoked in their Motion to Dismiss. Pl. Br. at 6. According to Plaintiff, the Moving Defendants are not exempt under the Rule 13d-5(b)(2) safe harbor because certain of the transaction documents following the March 2020 Transaction— including the Consent and Waiver, the Conversion Agreement and Leak-Out Agreement—were purportedly "non-ministerial actions, not directly related to completing the sale of securities through the SPA . . . ." Pl. Br. at 6. Plaintiff asserts that "standing alone," those agreements "cause the group activity inherent in coordinating the actions of multiple investors investing in the same private offering to be considered members of a § 13(d) group . . . ." Pl. Br. at 6.

Rule 13d-5(b)(2) exempts certain "institutional investors" identified in Rule 13d-1(b) with respect to their coordinated activities in connection with participating in private placements[2] if, among other things, the "only actions among or between any members of the group with respect to the issuer or its securities subsequent to the closing date…are those which are necessary to conclude ministerial matters directly related to the completion of the offer or sale of the securities." 17 C.F.R. § 240.13d-5(b)(2)(iv). According to Plaintiff, he has identified examples of non-ministerial actions among the Moving Defendants and, as a result, a group must exist.[3]

Plaintiff's analysis skips the necessary predicate step of establishing the presence of a group entirely and is wrong. Rule 13d-5(b)(2)(iv) is not relevant if there is no plausible inference of a group in the first place. As explained at length in the Opening Brief, for a group to arise, there must be a plausible inference that its members "combined in furtherance of common objective." Defs. Br. 14-22. The Complaint has not satisfied this standard and, as such, the Moving Defendants do not need to rely on the safe harbor in this motion. Indeed, the fallacy of Plaintiff's argument is laid bare by the fact that the Rule 13d-5(b)(2)(iv) safe harbor is available only to registered institutions. If Plaintiff were correct that Rule 13d-5(b)(2)(iv) is the exclusive mechanism to avoid the formation of a group in connection with a private placement transaction in which multiple investors participate, only registered investors ever could invest in such a transaction. This is not (and cannot be) the law.

---

[2] "Rule 13d-5(b)(2) deems there to be no 'group' within the meaning of Section 13(d)(3), when securities are privately placed by the issuer with persons who are eligible to file Schedule 13G and there is no agreement among members of the group to act together except for the purpose of facilitating the particular transaction. However, if the purchase is not in the ordinary course of each member's business, or is with the purpose or the effect of changing or influencing issuer control, or is there is cooperative activity of a non-ministerial nature among group members subsequent to the closing date, a group filing obligation would arise." Filing and Disclosure Requirements Relating to Beneficial Ownership, SEC Release No. 5925, 1978 WL 170898, at *19 (Apr. 21, 1978).

[3] Plaintiff also sidesteps that the non-ministerial actions need to be actions "among or between" the investors. The "non-ministerial" actions plaintiff cites, are not actions "among or between" the investors at all.

3

*Litzler v. CC Investments., L.D.C.,* 411 F. Supp. 2d 411 (S.D.N.Y. 2006), cited by Plaintiff, Pl. Br. at 6, demonstrates as much in holding that "[g]eneral allegations of parallel investments by institutional investors do not suffice to plead a 'group.'" *Litzler*, 411 F. Supp. 2d at 415. Indeed, the case did not apply Rule 13d-5(b)(2) in concluding that "no group activity is even alleged to have occurred" after the "use of a lead draftsman." *Litzler*, 411 F. Supp. 2d at 416. Plaintiff's attempt to distinguish *Litzler* fails because there are no plausible allegations "of communications among the parties" or "other activities" done in coordination in this case.[4] *See* Pl. Br. at 7

Plaintiff's other citations fare no better. He claims that *Schaffer ex rel. Lasersight Inc. v. CC Investments, LDC,* 2002 WL 31869391 (S.D.N.Y. Dec. 20, 2002), is "on point" because it "involved 'concerted activity … over an extensive period of months and through a number of transactions." Pl. Br. at 7 (citing *Litzler*, 411 F. Supp. 2d at 416). But the "concerted activity" in *Schaffer* was the "extensive pattern of reliance on the common legal services" of a single law firm, a "pattern of draft distribution for review and comment" among investors, as well as communications between the principals of the investors with respect to negotiation of the terms of the agreements. 2002 WL 31869391 at *6, *7. There are no such allegations here. Similarly, Plaintiff labels *Chechele v. Scheetz,* 819 F. Supp. 2d 342 (S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012), as "inapposite" because it "involved [b]are allegations that an unspecified number of parties entered an unspecified agreement at an unspecified time or times." Pl. Br. at 9. But, just as in this case, *Scheetz* turned on the failure to allege that the defendants "combined in furtherance of a common objective," notwithstanding holding interests in the same company.

**B.      The Lock-Up And Voting Agreements Do Not Raise An Inference Of A Group**

---

[4] For the same reason, Plaintiff's attempt to distinguish *Greenberg v. Hudson Bay Master Fund Ltd.,* 2015 WL 2212215 (S.D.N.Y. May 12, 2015) falls short. Plaintiff claims that in *Greenberg*, there were "no allegations of subsequent concerted activities such as those which existed in this action." But Plaintiff is unable to identify any "concerted activities" that purportedly existed in this action.

1.    <u>The Moving Defendants' Purported Status as Third-Party Beneficiaries Does Not Raise a Plausible Inference of a Group</u>

It is beyond dispute that the Moving Defendants were not parties to the Voting Agreements and Lock-Up Agreements entered into between the Company and certain *non-party* Principal Stockholders in connection with the March 2020 Transaction. That alone ends the inquiry. Defs. Br. 3-5. Plaintiff, however, attempts to conjure a group based on the *absence* of a no-third party beneficiary provision in these agreements. Plaintiff's attempt is wholly untenable.

Plaintiff contends that "the concerted action of the group's members need not be expressly memorialized in writing." Pl. Br. at 9 (citing *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir. 1982).)[5] That proposition is irrelevant, as the issue here is the failure to allege an agreement or combination among the Moving Defendants, written or otherwise. Instead, Plaintiff bases his Section 16(b) claim on the Moving Defendants' purported *status* as *implied* third-party beneficiaries to an agreement among other shareholders and the Company. Pl. Br. at 2-3. No court ever has held that a plausible inference of a group arose based on assertions that a purported group of investors were unnamed third-party beneficiaries[6] of agreements to which they were not parties. Plaintiff's theory would create a limitless application of Section 16(b), where shareholders could be swept within the ambit of a "group" merely through the actions or agreements of *others,* even

---

[5] The *Wellman* case cited by Plaintiff involved defendants who had acted together without a written agreement in attempting to "induce a third-party takeover" of a company, by soliciting potential purchasers and representing to them that shares controlled by other defendants were "available and would 'go with (the) deal.'" 682 F.2d at 356, 363. *Wellman* is a classic example of group activity since the group members acted in combination to jointly facilitate a takeover of the company. The lack of a writing did not prevent the imposition of group liability because of "ample evidence" of the group's collective actions and statements evidencing their common goal. *Id* .

[6] Plaintiff simply assumes that the Moving Defendants were third party beneficiaries. As the only case cited by Plaintiff clarifies, a party is a third-party beneficiary of an agreement only in limited circumstances where the agreement evidences an intent to permit enforcement by the third party, which Plaintiff has not demonstrated. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (N.Y. 1985).

5

without their own agreement or any coordinated activity of their own.  The Court should reject Plaintiff's attempt to fabricate a new basis for group formation.

> 2. The Voting Agreement Do Not Raise an Inference of a Group

Plaintiff also claims that Moving Defendants' "obligation to purchase the Convertible Notes was conditioned upon the Voting Agreement," which "alone create[s] a reasonable inference that there existed an informal agreement among Defendants to also vote for Stockholder Approval…" Pl. Br. at 10.  But Plaintiff's conclusion of an inference of an "informal agreement among Defendants" is unsupported by any allegation in the Complaint.

Further, without explanation, Plaintiff attempts to tie together two unrelated concepts: (i) the requirement of the Company to obtain the Voting Agreements from third party shareholders and (ii) each of the Moving Defendants' own purported voting decision with respect to the March 2020 Transaction.[7]  But Plaintiff did not allege that the Moving Defendants agreed or were bound to vote in any particular way.  No Moving Defendant was a party to the Voting Agreements, and no Moving Defendant is alleged to have been required to vote in favor of the stockholder approval.

> 3. The Lock-Up Agreement Between the Company and Principal Stockholders Does Not Create a Stand-Alone Inference of a Group

Plaintiff's attempt to draw inferences of a group from the Lock-Up Agreement also misses the mark.  Citing *Morales v. Quintel Entertainment, Inc.,* in which the Second Circuit observed that the lock-up provision in a sales agreement "may bear upon the continued existence of a concerted agreement," 249 F.3d 115, 127 (2d Cir. 2001), Plaintiff asserts that the Second Circuit has ruled that a lock-up agreement "provides sufficient facts from which to reasonably infer the existence of a § 13(d) group." Pl. Br. at 11.  Not so.

---

[7] It should be noted that the Complaint contains *no* allegations concerning the Moving Defendants' voting decisions with respect to the March 2020 Transaction.

In fact, in *the very next sentence* in *Morales,* which Plaintiff omits, the Second Circuit held: "we need not decide and do not purport to decide whether such lock-up provisions, considered in isolation, would suffice to establish such an agreement, since other evidence in the record also supports this conclusion." *Morales,* 249 F.3d at 127. Indeed, the Second Circuit reaffirmed that point subsequently in *Lowinger v. Morgan Stanley & Co.,* when it observed that "we have explicitly avoided holding that [a lock-up] agreement, without more, forms a group under Section 13(d)." 841 F.3d 122, 130 (2d Cir. 2016).

Plaintiff attempts to distinguish the holding in *Lowinger* as limited to "underwriters engaged in lock-up agreements as facilitators of a[n initial] public offering." Pl. Br. 12. But in *Lowinger*, the defendants were parties to the lock-up agreement. Here, the alleged group purports to include entities whose only connection to the Lock-Up Agreement was as purported third-party beneficiaries. If there was no inference of an agreement among parties to a lock-up agreement in *Lowinger*, there can be no inference of an agreement among nonparties to a lock-up agreement.

Plaintiff also erroneously relies on an amicus filing in *Morales,* in which the SEC observed that "[t]here are situations where a lock-up agreement might constitute an agreement by a group of shareholders to act together," including "lock-up agreements entered into by an issuer and a group of shareholders" that "might serve to support the price of securities…when positive information about the issuer is circulating . . . ." Pl. Br. at 12. In support, the SEC hypothesized that a group of investors that agree not to sell their stock in order to support an issuer's share price have formed a group. That point is uncontroversial, but it has nothing to do with this case. This case does not involve "lock-up agreements entered into by an issuer and [an alleged] group of shareholders," nor any agreement among the Moving Defendants with respect to the sale of their shares, much less for the purpose of "support[ing] the price of [the Company's] securities." *Id.*

As noted above, the Moving Defendants were not even parties to the Lock-Up Agreements, and there is not a single allegation of any coordination of any kind among them.

Finally, Plaintiff asserts that the fact that the Lock-Up Agreement was "executed contemporaneously with the Voting Agreement, which was followed by the Waiver Agreement, the Conversion Agreement and the Leak-Out Agreement" provides a permissible inference of a group. *Id.* at 13. That too is incorrect. It is not the case that each time multiple investors exercise individual rights (such as to waive a condition of an SPA), a plausible inference of a group is raised. Such a holding would be inconsistent with controlling law and have a sweeping effect on the manner in which public companies engage in financing transactions, opening the floodgates to Section 16(b) litigation in any ordinary course transactions involving multiple investors.

### C. The Waiver and Consents, Conversion Agreements and Leak-Out Agreements Do Not Create an Inference of Group Activity

Plaintiff also claims that he has plausibly alleged facts supporting the inference of a group by citing (i) the May 28, 2020 Waiver and Consents, in which each Moving Defendant separately gave permission to the Company to conduct an additional financing, (ii) the June 2020 Conversion Agreements, in which each Moving Defendant separately agreed to convert its own remaining debt from the March 2020 Transaction to equity, and (iii) the Leak-Out Agreements, in which each Moving Defendant separately agreed to limit the amount of converted stock that it could sell (collectively, the "Subsequent Agreements"). None of the Subsequent Agreements are alleged to have been negotiated or signed by the Moving Defendants as a group.

The Subsequent Agreements were a series of parallel agreements executed individually between each of the Moving Defendants and the Company. In response, Plaintiff declares this "form over substance," citing S*EC v. Savoy Indus., Inc.,* 587 F.2d 1149, 1163 (D.C. Cir. 1978). But that case merely emphasized that an agreement between group members is not limited to

"agreements and contracts in the classical contractual…sense" and did not hold that parallel agreements create an inference of a group. *Id.* Courts routinely reject the argument that a group was formed on account of "transaction documents granting investors parallel rights and obligations." Defs. Br. at 14.

There is no allegation of communication among the Moving Defendants. Plaintiff does not allege that the Moving Defendants coordinated their consent to the Company to conduct a subsequent financing, the conversion of their debt, or the sale of their shares. He merely asserts, without explanation, that these agreements "could…shed light backwards in time on the unity of purpose of the investors . . . .'" Pl. Br. at 15. This falls far short of pleading a plausible claim.

**D.    The Opposition Cannot Address Plaintiff's Failure to Plead Purchases Following the May and June Agreements**

The Opposition confirms that Plaintiff has no way around the fact that the May and June 2020 Subsequent Agreements were entered into months after the March 2020 Transaction closed. Plaintiff has not alleged that the Defendants made matching purchases and sales within six months of the formation of the alleged group. Defs. Br. at 22-23. Accordingly, even if the Moving Defendants formed a group in May or June 2020 (and they did not), the Complaint would still fail.

In response, Plaintiff points to (i) "the March 17 2020 purchases of the Convertible Notes and Warrants," (ii) "the change in the exercise prices of the Convertible Notes and Warrants on May 15, 2020," and (iii) "the cashless exercise of the Warrants" as possible matchable purchases. Pl. Br. 18. None of those transactions would result in the purchase of securities after the alleged formation of a group in May or June 2020, as would be required to state a Section 16(b) claim, as March 17, 2020 and May 15, 2020 are both *before* the May Waiver and Consent and the June Conversion Agreements and Leak-Out Agreements. Moreover, as Plaintiff himself claims in the Complaint, the "cashless exercises of the Warrants" is not an alleged purchase of a security, but

9

rather "constitutes the *sale*[]" of a security.  Compl. ¶ 69 (emphasis added).

**E.      The SEC's Proposal is Not Relevant**

Plaintiff continues to assert that the Proposed Rules displace decades of law and the SEC's own existing rules.  Pl. Br. at 16-18.  Plaintiff does not dispute that, in general, proposed rules are not entitled to any deference.  *See* Defs. Br. at 24 (citing cases).  Nevertheless, Plaintiff asks the Court to give dispositive deference to commentary accompanying proposed rules, which would turn the notice and comment process on its head. *See id.* at 24 n.9.  Providing the accompanying commentary deference in the manner Plaintiff suggests would remove the word "agree" from Rule 13d-5(b)(1), giving the proposed amendment retroactive application before it becomes effective.

Even if the Proposed Rules were eligible for such deference prior to adoption, they should not be given it in this case for several reasons.  Section 13(d) is clear on its face in requiring a formal arrangement. *See* 15 U.S.C. § 78m(d)(3).  Likewise, Rule 13d-5(b)(1) is clear in requiring an agreement.  An agency determination vitiating those clear requirements is not entitled to deference.  *See Am Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896 (2022) (statute); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (regulation).  Moreover, giving deference to the proposed change would constitute unfair surprise and disrupt the market, as it has been long recognized that "courts will not find a group to exist unless the plaintiff can show that the alleged members of the group reached an 'agreement' and that the agreement related to the securities of an identified issuer."  Peter Romeo & Alan Dye, *Section 16 Treatise and Reporting Guide* § 2.03[6][d][i] (5th ed. 2019) (collecting cases).

Finally, even if the Court were to agree with Plaintiff that he need not allege the existence of an "agreement," the Moving Defendants contend that Plaintiff has failed to allege a "combination" among the Moving Defendants "in furtherance of a common objective," as he is required to do even under the Proposed Rules.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Complaint should be granted.

Dated:  November 17, 2022                          **SCHULTE ROTH & ZABEL LLP**


 */s/ Michael E. Swartz*
Michael E. Swartz
Andrew D. Gladstein

919 Third Avenue
New York, NY 10022
(212) 756-2000
michael.swartz@srz.com
andrew.gladstein@srz.com

*Counsel for Defendants Empery Funds*


**HOGAN LOVELLS US LLP**


 */s/ Dennis H. Tracey, III*
Dennis H. Tracey, III

390 Madison Ave.
New York, NY 10017
(212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
catherine.bratic@hoganlovells.com

*Counsel for Defendant Anson Investments
Master Fund LP*

11

**ELLENOFF GROSSMAN & SCHOLE LLP**


*/s/ Fawn Lee*

Fawn Lee

1345 Avenue of the Americas
11th Floor
New York, New York 10105
Phone: (646) 895-7158
Cell: (518) 339-0614
jhorgan@egsllp.com
flee@egsllp.com
jcohen@egsllp.com

*Counsel for Defendants Brio Capital Master
Fund Ltd. and Brio Select Opportunities Fund
LP*


**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**


*/s/ Susan Saltzstein*

Susan Saltzstein

One Manhattan West
New York, New York  10001
(212) 735-4132
Fax: (917) 777-4132
susan.saltzstein@skadden.com
jeffrey.geier@skadden.com

*Counsel for Defendant CVI Investments, Inc.*

12

**LATHAM & WATKINS LLP**

*/s/ William O. Reckler*
William O. Reckler

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1350
chris.clark@lw.com
william.reckler@lw.com
Brian.Miller@lw.com

*Counsel for Defendants Iroquois Master Fund Ltd. and Iroquois Capital Investment Group, LLC*

**PHILLIPS NIZER LLP**

*/s/ Jared R. Clark*
Jared R. Clark
Marc Andrew Landis

485 Lexington Avenue, 14th Floor
New York, New York 10017
(212) 841-0705
Fax: (212) 262-5152
mlandis@phillipsnizer.com
jclark@phillipsnizer.com

*Counsel for Defendant L1 Capital Global Opportunities Master Fund*

13

**LITMAN, ASCHE & GIOIELLA, LLP**


/s/ *Richard Asche*
Richard Asche

140 Broadway #38
New York, NY 10005
(212) 809-4500
richardasche@lagnyc.com

*Counsel for Defendant M3A LP*


**STINSON LLP**


/s/ *Kiernan M. Corcoran*
Kieran M. Corcoran

1325 Avenue of the Americas
27th Floor
New York, NY 10019
(212) 763-8491
kieran.corcoran@stinson.com

*Counsel for Defendant Rich Molinsky*

14