Abraham Declaration Exhibit 141 (Genius's Form 8-K Current Report, filed May 15, 2020)

Case 1.22-cv-00249-AS     Document 226-12     Filed 01/15/25     Page 2 of 243

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, DC 20549**

**FORM 8-K**

**CURRENT REPORT**

**Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): May 15, 2020

**GENIUS BRANDS INTERNATIONAL, INC.**
(Exact name of registrant as specified in its charter)

| | | |
|---|---|---|
| **Nevada** | **001-37950** | **20-4118216** |
| (State or other jurisdiction of Incorporation or organization) | (Commission File Number) | (I.R.S. Employer Identification Number) |
| **190 N. Canon Drive, 4th Fl.** **Beverly Hills, CA** | | **90210** |
| (Address of principal executive offices) | | (Zip Code) |

Registrant's telephone number, including area code: (310) 273-4222

_____
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| **Common Stock, par value $0.001 per share** | **GNUS** | **The Nasdaq Capital Market** |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 1.01.**          **Entry into a Material Definitive Agreement.**

As previously disclosed, on March 11, 2020, Genius Brands International, Inc. (the "**Company**") entered into a Securities Purchase Agreement (the "**Purchase Agreement**") with certain accredited investors (each an "**Investor**" and collectively, the "**Investors**"), pursuant to which the Company agreed to sell and issue (1) Senior Secured Convertible Notes to the Investors in the aggregate principal amount of $13,750,000 (each, a "**Note**" and collectively, the "**Notes**") and $11,000,000 funding amount (reflecting an original issue discount of $2,750,000), at an initial conversion price of $1.375, and (2) warrants to purchase 65,476,190 shares of our common stock, par value $0.001 per share (the "**Common Stock**"), exercisable for a period of five years at an initial exercise price of $0.26 per share (each a "**Warrant**" and collectively, the "**Warrants**") (collectively, the "**Financing**"). The Financing was completed on March 17, 2020. At the closing of the Financing, the Company also paid The Special Equities Group, LLC, a division of Bradley Woods & Co. Ltd. (the "**Placement Agent**"), warrants to purchase 6,547,619 shares of Common Stock at an initial exercise price of $0.26 per share, which were in the same form as the Warrants issued to the Investors (collectively, the "**Placement Agent Warrants**").

Pursuant to the terms of the Purchase Agreement, the Notes, the Warrants and the Placement Agent Warrants, the Company agreed that the following will apply or become effective only following stockholder approval: (i) a reduction in the conversion price of the Notes to $0.21, (ii) a reduction in the exercise price of the Warrants and Placement Agent Warrants to $0.21, and (iii) a reduction in the exercise price of the existing warrants held by Investors in the Financing (representing warrants to purchase an aggregate of 8,715,229 shares of our Common Stock, as described in further detail below) to $0.21. As discussed below in Item 5.07 of this Current Report on Form 8-K, such stockholder approval was received on May 15, 2020, and as such, (i) the conversion price of the Notes issued in connection with the Financing has been reduced to $0.21, (ii) the exercise price of the Warrants and the Placement Agents Warrants issued in connection with the Financing has been reduced to $0.21, and (iii) the exercise price of the existing warrants currently held by Investors in the Financing and identified in the table below has been reduced to $0.21.

| Date of Issuance of Warrants | Number of Warrants to Purchase Shares of Common Stock | Current Exercise Price of Warrants |
|---|---|---|
| 11/03/15 | 166,667 | $3.30 |
| 2/10/17 | 681,312 | $5.30 |
| 1/10/18 | 495,000 | $3.00 |
| 8/17/18 | 159,950 | $3.00 |
| 2/19/19 | 1,763,670 | $2.55 |
| 7/22/19 | 1,681,668 | $1.14 |
| 10/28/19 | 477,474 | $0.76 |
| 12/17/19 | 3,471,135 | $0.30 |

**Item 3.03.**          **Material Modification to Rights of Security Holders.**

The information set forth in Item 1.01 of this Current Report on Form 8-K is incorporated herein by reference.

**Item 5.07.**          **Submission of Matters to a Vote of Security Holders.**

(a)     On May 15, 2020, the Company held its 2020 Annual Meeting of Stockholders (the "**Annual Meeting**"). At the Annual Meeting, the holders of 21,368,586 shares of Common Stock were present at the meeting or represented by proxy, which represents 72.70% of the total shares of outstanding Common Stock entitled to vote as of the record date of March 28, 2020.

(b)    The following actions were taken at the Annual Meeting:

(1) The following seven nominees were elected to serve on the Company's Board of Directors until the Company's 2021 annual meeting of stockholders or until their respective successors have been elected and qualified, or until their earlier resignation or removal:

| Name of Director Nominees | Votes For | Votes Withheld | Broker Non-Vote |
| --- | --- | --- | --- |
| Andy Heyward | 12,685,895 | 201,744 | 8,480,947 |
| Michael Klein | 12,687,706 | 199,993 | 8,480,947 |
| Joseph "Gray" Davis | 12,634,806 | 252,833 | 8,480,947 |
| Lynne Segall | 12,678,657 | 208,982 | 8,480,947 |
| P. Clark Hallren | 12,887,639 | 200,235 | 8,840,947 |
| Anthony Thomopoulos | 12,666,854 | 220,785 | 8,840,947 |
| Margaret Loesch | 12,651,599 | 236,040 | 8,840,947 |

(2) The issuance of shares of the Company's common stock upon conversion, exercise, exchange or otherwise pursuant to the terms of that certain Securities Purchase Agreement, dated March 11, 2020, by and among the Company and the investors listed on the Schedule of Buyers thereto, and the related convertible notes and warrants to purchase common stock issued to the investors pursuant thereto and the warrants to purchase common stock issued to the placement agent was approved, based on the following votes:

| Votes For | Votes Against | Abstentions | Broker Non-Vote |
| --- | --- | --- | --- |
| 12,299,546 | 486,714 | 101,379 | 8,840,947 |

(3) The issuance of shares of the Company's common stock upon conversion, exercise, exchange or otherwise to Andy Heyward, the Company's Chairman of the Board of Directors and Chief Executive Officer, pursuant to the terms of that certain Securities Purchase Agreement described in the previous proposal, and the related convertible notes and warrants to purchase common stock issued pursuant thereto was approved, based on the following votes:

| Votes For | Votes Against | Abstentions | Broker Non-Vote |
| --- | --- | --- | --- |
| 12,327,907 | 458,485 | 101,247 | 8,840,947 |

(4) The amendment to the Company's Articles of Incorporation, as amended, to increase the authorized number of shares of the Company's common stock from 233,333,334 to 650,000,000 and to increase the authorized number of shares of the Company's capital stock to 660,000,000 was not approved, based on the following votes:

| Votes For | Votes Against | Abstentions | Broker Non-Vote |
| --- | --- | --- | --- |
| 12,229,508 | 592,481 | 65,650 | 8,840,947 |

(5) The selection of Squar Milner LLP as the Company's independent registered public accounting firm for the fiscal year ending December 31, 2020, was ratified, based on the following votes:

| Votes For | Votes Against | Abstentions | Broker Non-Vote |
| --- | --- | --- | --- |
| 20,245,738 | 990,389 | 132,459 | 0 |

(6) The compensation of the Company's named executive officers, as disclosed in the Company's proxy statement, was approved by an advisory vote, based on the following votes:

| Votes For | Votes Against | Abstentions | Broker Non-Vote |
| --- | --- | --- | --- |
| 12,222,386 | 602,759 | 62,494 | 8,840,947 |

2

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**GENIUS BRANDS INTERNATIONAL, INC.**

Date:  May 15, 2020

By: /s/ Andy Heyward

| | |
|---|---|
| Name: | Andy Heyward |
| Title: | Chief Executive Officer |

3

Abraham Declaration Exhibit 142
(EMPGNUS0004718-22)

| | |
|---|---|
| **From:** | Brett Director [Brett.Director@emperyam.com] |
| **Sent:** | 5/16/2020 2:36:19 AM |
| **To:** | Jonathan Schechter [shex@theseg.com] |
| **CC:** | Robert Charron [rcharron@egsllp.com]; Matthew McCullough [mmccullough@egsllp.com]; Jeffrey Schultz [JSchultz@mintz.com]; Ryan Lane [Ryan.Lane@emperyam.com]; Michael Jaffa [mjaffa@gnusbrands.com]; Alan Langer [AJLanger@mintz.com]; notices [notices@emperyam.com] |
| **BCC:** | Martin.Hoe@emperyam.com; Brett.Director@emperyam.com; Alyson.Chung@emperyam.com; Bryan.Armenta@emperyam.com |
| **Subject:** | RE: Leak out agreement |
| **Attachments:** | Form of Leak-Out Agreement 5.2020.docx |

See attached for a form of Leak Out Agreement that we've used previously, which I've tweaked a little based on your email below.  Mintz will need to customize for this specific transaction, including  some blanks in brackets such as length of the leak-out period and a price above which sales do not apply for purposes of the leak-out .  Also, agreed that leak-out agreements are typically not publicly filed.

Regards,
Brett

-----Original Message-----
From: Jonathan Schechter [mailto:shex@theseg.com]
Sent: Friday, May 15, 2020 8:41 PM
To: Brett Director <Brett.Director@emperyam.com>
Cc: Robert Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>; Jeffrey Schultz <JSchultz@mintz.com>; Ryan Lane <Ryan.Lane@emperyam.com>; Michael Jaffa <mjaffa@gnusbrands.com>; Alan Langer <AJLanger@mintz.com>
Subject: Leak out agreement

Brett-

Can you provide Rob with a Leak-out Agreement you guys like. We are doing one for genius. GNUS is agreeing to register the debt deal on an S-3 within 15 days of closing the deal we are doing this weekend to any investor that agrees to a Leak-Out that begins the day the RS is declared effective. The Leak out is 30% of the average daily volume. The 30% is in the aggregate for all investors and is pro rata to each investor based on the amount they put into the debt deal.

Common stock at market ($1.20). 7.5mm shares. Using the same doc we used for the last 2 deals.

My understanding is that the Leak-Out is not publicly filed. Is that correct in your experience?

Thanks!

Shex

Sent from my iPhone
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
**************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

Confidential

## LEAK-OUT AGREEMENT

[  ] __, 2020

This agreement (the "**Leak-Out Agreement**") is being delivered to you in connection with an understanding by and between [ISSUER], a [  ] corporation (the "**Company**"), and the person or persons named on the signature pages hereto (collectively, the "**Holder**").

Reference is hereby made to (a) the Securities Purchase Agreement, dated [  ] __, 2020, by and among the Company and the Holder (the "**Purchase Agreement**") in connection with the offering (the "**Offering**") of the Company, pursuant to which the Holder and certain other purchasers acquired (i) shares of Common Stock of the Company ("**Shares**") and (ii) warrants of the Company to purchase Shares, the "**Common Warrants**," and together with the Shares, the "**Securities**") and (b) with respect to the Shares, the registration statement on Form S-3 (File No. [  ]) ("**Registration Statement**"). Capitalized terms not defined herein shall have the meaning as set forth in the Purchase Agreement, unless otherwise set forth herein.

The Holder agrees solely with the Company that beginning on [the time that the Company notifies the Holder that the [Resale Registration Statement[1] is declared effective] (the "**Effective Date**") and ending at 4:00 pm (New York City time) on [  ] ___, 2020 (such period, the "**Restricted Period**"), neither the Holder, nor any affiliate of such Holder which (x) had or has knowledge of the transactions contemplated by the Purchase Agreement, (y) has or shares discretion relating to such Holder's investments or trading or information concerning such Holder's investments, including in respect of the Securities, or (z) is subject to such Holder's review or input concerning such affiliate's investments or trading (together, the "**Holder's Trading Affiliates**"), collectively, shall sell, dispose or otherwise transfer, directly or indirectly, (including, without limitation, any sales, short sales, swaps or any derivative transactions that would be equivalent to any sales or short positions) on any Trading Day during the Restricted Period (any such date, a "**Date of Determination**"), shares of Common Stock of the Company, or shares of common stock of the Company underlying any Common Stock Equivalents (as defined in the Purchase Agreement), held by the Holder on the date hereof, as well as the shares of Common Stock of the Company issuable upon exercise of the Common Warrants (collectively, the "**Restricted Securities**"), in an amount representing more than [  ]% of the trading volume of Common Stock as reported by Bloomberg, LP on each applicable Date of Determination ("**Leak-Out Percentage**"); provided, that the foregoing restriction shall not apply to any actual "long" (as defined in Regulation SHO of the Securities Exchange Act of 1934, as amended) sales by the Holder or any of the Holder's Trading Affiliates at a price greater than $[  ] (in each case, as adjusted for stock splits, stock dividends, stock combinations, recapitalizations or other similar events occurring after the date hereof) provided, further, the foregoing restriction shall not apply to any actual "long" sales of shares of Common Stock purchased in open market transactions by the Holder or any of the Holder's Trading Affiliates during the Restricted Period.

---

[1] To describe Resale Registration Statement.

EMPGNUS0004719

Notwithstanding anything herein to the contrary, during the Restricted Period, the Holder may, directly or indirectly, sell or transfer all, but not less than all, of any Restricted Securities to any Person (an "**Assignee**") in a transaction which does not need to be reported on the consolidated tape on the Principal Market, without complying with (or otherwise limited by) the restrictions set forth in this Leak-Out Agreement; provided, that as a condition to any such sale or transfer an authorized signatory of the Company and such Assignee duly execute and deliver a leak-out agreement in the form of this Leak-Out Agreement.

Any notices, consents, waivers or other communications required or permitted to be given under the terms of this Leak-Out Agreement must be in writing and shall be given in accordance with the terms of the Purchase Agreement.

This Leak-Out Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior negotiations, letters and understandings relating to the subject matter hereof and are fully binding on the parties hereto.

This Leak-Out Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. This Leak-Out Agreement may be executed and accepted by facsimile or PDF signature and any such signature shall be of the same force and effect as an original signature.

The terms of this Leak-Out Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and their respective successors and assigns.

This Leak-Out Agreement may not be amended or modified except in writing signed by each of the parties hereto.

All questions concerning the construction, validity, enforcement and interpretation of this Leak-Out Agreement shall be governed by Sections [5.9] and Section [5.20] of the Purchase Agreement.

Each party hereto acknowledges that, in view of the uniqueness of the transactions contemplated by this Leak-Out Agreement, the other party or parties hereto may not have an adequate remedy at law for money damages in the event that this Leak-Out Agreement has not been performed in accordance with its terms, and therefore agrees that such other party or parties shall be entitled to seek specific enforcement of the terms hereof in addition to any other remedy it may seek, at law or in equity.

The obligations of the Holder under this Leak-Out Agreement are several and not joint with the obligations of any other holder of any of the Securities issued under the Purchase Agreement (each, an "**Other Holder**") or any other holder of any of the Securities issued under the Registration Statement that is not a signatory to the Purchase Agreement (each, a "**Prospectus Purchaser Other Holder**") under any other agreement, and the Holder shall not be responsible in any way for the performance of the obligations of any Other Holder or any Prospectus Purchaser Other Holder under any such other agreement. Nothing contained herein, in this Leak-Out Agreement or in any other agreement, and no action taken by the Holder pursuant hereto, shall be deemed to constitute the Holder and Other Holders or any Prospectus Purchaser Other Holder as a partnership, an association, a joint venture or any other kind of entity, or create a presumption

that the Holder and the Other Holders or any Prospectus Purchaser Other Holder are in any way acting in concert or as a group with respect to such obligations or the transactions contemplated by this Leak-Out Agreement or any other agreement and the Company acknowledges that the Holder and the Other Holders or any Prospectus Purchaser Other Holder are not acting in concert or as a group with respect to such obligations or the transactions contemplated by this Leak-Out Agreement or any other agreement.  The Company and the Holder confirm that the Holder has independently participated in the negotiation of the transactions contemplated hereby with the advice of its own counsel and advisors.  The Holder shall be entitled to independently protect and enforce its rights, including, without limitation, the rights arising out of this Leak-Out Agreement, and it shall not be necessary for any Other Holder or any Prospectus Purchaser Other Holder to be joined as an additional party in any proceeding for such purpose.

The Company hereby represents and warrants as of the date hereof and covenants and agrees from and after the date hereof that none of the terms offered to any Other Holder or any Prospectus Purchaser Other Holder with respect to any restrictions on the sale of Securities substantially in the form of this Leak-Out Agreement (or any amendment, modification, waiver or release thereof) (each a "**Settlement Document**"), is or will be more favorable to such Other Holder than those of the Holder and this Leak-Out Agreement.  If, and whenever on or after the date hereof, the Company enters into a Settlement Document with terms that are materially different from this Leak-Out Agreement, then (i) the Company shall provide notice thereof to the Holder promptly following the occurrence thereof and (ii) the terms and conditions of this Leak-Out Agreement shall be, without any further action by the Holder or the Company, automatically amended and modified in an economically and legally equivalent manner such that the Holder shall receive the benefit of the more favorable terms and/or conditions (as the case may be) set forth in such Settlement Document, provided that upon written notice to the Company at any time the Holder may elect not to accept the benefit of any such amended or modified term or condition, in which event the term or condition contained in this Leak-Out Agreement shall apply to the Holder as it was in effect immediately prior to such amendment or modification as if such amendment or modification never occurred with respect to the Holder.  The provisions of this paragraph shall apply similarly and equally to each Settlement Document.

[The remainder of the page is intentionally left blank]

EMPGNUS0004721

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____
    Name:
    Title:


AGREED TO AND ACCEPTED:

**"HOLDER"**


_____


By: _____
    Name:
    Title:

EMPGNUS0004722

Abraham Declaration Exhibit 143
(ANSON_00012091-94)

Message
_____

**From:**       Jonathan Schechter [shex@theseg.com]
**Sent:**       5/16/2020 8:57:27 PM
**To:**         Amin Nathoo [anathoo@ansonfunds.com]
**CC:**         Robert F. Charron [rcharron@egsllp.com]; Matthew McCullough [mmccullough@egsllp.com]
**Subject:**    RE: GNUS RD
**Attachments:** Copy of GNUS Percentages for leak out.xlsx; GNUS-SPA (RD - May 18 2020) (Common) (002).DOCX; GNUS Form of Leak-Out Agreement 5.2020.docx; GNUS - Waiver and Consent Agreement (RD Offering - May 18 2020) (clean copy).DOCX; GNUS SPA Redline 5.16.20.PDF

Take a look at the attached...let's see what others comeback with on the Standstill before we make a final decision.

**From:** Amin Nathoo [mailto:anathoo@ansonfunds.com]
**Sent:** Saturday, May 16, 2020 8:39 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

So if the aggregate selling amount is 30% of volume, attached shows the % each firm can sell per day.

| Firm | % | Leakout % Sale | 30% |
|---|---|---|---|
| Empery | 15.00% | 4.50% | |
| Bruce H | 1.00% | 0.30% | |
| Rich Molinsky | 0.85% | 0.26% | |
| 32 Entertainment | 1.09% | 0.33% | |
| Jamie Taicher | 0.56% | 0.17% | |
| L1 | 6.00% | 1.80% | |
| Tucker Anderson | 1.50% | 0.45% | |
| Iroquois | 10.00% | 3.00% | |
| Heights | 10.00% | 3.00% | |
| Brio | 14.00% | 4.20% | |
| Obsidian | 10.00% | 3.00% | |
| Anson | 30.00% | 9.00% | |
| | 100.00% | 30.00% | |

**Amin Nathoo, CFA | Anson Funds**
155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7
Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141
anathoo@ansonfunds.com

**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** May 16, 2020 8:06 PM
**To:** Amin Nathoo <anathoo@ansonfunds.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

See attached...I couldn't make it percentage as the smaller amounts rounded up to 1

CONFIDENTIAL                                                                            ANSON_00012091

**From:** Amin Nathoo [mailto:anathoo@ansonfunds.com]
**Sent:** Saturday, May 16, 2020 6:06 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

Here are a few of my comments/questions.

The waiver should have the following:

- Company agrees to file resale registration statement by May 29 2020
- Company shall be prohibited from issuing any common stock/debt/etc. from date hereof until 90 days after the registration statement goes effective

Leakout

- The leakout should reference the debt deal SPA, not this new deal, right? The leakout needs to apply to all debt investors, regardless of whether or not they participate in this financing, they still need to sign it.
- What is aggregate selling % of all investors combined? 30%?
- What will be the selling % of each investor as a result? Can you please provide a breakdown?
- The leakout should not apply if stock is above $1.50

**Amin Nathoo, CFA | Anson Funds**
155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7
Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141
anathoo@ansonfunds.com

**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** May 16, 2020 5:33 PM
**To:** Amin Nathoo <anathoo@ansonfunds.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** GNUS RD

Here is the SPA and Leak-Out (I got from Brett). I'm waiting on the Waiver...I told Jeff to add the RS in there in return for taking back none of the money.

Let us know what you think.

**From:** Schultz, Jeffrey [mailto:JSchultz@mintz.com]
**Sent:** Friday, May 15, 2020 9:04 PM
**To:** Joe Reda <reda@theseg.com>; Jonathan Schechter <shex@theseg.com>
**Cc:** Bob Denton <bdenton@gnusbrands.com>; Michael Jaffa <mjaffa@gnusbrands.com>; Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>; Langer, Alan <AJLanger@mintz.com>
**Subject:** GNUS RD

Attached is a draft SPA redlined against the last RD deal from May 8, 2020. Other than number of shares and pricing, the only other changes relate to adding in EGS. Please let us know of any comments.

Regards,
Jeff

**Jeffrey Schultz**
*Member*

CONFIDENTIAL

ANSON_00012092

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
666 Third Avenue, New York, NY 10017
+1.212.692.6732
JSchultz@mintz.com | Mintz.com

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
******************************************************************* This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
******************************************************************* This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
******************************************************************* This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as

ANSON_00012093

an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

CONFIDENTIAL                                                                                    ANSON_00012094

Abraham Declaration Exhibit 144
(L1_003043-52)

**To:**          David Feldman[dfeldman@l1capitalglobal.com]
**Cc:**          Jonathan Schechter[shex@theseg.com]
**From:**        Joe Reda
**Sent:**        Sun 5/17/2020 6:53:06 PM
**Subject:**     Re: GNUS Docs
**Received:**              Sun 5/17/2020 6:53:53 PM

Amin has his mind made up.   I'm happy to patch him in for explanation.    You can get all your debt repaid and not sign leak out.   I'm fine with that if you roll ALL OF THE MONEY INTO ICNB.    CALLING YOU SOON.

Sent from my iPhone

> On May 17, 2020, at 6:51 PM, David Feldman <dfeldman@l1capitalglobal.com> wrote:
>
> OK cool
>
> I thought leakout was for this deal
>
> But lets talk about this leakout anyway and maybe I can come up with an idea before we all sign something we regret later.....
>
> **From:** Joe Reda <reda@theseg.com>
> **Sent:** Sunday, May 17, 2020 6:49 PM
> **To:** David Feldman <dfeldman@l1capitalglobal.com>
> **Cc:** Jonathan Schechter <shex@theseg.com>
> **Subject:** Re: GNUS Docs
>
> > Shex.   I'll call you and we can patch in our Investors .
> >
> > Sent from my iPhone
> >
> > > On May 17, 2020, at 6:46 PM, David Feldman <dfeldman@l1capitalglobal.com> wrote:
> > >
> > > Please call me when you get a moment 7865570691
> > > Thanks
> > >
> > > Get Outlook for iOS

**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** Sunday, May 17, 2020 6:40 PM
**To:** David Feldman
**Cc:** Joe Reda
**Subject:** Re: GNUS Docs

> No leak out for this. Only after the RS goes effective for the debt and warrants. No one wants this thing crushed.
>
> Sent from my iPhone
>
> > On May 17, 2020, at 6:27 PM, David Feldman <dfeldman@l1capitalglobal.com> wrote:

Confidential                                                                                  L1_003043

I thought the leakout related to the convertible or something

This deal has a leak-out?

Any leakout is a very bad idea

Its in all of our interests not to have it.....

**From:** Joe Reda <reda@theseg.com>
**Sent:** Sunday, May 17, 2020 11:42 AM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** David Feldman <dfeldman@l1capitalglobal.com>
**Subject:** Re: GNUS Docs

We are going to make feldy $25mil in GNUS and ICNB.

Sent from my iPhone

> On May 17, 2020, at 11:38 AM, Jonathan Schechter
> <shex@theseg.com> wrote:

Who doesn't love him?

**From:** Joe Reda
**Sent:** Sunday, May 17, 2020 11:26 AM
**To:** David Feldman <dfeldman@l1capitalglobal.com>
**Cc:** Jonathan Schechter <shex@theseg.com>; Yujie Qiao <yqiao@l1capitalglobal.com>; Robert F.
Charron <rcharron@egsllp.com>; Linda Mackay <linda@theseg.com>;
Matthew McCullough <mmccullough@egsllp.com>
**Subject:** Re: GNUS Docs

Love feldy.    We need to do way more together.

Sent from my iPhone

> On May 17, 2020, at 10:14 AM, David Feldman
> <dfeldman@l1capitalglobal.com> wrote:

Finger is on the trigger

<Image.jpeg>

Get Outlook for iOS

**From:** Joe Reda <reda@theseg.com>
**Sent:** Sunday, May 17, 2020 9:59:51 AM
**To:** David Feldman <dfeldman@l1capitalglobal.com>
**Cc:** Jonathan Schechter <shex@theseg.com>; Yujie Qiao <yqiao@l1capitalglobal.com>;
Robert F. Charron <rcharron@egsllp.com>; Linda Mackay

Confidential

&lt;linda@theseg.com&gt;; Matthew McCullough &lt;mmccullough@egsllp.com&gt;

**Subject:** Re: GNUS Docs

Feldy.

Get ready for massive deal flow.

Sent from my iPhone

> On May 17, 2020, at 9:58 AM, David Feldman &lt;dfeldman@l1capitalglobal.com&gt; wrote:
>
> Hi Yujie,
>
> These are good to return
>
> Rgds
>
> Get Outlook for iOS

**From:** Joe Reda &lt;reda@theseg.com&gt;
**Sent:** Saturday, May 16, 2020 10:52:12 PM
**To:** Jonathan Schechter &lt;shex@theseg.com&gt;
**Cc:** David Feldman &lt;dfeldman@l1capitalglobal.com&gt;; Yujie Qiao &lt;yqiao@l1capitalglobal.com&gt;; Robert F. Charron &lt;rcharron@egsllp.com&gt;; Linda Mackay &lt;linda@theseg.com&gt;; Matthew McCullough &lt;mmccullough@egsllp.com&gt;

**Subject:** Re: GNUS Docs

Allocation 400k shares

Sent from my iPhone

> On May 16, 2020, at 10:20 PM, Jonathan Schechter &lt;shex@theseg.com&gt; wrote:
>
> Feldy/Yujie
>
> Attached are the docs. Please send me your signature page to the SPA, Waiver and Leak-Out Agreement when time permits.

Confidential

Thanks,

Shex

Jon Schechter

Partner

The Special Equities Group
"SEG"

150 E 58th St - 28th Floor

New York, NY 10155
(W) 212.258.2343

(C) 516-698-6887

(Email) shex@TheSEG.com

<image001.jpg>
The Special Equities Group "SEG" is a
Division of Bradley Woods & Co. Ltd.
****************************

****************************

*********

This email is only for use by the
intended recipient and may
contain information that is
PRIVILEGED, PROPRIETARY,
CONFIDENTIAL AND/OR
OTHERWISE PROTECTED FROM
DISCLOSURE. If you are not the
intended recipient, then any
review, dissemination, replication
or distribution of this
communication and any
attachments is strictly prohibited.
If you have received this
communication in error, then
please delete this email, any and
all attachments, and copies.
Unless otherwise provided herein,
you may not duplicate,
redistribute or forward this
message, or any portion thereof,
including any attachments, by any
means to any other person
whomsoever without the express
permission of Bradley Woods &
Co. Ltd. ("Bradley Woods").
Neither the information in this
communication nor any opinion
or recommendation expressed
herein constitutes an offer to buy
or sell any securities. The
contents of this communication
are for information purposes only,
and should not be regarded as an
offer to sell or as a solicitation of
an offer to buy any financial

Confidential

L1_003046

product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd. ************************ ************************ ************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ( "Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes

Confidential

L1_003047

an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC. <Copy of GNUS Percentages for leak out.xlsx> <GNUS-SPA (RD - May 18 2020) (Common) (002).DOCX> <GNUS Form of Leak-Out Agreement 5.2020.docx> <GNUS - Waiver and Consent Agreement (RD Offering - May 18 2020) (clean copy).DOCX> <GNUS SPA Redline 5.16.20.PDF> The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd. ********************************* *************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless

Confidential

otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************
****************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ( "Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is

L1_003049

deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*****************************************************
********* This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*****************************************************
***** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained

L1_003050

by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd. ************************************************************ This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd. ************************************************************ This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd. ************************************************************ This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

L1_003051

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

Confidential

Abraham Declaration Exhibit 145 (EMPGNUS0004757-58)

**From:**     Jonathan Schechter [shex@theseg.com]
**Sent:**     5/17/2020 11:31:08 PM
**To:**       Brett Director [Brett.Director@emperyam.com]
**CC:**       Robert F. Charron [rcharron@egsllp.com]; notices [notices@emperyam.com]
**BCC:**      Ryan.Lane@emperyam.com; Martin.Hoe@emperyam.com; Alyson.Chung@emperyam.com; Bryan.Armenta@emperyam.com
**Subject:**  Re: GNUS RD Waiver and Leak-Out

Rob-

Please law sure the leak out is pro rata. Thanks

Sent from my iPhone

On May 17, 2020, at 6:47 PM, Brett Director <Brett.Director@emperyam.com> wrote:

See attached for the Empery sig pages.  Please hold in escrow pending release by a representative of Empery.

Regards,
Brett

---

**From:** Jonathan Schechter [mailto:shex@theseg.com]
**Sent:** Sunday, May 17, 2020 6:41 PM
**To:** Brett Director <Brett.Director@emperyam.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>
**Subject:** Re: GNUS RD Waiver and Leak-Out

Yes pro rata.

Sent from my iPhone

On May 17, 2020, at 6:22 PM, Brett Director <Brett.Director@emperyam.com> wrote:

Why did they change the leak out percentage to a flat 30 percent for each investor.  Shouldn't it be the pro rata of 30 percent?

On May 17, 2020, at 3:56 PM, Jonathan Schechter <shex@theseg.com> wrote:

Couple of clean up comments from Mintz
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any

EMPGNUS0004757

review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
<GNUS Form of Leak-Out Agreement (May 2020).DOCX>

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
<Empery GNUS SPA, Consent and Leak-Out sig pages 5.18.2020.pdf>

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

EMPGNUS0004758

Abraham Declaration Exhibit 146 (EMPGNUS0005449-50)

| | |
|---|---|
| **From**: | Robert F. Charron [rcharron@egsllp.com] |
| **Sent**: | 5/18/2020 1:18:32 AM |
| **To**: | Brett Director [Brett.Director@emperyam.com]; Jonathan Schechter [shex@theseg.com] |
| **Subject**: | RE: GNUS RD Waiver and Leak-Out |

Brett, I just told them each leakout is pro-rata.  I'm pretty sure they understood that but if not it is clear now.

Robert Charron
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas
New York, New York 10105
Direct: (212) 931-8704
Facsimile: (212) 401 4741
Cell: (917) 843 1457
e-mail:  rcharron@egsllp.com

Pursuant to IRS Circular 230, we hereby inform you that any U.S. federal tax advice set forth herein was not intended or written by Ellenoff Grossman & Schole LLP to be used, and cannot be used, by you or any taxpayer, for the purpose of avoiding any penalties that may be imposed on you or any other person under the Internal Revenue Code.

**From:** Brett Director <Brett.Director@emperyam.com>
**Sent:** Sunday, May 17, 2020 6:20 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>
**Subject:** Re: GNUS RD Waiver and Leak-Out

Why did they change the leak out percentage to a flat 30 percent for each investor.  Shouldn't it be the pro rata of 30 percent?

On May 17, 2020, at 3:56 PM, Jonathan Schechter <shex@theseg.com> wrote:

Couple of clean up comments from Mintz
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
<GNUS Form of Leak-Out Agreement (May 2020).DOCX>

EMPGNUS0005449

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

EMPGNUS0005450

Abraham Declaration Exhibit 147
(ANSON_00011662-64)

Message
_____

| From: | Amin Nathoo [anathoo@ansonfunds.com] |
|---|---|
| Sent: | 5/16/2020 8:38:40 PM |
| To: | Jonathan Schechter [shex@theseg.com] |
| CC: | Robert F. Charron [rcharron@egsllp.com]; Matthew McCullough [mmccullough@egsllp.com] |
| Subject: | RE: GNUS RD |
| Attachments: | GNUS Percentages for leak out.xlsx |

So if the aggregate selling amount is 30% of volume, attached shows the % each firm can sell per day.

| Firm | % | Leakout % Sale | 30% |
|---|---|---|---|
| Empery | 15.00% | 4.50% | |
| Bruce H | 1.00% | 0.30% | |
| Rich Molinsky | 0.85% | 0.26% | |
| 32 Entertainment | 1.09% | 0.33% | |
| Jamie Taicher | 0.56% | 0.17% | |
| L1 | 6.00% | 1.80% | |
| Tucker Anderson | 1.50% | 0.45% | |
| Iroquois | 10.00% | 3.00% | |
| Heights | 10.00% | 3.00% | |
| Brio | 14.00% | 4.20% | |
| Obsidian | 10.00% | 3.00% | |
| Anson | 30.00% | 9.00% | |
| | 100.00% | 30.00% | |

**Amin Nathoo, CFA | Anson Funds**
155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7
Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141
anathoo@ansonfunds.com

**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** May 16, 2020 8:06 PM
**To:** Amin Nathoo <anathoo@ansonfunds.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

See attached...I couldn't make it percentage as the smaller amounts rounded up to 1

**From:** Amin Nathoo [mailto:anathoo@ansonfunds.com]
**Sent:** Saturday, May 16, 2020 6:06 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

Here are a few of my comments/questions.

The waiver should have the following:
- Company agrees to file resale registration statement by May 29 2020
- Company shall be prohibited from issuing any common stock/debt/etc. from date hereof until 90 days after the registration statement goes effective

CONFIDENTIAL

ANSON_00011662

Leakout

- The leakout should reference the debt deal SPA, not this new deal, right? The leakout needs to apply to all debt investors, regardless of whether or not they participate in this financing, they still need to sign it.
- What is aggregate selling % of all investors combined? 30%?
- What will be the selling % of each investor as a result? Can you please provide a breakdown?
- The leakout should not apply if stock is above $1.50

**Amin Nathoo, CFA | Anson Funds**

155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7

Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141

anathoo@ansonfunds.com

**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** May 16, 2020 5:33 PM
**To:** Amin Nathoo <anathoo@ansonfunds.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** GNUS RD

Here is the SPA and Leak-Out (I got from Brett). I'm waiting on the Waiver...I told Jeff to add the RS in there in return for taking back none of the money.

Let us know what you think.

**From:** Schultz, Jeffrey [mailto:JSchultz@mintz.com]
**Sent:** Friday, May 15, 2020 9:04 PM
**To:** Joe Reda <reda@theseg.com>; Jonathan Schechter <shex@theseg.com>
**Cc:** Bob Denton <bdenton@gnusbrands.com>; Michael Jaffa <mjaffa@gnusbrands.com>; Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>; Langer, Alan <AJLanger@mintz.com>
**Subject:** GNUS RD

Attached is a draft SPA redlined against the last RD deal from May 8, 2020. Other than number of shares and pricing, the only other changes relate to adding in EGS. Please let us know of any comments.

Regards,
Jeff

**Jeffrey Schultz**
*Member*

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
666 Third Avenue, New York, NY 10017
+1.212.692.6732
JSchultz@mintz.com | Mintz.com

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

ANSON_00011664

Abraham Declaration Exhibit 148 (BRIO_000999-1000 & -1032 )

| From: | Jonathan Schechter |
|---|---|
| Sent: | Saturday, May 16, 2020 10:20 PM EDT |
| To: | Shaye Hirsch; 'Marina Gorecki' |
| CC: | Joe Reda; Linda Mackay; Robert F. Charron; Matthew McCullough |
| Subject: | GNUS Docs |
| Attachments: | Copy of GNUS Percentages for leak out.xlsx, GNUS-SPA (RD - May 18 2020) (Common) (002).DOCX, GNUS Form of Leak-Out Agreement 5.2020.docx, GNUS - Waiver and Consent Agreement (RD Offering - May 18 2020) (clean copy).DOCX, GNUS SPA Redline 5.16.20.PDF |

Shaye/Marina,

Attached are the docs.  Please send me your signature page to the SPA, Waiver and Leak-Out Agreement when time permits.

Brett is finishing his review.

Thanks,

Shex

**Jon Schechter**
**Partner**
**The Special Equities Group "SEG"**

**150 E 58th St - 28th Floor**
**New York, NY 10155**
**(W) 212.258.2343**
**(C) 516-698-6887**

**(Email) shex@TheSEG.com**



The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part

BRIO_000999

of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd. ************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

BRIO_001000

# NATIVE DOCUMENT PLACEHOLDER

**Please review the native document
BRIO_001032_CONFIDENTIAL.xlsx**

CONFIDENTIAL                                                                                           BRIO_001032

| Debt Holder | Amount | Percentage |
|---|---|---|
| Empery Asset Master | $ 60,000.00 | 0.006 |
| Empery Debt | $ 1,425,000.00 | 0.1425 |
| Empery Tax | $ 15,000.00 | 0.0015 |
| Bruce H | $ 100,000.00 | 0.01 |
| Rich Molinsky | $ 85,000.00 | 0.0085 |
| 32 Entertainment | $ 109,000.00 | 0.0109 |
| Jamie Taicher | $ 56,000.00 | 0.0056 |
| LI | $ 600,000.00 | 0.06 |
| Tucker Anderson | $ 150,000.00 | 0.015 |
| Iroquois Master | $ 350,000.00 | 0.035 |
| Iroquois Capital | $ 650,000.00 | 0.065 |
| CVI | $ 1,000,000.00 | 0.1 |
| Brio Master | $ 522,500.00 | 0.05225 |
| Brio Select | $ 877,500.00 | 0.08775 |
| M3A | $ 1,000,000.00 | 0.1 |
| Anson | $ 3,000,000.00 | 0.3 |
| | $ 10,000,000.00 | |

| Firm | % | Leakout % Sale | 30% |
|---|---|---|---|
| Empery | 15.00% | 4.50% | |
| Bruce H | 1.00% | 0.30% | |
| Rich Molinsky | 0.85% | 0.26% | |
| 32 Entertainment | 1.09% | 0.33% | |
| Jamie Taicher | 0.56% | 0.17% | |
| L1 | 6.00% | 1.80% | |
| Tucker Anderson | 1.50% | 0.45% | |
| Iroquois | 10.00% | 3.00% | |
| Heights | 10.00% | 3.00% | |
| Brio | 14.00% | 4.20% | |
| Obsidian | 10.00% | 3.00% | |
| Anson | 30.00% | 9.00% | |
| | 100.00% | 30.00% | |

Abraham Declaration Exhibit 149
(CVI_0002922-23)

| | |
|---|---|
| **From**: | Jonathan Schechter [shex@theseg.com] |
| **Sent**: | 5/17/2020 2:18:48 AM |
| **To**: | Winer, Sam [Sam.Winer@sig.com] |
| **CC**: | Robert F. Charron [rcharron@egsllp.com]; Matthew McCullough [mmccullough@egsllp.com]; Joe Reda [reda@theseg.com]; Linda Mackay [linda@theseg.com] |
| **Subject**: | GNUS Docs |
| **Attachments**: | Copy of GNUS Percentages for leak out.xlsx; GNUS-SPA (RD - May 18 2020) (Common) (002).DOCX; GNUS Form of Leak-Out Agreement 5.2020.docx; GNUS - Waiver and Consent Agreement (RD Offering - May 18 2020) (clean copy).DOCX; GNUS SPA Redline 5.16.20.PDF |

Sam,

Attached are the docs.  Please send me your signature page to the SPA, Waiver and Leak-Out Agreement when time permits.

Brett is finishing his review.

Thanks,

Shex

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
************************************************************* This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

CONFIDENTIAL

Native Slipsheet

CONFIDENTIAL

CVI_0002923

| Debt Holder | Amount | Percentage |
|---|---|---|
| Empery Asset Master | $ 60,000.00 | 0.006 |
| Empery Debt | $ 1,425,000.00 | 0.1425 |
| Empery Tax | $ 15,000.00 | 0.0015 |
| Bruce H | $ 100,000.00 | 0.01 |
| Rich Molinsky | $ 85,000.00 | 0.0085 |
| 32 Entertainment | $ 109,000.00 | 0.0109 |
| Jamie Taicher | $ 56,000.00 | 0.0056 |
| LI | $ 600,000.00 | 0.06 |
| Tucker Anderson | $ 150,000.00 | 0.015 |
| Iroquois Master | $ 350,000.00 | 0.035 |
| Iroquois Capital | $ 650,000.00 | 0.065 |
| CVI | $ 1,000,000.00 | 0.1 |
| Brio Master | $ 522,500.00 | 0.05225 |
| Brio Select | $ 877,500.00 | 0.08775 |
| M3A | $ 1,000,000.00 | 0.1 |
| Anson | $ 3,000,000.00 | 0.3 |
| | $ 10,000,000.00 | |

| Firm | % | Leakout % Sale | 30% |
|---|---|---|---|
| Empery | 15.00% | 4.50% | |
| Bruce H | 1.00% | 0.30% | |
| Rich Molinsky | 0.85% | 0.26% | |
| 32 Entertainment | 1.09% | 0.33% | |
| Jamie Taicher | 0.56% | 0.17% | |
| L1 | 6.00% | 1.80% | |
| Tucker Anderson | 1.50% | 0.45% | |
| Iroquois | 10.00% | 3.00% | |
| Heights | 10.00% | 3.00% | |
| Brio | 14.00% | 4.20% | |
| Obsidian | 10.00% | 3.00% | |
| Anson | 30.00% | 9.00% | |
| | 100.00% | 30.00% | |

Abraham Declaration Exhibit 150 (EMPGNUS0002896-97)

| | |
|---|---|
| **From**: | Jonathan Schechter [shex@theseg.com] |
| **Sent**: | 5/17/2020 12:56:40 AM |
| **To**: | Ryan Lane [Ryan.Lane@emperyam.com] |
| **CC**: | Joe Reda [reda@theseg.com]; Brett Director [Brett.Director@emperyam.com]; Robert F. Charron [rcharron@egsllp.com]; Matthew McCullough [mmccullough@egsllp.com] |
| **Subject**: | RE: GNUS |
| **Attachments**: | Copy of GNUS Percentages for leak out.xlsx; GNUS-SPA (RD - May 18 2020) (Common) (002).DOCX; GNUS Form of Leak-Out Agreement 5.2020.docx; GNUS - Waiver and Consent Agreement (RD Offering - May 18 2020) (clean copy).DOCX |

Attached are the docs...we didn't create a separate RRA agreement as we don't want to file that and telegraph anything to the market.  We just made it a condition to the Waiver and Consent.  Let us know if that works.

Attached are the Leak-Out percentages as well.

Shex

**From:** Ryan Lane [mailto:Ryan.Lane@emperyam.com]
**Sent:** Saturday, May 16, 2020 8:51 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** Joe Reda <reda@theseg.com>; Brett Director <Brett.Director@emperyam.com>
**Subject:** GNUS

ETA on documents? Leak-out, RRA, SPA?

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

EMPGNUS0002896

# Document Produced in Native Format

Confidential                                                                                      EMPGNUS0002897

| Debt Holder | Amount | Percentage |
|---|---|---|
| Empery Asset Master | $ 60,000.00 | 0.006 |
| Empery Debt | $ 1,425,000.00 | 0.1425 |
| Empery Tax | $ 15,000.00 | 0.0015 |
| Bruce H | $ 100,000.00 | 0.01 |
| Rich Molinsky | $ 85,000.00 | 0.0085 |
| 32 Entertainment | $ 109,000.00 | 0.0109 |
| Jamie Taicher | $ 56,000.00 | 0.0056 |
| LI | $ 600,000.00 | 0.06 |
| Tucker Anderson | $ 150,000.00 | 0.015 |
| Iroquois Master | $ 350,000.00 | 0.035 |
| Iroquois Capital | $ 650,000.00 | 0.065 |
| CVI | $ 1,000,000.00 | 0.1 |
| Brio Master | $ 522,500.00 | 0.05225 |
| Brio Select | $ 877,500.00 | 0.08775 |
| M3A | $ 1,000,000.00 | 0.1 |
| Anson | $ 3,000,000.00 | 0.3 |
| | $ 10,000,000.00 | |

| Firm | % | Leakout % Sale | 30% |
|---|---|---|---|
| Empery | 15.00% | 4.50% | |
| Bruce H | 1.00% | 0.30% | |
| Rich Molinsky | 0.85% | 0.26% | |
| 32 Entertainment | 1.09% | 0.33% | |
| Jamie Taicher | 0.56% | 0.17% | |
| L1 | 6.00% | 1.80% | |
| Tucker Anderson | 1.50% | 0.45% | |
| Iroquois | 10.00% | 3.00% | |
| Heights | 10.00% | 3.00% | |
| Brio | 14.00% | 4.20% | |
| Obsidian | 10.00% | 3.00% | |
| Anson | 30.00% | 9.00% | |
| | 100.00% | 30.00% | |

Abraham Declaration Exhibit 151
(IRO_AUG-0004281-83)

# GNUS Docs

| | |
|---|---|
| **From:** | Jonathan Schechter <shex@theseg.com> |
| **To:** | Rich Abbe <rabbe@icfund.com>, Kim Page <kpage@icfund.com> |
| **Cc:** | Joe Reda <reda@theseg.com>, Robert F. Charron <rcharron@egsllp.com>, Linda Mackay <linda@theseg.com>, Matthew McCullough <mmccullough@egsllp.com> |
| **Date:** | Sat, 16 May 2020 22:21:32 -0400 |
| **Attachments:** | Copy of GNUS Percentages for leak out.xlsx (11.18 kB); GNUS-SPA (RD - May 18 2020) (Common) (002).DOCX (64.19 kB); GNUS Form of Leak-Out Agreement 5.2020.docx (25.82 kB); GNUS - Waiver and Consent Agreement (RD Offering - May 18 2020) (clean copy).DOCX (23.6 kB); GNUS SPA Redline 5.16.20.PDF (340.62 kB) |

Richie/Kim,

Attached are the docs.  Please send me your signature page to the SPA, Waiver and Leak-Out Agreement when time permits.

Brett is finishing his review.

Thanks,

Shex

Jon Schechter
Partner
The Special Equities Group "SEG"

150 E 58th St - 28th Floor
New York, NY 10155
(W) 212.258.2343
(C) 516-698-6887

(Email) shex@TheSEG.com

# THE SPECIAL EQUITIES GROUP

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
************************************************************

This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co.

IRO-AUG-0004281

Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

IRO-AUG-0004282

Document Produced As Native

Confidential                                                                                     IRO-AUG-0004283

| Debt Holder | Amount | Percentage |
|---|---|---|
| Empery Asset Master | $ 60,000.00 | 0.006 |
| Empery Debt | $ 1,425,000.00 | 0.1425 |
| Empery Tax | $ 15,000.00 | 0.0015 |
| Bruce H | $ 100,000.00 | 0.01 |
| Rich Molinsky | $ 85,000.00 | 0.0085 |
| 32 Entertainment | $ 109,000.00 | 0.0109 |
| Jamie Taicher | $ 56,000.00 | 0.0056 |
| LI | $ 600,000.00 | 0.06 |
| Tucker Anderson | $ 150,000.00 | 0.015 |
| Iroquois Master | $ 350,000.00 | 0.035 |
| Iroquois Capital | $ 650,000.00 | 0.065 |
| CVI | $ 1,000,000.00 | 0.1 |
| Brio Master | $ 522,500.00 | 0.05225 |
| Brio Select | $ 877,500.00 | 0.08775 |
| M3A | $ 1,000,000.00 | 0.1 |
| Anson | $ 3,000,000.00 | 0.3 |
| | $ 10,000,000.00 | |

| Firm | % | Leakout % Sale | 30% |
|---|---|---|---|
| Empery | 15.00% | 4.50% | |
| Bruce H | 1.00% | 0.30% | |
| Rich Molinsky | 0.85% | 0.26% | |
| 32 Entertainment | 1.09% | 0.33% | |
| Jamie Taicher | 0.56% | 0.17% | |
| L1 | 6.00% | 1.80% | |
| Tucker Anderson | 1.50% | 0.45% | |
| Iroquois | 10.00% | 3.00% | |
| Heights | 10.00% | 3.00% | |
| Brio | 14.00% | 4.20% | |
| Obsidian | 10.00% | 3.00% | |
| Anson | 30.00% | 9.00% | |
| | 100.00% | 30.00% | |

Abraham Declaration Exhibit 152
(L1_002596-98)

**To:**      David Feldman[dfeldman@l1capitalglobal.com]; Yujie Qiao[yqiao@l1capitalglobal.com]
**Cc:**      Robert F. Charron[rcharron@egsllp.com]; Joe Reda[reda@theseg.com]; Linda Mackay[linda@theseg.com]; Matthew McCullough[mmccullough@egsllp.com]
**From:**    Jonathan Schechter
**Sent:**    Sat 5/16/2020 10:19:59 PM
**Subject:** GNUS Docs
**Received:**              Sat 5/16/2020 10:20:36 PM
Copy of GNUS Percentages for leak out.xlsx
GNUS-SPA (RD - May 18 2020) (Common) (002).DOCX
GNUS Form of Leak-Out Agreement 5.2020.docx
GNUS - Waiver and Consent Agreement (RD Offering - May 18 2020) (clean copy).DOCX
GNUS SPA Redline 5.16.20.PDF

Feldy/Yujie

Attached are the docs.  Please send me your signature page to the SPA, Waiver and Leak-Out Agreement when time permits.

Thanks,

Shex


Jon Schechter
Partner
The Special Equities Group "SEG"

 150 E 58th St - 28th Floor
New York, NY 10155
(W) 212.258.2343
 (C) 516-698-6887


(Email) shex@TheSEG.com



The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
**************************************************************

This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
***********************************************************************  This email is only for use by the

intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

L1_002597

PII

Native File Placeholder

Confidential

L1_002598

| Debt Holder | Amount | Percentage |
|---|---|---|
| Empery Asset Master | $ 60,000.00 | 0.006 |
| Empery Debt | $ 1,425,000.00 | 0.1425 |
| Empery Tax | $ 15,000.00 | 0.0015 |
| Bruce H | $ 100,000.00 | 0.01 |
| Rich Molinsky | $ 85,000.00 | 0.0085 |
| 32 Entertainment | $ 109,000.00 | 0.0109 |
| Jamie Taicher | $ 56,000.00 | 0.0056 |
| LI | $ 600,000.00 | 0.06 |
| Tucker Anderson | $ 150,000.00 | 0.015 |
| Iroquois Master | $ 350,000.00 | 0.035 |
| Iroquois Capital | $ 650,000.00 | 0.065 |
| CVI | $ 1,000,000.00 | 0.1 |
| Brio Master | $ 522,500.00 | 0.05225 |
| Brio Select | $ 877,500.00 | 0.08775 |
| M3A | $ 1,000,000.00 | 0.1 |
| Anson | $ 3,000,000.00 | 0.3 |
| | $ 10,000,000.00 | |

| Firm | % | Leakout % Sale | 30% |
|---|---|---|---|
| Empery | 15.00% | 4.50% | |
| Bruce H | 1.00% | 0.30% | |
| Rich Molinsky | 0.85% | 0.26% | |
| 32 Entertainment | 1.09% | 0.33% | |
| Jamie Taicher | 0.56% | 0.17% | |
| L1 | 6.00% | 1.80% | |
| Tucker Anderson | 1.50% | 0.45% | |
| Iroquois | 10.00% | 3.00% | |
| Heights | 10.00% | 3.00% | |
| Brio | 14.00% | 4.20% | |
| Obsidian | 10.00% | 3.00% | |
| Anson | 30.00% | 9.00% | |
| | 100.00% | 30.00% | |

Abraham Declaration Exhibit 153 (RM0002589-91)

| From: | Jonathan Schechter [shex@theseg.com] |
|---|---|
| Sent: | 5/16/2020 10:22:13 PM |
| To: | richard molinsky [rmol15@icloud.com]; Richard Molinsky [rmol15@aol.com] |
| CC: | Joe Reda [reda@theseg.com]; Linda Mackay [linda@theseg.com] |
| Subject: | GNUS Docs |
| Attachments: | Copy of GNUS Percentages for leak out.xlsx; GNUS-SPA (RD - May 18 2020) (Common) (002).DOCX; GNUS Form of Leak-Out Agreement 5.2020.docx; GNUS - Waiver and Consent Agreement (RD Offering - May 18 2020) (clean copy).DOCX; GNUS SPA Redline 5.16.20.PDF |

Mols,

Attached are the docs.  Please send me your signature page to the SPA, Waiver and Leak-Out Agreement when time permits.

Brett is finishing his review.

Thanks,

Shex

Jon Schechter
Partner
The Special Equities Group "SEG"

150 E 58th St - 28th Floor
New York, NY 10155
(W) 212.258.2343
(C) 516-698-6887

(Email) shex@TheSEG.com



The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************

This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

RM0002589

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

RM0002590

**No image available for this record.**

Confidential
RM0002591

| Debt Holder | Amount | Percentage |
|---|---|---|
| Empery Asset Master | $ 60,000.00 | 0.006 |
| Empery Debt | $ 1,425,000.00 | 0.1425 |
| Empery Tax | $ 15,000.00 | 0.0015 |
| Bruce H | $ 100,000.00 | 0.01 |
| Rich Molinsky | $ 85,000.00 | 0.0085 |
| 32 Entertainment | $ 109,000.00 | 0.0109 |
| Jamie Taicher | $ 56,000.00 | 0.0056 |
| LI | $ 600,000.00 | 0.06 |
| Tucker Anderson | $ 150,000.00 | 0.015 |
| Iroquois Master | $ 350,000.00 | 0.035 |
| Iroquois Capital | $ 650,000.00 | 0.065 |
| CVI | $ 1,000,000.00 | 0.1 |
| Brio Master | $ 522,500.00 | 0.05225 |
| Brio Select | $ 877,500.00 | 0.08775 |
| M3A | $ 1,000,000.00 | 0.1 |
| Anson | $ 3,000,000.00 | 0.3 |
| | $ 10,000,000.00 | |

| Firm | % | Leakout % Sale | 30% |
|---|---|---|---|
| Empery | 15.00% | 4.50% | |
| Bruce H | 1.00% | 0.30% | |
| Rich Molinsky | 0.85% | 0.26% | |
| 32 Entertainment | 1.09% | 0.33% | |
| Jamie Taicher | 0.56% | 0.17% | |
| L1 | 6.00% | 1.80% | |
| Tucker Anderson | 1.50% | 0.45% | |
| Iroquois | 10.00% | 3.00% | |
| Heights | 10.00% | 3.00% | |
| Brio | 14.00% | 4.20% | |
| Obsidian | 10.00% | 3.00% | |
| Anson | 30.00% | 9.00% | |
| | 100.00% | 30.00% | |

Abraham Declaration Exhibit 154
(EW-AUG0029306-36)

Message

---

**From:** Jonathan Schechter [shex@theseg.com]
**Sent:** 5/18/2020 11:49:29 AM
**To:** Linda Mackay [linda@theseg.com]
**Subject:** GNUS Sig Pages
**Attachments:** Doc - May 17 2020 - 9-53 PM.PDF; Doc - May 17 2020 - 9-51 PM.PDF; Doc - May 17 2020 - 9-49 PM.PDF

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
**************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

---

Confidential

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: _____ ANSON INVESTMENTS MASTER FUND LP _____

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: _____ AMIN NATHOO _____

Title of Authorized Signatory: _____ Director, Anson Advisors Inc. _____

Email Address of Authorized Signatory: _____ notices@ansonfunds.com _____

Facsimile Number of Authorized Signatory: _____ 416.352.1880 _____

Address for Notice to Purchaser:          155 UNIVERSITY AVENUE, SUITE 207
                                          TORONTO, ONTARIO, CANADA
                                          M5H 3B7
                                          ATTN: AMIN NATHOO


Address for Delivery of Securities to Purchaser (if not same as address for notice):
                                          SAME AS ABOVE

DWAC for Shares:
Broker:         TD Bank
Broker No:      5036
Account No:     5J5637D
Account Name:   Anson Investments Master Fund LP



Subscription Amount:    $3,030,000.00
Shares:                 2,525,000



[SIGNATURE PAGES CONTINUE]

Confidential                                                     EW-AUG0029307

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Brio Capital Master Fund Ltd.

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: Shaye Hirsch

Title of Authorized Signatory: Director

Email Address of Authorized Signatory: shaye@briocapital.com

Facsimile Number of Authorized Signatory: 646-390-2158

Address for Notice to Purchaser:

c/o Brio Capital Management LLC
100 Merrick Road, Suite 401W
Rockville Centre, NY 11570

Address for Delivery of Shares to Purchaser (if not same as address for notice):

DTC #2803; US Bank
Account: Brio Capital Master Fund Ltd.
Acc. #: 001051004248

Subscription Amount: $ 480,000

Shares: 400,000

[SIGNATURE PAGES CONTINUE]

99379278v.2

Confidential                                                                                          EW-AUG0029308

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: RICHARD MOLINSKY

*Signature of Authorized Signatory of Purchaser:* Richard Molinsky

Name of Authorized Signatory: _____

Title of Authorized Signatory: _____

Email Address of Authorized Signatory: RMOL25@AOL.Com

Facsimile Number of Authorized Signatory: 203222.4977

Address for Notice to Purchaser: 51 LORD'S HWY EAST WESTON CT 06883

Address for Delivery of Shares to Purchaser (if not same as address for notice): DWAC SHARES TO WELLS FARGO ADVISORS ACCT Name: RICHARD MOLINSKY ACCT #. 8370-0550   DTC # 0141

Subscription Amount: $ 90,000

Shares: 75,000

[SIGNATURE PAGES CONTINUE]

99379278v.2

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: <u>CVI Investments, Inc.</u>

*Signature of Authorized Signatory of Purchaser:* _____

Name of Authorized Signatory: <u>Martin Kobinger</u>

Title of Authorized Signatory: <u>Investment Manager</u>

Email Address of Authorized Signatory:<u>kobinger@sig.com and winer@sig.com</u>

Facsimile Number of Authorized Signatory: <u>(415) 403-6525</u>

Address for Notice to Purchaser:

C/O Heights Capital Management, Inc.

101 California Street, Suite 3250

San Francisco, CA 94111


Address for Delivery of Shares to Purchaser (if not same as address for notice):


Subscription Amount: $1,200,000

Shares: 1,000,000


[SIGNATURE PAGES CONTINUE]


9937927v.2

onfidential

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: L1 Capital Global Opportunities Master Fund

Signature of Authorized Signatory of Purchaser: _____

Name of Authorized Signatory: David Feldman
Title of Authorized Signatory: Director_____

Email Address of Authorized Signatory: dfeldman@l1capitalglobal.com

Facsimile Number of Authorized Signatory: _____

Address for Notice to Purchaser:
135 East 57th St, 23rd Floor
New York, NY, 10022

Address for Delivery of Shares to Purchaser (if not same as address for notice):

Subscription Amount: $_____

Shares: __400,000_____

[SIGNATURE PAGES CONTINUE]

99379278v.2

Confidential                                                       EW-AUG0029311

**[PURCHASER SIGNATURE PAGES TO GNUS
SECURITIES PURCHASE AGREEMENT]**

**IN WITNESS WHEREOF,** the undersigned have caused this Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Empery Debt Opportunity Fund, LP

By: Empery Asset Management, LP, its authorized agent

*Signature of Authorized Signatory of Purchaser:* _____

Name of Authorized Signatory: Brett Director

Title of Authorized Signatory: General Counsel of Empery Asset Management, LP

Email Address of Authorized Signatory: notices@emperyam.com

Address for Notice to Purchaser:          c/o Empery Asset Management, LP
1 Rockefeller Plaza, Suite 1205
New York, NY 10020

Address for Delivery of Securities to Purchaser (if not same as address for notice): Same


Subscription Amount: $2,280,000.00

Shares: 1,900,000

3

Confidential

EW-AUG0029312

[PURCHASER SIGNATURE PAGES TO GNUS
SECURITIES PURCHASE AGREEMENT]

**IN WITNESS WHEREOF**, the undersigned have caused this Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Empery Tax Efficient, LP

By: Empery Asset Management, LP, its authorized agent

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: Brett Director

Title of Authorized Signatory: General Counsel of Empery Asset Management, LP

Email Address of Authorized Signatory: notices@emperyam.com

Address for Notice to Purchaser:    c/o Empery Asset Management, LP
1 Rockefeller Plaza, Suite 1205
New York, NY 10020

Address for Delivery of Securities to Purchaser (if not same as address for notice): Same

Subscription Amount: $24,000.00

Shares: 20,000

[SIGNATURE PAGES CONTINUE]

2

Confidential

EW-AUG0029313

[PURCHASER SIGNATURE PAGES TO GNUS
SECURITIES PURCHASE AGREEMENT]

**IN WITNESS WHEREOF,** the undersigned have caused this Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Empery Asset Master, LTD

By: Empery Asset Management, LP, its authorized agent

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: Brett Director

Title of Authorized Signatory: General Counsel of Empery Asset Management, LP

Email Address of Authorized Signatory: notices@emperyam.com

Address for Notice to Purchaser:     c/o Empery Asset Management, LP
1 Rockefeller Plaza, Suite 1205
New York, NY 10020

Address for Delivery of Securities to Purchaser (if not same as address for notice): Same

Subscription Amount: $96,000.00

Shares: 80,000

[SIGNATURE PAGES CONTINUE]

1

Confidential                                                                  EW-AUG0029314

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: __Iroquois Capital Investment Group LLC_____

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: __Richard Abbe_____

Title of Authorized Signatory: __Managing Member_____

Email Address of Authorized Signatory: __rabbe@icfund.com_____

Facsimile Number of Authorized Signatory: _____

Address for Notice to Purchaser:

> 125 Park Avenue, 25th Floor
> New York, New York 10017

Address for Delivery of Shares to Purchaser (if not same as address for notice):

Subscription Amount: $__858,000_____

Shares: __715,000_____

[SIGNATURE PAGES CONTINUE]

99379278v.2

Confidential

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: __Iroquois Master Fund Ltd._____

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: __Kimberly Page_____

Title of Authorized Signatory: ___General Partners, Director_____

Email Address of Authorized Signatory: __kpage@icfund.com_____

Facsimile Number of Authorized Signatory: _____

Address for Notice to Purchaser:

125 Park Avenue, 25th Floor
New York, New York 10017

Address for Delivery of Shares to Purchaser (if not same as address for notice):

Subscription Amount: $ 462,000_____

Shares: 385,000_____

[SIGNATURE PAGES CONTINUE]

99379278v.2

Confidential                                                                                    EW-AUG0029316

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Anson Investments Master Fund LP
_____
[Print Name of Holder]

_____
[Signature]

Name:  Amin Nathoo
Title: Director, Anson Advisors Inc.

Original Subscription Amount:
$3,000,000.00

Confidential                                                          EW-AUG0029317

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Brio Capital Master Fund Ltd.
[Print Name of Holder]

[Signature]

Name: Shaye Hirsch
Title:  Director

Original Subscription Amount:
$ 480,000

Confidential

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

[Print Name of Holder]  RICHARD MOLINSKY

[Signature]

Name:

Title:

Original Subscription Amount:

$ 90,000

## Exhibit A

## Form of Securities Purchase Agreement

## Exhibit B

## Form of Leak-Out Agreement

Confidential

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.


CVI Investments, Inc.
[Print Name of Holder]


_____
[Signature]

Name:  Martin Kobinger
Title: Investment Manager

Original Subscription Amount: $1,000,000

Confidential                                                          EW-AUG0029320

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

L1 Capital Global Opportunities Master Fund

_____
[Print Name of Holder]


_____
[Signature]

Name:  David Feldman


Title: Director

Original Subscription Amount:
$__600,000_____

Confidential                                                                                            EW-AUG0029321

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Empery Debt Opportunity Fund, LP
By: Empery Asset Management, LP, its
authorized agent

_____
[Print Name of Holder]

_____
[Signature]

Name:  Brett S. Director
Title: General Counsel

Original Subscription Amount: $1,781,250.00

6

Confidential                                                                                      EW-AUG0029322

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Empery Tax Efficient, LP
By: Empery Asset Management, LP, its
authorized agent

_____
[Print Name of Holder]

_____
[Signature]

Name:  Brett S. Director
Title: General Counsel

Original Subscription Amount: $18,750.00

5

Confidential

EW-AUG0029323

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Empery Asset Master, LTD
By: Empery Asset Management, LP, its
authorized agent

[Print Name of Holder]

[Signature]

Name:  Brett S. Director
Title: General Counsel

Original Subscription Amount: $75,000.00

4

Confidential

EW-AUG0029324

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.


Iroquois Capital Investment Group LLC
[Print Name of Holder]

[Signature]

Name: Richard Abbe
Title: Managing Member

Original Subscription Amount:
$_____

Confidential                                                      EW-AUG0029325

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Iroquois Master Fund Ltd.
_____
[Print Name of Holder]

_____
[Signature]

Name:  Kimberly Page
Title:   General Partner

Original Subscription Amount:
$_____

Confidential

EW-AUG0029326

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

GENIUS BRANDS INTERNATIONAL, INC.

By: _____
    Name:
    Title:

AGREED TO AND ACCEPTED:

"HOLDER"

Anson Investments Master Fund LP

By: _____
    Name: Amin Nathoo
    Title: Director, Anson Advisors Inc.
    Fax Number:
    Email Address: notices@ansonfunds.com

{S2439554; 1}

EW-AUG0029327

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____
    Name:
    Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

Brio Capital Master Fund Ltd.

By: _____
    Name: Shaye Hirsch
    Title:  Director

Confidential

EW-AUG0029328

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____
Name:
Title:

AGREED TO AND ACCEPTED:

"HOLDER"

RICHARD MOLINSKY

By: _____
Name:
Title:

Confidential

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**

By: _____
       Name:
       Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

**CVI Investments, Inc.**

By: _____
       Name: Martin Kobinger
       Title: Investment Manager

Confidential

EW-AUG0029330

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____
      Name:
      Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

L1 Capital Global Opportunities Master Fund


By: _____
    Name: David Feldman
    Title: Director

Confidential

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____
          Name:
          Title:

AGREED TO AND ACCEPTED:
**"HOLDER"**

Empery Debt Opportunity Fund, LP
By: Empery Asset Management, LP, its authorized agent

By: _____
          Name: Brett S. Director
          Title: General Counsel

9

Confidential

EW-AUG0029332

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**

By: _____

Name:

Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

Empery Tax Efficient, LP

By: Empery Asset Management, LP, its authorized agent

By: _____

Name: Brett S. Director

Title: General Counsel

8

Confidential

EW-AUG0029333

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____
      Name:
      Title:

AGREED TO AND ACCEPTED:
**"HOLDER"**

Empery Asset Master, LTD
By: Empery Asset Management, LP, its authorized agent

By: _____
      Name: Brett S. Director
      Title: General Counsel

7

Confidential

EW-AUG0029334

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**

By: _____

    Name:

    Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

Iroquois Capital Investment Group LLC

By: _____

    Name:

    Title:    Richard Abbe
             Managing Member

Confidential

EW-AUG0029335

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____
    Name:
    Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

Iroquois Master Fund Ltd.
_____

By: _____
    Name:    Kimberly Page
    Title:    General Partner

Confidential

EW-AUG0029336

Abraham Declaration Exhibit 155 (EW-AUG0012075-78, marked as Exhibit 4 at Tarlow / M3A's deposition)

# LEAK-OUT AGREEMENT

May 18, 2020

This agreement (the "**Leak-Out Agreement**") is being delivered to you in connection with an understanding by and between GENIUS BRANDS INTERNATIONAL, INC., a Nevada corporation (the "**Company**"), and the person or persons named on the signature pages hereto (collectively, the "**Holder**").

Reference is hereby made to (a) the Securities Purchase Agreement, dated May 18, 2020, by and among the Company and the Holder (the "**Purchase Agreement**") in connection with the offering (the "**Offering**") of the Company, pursuant to which the Holder and certain other purchasers acquired shares of Common Stock of the Company ("**Shares**") and (b) with respect to the Shares, the registration statement on Form S-3 (File No. 333-235962) ("**Registration Statement**"). Capitalized terms not defined herein shall have the meaning as set forth in the Purchase Agreement, unless otherwise set forth herein.

The Holder agrees solely with the Company that beginning on [the time that the Company notifies the Holder (which shall be simultaneously with the time that the Company notifies all Other Holders (as defined below)) that a resale registration statement on Form S-3 registering the shares of Common Stock underlying the notes and warrants issued to the Holder pursuant to that certain Securities Purchase Agreement dated as of March 11, 2020 by and among the Company and the investors party thereto is declared effective (the "**Effective Date**") and ending at 4:00 pm (New York City time) on the 90th day following the Effective Date (such period, the "**Restricted Period**"), neither the Holder, nor any affiliate of such Holder which (x) had or has knowledge of the transactions contemplated by the Purchase Agreement, (y) has or shares discretion relating to such Holder's investments or trading or information concerning such Holder's investments, including in respect of the Securities, or (z) is subject to such Holder's review or input concerning such affiliate's investments or trading (together, the "**Holder's Trading Affiliates**"), collectively, shall sell, dispose or otherwise transfer, directly or indirectly, (including, without limitation, any sales, short sales, swaps or any derivative transactions that would be equivalent to any sales or short positions) on any Trading Day during the Restricted Period (any such date, a "**Date of Determination**"), shares of Common Stock of the Company, or shares of common stock of the Company underlying any Common Stock Equivalents (as defined in the Purchase Agreement), held by the Holder on the date hereof, as well as the shares of Common Stock of the Company issuable upon exercise of the Common Warrants (collectively, the "**Restricted Securities**"), in an amount representing more than 3% of the trading volume of Common Stock as reported by Bloomberg, LP on each applicable Date of Determination ("**Leak-Out Percentage**"); provided, that the foregoing restriction shall not apply to any actual "long" (as defined in Regulation SHO of the Securities Exchange Act of 1934, as amended) sales by the Holder or any of the Holder's Trading Affiliates at a price greater than $1.65 (in each case, as adjusted for stock splits, stock dividends, stock combinations, recapitalizations or other similar events occurring after the date hereof) provided, further, the foregoing restriction shall not apply to any actual "long" sales of shares of Common Stock purchased in open market transactions by the Holder or any of the Holder's Trading Affiliates during the Restricted Period.



EW-AUG0012075

Notwithstanding anything herein to the contrary, during the Restricted Period, the Holder may, directly or indirectly, sell or transfer all, but not less than all, of any Restricted Securities to any Person (an "**Assignee**") in a transaction which does not need to be reported on the consolidated tape on the Principal Market, without complying with (or otherwise limited by) the restrictions set forth in this Leak-Out Agreement; provided, that as a condition to any such sale or transfer an authorized signatory of the Company and such Assignee duly execute and deliver a leak-out agreement in the form of this Leak-Out Agreement.

The Company shall have no right to repay any portion of the Investor's debt during the period beginning on the date hereof and ending at the end of the Restricted Period.

Any notices, consents, waivers or other communications required or permitted to be given under the terms of this Leak-Out Agreement must be in writing and shall be given in accordance with the terms of the Purchase Agreement.

This Leak-Out Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior negotiations, letters and understandings relating to the subject matter hereof and are fully binding on the parties hereto.

This Leak-Out Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. This Leak-Out Agreement may be executed and accepted by facsimile or PDF signature and any such signature shall be of the same force and effect as an original signature.

The terms of this Leak-Out Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and their respective successors and assigns.

This Leak-Out Agreement may not be amended or modified except in writing signed by each of the parties hereto.

All questions concerning the construction, validity, enforcement and interpretation of this Leak-Out Agreement shall be governed by Sections [5.9] and Section [5.20] of the Purchase Agreement.

Each party hereto acknowledges that, in view of the uniqueness of the transactions contemplated by this Leak-Out Agreement, the other party or parties hereto may not have an adequate remedy at law for money damages in the event that this Leak-Out Agreement has not been performed in accordance with its terms, and therefore agrees that such other party or parties shall be entitled to seek specific enforcement of the terms hereof in addition to any other remedy it may seek, at law or in equity.

The obligations of the Holder under this Leak-Out Agreement are several and not joint with the obligations of any other holder of any of the Securities issued under the Purchase Agreement (each, an "**Other Holder**") or any other holder of any of the Securities issued under the Registration Statement that is not a signatory to the Purchase Agreement (each, a "**Prospectus Purchaser Other Holder**") under any other agreement, and the Holder shall not be responsible in any way for the performance of the obligations of any Other Holder or any Prospectus Purchaser Other Holder under any such other agreement.  Nothing contained herein, in this Leak-Out

Confidential

Agreement or in any other agreement, and no action taken by the Holder pursuant hereto, shall be deemed to constitute the Holder and Other Holders or any Prospectus Purchaser Other Holder as a partnership, an association, a joint venture or any other kind of entity, or create a presumption that the Holder and the Other Holders or any Prospectus Purchaser Other Holder are in any way acting in concert or as a group with respect to such obligations or the transactions contemplated by this Leak-Out Agreement or any other agreement and the Company acknowledges that the Holder and the Other Holders or any Prospectus Purchaser Other Holder are not acting in concert or as a group with respect to such obligations or the transactions contemplated by this Leak-Out Agreement or any other agreement. The Company and the Holder confirm that the Holder has independently participated in the negotiation of the transactions contemplated hereby with the advice of its own counsel and advisors. The Holder shall be entitled to independently protect and enforce its rights, including, without limitation, the rights arising out of this Leak-Out Agreement, and it shall not be necessary for any Other Holder or any Prospectus Purchaser Other Holder to be joined as an additional party in any proceeding for such purpose.

The Company hereby represents and warrants as of the date hereof and covenants and agrees from and after the date hereof that none of the terms offered to any Other Holder or any Prospectus Purchaser Other Holder with respect to any restrictions on the sale of Securities substantially in the form of this Leak-Out Agreement (or any amendment, modification, waiver or release thereof) (each a "**Settlement Document**"), is or will be more favorable to such Other Holder than those of the Holder and this Leak-Out Agreement. If, and whenever on or after the date hereof, the Company enters into a Settlement Document with terms that are materially different from this Leak-Out Agreement, then (i) the Company shall provide notice thereof to the Holder promptly following the occurrence thereof and (ii) the terms and conditions of this Leak-Out Agreement shall be, without any further action by the Holder or the Company, automatically amended and modified in an economically and legally equivalent manner such that the Holder shall receive the benefit of the more favorable terms and/or conditions (as the case may be) set forth in such Settlement Document, provided that upon written notice to the Company at any time the Holder may elect not to accept the benefit of any such amended or modified term or condition, in which event the term or condition contained in this Leak-Out Agreement shall apply to the Holder as it was in effect immediately prior to such amendment or modification as if such amendment or modification never occurred with respect to the Holder. The provisions of this paragraph shall apply similarly and equally to each Settlement Document.

[The remainder of the page is intentionally left blank]

EW-AUG0012077

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

<div align="center">Sincerely,</div>

<div align="center">**[ISSUER]**</div>

By: _____
      Name:
      Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

M3A LP
_____

By: _____
      Name: Ari Morris
      Title: Authorized Signor

Confidential

EW-AUG0012078

Abraham Declaration Exhibit 156
(EW-AUG0012013-19)

Message
_____

**From:**       Alexander Hauff [ahauff@obsidiangp.com]
**Sent:**       5/18/2020 1:10:24 AM
**To:**         Jonathan Schechter [shex@theseg.com]
**CC:**         AJ Pomper [apomper@obsidiangp.com]
**Subject:**    Re: GNUS RD Waiver and Leak-Out
**Attachments:** GNUS FINAL Form of Leak-Out Agreement AJ 5.18.20.pdf


Signed attached

On Sun, May 17, 2020 at 8:53 PM Jonathan Schechter <shex@theseg.com> wrote:

> Attached with your percentage
>
> ----
>
> **From:** AJ Pomper [mailto:apomper@obsidiangp.com]
> **Sent:** Sunday, May 17, 2020 8:51 PM
> **To:** Jonathan Schechter <shex@theseg.com>
> **Cc:** Alexander Hauff <ahauff@obsidiangp.com>
> **Subject:** Re: GNUS RD Waiver and Leak-Out
>
>
> Is this final? I am gonna send it back signed if it is.
>
> --
>
> Best,
>
> AJ
>
>
> **Obsidian Global Partners**
>
> AJ Pomper
>
> **M :** +1 (732) 407-3132
>
> **E :** apomper@obsidiangp.com
>
>
> On May 17, 2020, at 3:32 PM, Jonathan Schechter <shex@theseg.com> wrote:
>
>
> That's the plan unless we get a 415 comment then we'll take them out and file a new RS later
>
> **From:** AJ Pomper [mailto:apomper@obsidiangp.com]
> **Sent:** Sunday, May 17, 2020 3:32 PM
> **To:** Jonathan Schechter <shex@theseg.com>
> **Cc:** Alexander Hauff <ahauff@obsidiangp.com>
> **Subject:** Re: FW: GNUS RD Waiver and Leak-Out
>
> Warrants also getting registered?

Confidential                                                                     EW-AUG0012013

On Sun, May 17, 2020 at 3:29 PM Jonathan Schechter <shex@theseg.com> wrote:

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd. ************************************************************ This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

--

Best,

AJ

AJ Pomper

4 World Trade Center

New York, New York 10007

**M :** +1 (732) 407-3132

**E :** APomper@obsidiangp.com

www.ObsidianGP.com

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd. ************************************************************ This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley

Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd. ************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

--
Regards,
Alex



Obsidian Global
Partners

Alexander Hauff, CFA
**M :** +1 (603) 401-5012
**E :** ahauff@obsidiangp.com
www.ObsidianGP.com

EW-AUG0012015

## LEAK-OUT AGREEMENT

May 18, 2020

This agreement (the "**Leak-Out Agreement**") is being delivered to you in connection with an understanding by and between GENIUS BRANDS INTERNATIONAL, INC., a Nevada corporation (the "**Company**"), and the person or persons named on the signature pages hereto (collectively, the "**Holder**").

Reference is hereby made to (a) the Securities Purchase Agreement, dated May 18, 2020, by and among the Company and the Holder (the "**Purchase Agreement**") in connection with the offering (the "**Offering**") of the Company, pursuant to which the Holder and certain other purchasers acquired shares of Common Stock of the Company ("**Shares**") and (b) with respect to the Shares, the registration statement on Form S-3 (File No. 333-235962) ("**Registration Statement**"). Capitalized terms not defined herein shall have the meaning as set forth in the Purchase Agreement, unless otherwise set forth herein.

The Holder agrees solely with the Company that beginning on [the time that the Company notifies the Holder (which shall be simultaneously with the time that the Company notifies all Other Holders (as defined below)) that a resale registration statement on Form S-3 registering the shares of Common Stock underlying the notes and warrants issued to the Holder pursuant to that certain Securities Purchase Agreement dated as of March 11, 2020 by and among the Company and the investors party thereto is declared effective (the "**Effective Date**") and ending at 4:00 pm (New York City time) on the 90th day following the Effective Date (such period, the "**Restricted Period**"), neither the Holder, nor any affiliate of such Holder which (x) had or has knowledge of the transactions contemplated by the Purchase Agreement, (y) has or shares discretion relating to such Holder's investments or trading or information concerning such Holder's investments, including in respect of the Securities, or (z) is subject to such Holder's review or input concerning such affiliate's investments or trading (together, the "**Holder's Trading Affiliates**"), collectively, shall sell, dispose or otherwise transfer, directly or indirectly, (including, without limitation, any sales, short sales, swaps or any derivative transactions that would be equivalent to any sales or short positions) on any Trading Day during the Restricted Period (any such date, a "**Date of Determination**"), shares of Common Stock of the Company, or shares of common stock of the Company underlying any Common Stock Equivalents (as defined in the Purchase Agreement), held by the Holder on the date hereof, as well as the shares of Common Stock of the Company issuable upon exercise of the Common Warrants (collectively, the "**Restricted Securities**"), in an amount representing more than 3% of the trading volume of Common Stock as reported by Bloomberg, LP on each applicable Date of Determination ("**Leak-Out Percentage**"); provided, that the foregoing restriction shall not apply to any actual "long" (as defined in Regulation SHO of the Securities Exchange Act of 1934, as amended) sales by the Holder or any of the Holder's Trading Affiliates at a price greater than $1.65 (in each case, as adjusted for stock splits, stock dividends, stock combinations, recapitalizations or other similar events occurring after the date hereof) provided, further, the foregoing restriction shall not apply to any actual "long" sales of shares of Common Stock purchased in open market transactions by the Holder or any of the Holder's Trading Affiliates during the Restricted Period.

Confidential

Notwithstanding anything herein to the contrary, during the Restricted Period, the Holder may, directly or indirectly, sell or transfer all, but not less than all, of any Restricted Securities to any Person (an "**Assignee**") in a transaction which does not need to be reported on the consolidated tape on the Principal Market, without complying with (or otherwise limited by) the restrictions set forth in this Leak-Out Agreement; provided, that as a condition to any such sale or transfer an authorized signatory of the Company and such Assignee duly execute and deliver a leak-out agreement in the form of this Leak-Out Agreement.

The Company shall have no right to repay any portion of the Investor's debt during the period beginning on the date hereof and ending at the end of the Restricted Period.

Any notices, consents, waivers or other communications required or permitted to be given under the terms of this Leak-Out Agreement must be in writing and shall be given in accordance with the terms of the Purchase Agreement.

This Leak-Out Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior negotiations, letters and understandings relating to the subject matter hereof and are fully binding on the parties hereto.

This Leak-Out Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. This Leak-Out Agreement may be executed and accepted by facsimile or PDF signature and any such signature shall be of the same force and effect as an original signature.

The terms of this Leak-Out Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and their respective successors and assigns.

This Leak-Out Agreement may not be amended or modified except in writing signed by each of the parties hereto.

All questions concerning the construction, validity, enforcement and interpretation of this Leak-Out Agreement shall be governed by Sections [5.9] and Section [5.20] of the Purchase Agreement.

Each party hereto acknowledges that, in view of the uniqueness of the transactions contemplated by this Leak-Out Agreement, the other party or parties hereto may not have an adequate remedy at law for money damages in the event that this Leak-Out Agreement has not been performed in accordance with its terms, and therefore agrees that such other party or parties shall be entitled to seek specific enforcement of the terms hereof in addition to any other remedy it may seek, at law or in equity.

The obligations of the Holder under this Leak-Out Agreement are several and not joint with the obligations of any other holder of any of the Securities issued under the Purchase Agreement (each, an "**Other Holder**") or any other holder of any of the Securities issued under the Registration Statement that is not a signatory to the Purchase Agreement (each, a "**Prospectus Purchaser Other Holder**") under any other agreement, and the Holder shall not be responsible in any way for the performance of the obligations of any Other Holder or any Prospectus Purchaser Other Holder under any such other agreement. Nothing contained herein, in this Leak-Out

Agreement or in any other agreement, and no action taken by the Holder pursuant hereto, shall be deemed to constitute the Holder and Other Holders or any Prospectus Purchaser Other Holder as a partnership, an association, a joint venture or any other kind of entity, or create a presumption that the Holder and the Other Holders or any Prospectus Purchaser Other Holder are in any way acting in concert or as a group with respect to such obligations or the transactions contemplated by this Leak-Out Agreement or any other agreement and the Company acknowledges that the Holder and the Other Holders or any Prospectus Purchaser Other Holder are not acting in concert or as a group with respect to such obligations or the transactions contemplated by this Leak-Out Agreement or any other agreement.  The Company and the Holder confirm that the Holder has independently participated in the negotiation of the transactions contemplated hereby with the advice of its own counsel and advisors.  The Holder shall be entitled to independently protect and enforce its rights, including, without limitation, the rights arising out of this Leak-Out Agreement, and it shall not be necessary for any Other Holder or any Prospectus Purchaser Other Holder to be joined as an additional party in any proceeding for such purpose.

The Company hereby represents and warrants as of the date hereof and covenants and agrees from and after the date hereof that none of the terms offered to any Other Holder or any Prospectus Purchaser Other Holder with respect to any restrictions on the sale of Securities substantially in the form of this Leak-Out Agreement (or any amendment, modification, waiver or release thereof) (each a "**Settlement Document**"), is or will be more favorable to such Other Holder than those of the Holder and this Leak-Out Agreement.  If, and whenever on or after the date hereof, the Company enters into a Settlement Document with terms that are materially different from this Leak-Out Agreement, then (i) the Company shall provide notice thereof to the Holder promptly following the occurrence thereof and (ii) the terms and conditions of this Leak-Out Agreement shall be, without any further action by the Holder or the Company, automatically amended and modified in an economically and legally equivalent manner such that the Holder shall receive the benefit of the more favorable terms and/or conditions (as the case may be) set forth in such Settlement Document, provided that upon written notice to the Company at any time the Holder may elect not to accept the benefit of any such amended or modified term or condition, in which event the term or condition contained in this Leak-Out Agreement shall apply to the Holder as it was in effect immediately prior to such amendment or modification as if such amendment or modification never occurred with respect to the Holder.  The provisions of this paragraph shall apply similarly and equally to each Settlement Document.

[The remainder of the page is intentionally left blank]

Confidential
EW-AUG0012018

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____
     Name:
     Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

  M3A LP
_____


By: _____
     Name: Ari Morris
     Title: Authorized Signor

Confidential
EW-AUG0012019

Abraham Declaration Exhibit 157 (Genius's Form 8-K Current Report, filed May 18, 2020, with an excerpt of Exhibit 10.1 thereto)

Case 1:22-cv-00249-AS    Document 226-12    Filed 01/15/25    Page 112 of 243

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, DC 20549**

**FORM 8-K**

**CURRENT REPORT**

**Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): May 18, 2020

# GENIUS BRANDS INTERNATIONAL, INC.

(Exact name of registrant as specified in its charter)

| **Nevada** | **001-37950** | **20-4118216** |
|---|---|---|
| (State or other jurisdiction of Incorporation or organization) | (Commission File Number) | (I.R.S. Employer Identification Number) |

| **190 N. Canon Drive, 4ᵗʰ Fl.** | | |
|---|---|---|
| **Beverly Hills, CA** | | **90210** |
| (Address of principal executive offices) | | (Zip Code) |

Registrant's telephone number, including area code: (310) 273-4222

_____
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| **Common Stock, par value $0.001 per share** | **GNUS** | **The Nasdaq Capital Market** |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 1.01. Entry into a Material Definitive Agreement.**

On May 18, 2020, Genius Brands International, Inc., a Nevada corporation (the "Company"), entered into a Securities Purchase Agreement (the "Purchase Agreement") with certain long standing investors (the "Investors"), pursuant to which the Company agreed to issue and sell, in a registered direct offering by the Company directly to the Investors (the "Registered Offering"), an aggregate of 7,500,000 shares (the "Shares") of common stock, par value $0.001 per share, of the Company ("Common Stock"), at an offering price of $1.20 per share for gross proceeds of $9.0 million before deducting the placement agent fees and offering expenses. The Company intends to use the net proceeds of the Registered Offering to grow its newly-announced digital network for children, Kartoon Channel!, to fund production of additional episodes of its series Rainbow Rangers, and for the repayment of certain outstanding debt, and for working capital.

The Shares were offered by the Company pursuant to a registration statement on Form S-3 (File No. 333-235962), which was filed with the Securities and Exchange Commission (the "Commission") on January 17, 2020 and was declared effective by the Commission on January 27, 2020 (the "Registration Statement").

The Registered Offering is expected to close on or about May 20, 2020, subject to customary closing conditions. The Special Equities Group, LLC, a division of Bradley Woods & Co. LTD, acted as placement agent and will receive a cash fee of $630,000.

In consideration for the holders of the notes and warrants issued pursuant to that certain Securities Purchase Agreement dated as of March 11, 2020 by and among the Company and the investors party thereto to provide their waiver and consent to the Registered Offering, the Company agreed that it will file a Registration Statement on Form S-3 on or before May 29, 2020 registering the resale of the shares of Common Stock underlying the notes and warrants issued to certain holders thereof.

The foregoing summary of the Purchase Agreement does not purport to be complete and is subject to, and qualified in its entirety by, such document attached as Exhibit 10.1 to this Current Report on Form 8-K, which is incorporated herein by reference.

This Current Report on Form 8-K does not constitute an offer to sell any securities or a solicitation of an offer to buy any securities, nor shall there be any sale of any securities in any state or jurisdiction in which such an offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such state or jurisdiction.

On May 18, 2020, the Company issued a press release announcing the Registered Offering. A copy of the press release is attached as Exhibit 99.1 to this Current Report on Form 8-K. A copy of the opinion of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. relating to the legality of the issuance and sale of the Shares is attached as Exhibit 5.1 hereto.

**Item 9.01. Financial Statements and Exhibits.**

**(d) Exhibits**

| Exhibit No. | Description |
| --- | --- |
| 5.1 | Opinion of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. |
| 10.1 | Form of Securities Purchase Agreement, dated as of May 18, 2020, by and among Genius Brands International, Inc. and the Investors. |
| 23.1 | Consent of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (included in Exhibit 5.1). |
| 99.1 | Press Release of Genius Brands International, Inc. dated May 18, 2020. |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

GENIUS BRANDS INTERNATIONAL, INC.

Date: May 18, 2020

By:    /s/ Andy Heyward
Name:  Andy Heyward
Title:   Chief Executive Officer

3

## SECURITIES PURCHASE AGREEMENT

This Securities Purchase Agreement (this "<u>Agreement</u>") is dated as of May 18, 2020, between Genius Brands International, Inc., a Nevada corporation (the "<u>Company</u>"), and each purchaser identified on the signature pages hereto (each, including its successors and assigns, a "<u>Purchaser</u>" and collectively the "<u>Purchasers</u>").

WHEREAS, subject to the terms and conditions set forth in this Agreement and pursuant to an effective registration statement under the Securities Act (as defined below), the Company desires to issue and sell to each Purchaser, and each Purchaser, severally and not jointly, desires to purchase from the Company, securities of the Company as more fully described in this Agreement.

NOW, THEREFORE, IN CONSIDERATION of the mutual covenants contained in this Agreement, and for other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, the Company and each Purchaser agree as follows:

## ARTICLE I.
## DEFINITIONS

1.1      <u>Definitions</u>. In addition to the terms defined elsewhere in this Agreement, for all purposes of this Agreement, the following terms have the meanings set forth in this Section 1.1:

"<u>Acquiring Person</u>" shall have the meaning ascribed to such term in Section 4.4.

"<u>Action</u>" shall have the meaning ascribed to such term in Section 3.1(j).

"<u>Affiliate</u>" means any Person that, directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with a Person as such terms are used in and construed under Rule 405 under the Securities Act.

"<u>Board of Directors</u>" means the board of directors of the Company.

"<u>Business Day</u>" means any day except any Saturday, any Sunday, any day which is a federal legal holiday in the United States or any day on which banking institutions in the State of New York are authorized or required by law or other governmental action to close.

"<u>Closing</u>" means the closing of the purchase and sale of the Shares pursuant to Section 2.1.

"<u>Closing Date</u>" means the Trading Day on which all of the Transaction Documents have been executed and delivered by the applicable parties thereto, and all conditions precedent to (i) the Purchasers' obligations to pay the Subscription Amount and (ii) the Company's obligations to deliver the Shares, in each case, have been satisfied or waived, but in no event later than the second (2nd) Trading Day following the date hereof.

"<u>Commission</u>" means the United States Securities and Exchange Commission.

"<u>Common Stock</u>" means the common stock of the Company, par value $0.001 per share, and any other class of securities into which such securities may hereafter be reclassified or changed.

4.6        Use of Proceeds. Except as set forth in the Prospectus Supplement, the Company shall use the net proceeds from the sale of the Shares hereunder for working capital purposes and shall not use such proceeds: (a) for the redemption of any Common Stock or Common Stock Equivalents, (b) for the settlement of any outstanding litigation or (c) in violation of FCPA or OFAC regulations.

4.7        Indemnification of Purchasers. Subject to the provisions of this Section 4.7, the Company will indemnify and hold each Purchaser and its directors, officers, shareholders, members, partners, employees and agents (and any other Persons with a functionally equivalent role of a Person holding such titles notwithstanding a lack of such title or any other title), each Person who controls such Purchaser (within the meaning of Section 15 of the Securities Act and Section 20 of the Exchange Act), and the directors, officers, shareholders, agents, members, partners or employees (and any other Persons with a functionally equivalent role of a Person holding such titles notwithstanding a lack of such title or any other title) of such controlling persons (each, a "Purchaser Party") harmless from any and all losses, liabilities, obligations, claims, contingencies, damages, costs and expenses, including all judgments, amounts paid in settlements, court costs and reasonable attorneys' fees and costs of investigation that any such Purchaser Party may suffer or incur as a result of or relating to (a) any material breach of any of the representations, warranties, covenants or agreements made by the Company in this Agreement or in the other Transaction Documents or (b) any action instituted against the Purchaser Parties in any capacity, or any of them or their respective Affiliates, by any stockholder of the Company who is not an Affiliate of such Purchaser Party, with respect to any of the transactions contemplated by the Transaction Documents (unless such action is solely based upon a material breach of such Purchaser Party's representations, warranties or covenants under the Transaction Documents or any agreements or understandings such Purchaser Party may have with any such stockholder or any violations by such Purchaser Party of state or federal securities laws or any conduct by such Purchaser Party which is finally judicially determined to constitute fraud, gross negligence or willful misconduct). If any action shall be brought against any Purchaser Party in respect of which indemnity may be sought pursuant to this Agreement, such Purchaser Party shall promptly notify the Company in writing, and the Company shall have the right to assume the defense thereof with counsel of its own choosing reasonably acceptable to the Purchaser Party. Any Purchaser Party shall have the right to employ separate counsel in any such action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Purchaser Party except to the extent that (i) the employment thereof has been specifically authorized by the Company in writing, (ii) the Company has failed after a reasonable period of time to assume such defense and to employ counsel or (iii) in such action there is, in the reasonable opinion of counsel, a material conflict on any material issue between the position of the Company and the position of such Purchaser Party, in which case the Company shall be responsible for the reasonable fees and expenses of no more than one such separate counsel. The Company will not be liable to any Purchaser Party under this Agreement (y) for any settlement by a Purchaser Party effected without the Company's prior written consent, which shall not be unreasonably withheld or delayed; or (z) to the extent, but only to the extent that a loss, claim, damage or liability is attributable to any Purchaser Party's breach of any of the representations, warranties, covenants or agreements made by such Purchaser Party in this Agreement or in the other Transaction Documents. The indemnification required by this Section 4.7 shall be made by periodic payments of the amount thereof during the course of the investigation or defense, as and when bills are received or are incurred. The indemnity agreements contained herein shall be in addition to any cause of action or similar right of any Purchaser Party against the Company or others and any liabilities the Company may be subject to pursuant to law.

4.8        Listing of Common Stock. The Company hereby agrees to use best efforts to maintain the listing or quotation of the Common Stock on the Trading Market on which it is currently listed, and concurrently with the Closing, the Company shall apply to list or quote all of the Shares on such Trading Market and promptly secure the listing of all of the Shares on such Trading Market. The Company further agrees, if the Company applies to have the Common Stock traded on any other Trading Market, it will then include in such application all of the Shares, and will take such other action as is necessary to cause all of the Shares to be listed or quoted on such other Trading Market as promptly as possible. The Company will then take all action reasonably necessary to continue the listing and trading of its Common Stock on a Trading Market and will comply in all respects with the Company's reporting, filing and other obligations under the bylaws or rules of the Trading Market. The Company agrees to maintain the eligibility of the Common Stock for electronic transfer through the Depository Trust Company or another established clearing corporation, including, without limitation, by timely payment of fees to the Depository Trust Company or such other established clearing corporation in connection with such electronic transfer.

18

5.3        Entire Agreement. The Transaction Documents, together with the exhibits and schedules thereto, the Prospectus and the Prospectus Supplement, contain the entire understanding of the parties with respect to the subject matter hereof and thereof and supersede all prior agreements and understandings, oral or written, with respect to such matters, which the parties acknowledge have been merged into such documents, exhibits and schedules.

5.4        Notices. Any and all notices or other communications or deliveries required or permitted to be provided hereunder shall be in writing and shall be deemed given and effective on the earliest of: (a) the time of transmission, if such notice or communication is delivered via facsimile at the facsimile number or email attachment at the email address as set forth on the signature pages attached hereto at or prior to 5:30 p.m. (New York City time) on a Trading Day, (b) the next Trading Day after the time of transmission, if such notice or communication is delivered via facsimile at the facsimile number or email attachment at the email address as set forth on the signature pages attached hereto on a day that is not a Trading Day or later than 5:30 p.m. (New York City time) on any Trading Day, (c) the second (2nd) Trading Day following the date of mailing, if sent by U.S. nationally recognized overnight courier service or (d) upon actual receipt by the party to whom such notice is required to be given. The address for such notices and communications shall be as set forth on the signature pages attached hereto. To the extent that any notice provided pursuant to any Transaction Document constitutes, or contains, material, non-public information regarding the Company or any Subsidiaries, the Company shall simultaneously file such notice with the Commission pursuant to a Current Report on Form 8-K.

5.5        Amendments; Waivers. No provision of this Agreement may be waived, modified, supplemented or amended except in a written instrument signed, in the case of an amendment, by the Company and Purchasers which purchased at least 50.1% in interest of the Shares based on the initial Subscription Amounts hereunder or, in the case of a waiver, by the party against whom enforcement of any such waived provision is sought, provided that if any amendment, modification or waiver disproportionately and adversely impacts a Purchaser (or group of Purchasers), the consent of such disproportionately impacted Purchaser (or group of Purchasers) shall also be required. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any subsequent default or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of any party to exercise any right hereunder in any manner impair the exercise of any such right. Any proposed amendment or waiver that disproportionately, materially and adversely affects the rights and obligations of any Purchaser relative to the comparable rights and obligations of the other Purchasers shall require the prior written consent of such adversely affected Purchaser. Any amendment effected in accordance with this Section 5.5 shall be binding upon each Purchaser and holder of Shares and the Company.

5.6        Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

5.7        Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their successors and permitted assigns. The Company may not assign this Agreement or any rights or obligations hereunder without the prior written consent of each Purchaser (other than by merger). Any Purchaser may assign any or all of its rights under this Agreement to any Person to whom such Purchaser assigns or transfers any Shares, provided that such transferee agrees in writing to be bound, with respect to the transferred Shares, by the provisions of the Transaction Documents that apply to the "Purchasers."

5.8        No Third-Party Beneficiaries. The Placement Agent shall be the third party beneficiary of the representations and warranties of the Company in Section 3.1 and the representations and warranties of the Purchasers in Section 3.2. This Agreement is intended for the benefit of the parties hereto and their respective successors and permitted assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other Person, except as otherwise set forth in Section 4.7 and this Section 5.8.

5.9        Governing Law. All questions concerning the construction, validity, enforcement and interpretation of the Transaction Documents shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of law thereof. Each party agrees that all legal Proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Agreement and any other Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, partners, members, employees or agents) shall be commenced exclusively in the state and federal courts sitting in the City of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any Action or Proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such Action or Proceeding is improper or is an inconvenient venue for such Proceeding. Each party hereby irrevocably waives personal service of process and consents to process being served in any such Action or Proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by law. If any party shall commence an Action or Proceeding to enforce any provisions of the Transaction Documents, then, in addition to the obligations of the Company under Section 4.7, the prevailing party in such Action or Proceeding shall be reimbursed by the non-prevailing party for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution of such Action or Proceeding.

5.10      Survival. The representations and warranties contained herein shall survive the Closing and the delivery of the Shares.

5.11      Execution. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to each other party, it being understood that the parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

5.12      Severability. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, illegal, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions set forth herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated, and the parties hereto shall use their commercially reasonable efforts to find and employ an alternative means to achieve the same or substantially the same result as that contemplated by such term, provision, covenant or restriction. It is hereby stipulated and declared to be the intention of the parties that they would have executed the remaining terms, provisions, covenants and restrictions without including any of such that may be hereafter declared invalid, illegal, void or unenforceable.

5.13      Rescission and Withdrawal Right. Notwithstanding anything to the contrary contained in (and without limiting any similar provisions of) any of the other Transaction Documents, whenever any Purchaser exercises a right, election, demand or option under a Transaction Document and the Company does not timely perform its related obligations within the periods therein provided, then such Purchaser may rescind or withdraw, in its sole discretion from time to time upon written notice to the Company, any relevant notice, demand or election in whole or in part without prejudice to its future actions and rights.

5.14      Replacement of Shares. If any certificate or instrument evidencing any Shares is mutilated, lost, stolen or destroyed, the Company shall issue or cause to be issued in exchange and substitution for and upon cancellation thereof (in the case of mutilation), or in lieu of and substitution therefor, a new certificate or instrument, but only upon receipt of evidence reasonably satisfactory to the Company of such loss, theft or destruction. The applicant for a new certificate or instrument under such circumstances shall also pay any reasonable third-party costs (including customary indemnity) associated with the issuance of such replacement Shares.

21

5.15      Remedies. In addition to being entitled to exercise all rights provided herein or granted by law, including recovery of damages, each of the Purchasers and the Company will be entitled to specific performance under the Transaction Documents. The parties agree that monetary damages may not be adequate compensation for any loss incurred by reason of any breach of obligations contained in the Transaction Documents and hereby agree to waive and not to assert in any Action for specific performance of any such obligation the defense that a remedy at law would be adequate.

5.16      Payment Set Aside. To the extent that the Company makes a payment or payments to any Purchaser pursuant to any Transaction Document or a Purchaser enforces or exercises its rights thereunder, and such payment or payments or the proceeds of such enforcement or exercise or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside, recovered from, disgorged by or are required to be refunded, repaid or otherwise restored to the Company, a trustee, receiver or any other Person under any law (including, without limitation, any bankruptcy law, state or federal law, common law or equitable cause of action), then to the extent of any such restoration the obligation or part thereof originally intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been made or such enforcement or setoff had not occurred.

5.17      Independent Nature of Purchasers' Obligations and Rights. The obligations of each Purchaser under any Transaction Document are several and not joint with the obligations of any other Purchaser, and no Purchaser shall be responsible in any way for the performance or non-performance of the obligations of any other Purchaser under any Transaction Document. Nothing contained herein or in any other Transaction Document, and no action taken by any Purchaser pursuant hereto or thereto, shall be deemed to constitute the Purchasers as a partnership, an association, a joint venture or any other kind of entity, or create a presumption that the Purchasers are in any way acting in concert or as a group with respect to such obligations or the transactions contemplated by the Transaction Documents. Each Purchaser shall be entitled to independently protect and enforce its rights including, without limitation, the rights arising out of this Agreement or out of the other Transaction Documents, and it shall not be necessary for any other Purchaser to be joined as an additional party in any Proceeding for such purpose. Each Purchaser has been represented by its own separate legal counsel in its review and negotiation of the Transaction Documents. For reasons of administrative convenience only, each Purchaser and its respective counsel have chosen to communicate with the Company through EGS. EGS does not represent any of the Purchasers and only represents the lead Purchaser. The Company has elected to provide all Purchasers with the same terms and Transaction Documents for the convenience of the Company and not because it was required or requested to do so by any of the Purchasers. It is expressly understood and agreed that each provision contained in this Agreement and in each other Transaction Document is between the Company and a Purchaser, solely, and not between the Company and the Purchasers collectively and not between and among the Purchasers.

5.18      Saturdays, Sundays, Holidays, etc. If the last or appointed day for the taking of any action or the expiration of any right required or granted herein shall not be a Business Day, then such action may be taken or such right may be exercised on the next succeeding Business Day.

5.19      Construction. The parties agree that each of them and/or their respective counsel have reviewed and had an opportunity to revise the Transaction Documents and, therefore, the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of the Transaction Documents or any amendments thereto. In addition, each and every reference to share prices and shares of Common Stock in any Transaction Document shall be subject to adjustment for reverse and forward stock splits, stock dividends, stock combinations and other similar transactions of the Common Stock that occur after the date of this Agreement.

5.20      WAIVER OF JURY TRIAL. IN ANY ACTION, SUIT, OR PROCEEDING IN ANY JURISDICTION BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY, THE PARTIES EACH KNOWINGLY AND INTENTIONALLY, TO THE GREATEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND EXPRESSLY WAIVES FOREVER TRIAL BY JURY.

*(Signature Pages Follow)*

22

# Abraham Declaration Exhibit 158 (EMPGNUS0004806)

**From:**       Brett Director [Brett.Director@emperyam.com]
**Sent:**       5/17/2020 10:45:32 PM
**To:**         Jonathan Schechter [shex@theseg.com]
**CC:**         Robert F. Charron [rcharron@egsllp.com]; notices [notices@emperyam.com]
**BCC:**        Ryan.Lane@emperyam.com; Martin.Hoe@emperyam.com; Brett.Director@emperyam.com;
                Alyson.Chung@emperyam.com; Bryan.Armenta@emperyam.com
**Subject:**    RE: GNUS RD Waiver and Leak-Out
**Attachments:** Empery GNUS SPA, Consent and Leak-Out sig pages 5.18.2020.pdf


See attached for the Empery sig pages.  Please hold in escrow pending release by a representative of
Empery.

Regards,
Brett

From: Jonathan Schechter [mailto:shex@theseg.com]
Sent: Sunday, May 17, 2020 6:41 PM
To: Brett Director <Brett.Director@emperyam.com>
Cc: Robert F. Charron <rcharron@egsllp.com>
Subject: Re: GNUS RD Waiver and Leak-Out

Yes pro rata.
Sent from my iPhone


On May 17, 2020, at 6:22 PM, Brett Director
<Brett.Director@emperyam.com<mailto:Brett.Director@emperyam.com>> wrote:

Why did they change the leak out percentage to a flat 30 percent for each investor.  Shouldn't it be the
pro rata of 30 percent?


On May 17, 2020, at 3:56 PM, Jonathan Schechter <shex@theseg.com<mailto:shex@theseg.com>> wrote:

Couple of clean up comments from Mintz
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
************************************************************* This email is only for use by the
intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR
OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review,
dissemination, replication or distribution of this communication and any attachments is strictly
prohibited. If you have received this communication in error, then please delete this email, any and all
attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward
this message, or any portion thereof, including any attachments, by any means to any other person
whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the
information in this communication nor any opinion or recommendation expressed herein constitutes an offer
to buy or sell any securities. The contents of this communication are for information purposes only, and
should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product.
Attachments that are part of an electronic communication may have additional important disclosures and
disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in
no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods
and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
<GNUS Form of Leak-Out Agreement (May 2020).DOCX>
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
************************************************************* This email is only for use by the
intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR
OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review,
dissemination, replication or distribution of this communication and any attachments is strictly
prohibited. If you have received this communication in error, then please delete this email, any and all
attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward
this message, or any portion thereof, including any attachments, by any means to any other person
whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the
information in this communication nor any opinion or recommendation expressed herein constitutes an offer
to buy or sell any securities. The contents of this communication are for information purposes only, and
should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product.
Attachments that are part of an electronic communication may have additional important disclosures and
disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in
no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods
and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

EMPGNUS0004806

Abraham Declaration Exhibit 159
(ANSON_00014251-56)

Message
_____

**From:**     Amin Nathoo [anathoo@ansonfunds.com]
**Sent:**     5/17/2020 8:18:53 PM
**To:**       Jonathan Schechter [shex@theseg.com]; Robert F. Charron [rcharron@egsllp.com]
**CC:**       Matthew McCullough [mmccullough@egsllp.com]
**Subject:**  RE: GNUS RD


Do we have everyone else's except AJ?

**Amin Nathoo, CFA | Anson Funds**
155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7
Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141
anathoo@ansonfunds.com


**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** May 17, 2020 10:39 AM
**To:** Amin Nathoo <anathoo@ansonfunds.com>; Robert F. Charron <rcharron@egsllp.com>
**Cc:** Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

I spoke to AJ last night...he is on board just don't know if I'll receive tonight.  Is that ok?


**From:** Amin Nathoo [mailto:anathoo@ansonfunds.com]
**Sent:** Sunday, May 17, 2020 10:34 AM
**To:** Jonathan Schechter <shex@theseg.com>; Robert F. Charron <rcharron@egsllp.com>
**Cc:** Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

Attached are Anson's signature pages to the SPA, Waiver, and Leakout to be held is escrow.

You may release these pages if the following are true:
1.      Financing is for 7,500,000 shares for a total of $9,000,000
2.      You have received the signed waivers and leakout from all large investors in the deal. (Empery, L1, Iroquois,
Heights, Brio, Obsidian, Anson)

Thanks.

**Amin Nathoo, CFA | Anson Funds**
155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7
Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141
anathoo@ansonfunds.com


**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** May 17, 2020 10:12 AM
**To:** Amin Nathoo <anathoo@ansonfunds.com>; Robert F. Charron <rcharron@egsllp.com>
**Cc:** Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

Thanks 2,525,000 for you...a Director wanted to participate for 25K but couldn't so we have it to you.  Ok?


CONFIDENTIAL                                                          ANSON_00014251

**From:** Amin Nathoo [mailto:anathoo@ansonfunds.com]
**Sent:** Sunday, May 17, 2020 10:11 AM
**To:** Robert F. Charron <rcharron@egsllp.com>
**Cc:** Jonathan Schechter <shex@theseg.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** Re: GNUS RD

Looks good to me. Thx.
I'm comfortable with these docs now.

Shex - I'll send you my signature pages shortly to hold while you collect pages from everyone else.

**Amin Nathoo, CFA | Anson Funds**
155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7
Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141
anathoo@ansonfunds.com

On May 17, 2020, at 10:00 AM, Robert F. Charron <rcharron@egsllp.com> wrote:

Here you go, I think this addresses Amin's concerns.  Also, tightened up language regarding when notice is given.  I'm heading into the back 40 for a few hours so if you need changes I'll let Matt tweak them.

Robert Charron
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas
New York, New York 10105
Direct: (212) 931-8704
Facsimile: (212) 401 4741
Cell: (917) 843 1457
e-mail:  rcharron@egsllp.com

Pursuant to IRS Circular 230, we hereby inform you that any U.S. federal tax advice set forth herein was not intended or written by Ellenoff Grossman & Schole LLP to be used, and cannot be used, by you or any taxpayer, for the purpose of avoiding any penalties that may be imposed on you or any other person under the Internal Revenue Code.

**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** Saturday, May 16, 2020 9:27 PM
**To:** Amin Nathoo <anathoo@ansonfunds.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

Rob will review and play around with it

**From:** Amin Nathoo [mailto:anathoo@ansonfunds.com]
**Sent:** Saturday, May 16, 2020 9:26 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

Comments on Waiver
•      Preamble and Section 3: Registration statement to be filed by May 29th. So 11 days after date of agreement. This is still going to be well beyond the time needed for Nasdaq $1.00 price.
•      Section 4: change to $1.65

ANSON_00014252

Comments on Leakout

•      Just want to tighten up the language a little bit. Restricted Period starts after company notifies investor that resale reg statement goes effective.. and company cannot repay debt during restricted period. But theoretically, company could issue a redemption notice immediately before notifying the investors that resale has gone effective..thereby getting around the spirt of the agreement. Can we just please find a way to tighten this up?

Other than the small comments above, I'm ok.


**Amin Nathoo, CFA | Anson Funds**
155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7
Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141
anathoo@ansonfunds.com


**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** May 16, 2020 8:57 PM
**To:** Amin Nathoo <anathoo@ansonfunds.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

Take a look at the attached...let's see what others comeback with on the Standstill before we make a final decision.


**From:** Amin Nathoo [mailto:anathoo@ansonfunds.com]
**Sent:** Saturday, May 16, 2020 8:39 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

So if the aggregate selling amount is 30% of volume, attached shows the % each firm can sell per day.

<image001.png>


**Amin Nathoo, CFA | Anson Funds**
155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7
Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141
anathoo@ansonfunds.com


**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** May 16, 2020 8:06 PM
**To:** Amin Nathoo <anathoo@ansonfunds.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

See attached...I couldn't make it percentage as the smaller amounts rounded up to 1


**From:** Amin Nathoo [mailto:anathoo@ansonfunds.com]
**Sent:** Saturday, May 16, 2020 6:06 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** RE: GNUS RD

CONFIDENTIAL

Here are a few of my comments/questions.

The waiver should have the following:
- Company agrees to file resale registration statement by May 29 2020
- Company shall be prohibited from issuing any common stock/debt/etc. from date hereof until 90 days after the registration statement goes effective

Leakout
- The leakout should reference the debt deal SPA, not this new deal, right? The leakout needs to apply to all debt investors, regardless of whether or not they participate in this financing, they still need to sign it.
- What is aggregate selling % of all investors combined? 30%?
- What will be the selling % of each investor as a result? Can you please provide a breakdown?
- The leakout should not apply if stock is above $1.50

**Amin Nathoo, CFA | Anson Funds**
155 University Avenue, Suite 207 | Toronto, ON | M5H 3B7
Direct: (416) 572-1902 | Office: (416) 447-8874 | Mobile: (416) 804-4141
anathoo@ansonfunds.com

**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** May 16, 2020 5:33 PM
**To:** Amin Nathoo <anathoo@ansonfunds.com>
**Cc:** Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>
**Subject:** GNUS RD

Here is the SPA and Leak-Out (I got from Brett). I'm waiting on the Waiver...I told Jeff to add the RS in there in return for taking back none of the money.

Let us know what you think.

**From:** Schultz, Jeffrey [mailto:JSchultz@mintz.com]
**Sent:** Friday, May 15, 2020 9:04 PM
**To:** Joe Reda <reda@theseg.com>; Jonathan Schechter <shex@theseg.com>
**Cc:** Bob Denton <bdenton@gnusbrands.com>; Michael Jaffa <mjaffa@gnusbrands.com>; Robert F. Charron <rcharron@egsllp.com>; Matthew McCullough <mmccullough@egsllp.com>; Langer, Alan <AJLanger@mintz.com>
**Subject:** GNUS RD

Attached is a draft SPA redlined against the last RD deal from May 8, 2020. Other than number of shares and pricing, the only other changes relate to adding in EGS. Please let us know of any comments.

Regards,
Jeff

**Jeffrey Schultz**
*Member*

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
666 Third Avenue, New York, NY 10017
+1.212.692.6732
JSchultz@mintz.com | Mintz.com

<image002.jpg>

CONFIDENTIAL                                                                 ANSON_00014254

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in

error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.
<GNUS Consent and Waiver.redline.doc>
<GNUS Form of Leak-Out Agreement 5.2020.2.docx>
<GNUS - Waiver and Consent Agreement (RD Offering - May 18 2020) (clean copy).2.docx>
<GNUS Form of Leak-Out.redline.doc>
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

Abraham Declaration Exhibit 160
(TOON00016523-53)

# Withheld for Privilege

TOON00016523

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: _____ ANSON INVESTMENTS MASTER FUND LP _____

Signature of Authorized Signatory of Purchaser: _____

Name of Authorized Signatory: _____ AMIN NATHOO _____

Title of Authorized Signatory: _____ Director, Anson Advisors Inc. _____

Email Address of Authorized Signatory: _____ notices@ansonfunds.com _____

Facsimile Number of Authorized Signatory: _____ 416.352.1880 _____

Address for Notice to Purchaser:         155 UNIVERSITY AVENUE, SUITE 207
                                         TORONTO, ONTARIO, CANADA
                                         M5H 3B7
                                         ATTN: AMIN NATHOO

Address for Delivery of Securities to Purchaser (if not same as address for notice):
                                         SAME AS ABOVE

DWAC for Shares:
Broker:           TD Bank
Broker No:        5036
Account No:       5J5637D
Account Name:     Anson Investments Master Fund LP

Subscription Amount:    $3,030,000.00
Shares:                 2,525,000

[SIGNATURE PAGES CONTINUE]

TOON00016524

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Brio Capital Master Fund Ltd.

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: Shaye Hirsch

Title of Authorized Signatory: Director

Email Address of Authorized Signatory: shaye@briocapital.com

Facsimile Number of Authorized Signatory: 646-390-2158

Address for Notice to Purchaser:

c/o Brio Capital Management LLC
100 Merrick Road, Suite 401W
Rockville Centre, NY 11570

Address for Delivery of Shares to Purchaser (if not same as address for notice):

DTC #2803; US Bank
Account: Brio Capital Master Fund Ltd.
Acc. #: 001051004248

Subscription Amount: $ 480,000

Shares: 400,000

[SIGNATURE PAGES CONTINUE]

99379278v.2

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: _RICHARD MOLINSKY_

*Signature of Authorized Signatory of Purchaser:* _Richard Molinsky_

Name of Authorized Signatory: _____

Title of Authorized Signatory: _____

Email Address of Authorized Signatory: _RMOL15@AOL.Com_

Facsimile Number of Authorized Signatory: _203 222.4977_

Address for Notice to Purchaser: _51 LORD'S HWT EAST WESTON CT 06883_

Address for Delivery of Shares to Purchaser (if not same as address for notice): _DWAC SHARES TO WELLS FARGO ADVISORS ACCT Name: RICHARD MOLINSKY ACCT #: 8370-0550    DTC # 0141_

Subscription Amount: $ _90,000_

Shares: _75,000_

[SIGNATURE PAGES CONTINUE]

99379278v.2

TOON00016526

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: CVI Investments, Inc.

*Signature of Authorized Signatory of Purchaser:* _____

Name of Authorized Signatory: Martin Kobinger

Title of Authorized Signatory: Investment Manager

Email Address of Authorized Signatory:kobinger@sig.com and winer@sig.com

Facsimile Number of Authorized Signatory: (415) 403-6525

Address for Notice to Purchaser:

C/O Heights Capital Management, Inc.

101 California Street, Suite 3250

San Francisco, CA 94111

Address for Delivery of Shares to Purchaser (if not same as address for notice):

Subscription Amount: $1,200,000

Shares: 1,000,000

[SIGNATURE PAGES CONTINUE]

99379278v.2

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: L1 Capital Global Opportunities Master Fund

Signature of Authorized Signatory of Purchaser: _____

Name of Authorized Signatory: David Feldman
Title of Authorized Signatory: Director_____

Email Address of Authorized Signatory: dfeldman@l1capitalglobal.com

Facsimile Number of Authorized Signatory: _____

Address for Notice to Purchaser:
135 East 57th St, 23rd Floor
New York, NY, 10022

Address for Delivery of Shares to Purchaser (if not same as address for notice):

Subscription Amount: $_____

Shares: __400,000_____

[SIGNATURE PAGES CONTINUE]

99379278v.2

TOON00016528

**[PURCHASER SIGNATURE PAGES TO GNUS
SECURITIES PURCHASE AGREEMENT]**

**IN WITNESS WHEREOF,** the undersigned have caused this Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Empery Debt Opportunity Fund, LP

By: Empery Asset Management, LP, its authorized agent

*Signature of Authorized Signatory of Purchaser:* _____

Name of Authorized Signatory: Brett Director

Title of Authorized Signatory: General Counsel of Empery Asset Management, LP

Email Address of Authorized Signatory: notices@emperyam.com

Address for Notice to Purchaser:    c/o Empery Asset Management, LP
1 Rockefeller Plaza, Suite 1205
New York, NY 10020

Address for Delivery of Securities to Purchaser (if not same as address for notice): Same

Subscription Amount: $2,280,000.00

Shares: 1,900,000

3

TOON00016529

[PURCHASER SIGNATURE PAGES TO GNUS
SECURITIES PURCHASE AGREEMENT]

**IN WITNESS WHEREOF,** the undersigned have caused this Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Empery Tax Efficient, LP

By: Empery Asset Management, LP, its authorized agent

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: Brett Director

Title of Authorized Signatory: General Counsel of Empery Asset Management, LP

Email Address of Authorized Signatory: notices@emperyam.com

Address for Notice to Purchaser:       c/o Empery Asset Management, LP
                                        1 Rockefeller Plaza, Suite 1205
                                        New York, NY 10020

Address for Delivery of Securities to Purchaser (if not same as address for notice): Same

Subscription Amount: $24,000.00

Shares: 20,000

[SIGNATURE PAGES CONTINUE]

2

TOON00016530

**[PURCHASER SIGNATURE PAGES TO GNUS
SECURITIES PURCHASE AGREEMENT]**

**IN WITNESS WHEREOF**, the undersigned have caused this Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Empery Asset Master, LTD

By: Empery Asset Management, LP, its authorized agent

Signature of Authorized Signatory of Purchaser: _____

Name of Authorized Signatory: Brett Director

Title of Authorized Signatory: General Counsel of Empery Asset Management, LP

Email Address of Authorized Signatory: notices@emperyam.com

Address for Notice to Purchaser:    c/o Empery Asset Management, LP
1 Rockefeller Plaza, Suite 1205
New York, NY 10020

Address for Delivery of Securities to Purchaser (if not same as address for notice): Same

Subscription Amount: $96,000.00

Shares: 80,000

[SIGNATURE PAGES CONTINUE]

1

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: __Iroquois Capital Investment Group LLC__

*Signature of Authorized Signatory of Purchaser:* _____

Name of Authorized Signatory: __Richard Abbe__

Title of Authorized Signatory: __Managing Member__

Email Address of Authorized Signatory: __rabbe@icfund.com__

Facsimile Number of Authorized Signatory: _____

Address for Notice to Purchaser:

> 125 Park Avenue, 25th Floor
> New York, New York 10017

Address for Delivery of Shares to Purchaser (if not same as address for notice):

Subscription Amount: $ __858,000__

Shares: __715,000__

[SIGNATURE PAGES CONTINUE]

99379278v.2

TOON00016532

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: __Iroquois Master Fund Ltd._____

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: __Kimberly Page_____

Title of Authorized Signatory: __General Partners, Director_____

Email Address of Authorized Signatory:__kpage@icfund.com_____

Facsimile Number of Authorized Signatory: _____

Address for Notice to Purchaser:

125 Park Avenue, 25th Floor
New York, New York 10017

Address for Delivery of Shares to Purchaser (if not same as address for notice):

Subscription Amount: $ 462,000_____

Shares: 385,000_____

[SIGNATURE PAGES CONTINUE]

99379278v.2

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Anson Investments Master Fund LP

[Print Name of Holder]


[Signature]

Name:  Amin Nathoo
Title: Director, Anson Advisors Inc.

Original Subscription Amount:
$3,000,000.00

TOON00016534

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Brio Capital Master Fund Ltd.
[Print Name of Holder]

[Signature]

Name: Shaye Hirsch
Title:   Director

Original Subscription Amount:
$ 480,000

TOON00016535

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

[Print Name of Holder]   RICHARD MOLINSKY

[Signature]   *Richard Molinsky*

Name:
Title:

Original Subscription Amount:
$   90,000

## Exhibit A

## Form of Securities Purchase Agreement

## Exhibit B

## Form of Leak-Out Agreement

TOON00016536

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

**CVI Investments, Inc.**
[Print Name of Holder]

[Signature]

Name: Martin Kobinger
Title: Investment Manager

Original Subscription Amount: $1,000,000

TOON00016537

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.


L1 Capital Global Opportunities Master Fund

_____

[Print Name of Holder]


_____

[Signature]

Name:  David Feldman


Title: Director


Original Subscription Amount:
$__600,000_____

TOON00016538

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Empery Debt Opportunity Fund, LP
By: Empery Asset Management, LP, its
authorized agent

_____
[Print Name of Holder]

_____
[Signature]

Name:  Brett S. Director
Title: General Counsel

Original Subscription Amount: $1,781,250.00

6

TOON00016539

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Empery Tax Efficient, LP
By: Empery Asset Management, LP, its
authorized agent

_____
[Print Name of Holder]

_____
[Signature]

Name:  Brett S. Director
Title: General Counsel

Original Subscription Amount: $18,750.00

5

TOON00016540

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Empery Asset Master, LTD
By: Empery Asset Management, LP, its
authorized agent

[Print Name of Holder]

[Signature]

Name:  Brett S. Director
Title: General Counsel

Original Subscription Amount: $75,000.00

4

TOON00016541

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.


Iroquois Capital Investment Group LLC

[Print Name of Holder]


[Signature]


Name: Richard Abbe
Title: Managing Member


Original Subscription Amount:

$_____

TOON00016542

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.


Iroquois Master Fund Ltd.
_____
[Print Name of Holder]

_____
[Signature]

Name: Kimberly Page
Title: General Partner

Original Subscription Amount:
$_____

TOON00016543

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**GENIUS BRANDS INTERNATIONAL, INC.**

By: _____
Name:
Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

**Anson Investments Master Fund LP**

By: _____
Name: Amin Nathoo
Title: Director, Anson Advisors Inc.
Fax Number:
Email Address: notices@ansonfunds.com

{S2439554; 1}

TOON00016544

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**

By: _____
       Name:
       Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

Brio Capital Master Fund Ltd.

By: _____
       Name: Shaye Hirsch
       Title: Director

TOON00016545

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**

By: _____
    Name:
    Title:

AGREED TO AND ACCEPTED:

"HOLDER"

RICHARD MOLINSKY

By: _____
    Name:
    Title:

TOON00016546

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

[ISSUER]

By: _____
    Name:
    Title:

AGREED TO AND ACCEPTED:

"HOLDER"

CVI Investments, Inc.

By: _____
    Name: Martin Kobinger
    Title: Investment Manager

TOON00016547

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**

By: _____
     Name:
     Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

L1 Capital Global Opportunities Master Fund

By: _____
    Name: David Feldman
    Title: Director

TOON00016548

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**

By: _____

Name:

Title:

AGREED TO AND ACCEPTED:
**"HOLDER"**

Empery Debt Opportunity Fund, LP
By: Empery Asset Management, LP, its authorized agent

By: _____

Name: Brett S. Director

Title: General Counsel

9

TOON00016549

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____
    Name:
    Title:

AGREED TO AND ACCEPTED:
**"HOLDER"**

Empery Tax Efficient, LP
By: Empery Asset Management, LP, its authorized agent

By: _____
    Name: Brett S. Director
    Title: General Counsel

8

TOON00016550

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**


By: _____

      Name:

      Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

Empery Asset Master, LTD
By: Empery Asset Management, LP, its authorized agent

By: _____

    Name: Brett S. Director

    Title: General Counsel

7

TOON00016551

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**

By: _____
       Name:
       Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

Iroquois Capital Investment Group LLC

By: _____
       Name:
       Title:    Richard Abbe
                Managing Member

TOON00016552

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**[ISSUER]**

By: _____
    Name:
    Title:

AGREED TO AND ACCEPTED:

**"HOLDER"**

Iroquois Master Fund Ltd.

By: _____
    Name:
    Title:    Kimberly Page
              General Partner

TOON00016553

Abraham Declaration Exhibit 161
(TOON00010633-37)

Message
_____

**From:**      Jonathan Schechter [shex@theseg.com]
**Sent:**      6/2/2020 12:56:53 AM
**To:**        Bob Denton [/o=ExchangeLabs/ou=Exchange Administrative Group
               (FYDIBOHF23SPDLT)/cn=Recipients/cn=26aac17a9bee4aee99421ef0e20ca538-Bob Denton]
**Subject:**   FW: NEED YOUR INFO


fyi


**From:** Andrew Arno
**Sent:** Wednesday, May 27, 2020 9:28 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Subject:** Re: NEED YOUR INFO

160 Riverside Boulevard
NY NYC 10069
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
Andy@the SEG.com
917-696-0705
Sent from my iPhone


On May 27, 2020, at 6:41 PM, Jonathan Schechter <shex@theseg.com> wrote:


3rd request

**From:** Bob Denton [mailto:bdenton@gnusbrands.com]
**Sent:** Wednesday, May 27, 2020 6:12 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Subject:** RE: Brio Select Leak Out

Sure

Address
Tax ID#
Email
Phone number.


**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** Wednesday, May 27, 2020 1:49 PM
**To:** Bob Denton <bdenton@gnusbrands.com>
**Subject:** RE: Brio Select Leak Out

Can you remind me what you need from him again?


**From:** Bob Denton [mailto:bdenton@gnusbrands.com]
**Sent:** Wednesday, May 27, 2020 4:39 PM
**To:** Jonathan Schechter <shex@theseg.com>; Langer, Alan <AJLanger@mintz.com>; Schultz, Jeffrey
<JSchultz@mintz.com>

TOON00010633

**Cc:** Michael Jaffa <mjaffa@gnusbrands.com>
**Subject:** RE: Brio Select Leak Out

Hey Shex

We never got Andrews information to exercise his warrants.

Want to remind him?

Thanks

**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** Wednesday, May 27, 2020 1:05 PM
**To:** Langer, Alan <AJLanger@mintz.com>; Schultz, Jeffrey <JSchultz@mintz.com>
**Cc:** Bob Denton <bdenton@gnusbrands.com>; Michael Jaffa <mjaffa@gnusbrands.com>
**Subject:** FW: Brio Select Leak Out

Guys,

I spoke to everyone....dont hate me but I do think this is a better result for the company...everyone has agreed to register only the Warrants and NOT the debt...

**From:** Marina Gorecki [mailto:marina@briocapital.com]
**Sent:** Wednesday, May 27, 2020 3:47 PM
**To:** Jonathan Schechter <shex@theseg.com>
**Cc:** Shaye Hirsch <shaye@briocapital.com>
**Subject:** RE: Brio Select Leak Out

Please find the signed agreement for Brio Select attached.

Thank you,
Marina Gorecki
Operations Analyst/Office Administrator
Brio Capital Management, LLC
100 Merrick Road, Suite 401W
Rockville Centre, New York 11570
Tel: 516-536-0500
Fax: 516-706-3147
marina@briocapital.com

**From:** Jonathan Schechter <shex@theseg.com>
**Sent:** Wednesday, May 27, 2020 2:35 PM
**To:** Shaye Hirsch <shaye@briocapital.com>; Marina Gorecki <marina@briocapital.com>
**Subject:** Brio Select Leak Out

We need this signed by Brio Select also so we can include it in the RS.

Thanks-

Shex

Jon Schechter
Partner

The Special Equities Group "SEG"

150 E 58th St - 28th Floor
New York, NY 10155
(W) 212.258.2343
(C) 516-698-6887

(Email) shex@TheSEG.com

<image001.jpg>

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************
This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE

PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever

without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

TOON00010637

Abraham Declaration Exhibit 162 (EW-AUG0016713-14, marked as Exhibit 19 at the Deposition of Schechter / SEG)

Message

| | |
|---|---|
| **From:** | Jonathan Schechter [shex@theseg.com] |
| **Sent:** | 6/2/2020 12:15:58 PM |
| **To:** | Dan Ripp [dan.ripp@bradleywoods.com] |
| **CC:** | Andrew Arno [andy@theseg.com] |
| **Subject:** | Gnus memo |
| **Attachments:** | GNUS Memo 6.2.20.docx; ATT00001.txt |

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.



EW-AUG0016713

# NOTES TO THE FILES

Date:      May 28, 2020

From:      Dan Ripp

Re:        Handling of Genius Brands International (NASDAQ: GNUS)

---

On March 10, 2020 Genius Brands International (the "Company") engaged Bradley Woods to be their exclusive placement agent in connection with helping them restructure their balance sheet. The restructuring is being done in multiple stages. Our Engagement Letter gives us fees of 7% cash on funds raised by us.

On May 27, 2020 GNUS common stock closed at $1.81. In pre-market trading on May 28, 202 the stock was $2.10. We received a call from Anson and Iroquois asking if the company was willing to sell common stock off its shelf registration statement at $1.50. We spoke to the Company and they agreed to sell 15,000,000 shares at $1.50. For purposes of NASDAQ, this was considered an "at-market" deal as it was equal to the average of the previous 5 days closing prices. We had 7 investors in the transaction. We exchanged signature pages at 1pm and put out an 8-K announcing the transaction at 1:30pm. The transaction closed on Monday, June 1. We received a cash fee of $2,100,000 ($30,000,000*7%=$2,100,000).

Confidential                                                                      EW-AUG0016714

Abraham Declaration Exhibit 163 (Genius's Form 8-K Current Report, filed May 28, 2020, with an excerpt of Exhibit 10.1 thereto)

Case 1:22-cv-00249-AS    Document 226-12    Filed 01/15/25    Page 171 of 243

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, DC 20549**

**FORM 8-K**

**CURRENT REPORT**

**Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): May 28, 2020

**GENIUS BRANDS INTERNATIONAL, INC.**
(Exact name of registrant as specified in its charter)

| **Nevada** | **001-37950** | **20-4118216** |
|:---:|:---:|:---:|
| (State or other jurisdiction of Incorporation or organization) | (Commission File Number) | (I.R.S. Employer Identification Number) |

| **190 N. Canon Drive, 4th Fl.** | |
|:---:|:---:|
| **Beverly Hills, CA** | **90210** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: (310) 273-4222

_____
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|:---:|:---:|:---:|
| **Common Stock, par value $0.001 per share** | **GNUS** | **The Nasdaq Capital Market** |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 1.01. Entry into a Material Definitive Agreement.**

On May 28, 2020, Genius Brands International, Inc., a Nevada corporation (the "Company"), entered into a Securities Purchase Agreement (the "Purchase Agreement") with certain long standing investors (the "Investors"), pursuant to which the Company agreed to issue and sell, in a registered direct offering by the Company directly to the Investors (the "Registered Offering"), an aggregate of 20,000,000 shares (the "Shares") of common stock, par value $0.001 per share, of the Company ("Common Stock"), at an offering price of $1.50 per share for gross proceeds of $30.0 million before deducting the placement agent fees and offering expenses. The Company intends to use the net proceeds of the Registered Offering to grow its newly-announced digital network for children, Kartoon Channel!, to fund production of additional episodes of its series Rainbow Rangers, and for the repayment of certain outstanding debt, and for working capital.

The Shares were offered by the Company pursuant to a registration statement on Form S-3 (File No. 333-235962), which was filed with the Securities and Exchange Commission (the "Commission") on January 17, 2020 and was declared effective by the Commission on January 27, 2020 (the "Registration Statement").

The Registered Offering is expected to close on or about June 1, 2020, subject to customary closing conditions. The Special Equities Group, LLC, a division of Bradley Woods & Co. LTD, acted as placement agent and will receive a cash fee of $2,100,000.

In addition, in connection with the holders of the notes and warrants issued pursuant to that certain Securities Purchase Agreement dated as of March 11, 2020 by and among the Company and the investors party thereto agreeing to provide their waiver and consent to the Registered Offering, the Company agreed that it would file a resale registration statement on Form S-3 on or before June 5, 2020 (instead of May 29, 2020 as previously agreed) registering the resale of the shares of Common Stock issued or issuable upon exercise of the warrants issued to the certain holders thereof.

The foregoing summary of the Purchase Agreement does not purport to be complete and is subject to, and qualified in its entirety by, such document attached as Exhibit 10.1 to this Current Report on Form 8-K, which is incorporated herein by reference.

This Current Report on Form 8-K does not constitute an offer to sell any securities or a solicitation of an offer to buy any securities, nor shall there be any sale of any securities in any state or jurisdiction in which such an offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such state or jurisdiction.

A copy of the opinion of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. relating to the legality of the issuance and sale of the Shares is attached as Exhibit 5.1 hereto.

**Item 9.01. Financial Statements and Exhibits.**

**(d) Exhibits**

| Exhibit No. | Description |
|---|---|
| 5.1 | Opinion of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. |
| 10.1 | Form of Securities Purchase Agreement, dated as of May 28, 2020, by and among Genius Brands International, Inc. and the Investors. |
| 23.1 | Consent of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (included in Exhibit 5.1). |

2

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

GENIUS BRANDS INTERNATIONAL, INC.

Date: May 28, 2020

By:    /s/ Andy Heyward
Name:  Andy Heyward
Title:   Chief Executive Officer

**SECURITIES PURCHASE AGREEMENT**

This Securities Purchase Agreement (this "Agreement") is dated as of May 28, 2020, between Genius Brands International, Inc., a Nevada corporation (the "Company"), and each purchaser identified on the signature pages hereto (each, including its successors and assigns, a "Purchaser" and collectively the "Purchasers").

WHEREAS, subject to the terms and conditions set forth in this Agreement and pursuant to an effective registration statement under the Securities Act (as defined below), the Company desires to issue and sell to each Purchaser, and each Purchaser, severally and not jointly, desires to purchase from the Company, securities of the Company as more fully described in this Agreement.

NOW, THEREFORE, IN CONSIDERATION of the mutual covenants contained in this Agreement, and for other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, the Company and each Purchaser agree as follows:

**ARTICLE I.**
**DEFINITIONS**

1.1      Definitions. In addition to the terms defined elsewhere in this Agreement, for all purposes of this Agreement, the following terms have the meanings set forth in this Section 1.1:

"Acquiring Person" shall have the meaning ascribed to such term in Section 4.4.

"Action" shall have the meaning ascribed to such term in Section 3.1(j).

"Affiliate" means any Person that, directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with a Person as such terms are used in and construed under Rule 405 under the Securities Act.

"Board of Directors" means the board of directors of the Company.

"Business Day" means any day except any Saturday, any Sunday, any day which is a federal legal holiday in the United States or any day on which banking institutions in the State of New York are authorized or required by law or other governmental action to close.

"Closing" means the closing of the purchase and sale of the Shares pursuant to Section 2.1.

"Closing Date" means the Trading Day on which all of the Transaction Documents have been executed and delivered by the applicable parties thereto, and all conditions precedent to (i) the Purchasers' obligations to pay the Subscription Amount and (ii) the Company's obligations to deliver the Shares, in each case, have been satisfied or waived, but in no event later than the second (2nd) Trading Day following the date hereof.

"Commission" means the United States Securities and Exchange Commission.

"Common Stock" means the common stock of the Company, par value $0.001 per share, and any other class of securities into which such securities may hereafter be reclassified or changed.

"Common Stock Equivalents" means any securities of the Company or the Subsidiaries which would entitle the holder thereof to acquire at any time Common Stock, including, without limitation, any debt, preferred stock, right, option, warrant or other instrument that is at any time convertible into or exercisable or exchangeable for, or otherwise entitles the holder thereof to receive, Common Stock.

"Company Counsel" means Mintz, Levin, Cohn, Ferris, Glovsky and Popeo P.C.

"Disclosure Schedules" means the Disclosure Schedules of the Company delivered concurrently herewith.

4.3     <u>Securities Laws Disclosure; Publicity</u>. The Company shall (a) by the Disclosure Time, issue a press release disclosing the material terms of the transactions contemplated hereby, and (b) file a Current Report on Form 8-K, including the Transaction Documents as exhibits thereto, with the Commission within the time required by the Exchange Act. From and after the issuance of such press release, the Company represents to the Purchasers that it shall have publicly disclosed all material, non-public information delivered to any of the Purchasers by the Company or any of its Subsidiaries, or any of their respective officers, directors, employees or agents in connection with the transactions contemplated by the Transaction Documents. In addition, effective upon the issuance of such press release, the Company acknowledges and agrees that any and all confidentiality or similar obligations under any agreement, whether written or oral, between the Company, any of its Subsidiaries or any of their respective officers, directors, agents, employees or Affiliates on the one hand, and any of the Purchasers or any of their Affiliates on the other hand, shall terminate. The Company and each Purchaser shall consult with each other in issuing any other press releases with respect to the transactions contemplated hereby, and neither the Company nor any Purchaser shall issue any such press release nor otherwise make any such public statement without the prior consent of the Company, with respect to any press release of any Purchaser, or without the prior consent of each Purchaser, with respect to any press release of the Company, which consent shall not unreasonably be withheld or delayed, except if such disclosure is required by law, in which case the disclosing party shall promptly provide the other party with prior notice of such public statement or communication. Notwithstanding the foregoing, the Company shall not publicly disclose the name of any Purchaser, or include the name of any Purchaser in any filing with the Commission or any regulatory agency or Trading Market, without the prior written consent of such Purchaser, except (a) as required by federal securities law in connection with the filing of final Transaction Documents with the Commission and (b) to the extent such disclosure is required by law or Trading Market regulations, in which case the Company shall provide the Purchasers with prior notice of such disclosure permitted under this clause (b).

4.4     <u>Shareholder Rights Plan</u>. No claim will be made or enforced by the Company or, with the consent of the Company, any other Person, that any Purchaser is an "<u>Acquiring Person</u>" under any control share acquisition, business combination, poison pill (including any distribution under a rights agreement) or similar anti-takeover plan or arrangement in effect or hereafter adopted by the Company, or that any Purchaser could be deemed to trigger the provisions of any such plan or arrangement, by virtue of receiving Shares under the Transaction Documents or under any other agreement between the Company and the Purchasers.

4.5     <u>Non-Public Information</u>. Except with respect to the material terms and conditions of the transactions contemplated by the Transaction Documents, which shall be disclosed pursuant to Section 4.3, the Company covenants and agrees that neither it, nor any other Person acting on its behalf will provide any Purchaser or its agents or counsel with any information that constitutes, or the Company reasonably believes constitutes, material non-public information, unless prior thereto such Purchaser shall have consented to the receipt of such information and agreed with the Company to keep such information confidential. The Company understands and confirms that each Purchaser shall be relying on the foregoing covenant in effecting transactions in securities of the Company. To the extent that the Company delivers any material, non-public information to a Purchaser without such Purchaser's consent, the Company hereby covenants and agrees that such Purchaser shall not have any duty of confidentiality to the Company, any of its Subsidiaries, or any of their respective officers, directors, agents, employees or Affiliates, or a duty to the Company, any of its Subsidiaries or any of their respective officers, directors, agents, employees or Affiliates not to trade on the basis of, such material, non-public information, provided that the Purchaser shall remain subject to applicable law. To the extent that any notice provided pursuant to any Transaction Document constitutes, or contains, material, non-public information regarding the Company or any Subsidiaries, the Company shall simultaneously file such notice with the Commission pursuant to a Current Report on Form 8-K. The Company understands and confirms that each Purchaser shall be relying on the foregoing covenant in effecting transactions in securities of the Company.

4.6     <u>Use of Proceeds</u>. Except as set forth in the Prospectus Supplement, the Company shall use the net proceeds from the sale of the Shares hereunder for working capital purposes and shall not use such proceeds: (a) for the redemption of any Common Stock or Common Stock Equivalents, (b) for the settlement of any outstanding litigation or (c) in violation of FCPA or OFAC regulations.

5.5      Amendments; Waivers. No provision of this Agreement may be waived, modified, supplemented or amended except in a written instrument signed, in the case of an amendment, by the Company and Purchasers which purchased at least 50.1% in interest of the Shares based on the initial Subscription Amounts hereunder or, in the case of a waiver, by the party against whom enforcement of any such waived provision is sought, provided that if any amendment, modification or waiver disproportionately and adversely impacts a Purchaser (or group of Purchasers), the consent of such disproportionately impacted Purchaser (or group of Purchasers) shall also be required. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any subsequent default or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of any party to exercise any right hereunder in any manner impair the exercise of any such right. Any proposed amendment or waiver that disproportionately, materially and adversely affects the rights and obligations of any Purchaser relative to the comparable rights and obligations of the other Purchasers shall require the prior written consent of such adversely affected Purchaser. Any amendment effected in accordance with this Section 5.5 shall be binding upon each Purchaser and holder of Shares and the Company.

5.6      Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

5.7      Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their successors and permitted assigns. The Company may not assign this Agreement or any rights or obligations hereunder without the prior written consent of each Purchaser (other than by merger). Any Purchaser may assign any or all of its rights under this Agreement to any Person to whom such Purchaser assigns or transfers any Shares, provided that such transferee agrees in writing to be bound, with respect to the transferred Shares, by the provisions of the Transaction Documents that apply to the "Purchasers."

5.8      No Third-Party Beneficiaries. The Placement Agent shall be the third party beneficiary of the representations and warranties of the Company in Section 3.1 and the representations and warranties of the Purchasers in Section 3.2. This Agreement is intended for the benefit of the parties hereto and their respective successors and permitted assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other Person, except as otherwise set forth in Section 4.7 and this Section 5.8.

5.9      Governing Law. All questions concerning the construction, validity, enforcement and interpretation of the Transaction Documents shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of law thereof. Each party agrees that all legal Proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Agreement and any other Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, partners, members, employees or agents) shall be commenced exclusively in the state and federal courts sitting in the City of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any Action or Proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such Action or Proceeding is improper or is an inconvenient venue for such Proceeding. Each party hereby irrevocably waives personal service of process and consents to process being served in any such Action or Proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by law. If any party shall commence an Action or Proceeding to enforce any provisions of the Transaction Documents, then, in addition to the obligations of the Company under Section 4.7, the prevailing party in such Action or Proceeding shall be reimbursed by the non-prevailing party for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution of such Action or Proceeding.

5.10     Survival. The representations and warranties contained herein shall survive the Closing and the delivery of the Shares.

5.11     Execution. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to each other party, it being understood that the parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

17

Abraham Declaration Exhibit 164
(EW-AUG0004569-94)

Message

**From:** Linda Mackay [linda@theseg.com]
**Sent:** 6/16/2020 5:20:53 PM
**To:** Dan Ripp [dan.ripp@bradleywoods.com]
**CC:** Jonathan Schechter [shex@theseg.com]
**Subject:** Docs
**Attachments:** GNUS Investor Delivery Information 5.28.20.xlsx; GNUS May 28, 2020 Investor Sig Pages.pdf; GNUS May 28, 2020 Investor Waiver Sig Pages.pdf; Company SPA Sig Page.pdf; Company Waiver Sig Page.pdf

Hi Dan,

Attached please find the investor schedule and signature pages related to the GNUS $30,000,000 placement. Please let me know if you need anything else.

Best,

Linda


Linda Mackay
Senior Vice President
Corporate Client Services
The Special Equities Group "SEG"

150 E.58th St., 28th Floor
New York, NY 10155
Direct 212-258-2342
Cell 917-676-5497
Fax 347-801-2502
linda@TheSEG.com



The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************

This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*********************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

                                                                                 EW-AUG0004570

# Document Produced Natively

Confidential

| TAX ID | $ Amount | Share Amount | ADDRESS FOR NOTICE TO PURCHASER | DWAC | Email |
|---|---|---|---|---|---|
| 98-0538788 | $ 10,162,500.00 | 6,775,000 | c/o Anson Advisors Inc.<br>155 University Ave., Suite 207<br>Toronto, Ontario CANADA M5H 3B7<br>Attn: Amin Nathoo | TD Bank                    DTC<br>5036                    Account<br># 5J5636F | notices@ansonfunds.com |
| 98-1241877 | $ 1,125,000.00 | 750,000 | 161A Shedden Road, 1 Artillery Court<br>P.O. Box 10085<br>Grand Cayman, KY1-1001, Cayman Islands | Fifth Third Bank<br>DTC 2116<br>Account # 010039628462 | dfeldman@l1capitalglobal.com |
| 38-3922633 | $ 60,000.00 | 40,000 | c/o Empery Asset Management, LP<br>1 Rockefeller Plz., Ste 1205<br>New York, NY 10020<br>Attn: Ryan Lane | Fidelity<br>DTC 0226<br>Account # 752-004149 | notices@emperyam.com |
| 83-3945137 | $ 5,700,000.00 | 3,800,000 | c/o Empery Asset Management, LP<br>1 Rockefeller Plz., Ste 1205<br>New York, NY 10020<br>Attn: Ryan Lane | Fidelity<br>DTC 0226<br>Account # 752-020913 | notices@emperyam.com |
| 98-0571318 | $ 240,000.00 | 160,000 | c/o Empery Asset Management, LP<br>1 Rockefeller Plz., Ste 1205<br>New York, NY 10020<br>Attn: Ryan Lane | Fidelity<br>DTC 0226<br>Account # 752-004171 | notices@emperyam.com |
| 98-0445485 | $ 2,500,000.50 | 1,666,667 | Iroquois Master Fund<br>c/o Iroquois Capital Mgmt<br>125 Park Ave., 25th Fl.<br>New York, NY 10017 | Goldman Sachs<br>DTC 0005<br>Account # ATH8 | kpage@icfund.com |
| 47-2779272 | $ 3,499,999.50 | 2,333,333 | Iroquois Capital Mgmt<br>125 Park Ave., 25th Fl.<br>New York, NY 10017 | Goldman Sachs<br>DTC 0005<br>Account # ATH7 | rabbe@icfund.com |
| 98-1072321 | $ 750,000.00 | 500,000 | c/o Brio Capital Management LLC<br>100 Merrick Road Suite 401W<br>Rockville Centre, NY 11570 | US Bank                    DTC<br>2803                    Account #<br>001051004248 | shaye@briocapital.com |
| 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 | $ 112,500.00 | 75,000 | Richard Molinsky<br>51 Lords Hwy East<br>Weston, CT 06883 | Wells Fargo<br>DTC 0141<br>Account # 8370-0550 | rmol15@aol.com |
| 51-0395476 | $ 5,850,000.00 | 3,900,000 | c/o Heights Capital Management<br>101 California St., Suite 3250<br>San Francisco, CA 94111 | Merrill Lynch<br>DTC # 5198<br>Account # 11401315D0 | winer@sig.com |

$    30,000,000    20,000,000

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: RICHARD MOLINSKY

Signature of Authorized Signatory of Purchaser: *(signature)*

Name of Authorized Signatory:

Title of Authorized Signatory:

Email Address of Authorized Signatory: RMOL15@AOL.COM

Facsimile Number of Authorized Signatory: 203 222-4977

Address for Notice to Purchaser: 51 LORD'S HWY EAST WESTON, CT 06883

Address for Delivery of Shares to Purchaser (if not same as address for notice): WELLS FARGO ADVISORS DWAC instructions ACCT NAME: RICHARD MOLINSKY ACCT # 8370-0550 DTC # 0141

Subscription Amount: $ 112,500

Shares: 75,000

[SIGNATURE PAGES CONTINUE]

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Brio Capital Master Fund Ltd.

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: Shaye Hirsch

Title of Authorized Signatory: Director

Email Address of Authorized Signatory: shaye@briocapital.com

Facsimile Number of Authorized Signatory: 646-390-2158

Address for Notice to Purchaser:

c/o Brio Capital Management LLC
100 Merrick Road, Suite 401W
Rockville Centre, NY 11570

Address for Delivery of Shares to Purchaser (if not same as address for notice):

DTC #2803; US Bank
Account: Brio Capital Master Fund Ltd.
Acc. #: 001051004248

Subscription Amount: $ 750,000

Shares: 500,000

[SIGNATURE PAGES CONTINUE]

Confidential                                                     EW-AUG0004573

[PURCHASER SIGNATURE PAGES TO GNUS
SECURITIES PURCHASE AGREEMENT]

**IN WITNESS WHEREOF**, the undersigned have caused this Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Empery Debt Opportunity Fund, LP

By: Empery Asset Management, LP, its authorized agent

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: Brett Director

Title of Authorized Signatory: General Counsel of Empery Asset Management, LP

Email Address of Authorized Signatory: notices@emperyam.com

Address for Notice to Purchaser:    c/o Empery Asset Management, LP
1 Rockefeller Plaza, Suite 1205
New York, NY 10020

Address for Delivery of Securities to Purchaser (if not same as address for notice): Same

Subscription Amount: $5,700,000.00

Shares: 3,800,000

3

Confidential

EW-AUG0004574

**[PURCHASER SIGNATURE PAGES TO GNUS
SECURITIES PURCHASE AGREEMENT]**

**IN WITNESS WHEREOF**, the undersigned have caused this Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Empery Tax Efficient, LP

By: Empery Asset Management, LP, its authorized agent

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: Brett Director

Title of Authorized Signatory: General Counsel of Empery Asset Management, LP

Email Address of Authorized Signatory: notices@emperyam.com

Address for Notice to Purchaser:      c/o Empery Asset Management, LP
                                      1 Rockefeller Plaza, Suite 1205
                                      New York, NY 10020

Address for Delivery of Securities to Purchaser (if not same as address for notice): Same

Subscription Amount: $60,000.00

Shares: 40,000

[SIGNATURE PAGES CONTINUE]

2

Confidential

EW-AUG0004575

**[PURCHASER SIGNATURE PAGES TO GNUS
SECURITIES PURCHASE AGREEMENT]**

**IN WITNESS WHEREOF**, the undersigned have caused this Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Empery Asset Master, LTD

By: Empery Asset Management, LP, its authorized agent

*Signature of Authorized Signatory of Purchaser*: _____

Name of Authorized Signatory: Brett Director

Title of Authorized Signatory: General Counsel of Empery Asset Management, LP

Email Address of Authorized Signatory: notices@emperyam.com

Address for Notice to Purchaser:     c/o Empery Asset Management, LP
1 Rockefeller Plaza, Suite 1205
New York, NY 10020

Address for Delivery of Securities to Purchaser (if not same as address for notice): Same

Subscription Amount: $240,000.00

Shares: 160,000

[SIGNATURE PAGES CONTINUE]

1

Confidential

EW-AUG0004576

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Iroquois Capital Investment Group LLC

*Signature of Authorized Signatory of Purchaser:*

Name of Authorized Signatory: Richard Abbe

Title of Authorized Signatory: Managing Member

Email Address of Authorized Signatory: rabbe@icfund.com

Facsimile Number of Authorized Signatory:

Address for Notice to Purchaser:

125 Park Avenue, 25th Floor
New York, New York 10017

Address for Delivery of Shares to Purchaser (if not same as address for notice):

DTC: 0005/ Goldman Sachs
A/c#: ATH7

Subscription Amount: $ 3,499,999.50

Shares: 2,333,333

[SIGNATURE PAGES CONTINUE]

Confidential

EW-AUG0004577

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: Iroquois Master Fund Ltd.

*Signature of Authorized Signatory of Purchaser:*

Name of Authorized Signatory: Kimberly Page

Title of Authorized Signatory: General Partner, Director

Email Address of Authorized Signatory: kpage@icfund.com

Facsimile Number of Authorized Signatory:

Address for Notice to Purchaser:

125 Park Avenue, 25th Floor
New York, New York 10017

Address for Delivery of Shares to Purchaser (if not same as address for notice):

DTC: 0005/ Goldman Sachs
A/c#: ATH8

Subscription Amount: $2,500,000.50

Shares: 1,666,667

[SIGNATURE PAGES CONTINUE]

EW-AUG0004578

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: L1 Capital Global Opportunities Master Fund

_____

Signature of Authorized Signatory of Purchaser: _____

Name of Authorized Signatory: David Feldman

_____

Title of Authorized Signatory: Director_____

Email Address of Authorized Signatory: dfeldman@l1capitalglobal.com

_____

Facsimile Number of Authorized Signatory: _____

Address for Notice to Purchaser: 161A Shedden Road, 1 Artillery Court, PO Box 10085 Grand Cayman KY1-1001, Cayman Islands

Address for Delivery of Shares to Purchaser (if not same as address for notice):

Fifth Third Bank
Receiving broker's DTC Participant #
2116
Shareholders brokerage account number
010039628462

Subscription Amount: $_1,125,000_____

Shares: __750,000_____

[SIGNATURE PAGES CONTINUE]

Confidential                                                              EW-AUG0004579

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser:           ANSON INVESTMENTS MASTER FUND LP

Signature of Authorized Signatory of Purchaser: _____

Name of Authorized Signatory:           AMIN NATHOO

Title of Authorized Signatory:           Director, Anson Advisors Inc.

Email Address of Authorized Signatory:           notices@ansonfunds.com

Facsimile Number of Authorized Signatory:           416.352.1880

Address for Notice to Purchaser:           155 UNIVERSITY AVENUE, SUITE 207
TORONTO, ONTARIO, CANADA
M5H 3B7
ATTN: AMIN NATHOO


Address for Delivery of Securities to Purchaser (if not same as address for notice):
                                        SAME AS ABOVE

DWAC for Shares:
Broker:         TD Bank
Broker No:      5036
Account No:     5J5637D
Account Name:   Anson Investments Master Fund LP


Subscription Amount:    $10,162,500.00
Shares:                 6,775,000


[SIGNATURE PAGES CONTINUE]

Confidential                                                    EW-AUG0004580

[PURCHASER SIGNATURE PAGES TO GNUS SECURITIES PURCHASE AGREEMENT]

IN WITNESS WHEREOF, the undersigned have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

Name of Purchaser: CVI Investments, Inc.

Signature of Authorized Signatory of Purchaser: _____

Name of Authorized Signatory: Martin Kobinger

Title of Authorized Signatory: Investment Manager

Email Address of Authorized Signatory:winer@sig.com and winer@sig.com

Facsimile Number of Authorized Signatory: (415) 403-6525

Address for Notice to Purchaser:

Address for Delivery of Shares to Purchaser (if not same as address for notice):

Subscription Amount: $5,850,000

Shares: 3,900,000

[SIGNATURE PAGES CONTINUE]

Confidential

EW-AUG0004581

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.


<u>CVI Investments, Inc.</u>
[Print Name of Holder]


[Signature]

Name: Martin Kobinger
Title: Investment Manager

Original Subscription Amount: $1,000,000

Confidential

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

[Print Name of Holder]  RICHARD  MOLINSKI

[Signature]

Name:

Title:

Original Subscription Amount:
$_____ 112,500           For  75,000 SHARES @ 1.50

Confidential

EW-AUG0004583

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Brio Capital Master Fund Ltd.
[Print Name of Holder]


[Signature]

Name: Shaye Hirsch
Title:    Director

Original Subscription Amount:
$     750,000

EW-AUG0004584

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Empery Asset Master, LTD
By: Empery Asset Management, LP, its
authorized agent

_____
[Print Name of Holder]

_____
[Signature]

Name: Brett S. Director
Title: General Counsel

Original Subscription Amount: $75,000.00

4

Confidential                                                                                      EW-AUG0004585

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Empery Tax Efficient, LP
By: Empery Asset Management, LP, its
authorized agent

_____
[Print Name of Holder]

_____
[Signature]

Name:  Brett S. Director
Title: General Counsel

Original Subscription Amount: $18,750.00

5

Confidential

EW-AUG0004586

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Legacy I&N Opportunity Fund, LP
By: Legacy Asset Management, LP, its
authorized agent

_____
[Print Name of Holder]

_____
[Signature]

Name: Brett S. Director
Title: General Counsel

Original Subscription Amount: $1,711,233.00

6

Confidential                                                  EW-AUG0004587

Confidential

EW-AUG0004588

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Iroquois Master Fund Ltd.
[Print Name of Holder]

[Signature]

Name:  Kimberly Page

Title:  General Partners, Director

Original Subscription Amount:
$_____

Confidential

EW-AUG0004589

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Iroquois Capital Investment Group LLC
_____
[Print Name of Holder]

_____
[Signature]

Name:  Richard Abbe
Title:  Managing Member

Original Subscription Amount:
$_____

Confidential

EW-AUG0004590

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

L1 Capital Global Opportunities Master Fund
_____
[Print Name of Holder]


_____
[Signature]

Name:  David Feldman
Title: Director

Original Subscription Amount:
$___600,000_____

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

Anson Investments Master Fund LP

_____
[Print Name of Holder]

_____
[Signature]

Name:  Amin Nathoo
Title: Director, Anson Advisors Inc.

Original Subscription Amount:
$3,000,000.00

Confidential

IN WITNESS WHEREOF, the parties hereto have caused this Securities Purchase Agreement to be duly executed by their respective authorized signatories as of the date first indicated above.

**GENIUS BRANDS INTERNATIONAL, INC.**

By: _____

    Name: Michael Jaffa
    Title: General Counsel & Corporate Secretary

Address for Notice:
Genius Brands International, Inc.
190 N. Canon Drive, 4th Fl. Beverly Hills, CA 90211
E-Mail:
Fax:

With a copy to (which shall not constitute notice):

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
666 Third Avenue
New York, New York 10017
Facsimile: (212) 983-3115
jschultz@mintz.com
Attention: Jeffrey Schultz, Esq.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK
SIGNATURE PAGE FOR PURCHASER FOLLOWS]

Confidential

EW-AUG0004593

IN WITNESS WHEREOF, the parties hereto have caused this Waiver and Consent to be executed by the undersigned, thereunto duly authorized, as of the date first set forth above.

GENIUS BRANDS INTERNATIONAL, INC.

Name: Michell Toffler

Title: General Counsel & corporate secretary

[*Investor Signature Pages Follow*]

Abraham Declaration Exhibit 165
(HB-GENIUS0000180-81)

Message

**From:** Joe Reda [reda@theseg.com]
**Sent:** 5/7/2020 2:18:08 PM
**To:** George Antonopoulos [███████@hudsonbaycapital.com]
**CC:** Jonathan Schechter [shex@theseg.com]; Yoav Roth [███@hudsonbaycapital.com]; Rick Allison [████@HUDSONBAYCAPITAL.COM]
**Subject:** Re: GNUS - thanks for the heads up guys

All debt holders have world by the balls.

TRNX?
VUZI??

show me reverse inquiries.

Sent from my iPhone

On May 7, 2020, at 10:14 AM, George Antonopoulos <███████@hudsonbaycapital.com> wrote:

Fair enough - good for them and you guys. Thing is going nuts.

[http://www.hudsonbaycapital.com/i/HBC_Reply.png]
        George Antonopoulos
Managing Partner
████████@hudsonbaycapital.com<mailto:███████@hudsonbaycapital.com>
████████████████          direct  +1 212.571.1244<tel:1%20212.571.1244>    main

From: Joe Reda <reda@theseg.com>
Sent: Thursday, May 7, 2020 10:11 AM
To: George Antonopoulos <███████@hudsonbaycapital.com>; Jonathan Schechter <shex@theseg.com>
Cc: Yoav Roth <████@hudsonbaycapital.com>; Rick Allison <███████@HUDSONBAYCAPITAL.COM>
Subject: RE: GNUS - thanks for the heads up guys

You PASSED ON THE DEBT DEAL

That's who has all the rights

Nothing to show u

Show me reverse on vuzi and trnx

From: George Antonopoulos [mailto:███████@hudsonbaycapital.com]
Sent: Thursday, May 07, 2020 10:10 AM
To: Joe Reda <reda@theseg.com<mailto:reda@theseg.com>>; Jonathan Schechter <shex@theseg.com<mailto:shex@theseg.com>>
Cc: Yoav Roth <████@hudsonbaycapital.com<mailto:████@hudsonbaycapital.com>>; Rick Allison <███████@HUDSONBAYCAPITAL.COM<mailto:██████HUDSONBAYCAPITAL.COM>>
Subject: GNUS - thanks for the heads up guys

<image001.jpg>

George Antonopoulos
Portfolio Manager
Managing Partner
████████@hudsonbaycapital.com<mailto:███████@hudsonbaycapital.com>

direct

+1 212.571.1244<tel:1%20212.571.1244>

main

+1 212.571.1279<tel:1%20212.571.1279>

fax

████████████████████████

mobile

Hudson Bay Capital Management LP • 777 Third Avenue, 30th Floor • New York, NY 10017

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not the intended recipient(s) of this communication please contact the sender and delete all copies immediately. Unless otherwise stated, this communication does not constitute a solicitation for any investments or any investment products. This material has been prepared based upon information that Hudson Bay Capital Management LP believes to be reliable. Hudson Bay Capital Management does not accept any responsibility to update any opinions or other information contained in this email.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
**************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not the intended recipient(s) of this communication please contact the sender and delete all copies immediately. Unless otherwise stated, this communication does not constitute a solicitation for any investments or any investment products. This material has been prepared based upon information that Hudson Bay Capital Management LP believes to be reliable. Hudson Bay Capital Management does not accept any responsibility to update any opinions or other information contained in this email.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
**************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

Confidential

Abraham Declaration Exhibit 166
(HB-GENIUS0000214-17)

Message
_____

**From:**        George Antonopoulos [▮▮▮▮▮▮▮▮@hudsonbaycapital.com]
**Sent:**        5/28/2020 6:22:01 PM
**To:**          Joe Reda [reda@theseg.com]
**CC:**          Jonathan Schechter [shex@theseg.com]
**Subject:**     RE: gnus


Geez - that was quick..thanks



[http://www.hudsonbaycapital.com/i/HBC_Reply.png]
        George Antonopoulos
Managing Partner
▮▮▮▮▮▮▮@hudsonbaycapital.com<mailto:▮▮▮▮▮▮▮@hudsonbaycapital.com>
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                      direct  +1 212.571.1244<tel:1%20212.571.1244>   main


From: Joe Reda <reda@theseg.com>
Sent: Thursday, May 28, 2020 1:35 PM
To: George Antonopoulos <▮▮▮▮▮▮▮@hudsonbaycapital.com>
Cc: Jonathan Schechter <shex@theseg.com>
Subject: Re: gnus

Tied up 50 ways from Sunday
Sent from my iPhone


On May 28, 2020, at 1:32 PM, George Antonopoulos
<▮▮▮▮▮▮▮@hudsonbaycapital.com<mailto:▮▮▮▮▮▮▮@hudsonbaycapital.com>> wrote:

Very true - you're the company banker. You can squeeze us in, be nice



[http://www.hudsonbaycapital.com/i/HBC_Reply.png]

George Antonopoulos
Managing Partner
▮▮▮▮▮▮▮@hudsonbaycapital.com<mailto:▮▮▮▮▮▮▮@hudsonbaycapital.com>
▮▮▮▮▮▮▮▮▮▮▮

direct

+1 212.571.1244<tel:1%20212.571.1244>

main



From: Joe Reda <reda@theseg.com<mailto:reda@theseg.com>>
Sent: Thursday, May 28, 2020 1:22 PM
To: George Antonopoulos <▮▮▮▮▮▮▮@hudsonbaycapital.com<mailto:▮▮▮▮▮▮▮hudsonbaycapital.com>>
Cc: Jonathan Schechter <shex@theseg.com<mailto:shex@theseg.com>>
Subject: Re: gnus

Not true.
Sent from my iPhone



On May 28, 2020, at 1:21 PM, George Antonopoulos
<▮▮▮▮▮▮▮@hudsonbaycapital.com<mailto:▮▮▮▮▮▮▮@hudsonbaycapital.com>> wrote:

I don't accept that answer - you can get us in there if they do something, I have faith in you



[http://www.hudsonbaycapital.com/i/HBC_Reply.png]

George Antonopoulos
Managing Partner

Confidential                                                    HB-GENIUS0000214

██████████████ @hudsonbaycapital.com<mailto:████████████ @hudsonbaycapital.com>

direct

+1 212.571.1244<tel:1%20212.571.1244>

main


From: Joe Reda <reda@theseg.com<mailto:reda@theseg.com>>
Sent: Thursday, May 28, 2020 1:20 PM
To: George Antonopoulos <████████ @hudsonbaycapital.com<mailto:████████ @hudsonbaycapital.com>>
Cc: Jonathan Schechter <shex@theseg.com<mailto:shex@theseg.com>>
Subject: Re: gnus

Party left the building.    Let's focus on NEW NAMES.
Sent from my iPhone



On May 28, 2020, at 1:19 PM, George Antonopoulos
<████████ @hudsonbaycapital.com<mailto:████████ @hudsonbaycapital.com>> wrote:

I know you did — we can still be involved in a new deal. Get us involved if you do something new

We will look at the rest as well


[http://www.hudsonbaycapital.com/i/HBC_Reply.png]

George Antonopoulos
Managing Partner
██████████ @hudsonbaycapital.com<mailto:████████ @hudsonbaycapital.com>

direct

+1 212.571.1244<tel:1%20212.571.1244>

main


From: Joe Reda <reda@theseg.com<mailto:reda@theseg.com>>
Sent: Thursday, May 28, 2020 1:18 PM
To: George Antonopoulos <████████ @hudsonbaycapital.com<mailto:████████ @hudsonbaycapital.com>>
Cc: Jonathan Schechter <shex@theseg.com<mailto:shex@theseg.com>>
Subject: Re: gnus

Showed you that debt deal.    Look at my list.  Find ones you like.   6 funds own that one unfort.


Sent from my iPhone



On May 28, 2020, at 1:14 PM, George Antonopoulos
<████████ @hudsonbaycapital.com<mailto:████████ @hudsonbaycapital.com>> wrote:

We should try and do some deal for GNUS — stock is going crazy


[http://www.hudsonbaycapital.com/i/HBC_NewEmail.png]

George Antonopoulos
Portfolio Manager
Managing Partner
██████████ @hudsonbaycapital.com<mailto:████████ @hudsonbaycapital.com>

direct

Confidential

HB-GENIUS0000215

+1 212.571.1244<tel:1%20212.571.1244>

main

+1 212.571.1279<tel:1%20212.571.1279>

fax

███████████████████████

mobile


Hudson Bay Capital Management LP • 777 Third Avenue, 30th Floor • New York, NY 10017


The information transmitted is intended only for the person or entity to which it is addressed and may
contain confidential and/or privileged material. If you are not the intended recipient(s) of this
communication please contact the sender and delete all copies immediately. Unless otherwise stated, this
communication does not constitute a solicitation for any investments or any investment products. This
material has been prepared based upon information that Hudson Bay Capital Management LP believes to be
reliable. Hudson Bay Capital Management does not accept any responsibility to update any opinions or
other information contained in this email.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
***************************************************************** This email is only for use by the
intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR
OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review,
dissemination, replication or distribution of this communication and any attachments is strictly
prohibited. If you have received this communication in error, then please delete this email, any and all
attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward
this message, or any portion thereof, including any attachments, by any means to any other person
whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the
information in this communication nor any opinion or recommendation expressed herein constitutes an offer
to buy or sell any securities. The contents of this communication are for information purposes only, and
should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product.
Attachments that are part of an electronic communication may have additional important disclosures and
disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in
no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods
and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The information transmitted is intended only for the person or entity to which it is addressed and may
contain confidential and/or privileged material. If you are not the intended recipient(s) of this
communication please contact the sender and delete all copies immediately. Unless otherwise stated, this
communication does not constitute a solicitation for any investments or any investment products. This
material has been prepared based upon information that Hudson Bay Capital Management LP believes to be
reliable. Hudson Bay Capital Management does not accept any responsibility to update any opinions or
other information contained in this email.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
***************************************************************** This email is only for use by the
intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR
OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review,
dissemination, replication or distribution of this communication and any attachments is strictly
prohibited. If you have received this communication in error, then please delete this email, any and all
attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward
this message, or any portion thereof, including any attachments, by any means to any other person
whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the
information in this communication nor any opinion or recommendation expressed herein constitutes an offer
to buy or sell any securities. The contents of this communication are for information purposes only, and
should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product.
Attachments that are part of an electronic communication may have additional important disclosures and
disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in
no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods
and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The information transmitted is intended only for the person or entity to which it is addressed and may
contain confidential and/or privileged material. If you are not the intended recipient(s) of this
communication please contact the sender and delete all copies immediately. Unless otherwise stated, this
communication does not constitute a solicitation for any investments or any investment products. This
material has been prepared based upon information that Hudson Bay Capital Management LP believes to be
reliable. Hudson Bay Capital Management does not accept any responsibility to update any opinions or
other information contained in this email.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
***************************************************************** This email is only for use by the
intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR
OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review,
dissemination, replication or distribution of this communication and any attachments is strictly

prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not the intended recipient(s) of this communication please contact the sender and delete all copies immediately. Unless otherwise stated, this communication does not constitute a solicitation for any investments or any investment products. This material has been prepared based upon information that Hudson Bay Capital Management LP believes to be reliable. Hudson Bay Capital Management does not accept any responsibility to update any opinions or other information contained in this email.
The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not the intended recipient(s) of this communication please contact the sender and delete all copies immediately. Unless otherwise stated, this communication does not constitute a solicitation for any investments or any investment products. This material has been prepared based upon information that Hudson Bay Capital Management LP believes to be reliable. Hudson Bay Capital Management does not accept any responsibility to update any opinions or other information contained in this email.

Abraham Declaration Exhibit 167 (Excerpt of Genius's Form 10-Q Quarterly Report, filed November 16, 2020)

Table of Contents

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**

**FORM 10-Q**

(Mark One)

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended September 30, 2020**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission file number: 001-37950**

**GENIUS BRANDS INTERNATIONAL, INC.**
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Nevada** | **20-4118216** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **190 N. Canon Drive, 4th FL** **Beverly Hills, CA** | **90210** |
| (Address of principal executive offices) | (Zip Code) |

**310-273-4222**
(Registrant's telephone number, including area code)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| **Common Stock, par value $0.001 per share** | **GNUS** | **The Nasdaq Capital Market** |

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☒ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | |
|---|---|
| Large accelerated filer ☐ | Accelerated filer ☐ |
| Non-accelerated filer ☒ | Smaller reporting company ☒ |
| | Emerging growth company ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☒

**Note 14: Stockholders' Equity**

*Common Stock*

As of September 30, 2020, the total number of authorized shares of Common Stock was 400,000,000.

On January 8, 2020, the Company issued 43,077 shares of Common Stock valued at $0.65 per share to a provider for investor relations services.

On January 15, 2020, the Company issued 3,171,428 shares of Common Stock in exchange for 667 shares of Preferred Stock at a conversion price of $0.21 per share.

On January 22, 2020, the Company entered into the Private Transaction pursuant to the Agreement with the holder of the Original Warrants. The Original Warrants were originally issued on October 3, 2017, to purchase an aggregate of 500,000 shares of Common Stock, at an exercise price of $3.90 per share and were to expire in October 2022.

Pursuant to the Agreement, the holder of the Original Warrants and the Company agreed that such Original Warrant holder would exercise its Original Warrants in full and the Company would amend the Original Warrants to reduce the exercise price thereof to the Amended Exercise Price. The Company received approximately $170,000 from the exercise of the Original Warrants.

On March 22, 2020, the Company entered into the Purchase Agreement with the Investors, pursuant to which the Company agreed to issue and sell, in the Registered Offering, an aggregate of 4,000,000 shares Common Stock at an offering price of $0.2568 per share for gross proceeds of approximately $1.0 million before deducting offering expenses. The Registered Offering closed on March 25, 2020.

On May 7, 2020, we entered into a Securities Purchase Agreement with the May 7th Investors, pursuant to which we agreed to issue and sell, in a registered direct offering by the Company directly to the May 7th Investors, an aggregate of 8,000,000 shares of our Common Stock, at an offering price of $0.35 per share for gross proceeds of approximately $2.8 million before deducting offering expenses.

On May 8, 2020, we entered into a Securities Purchase Agreement with the May 8th Investors, pursuant to which we agreed to issue and sell, in a registered direct offering by the Company directly to the May 8th Investors, an aggregate of 12,000,000 shares of our Common Stock, at an offering price of $0.454 per share for gross proceeds of approximately $5.448 million before deducting offering expenses.

On May 18, 2020, we entered into a Securities Purchase Agreement with the May 18th Investors, pursuant to which we agreed to issue and sell, in a registered direct offering by the Company directly to the May 18th Investors, an aggregate of 7,500,000 shares of our Common Stock, at an offering price of $1.20 per share for gross proceeds of approximately $9.0 million before deducting offering expenses.

On May 28, 2020, we entered into a Securities Purchase Agreement with the May 28th Investors, pursuant to which we agreed to issue and sell, in a registered direct offering by the Company directly to the May 28th Investors, an aggregate of 20,000,000 shares of our Common Stock, at an offering price of $1.50 per share for gross proceeds of approximately $30.0 million before deducting offering expenses.

Between May 18 and June 11, 2020, the Company received $5,649,319, net of expenses, from the exercise of 29,666,283 warrants at an exercise price of $0.21 per share.

Between May 15 and June 19, 2020 certain warrant holders exercised 50,014,895 warrants in cashless transactions resulting in the issuance of 45,000,428 shares of Common Stock.

Between May 18 and June 24, 2020, the Company issued 1,571,430 shares of Common Stock in exchange for 330 shares of Preferred Stock at a conversion price of $0.21 per share.

25

On June 22, 2020, the Company issued 49,610 shares of Common Stock valued at $3.85 per share to a provider for investor relations services.

Between June 10 and June 23, 2020, the 2020 Convertible Notes were converted and repaid through the issuance of 65,476,190 shares of Common Stock.

On July 15, 2020, the Company issued 32,609 shares of Common Stock valued at $2.30 per share to a provider for marketing services.

On July 21, 2020, the Company received $55,011, net of expenses, from the exercise of 16,670 warrants at an exercise price of $0.454.

On July 22, 2020, the Company issued 124,451 shares of Common Stock valued at $2.30 per share to a provider for marketing services

As of September 30, 2020, and December 31, 2019, there were 219,029,900 and 21,877,724 shares of Common Stock outstanding, respectively.

*Preferred Stock*

The Company has 10,000,000 shares of preferred stock authorized with a par value of $0.001 per share (the "Preferred Stock"). The Board of Directors is authorized, subject to any limitations prescribed by law, without further vote or action by our stockholders, to issue from time to time shares of Preferred Stock in one or more series. Each series of Preferred Stock will have such number of shares, designations, preferences, voting powers, qualifications and special or relative rights or privileges as shall be determined by our Board of Directors, which may include, among others, dividend rights, voting rights, liquidation preferences, conversion rights and preemptive rights.

As of September 30, 2020, and December 31, 2019, there were 100 and 1,097 shares of Series A Convertible Preferred Stock outstanding, respectively.

On February 19, 2019, the Company entered into a Securities Purchase Agreement with a certain accredited investor pursuant to which we sold 945,894 shares of Common Stock and warrants to purchase up to 945,894 shares of our Common Stock at 2.12 per share. As a result, the conversion price of the Series A Convertible Preferred Stock decreased to $2.12. This decrease resulted in a beneficial conversion feature of $322,240 which was recognized February 19, 2019.

Between October 4, 2019 and October 22, 2019, the Company issued 296,053 shares of Common Stock in exchange for 225 shares of Series A Convertible Preferred Stock at a conversion price of $0.76 per share.

On November 20, 2019, we entered into a settlement agreement and release ("Settlement Agreement") with certain holders of our Series A Convertible Preferred Stock (each, a "Preferred Holder" and collectively, the "Preferred Holders") constituting 58% of the outstanding Series A Preferred Stock in connection with a dispute that arose between the parties with respect to certain rights under the Certificate of Designations. Pursuant to the Settlement Agreement, we agreed to adjust the conversion price of the Series A Convertible Preferred Stock to $0.21 and the parties agreed to terminate and deem null and void that certain Securities Purchase Agreement, dated as of May 14, 2014, by and among the Preferred Holders and the other parties signatories thereto, with respect to the Preferred Holders. The Preferred Holders, constituting the holders of at least a majority of the outstanding Preferred Shares (the "Required Holders"), agreed and consented to an amendment and restatement of the Certificate of Designations. The parties also agreed to customary releases and a covenant not to sue as further contained in the Settlement Agreement. Accordingly, on November 21, 2019, we filed an Amended and Restated Certificate of Designation (the "Amended and Restated Certificate") for our Series A Convertible Preferred Stock. The amendments, among other things, had the effect of setting the conversion price of the Series A Convertible Preferred Stock at $0.21.

On January 9, 2020, the Company issued 3,171,428 shares of the Common stock in exchange for 667 shares of Series A Convertible Preferred Stock at a conversion price of $0.21 per share.

Between May 18 and June 24, 2020, the Company issued 1,571,428 shares of Common Stock in exchange for 330 shares of Series A Convertible Preferred Stock at a conversion price of $0.21 per share.

# Abraham Declaration Exhibit 168 (Genius's June 10, 2020, Prospectus)

Case 1:22-cv-00249-AS    Document 226-12    Filed 01/15/25    Page 218 of 243

<div align="right">
Filed pursuant to Rule 424(b)(3)
Registration No. 333-238928
</div>

**PROSPECTUS**

<div align="center">

**GENIUS BRANDS INTERNATIONAL, INC.**
**60,100,617 Shares of Common Stock**

</div>

The selling stockholders of Genius Brands International, Inc. ("we," "us" or the "Company") identified in this prospectus, including their pledgees, donees, transferees, assigns or other successors in interest, may offer and resell under this prospectus up to 60,100,617 shares of our common stock. The number of shares offered for resale consists of (i) 31,100,091 shares of common stock previously issued upon the cashless exercise of certain warrants and (ii) 29,000,526 shares of common stock issuable upon the exercise of certain outstanding warrants at an exercise price of $0.21 per share (each a "Warrant" and collectively, the "Warrants"). The Warrants were issued by Genius Brands International, Inc. (the "Company") to the selling stockholders, each of whom is an accredited investor, and its placement agent in a private placement transaction that closed on March 17, 2020 pursuant to or in connection with a securities purchase agreement, dated March 11, 2020, by and among the Company and the purchasers named therein.

These shares of common stock will be resold from time to time by the entities and persons listed in the section titled "Selling Stockholders" on page 6, which we refer to as the selling stockholders. The shares of common stock offered under this prospectus by the selling stockholders were or will be issued upon the exercise of the Warrants. We are not selling any securities under this prospectus and we will not receive any of the proceeds from the sale of shares of our common stock by the selling stockholders. The selling stockholders will receive all of the proceeds from any sales of the shares of our common stock offered hereby. However, we will incur expenses in connection with the registration of the shares of our common stock offered hereby, including legal and accounting fees. Moreover, we will receive the exercise price upon any exercise of the Warrants, to the extent exercised on a cash basis.

The selling stockholders may sell the shares of common stock described in this prospectus in a number of different ways and at varying prices. We provide more information about how a selling stockholder may sell its shares of common stock in the section titled "Plan of Distribution" on page 9.

Our common stock is quoted on The Nasdaq Capital Market, or Nasdaq, under the symbol "GNUS." On June 10, 2020, the last reported sale price of our common stock was $4.51 per share.

**Investing in our securities involves risks. See "Risk Factors" beginning on page 3 of this prospectus.**

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or passed upon the adequacy or accuracy of this prospectus. Any representation to the contrary is a criminal offense.**

<div align="center">

**THE DATE OF THIS PROSPECTUS IS JUNE 10, 2020.**

</div>

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| PROSPECTUS SUMMARY | 1 |
| RISK FACTORS | 3 |
| SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS | 4 |
| USE OF PROCEEDS | 5 |
| SELLING STOCKHOLDERS | 6 |
| PLAN OF DISTRIBUTION | 9 |
| LEGAL MATTERS | 10 |
| EXPERTS | 10 |
| WHERE YOU CAN FIND MORE INFORMATION | 10 |
| INCORPORATION OF CERTAIN DOCUMENTS BY REFERENCE | 11 |

i

**INFORMATION CONTAINED IN THIS PROSPECTUS**

You should rely only on the information contained or incorporated by reference into this prospectus. We have not, and the selling stockholders have not, authorized anyone to provide you with additional or different information. These securities are not being offered in any jurisdiction where the offer is not permitted. You should assume that the information in this prospectus is accurate only as of the date on the front of the document and that any information we have incorporated by reference is accurate only as of the date of the documents incorporated by reference, regardless of the time of delivery of this prospectus or of any sale of our common stock. Unless the context otherwise requires, references to "we," "our," "us," or the "Company" in this prospectus mean Genius Brands International, Inc., together with its subsidiaries.

**PROSPECTUS SUMMARY**

*The following is only a summary. We urge you to read the entire prospectus, including the more detailed consolidated financial statements, notes to the consolidated financial statements and other information included herein or incorporated by reference from our other filings with the U.S. Securities and Exchange Commission, or SEC. Investing in our securities involves risks. Therefore, please carefully consider the information provided under the heading "Risk Factors" starting on page 3.*

## Overview

Genius Brands International, Inc. is a global content and brand management company that creates and licenses multimedia content. Led by experienced industry personnel, we distribute our content in all formats as well as a broad range of consumer products based on our characters. In the children's media sector, our portfolio features "content with a purpose" for toddlers to tweens, which provides enrichment as well as entertainment. New intellectual property titles include the preschool property *Rainbow Rangers*, which debuted in November 2018 on Nickelodeon and which was renewed for a second season, and preschool property *Llama Llama*, which debuted on Netflix in January 2018 and was renewed by Netflix for a second season. Our library titles include the award winning *Baby Genius*, adventure comedy Thomas Edison's Secret Lab® and Warren Buffett's *Secret Millionaires Club*, created with and starring iconic investor Warren Buffett which is distributed across our Genius Brands Network on Comcast's Xfinity on Demand, AppleTV, Roku, Amazon Fire, YouTube, Amazon Prime, Cox, Dish, Sling and Zumo as well as Connected TV. We are also developing an all-new animated series, *Stan Lee's Superhero Kindergarten* with Stan Lee's Pow! Entertainment.

In addition, we act as licensing agent for Penguin Young Readers, a division of Penguin Random House LLC who owns or controls the underlying rights to *Llama Llama*, leveraging our existing licensing infrastructure to expand this brand into new product categories, new retailers, and new territories.

## Recent Financings

*March 2020 Secured Convertible Note and Warrant Private Placement*

On March 11, 2020, we entered into a Securities Purchase Agreement (the "March 2020 SPA") with certain accredited investors (each an "Investor" and collectively, the "Investors") pursuant to which we agreed to sell and issue (1) the Secured Convertible Notes to the Investors in the aggregate principal amount of $13,750,000 and $11,000,000 funding amount (reflecting an original issue discount of $2,750,000) and (2) the Warrants to purchase 65,476,190 shares of our common stock, exercisable for a period of five years at an initial exercise price of $0.26 per share, for consideration consisting of (i) a cash payment of $7,000,000, and (ii) full recourse cash secured promissory notes payable by the Investors to the Company (each, an "Investor Note" and collectively, the "Investor Notes") in the principal amount of $4,000,000 (the "Investor Notes Principal") (collectively, the "March 2020 Financing"). Andy Heyward, our Chairman and Chief Executive Officer, participated as an Investor and invested $1,000,000 in connection with the March 2020 Financing, all of which was paid at the closing and not pursuant to an Investor Note. The Special Equities Group, LLC, a division of Bradley Woods & Co. LTD, acted as placement agent and received warrants to purchase 6,547,619 shares at an exercise price of $0.26 per share (the "Placement Agent Warrants").

The closing of the sale and issuance of the Secured Convertible Notes, the Warrants and the Placement Agent Warrants occurred on March 17, 2020 (the "Closing Date"). The maturity date of the Secured Convertible Notes is September 30, 2021 and the maturity date of the Investor Notes is March 11, 2060.

The Company agreed to hold a stockholder meeting (the "Stockholder Meeting"), by no later than May 15, 2020, to approve the issuance of shares of our common stock issuable under the Secured Convertible Notes and pursuant to the terms of the SPA for the purposes of compliance with the stockholder approval rules of The Nasdaq Stock Market ("Stockholder Approval") and the Company was obligated to continue to seek Stockholder Approval every 90 days until such approval was obtained. Pursuant to the terms of the SPA, the Secured Convertible Notes and the Warrants, the Company agreed that the following would apply or become effective only following Stockholder Approval: (1) the conversion price of the Secured Convertible Notes would be reduced to $0.21 per share and may be further reduced to any amount and for any period of time deemed appropriate by the board of directors of the Company, (2) the exercise price of the Warrants would be immediately reduced to $0.21 per share and may be further reduced to any amount and for any period of time deemed appropriate by the board of directors of the Company, (3) the Secured Convertible Notes and Warrants would each have full ratchet anti-dilution protection for subsequent financings (subject to certain exceptions), (4) existing warrant holders that participated in the Financing (representing warrants to purchase an aggregate of 8,715,229 shares of our common stock) would have their existing warrants' exercise prices reduced to $0.21 and (5) the investors would have a most favored nations right which provides that if the Company enters into a subsequent financing, then the Investors (together with their affiliates) at their sole discretion shall have the ability to exchange their Secured Convertible Notes on a $1 for $1 basis into securities issued in the new transaction. Additionally, in the event that any warrants or options (or any similar security or right) issued in a subsequent financing include any terms more favorable to the holders thereof (less favorable to the Company) than the terms of the Warrants, the Warrants shall be automatically amended to include such more favorable terms.

On May 15, 2020, the Company received the necessary Stockholder Approval in connection with the Nasdaq proposals described above. As a result, the conversion price of the Secured Convertible Notes and the exercise price of the Warrants were each reduced to $0.21. In addition, existing warrant holders that participated in the Financing (representing warrants to purchase an aggregate of 8,715,229 shares of our common stock) also had their existing warrants' exercise prices reduced to $0.21.

*March 2020 Securities Purchase Agreement*

On March 22, 2020, we entered into a Securities Purchase Agreement with certain long standing investors (the "March Investors"), pursuant to which we agreed to issue and sell, in a registered direct offering by the Company directly to the March Investors, an aggregate of 4,000,000 shares of our common stock, at an offering price of $0.2568 per share for gross proceeds of approximately $1.0 million before deducting offering expenses.

*May 2020 Securities Purchase Agreements*

On May 7, 2020, we entered into a Securities Purchase Agreement with certain long standing investors (the "May 7th Investors"), pursuant to which we agreed to issue and sell, in a registered direct offering by the Company directly to the May 7th Investors, an aggregate of 8,000,000 shares of our common stock, at an offering price of $0.35 per share for gross proceeds of approximately $2.8 million before deducting offering expenses.

On May 8, 2020, we entered into a Securities Purchase Agreement with certain long standing investors (the "May 8th Investors"), pursuant to which we agreed to issue and sell, in a registered direct offering by the Company directly to the May 8th Investors, an aggregate of 12,000,000 shares of our common stock, at an offering price of $0.454 per share for gross proceeds of approximately $5.448 million before deducting offering expenses.

On May 18, 2020, we entered into a Securities Purchase Agreement with certain long standing investors (the "May 18th Investors"), pursuant to which we agreed to issue and sell, in a registered direct offering by the Company directly to the May 18th Investors, an aggregate of 7,500,000 shares of our common stock, at an offering price of $1.20 per share for gross proceeds of approximately $9.0 million before deducting offering expenses (the "May 18th Registered Offering").

On May 28, 2020, we entered into a Securities Purchase Agreement with certain long standing investors (the "May 28th Investors"), pursuant to which we agreed to issue and sell, in a registered direct offering by the Company directly to the May 28th Investors, an aggregate of 20,000,000 shares of our common stock, at an offering price of $1.50 per share for gross proceeds of approximately $30.0 million before deducting offering expenses (the "May 28th Registered Offering").

In connection with the holders of the notes and warrants issued pursuant to that certain Securities Purchase Agreement dated as of March 11, 2020 by and among the Company and the investors party thereto agreeing to provide their waiver and consent to the May 28th Registered Offering, we agreed that we will file this Registration Statement on Form S-3 on or before June 5, 2020 registering the resale of the shares of our common stock underlying the warrants issued to certain holders thereof.

**Company Information**

We were incorporated in California on January 3, 2006 and reincorporated in Nevada in October 2011. We commenced operations in January 2006, assuming all of the rights and obligations of our then Chief Executive Officer, under an Asset Purchase Agreement between us and Genius Products, Inc., in which we obtained all rights, copyrights, and trademarks to the brands "Baby Genius," "Kid Genius," "123 Favorite Music" and "Wee Worship," and all then existing productions under those titles. In October 2011, we (i) changed our domicile to Nevada from California, and (ii) changed our name to Genius Brands International, Inc. from Pacific Entertainment Corporation (the "Reincorporation"). In connection with the Reincorporation, we changed our trading symbol from "PENT" to "GNUS."

Our principal executive offices are located at 190 N Canon Drive, 4th Floor, Beverly Hills, California 90210. Our telephone number is 310-273-4222. We maintain an Internet website at www.gnusbrands.com. The information contained on, connected to or that can be accessed via our website is not part of this prospectus.

**RISK FACTORS**

*Investing in our securities involves a high degree of risk. You should carefully review and consider the risk factors in the sections entitled "Risk Factors" contained in our most recent annual report on Form 10-K, which has been filed with the SEC and is incorporated by reference in this prospectus, as well as any updates thereto contained in subsequent filings with the SEC, and all other information contained in this prospectus and incorporated by reference into the prospectus before purchasing our securities. The risks and uncertainties described therein are not the only ones facing our Company. Additional risks and uncertainties of which we are unaware, or that we currently deem immaterial, also may become important factors that affect us. If any of these risks occur, our business, financial condition or results of operations could be materially and adversely affected. In that case, the trading price of our common stock could decline, and you may lose some or all of your investment.*

**SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS**

This prospectus contains forward-looking statements within the meaning of Section 27A of the Securities Act, and Section 21E of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), that involve substantial risks and uncertainties. You can identify these statements by the fact that they do not relate strictly to historic or current facts. They use words, such as "anticipate," "could," "continue," "contemplate," "estimate," "expect," "will," "may," "potential," "intend," "plan," "believe," and other words and terms of similar meaning. These include statements, among other things, statements regarding:

- our ability to generate revenue or achieve profitability;

- our ability to obtain additional financing on acceptable terms, if at all;

- our ability to repay our outstanding secured convertible notes;

- fluctuations in the results of our operations from period to period;

- general economic and financial conditions;

- our ability to anticipate changes in popular culture, media and movies, fashion and technology;

- competitive pressure from other distributors of content and within the retail market;

- our reliance on and relationships with third-party production and animation studios;

- our ability to market and advertise our products;

- our reliance on third-parties to promote our products;

- our ability to keep pace with technological advances;

- performance of our information technology and storage systems;

- a disruption or breach of our internal computer systems;

- our ability to retain key personnel;

- the impact of federal, state or local regulations on us or our vendors and licensees;

- our ability to protect and defend against litigation, including intellectual property claims;

- the volatility of our stock price;

- the marketability of our stock;

- our broad discretion to invest or spend the proceeds of our financings in ways with which our stockholders may not agree and may have limited ability to influence; and

- other risks and uncertainties, including those listed in the section on "Risk Factors."

Any or all of our forward-looking statements in this prospectus may turn out to be wrong. They can be affected by inaccurate assumptions we might make or by known or unknown risks and uncertainties. Consequently, no forward-looking statement can be guaranteed. Actual results may vary materially from those set forth in forward-looking statements. The uncertainties that may cause differences include, but are not limited to: our need for additional funds to finance our operations; our history of losses; anticipated continuing losses and uncertainty of future financing; market acceptance of our services; the sufficiency of our existing capital resources; competition from other companies; the risk of technological obsolescence; uncertainties related to our ability to obtain intellectual property protection for our technology; and dependence on officers, directors and other individuals.

We will not update forward-looking statements, whether as a result of new information, future events or otherwise, unless required by law. You are advised to consult any further disclosures we make in our reports to the SEC, including our reports on Forms 10-K, 10-Q and 8-K. Our filings list various important factors that could cause actual results to differ materially from expected results. We note these factors for investors as permitted by the Private Securities Litigation Reform Act of 1995. You should understand that it is not possible to predict or identify all such factors. Consequently, you should not consider any such list to be a complete set of all potential risks or uncertainties.

## USE OF PROCEEDS

We are not selling any securities in this offering and we will not receive any of the proceeds from the sale of shares of our common stock by the selling stockholders. The selling stockholders will receive all of the proceeds from any sales of the shares of our common stock offered hereby. However, we will incur expenses in connection with the registration of the shares of our common stock offered hereby, including legal and accounting fees.

We will receive the exercise price upon any exercise of the Warrants, to the extent exercised on a cash basis. Per the terms of the Warrants, if, at the time of exercise of a Warrant, there was no effective registration statement registering, or no current prospectus available for, the issuance of the shares underlying the Warrant, then the Warrant may also be exercised, in whole or in part, by means of a "cashless exercise". Before the filing of this prospectus, the holders of 54,050,381 shares underlying the Warrants exercised a portion of their Warrants by means of a "cashless exercise." If the remaining Warrants are exercised in full, we would receive gross proceeds of approximately $6.1 million. We currently intend to use such proceeds, if any, for general corporate purposes and working capital. The holders of the Warrants are not obligated to exercise the Warrants, and we cannot predict whether or when, if ever, the holders of the Warrants will choose to exercise the Warrants, in whole or in part.

5

**SELLING STOCKHOLDERS**

This prospectus covers the resale from time to time by the selling stockholders identified in the table below, including their pledgees, donees, transferees, assigns or other successors in interest, of up to an aggregate 60,100,617 shares of our common stock, which includes (i) 31,100,091 shares of common stock previously issued upon the cashless exercise of the Warrants and (ii) 29,000,526 shares of common stock issuable upon the exercise of the currently outstanding Warrants at an exercise price of $0.21 per share. The Warrants were issued by us to accredited investors pursuant to or in connection with the March 2020 Financing.

The table below lists the selling stockholders and other information regarding the beneficial ownership (as determined under Section 13(d) of the Exchange Act and the rules and regulations thereunder) of the shares of common stock held by each of the selling stockholders. The second column lists the number of shares of common stock beneficially owned by the selling stockholders, based on their respective ownership of shares of common stock, as of June 1, 2020, assuming exercise of the Warrants held by each such selling stockholder on that date and does not take into account any limitations on exercise of the Warrants or conversion of the convertible notes set forth therein. The percentage of shares beneficially owned prior to the offering is based on 105,992,802 shares of our common stock outstanding as of June 1, 2020. The number of shares in the column "Maximum Number of Shares of Common Stock to be Sold Pursuant to this Prospectus" represents all of the shares that the selling stockholder may offer under this prospectus and does not take into account any limitations on the exercise of Warrants set forth therein.

Under the terms of the Warrants, a selling stockholder may not exercise the Warrants to the extent (but only to the extent) such selling stockholder or any of its affiliates would beneficially own a number of shares of our common stock which would exceed 4.99% or 9.99%, as applicable, of the total number of shares of our common stock then issued or outstanding. The percentages in the fifth column reflects these limitations. The selling stockholders may sell all, some or none of their shares in this offering. See "Plan of Distribution."

| Name of Selling Security Holder | Shares of Common Stock Beneficially Owned Prior to Offering | Maximum Number of Shares of Common Stock to be Sold Pursuant to this Prospectus | Shares of Common Stock Beneficially Owned After Offering (1) | % of Shares of Common Stock Beneficially Owned After Offering (1) |
|---|---|---|---|---|
| Empery Asset Master, LTD. (2) | 941,760 | 340,449 | 601,311 | * |
| Empery Debt Opportunity Fund, LP (3) | 20,367,800 | 8,085,657 | 12,282,143 | 4.99% |
| Empery Tax Efficient, LP (4) | 295,461 | 85,113 | 210,348 | * |
| Richard Molinsky (5) | 1,097,587 | 437,390 | 660,197 | * |
| L1 Capital Global Opportunities Master Fund (6) | 7,892,912 | 3,571,429 | 4,231,483 | 3.13% |
| Iroquois Master Fund Ltd. (7) | 6,702,116 | 2,083,333 | 4,618,783 | 3.42% |
| Iroquois Capital Investment Group, LLC (8) | 10,647,481 | 3,869,048 | 6,778,433 | 4.99% |
| CVI Investments, Inc. (9) | 15,315,778 | 5,263,397 | 10,052,381 | 4.99% |
| Brio Capital Master Fund Ltd. (10) | 6,503,635 | 2,793,639 | 3,709,996 | 2.75% |
| Brio Select Opportunities Fund, LP (11) | 9,914,924 | 4,691,710 | 5,223,214 | 3.87% |
| Anson Investments Master Fund LP (12) | 37,076,712 | 17,553,675 | 19,523,037 | 9.9% |
| M3A LP (13) | 11,617,861 | 5,665,480 | 5,952,381 | 4.41% |
| Andrew Arno (14) | 1,188,647 | 1,188,647 | – | – |
| Bradley Woods & Co. Ltd. (15) | 599,997 | 599,997 | – | – |
| Jonathan Schechter (16) | 1,188,647 | 1,188,647 | – | – |
| Joseph Reda (17) | 2,377,347 | 2,377,347 | – | – |
| T. Timothy Berry (18) | 305,659 | 305,659 | – | – |

*Less than 1%.

(1) Assumes the sale of the maximum number of shares of common stock to be sold pursuant to this prospectus. The number of shares listed in the fourth column does not take into account any limitations on exercise of the Warrants or conversion of the convertible notes set forth therein, but the ownership percentages listed in the fifth column does take such limitations into account.

(2) Includes Warrants to purchase up to 357,143 shares of our common stock, of which the selling stockholder received 119,920 shares of common stock upon the cashless exercise of 136,614 Warrants. Empery Asset Management LP, the authorized agent of Empery Asset Master Ltd ("EAM"), has discretionary authority to vote and dispose of the shares held by EAM and may be deemed to be the beneficial owner of these shares. Martin Hoe and Ryan Lane, in their capacity as investment managers of Empery Asset Management LP, may also be deemed to have investment discretion and voting power over the shares held by EAM. EAM, Mr. Hoe and Mr. Lane each disclaim any beneficial ownership of these shares. The selling stockholder's address is c/o Empery Asset Management, LP, 1 Rockefeller Plaza, Suite 1205, New York, NY 10020.

(3) Includes Warrants to purchase up to 8,482,143 shares of our common stock, of which the selling stockholder received 2,848,099 shares of common stock upon the cashless exercise of 3,244,585 Warrants. Empery Asset Management LP, the authorized agent of Empery Debt Opportunity Fund, LP ("EDOF"), has discretionary authority to vote and dispose of the shares held by EDOF and may be deemed to be the beneficial owner of these shares. Martin Hoe and Ryan Lane, in their capacity as investment managers of Empery Asset Management LP, may also be deemed to have investment discretion and voting power over the shares held by EDOF. EDOF, Mr. Hoe and Mr. Lane each disclaim any beneficial ownership of these shares. The selling stockholder's address is c/o Empery Asset Management, LP, 1 Rockefeller Plaza, Suite 1205, New York, NY 10020.

(4) Includes Warrants to purchase up to 89,286 shares of our common stock, of which the selling stockholder received 29,981 shares of common stock upon the cashless exercise of 34,154 Warrants. Empery Asset Management LP, the authorized agent of Empery Tax Efficient, LP ("ETE"), has discretionary authority to vote and dispose of the shares held by ETE and may be deemed to be the beneficial owner of these shares. Martin Hoe and Ryan Lane, in their capacity as investment managers of Empery Asset Management LP, may also be deemed to have investment discretion and voting power over the shares held by ETE. ETE, Mr. Hoe and Mr. Lane each disclaim any beneficial ownership of these shares. The selling stockholder's address is c/o Empery Asset Management, LP, 1 Rockefeller Plaza, Suite 1205, New York, NY 10020.

(5) Includes Warrants to purchase up to 505,952 shares of our common stock, of which the selling stockholder received 437,390 shares of common stock upon the cashless exercise of 505,952 Warrants. The selling stockholder's address is 51 Lords Hwy East, Weston, CT 06883.

(6) Includes Warrants to purchase up to 3,571,429 shares of our common stock. David Feldman is the natural person with voting and dispositive power over the shares held by L1 Capital Global Opportunities Master Fund. The selling stockholder's address is Level 23, 135 East 57th St, New York, NY 10022.

(7) Includes Warrants to purchase up to 2,083,333 shares of our common stock. Richard Abbe has the sole authority and responsibility for the investments made on behalf of Iroquois Capital Investment Group LLC ("ICIG") as its managing member and shares authority and responsibility for the investments made on behalf of Iroquois Master Fund Ltd. (the "Fund") with Kimberly Page, each of whom is a director of the Fund. As such, Mr. Abbe may be deemed to be the beneficial owner of all shares of common stock held by and underlying the Warrants (subject to the Blockers) held by, the Fund and ICIG. Iroquois Capital Management L.L.C. ("Iroquois") is the investment manager for the Fund and Mr. Abbe is the President of Iroquois. Each of the Iroquois Funds and the selling stockholders disclaims any beneficial ownership of any such shares of common stock, except to the extent of their pecuniary interest therein. The selling stockholder's address is 125 Park Ave., 25th Fl. NY, NY 10017.

(8) Includes Warrants to purchase up to 3,869,048 shares of our common stock. Richard Abbe has the sole authority and responsibility for the investments made on behalf of ICIG as its managing member and shares authority and responsibility for the investments made on behalf of the Fund with Kimberly Page, each of whom is a director of the Fund. As such, Mr. Abbe may be deemed to be the beneficial owner of all shares of common stock held by and underlying Warrants (subject to the Blockers) held by, the Fund and ICIG. Iroquois is the investment manager for the Fund and Mr. Abbe is the President of Iroquois. Each of the Iroquois Funds and the selling stockholders disclaims any beneficial ownership of any such shares of common stock, except to the extent of their pecuniary interest therein. The selling stockholder's address is 125 Park Ave., 25th Fl. NY, NY 10017.

(9) Includes Warrants to purchase up to 5,952,381 shares of our common stock, of which the selling stockholder received 4,778,956 shares of common stock upon the cashless exercise of 5,467,940 Warrants. Heights Capital Management, Inc., the authorized agent of CVI Investments, Inc. ("CVI"), has discretionary authority to vote and dispose of the shares held by CVI and may be deemed to be the beneficial owner of these shares. Martin Kobinger, in his capacity as Investment Manager of Heights Capital Management, Inc., may also be deemed to have investment discretion and voting power over the shares held by CVI. Mr. Kobinger disclaims any such beneficial owner of the shares. CVI is affiliated with one or more FINRA members, none of whom are currently expected to participate in the sale of shares pursuant to this prospectus. The selling stockholder's address is c/o Heights Capital Management, 101 California St., Suite 3250, San Francisco, CA 94111.

(10) Includes Warrants to purchase up to 3,110,119 shares of our common stock, of which the selling stockholder received 2,793,639 shares of common stock upon the cashless exercise of 3,110,119 Warrants. Shaye Hirsch is the natural person with voting and dispositive power over the shares held by Brio Capital Master Fund Ltd. The selling stockholder's address is 100 Merrick Road Suite 401W, Rockville Centre, NY 11570.

(11) Includes Warrants to purchase up to 5,223,214 shares of our common stock, of which the selling stockholder received 4,691,710 shares of common stock upon the cashless exercise of 5,223,214 Warrants. Shaye Hirsch is the natural person with voting and dispositive power over the shares held by Brio Select Opportunities Fund, LP. The selling stockholder's address is 100 Merrick Road Suite 401W, Rockville Centre, NY 11570.

(12) Includes Warrants to purchase up to 17,857,143 shares of our common stock, of which the selling stockholder received 5,000,000 shares of common stock upon the cashless exercise of 5,303,468 Warrants. Anson Advisors Inc. and Anson Funds Management LP, the Co-Investment Advisers of Anson Investments Master Fund LP ("Anson"), hold voting and dispositive power over the securities held by Anson. Bruce Winson is the managing member of Anson Management GP LLC, which is the general partner of Anson Funds Management LP. Moez Kassam and Amin Nathoo are directors of Anson Advisors Inc. Mr. Winson, Mr. Kassam and Mr. Nathoo each disclaim beneficial ownership of these shares of common stock except to the extent of their pecuniary interest therein. The selling stockholder's address is Walkers Corporate Limited, Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Islands.

(13) Includes Warrants to purchase up to 5,952,381 shares of our common stock, of which the selling stockholder received 4,740,099 shares of common stock upon the cashless exercise of 5,000,000 Warrants. Ari Morris is the natural person with voting and dispositive power over the shares held by M3A LP. The selling stockholder's address is 150 Greenwich Street, Floor 29, New York, New York 10007.

(14) Includes Placement Agent Warrants to purchase up to 1,375,000 shares of our common stock, of which the selling stockholder received 1,188,647 shares of common stock upon the cashless exercise of 1,375,000 Warrants. The selling stockholder's address is 6 Sheraton Lane, Rumson, NY 07760. The selling stockholder is an employee of Special Equities Group, LLC, a division of Bradley Woods & Co., Ltd., which is a registered broker-dealer that acted as our placement agent in the March 2020 Financing and each of our financings during the previous six months.

(15) Includes Placement Agent Warrants to purchase up to 694,047 shares of our common stock, of which the selling stockholder received 599,997 shares of common stock upon the cashless exercise of 694,047 Warrants. The selling stockholder's address is 310 West End Avenue, #9, New York, NY 10023. Special Equities Group, LLC, a division of Bradley Woods & Co., Ltd., is a registered broker-dealer and acted as our placement agent in the March 2020 Financing and each of our financings during the previous six months.

(16) Includes Placement Agent Warrants to purchase up to 1,375,000 shares of our common stock, of which the selling stockholder received 1,188,647 shares of common stock upon the cashless exercise of 1,375,000 Warrants. The selling stockholder's address is 135 Sycamore Avenue, Roslyn, NY 11576. The selling stockholder is an employee of Special Equities Group, LLC, a division of Bradley Woods & Co., Ltd., which is a registered broker-dealer that acted as our placement agent in the March 2020 Financing and each of our financings during the previous six months.

(17) Includes Placement Agent Warrants to purchase up to 2,750,000 shares of our common stock, of which the selling stockholder received 2,377,347 shares of common stock upon the cashless exercise of 2,750,000 Warrants. The selling stockholder's address is 1324 Manor Circle, Pelham, NY 10803. The selling stockholder is an employee of Special Equities Group, LLC, a division of Bradley Woods & Co., Ltd., which is a registered broker-dealer that acted as our placement agent in the March 2020 Financing and each of our financings during the previous six months.

(18) Includes Placement Agent Warrants to purchase up to 353,572 shares of our common stock, of which the selling stockholder received 305,659 shares of common stock upon the cashless exercise of 353,572 Warrants. The selling stockholder's address is 4 Millers Way, Old Lyme, CT 06371. The selling stockholder is an employee of Special Equities Group, LLC, a division of Bradley Woods & Co., Ltd., which is a registered broker-dealer that acted as our placement agent in the March 2020 Financing and each of our financings during the previous six months.

## PLAN OF DISTRIBUTION

Each Selling Stockholder (the "selling stockholders") of the securities and any of their pledgees, assignees and successors-in-interest may, from time to time, sell any or all of their securities covered hereby on the principal Trading Market or any other stock exchange, market or trading facility on which the securities are traded or in private transactions. These sales may be at fixed or negotiated prices. A selling stockholder may use any one or more of the following methods when selling securities:

- ordinary brokerage transactions and transactions in which the broker-dealer solicits purchasers;

- block trades in which the broker-dealer will attempt to sell the securities as agent but may position and resell a portion of the block as principal to facilitate the transaction;

- purchases by a broker-dealer as principal and resale by the broker-dealer for its account;

- an exchange distribution in accordance with the rules of the applicable exchange;

- privately negotiated transactions;

- settlement of short sales;

- in transactions through broker-dealers that agree with the selling stockholders to sell a specified number of such securities at a stipulated price per security;

- through the writing or settlement of options or other hedging transactions, whether through an options exchange or otherwise;

- a combination of any such methods of sale; or

- any other method permitted pursuant to applicable law.

The selling stockholders may also sell securities under Rule 144 or any other exemption from registration under the Securities Act, if available, rather than under this prospectus.

Broker-dealers engaged by the selling stockholders may arrange for other brokers-dealers to participate in sales. Broker-dealers may receive commissions or discounts from the selling stockholders (or, if any broker-dealer acts as agent for the purchaser of securities, from the purchaser) in amounts to be negotiated, but, except as set forth in a supplement to this Prospectus, in the case of an agency transaction not in excess of a customary brokerage commission in compliance with FINRA Rule 2440; and in the case of a principal transaction a markup or markdown in compliance with FINRA IM-2440.

In connection with the sale of the securities or interests therein, the selling stockholders may enter into hedging transactions with broker-dealers or other financial institutions, which may in turn engage in short sales of the securities in the course of hedging the positions they assume. The selling stockholders may also sell securities short and deliver these securities to close out their short positions, or loan or pledge the securities to broker-dealers that in turn may sell these securities. The selling stockholders may also enter into option or other transactions with broker-dealers or other financial institutions or create one or more derivative securities which require the delivery to such broker-dealer or other financial institution of securities offered by this prospectus, which securities such broker-dealer or other financial institution may resell pursuant to this prospectus (as supplemented or amended to reflect such transaction).

The selling stockholders and any broker-dealers or agents that are involved in selling the securities may be deemed to be "underwriters" within the meaning of the Securities Act in connection with such sales. In such event, any commissions received by such broker-dealers or agents and any profit on the resale of the securities purchased by them may be deemed to be underwriting commissions or discounts under the Securities Act. Each selling stockholder has informed the Company that it does not have any written or oral agreement or understanding, directly or indirectly, with any person to distribute the securities.

The Company is required to pay certain fees and expenses incurred by the Company incident to the registration of the securities. The Company has agreed to indemnify the selling stockholders against certain losses, claims, damages and liabilities, including liabilities under the Securities Act.

We agreed to keep this prospectus effective until the earlier of (i) the date on which the securities may be resold by the selling stockholders without registration and without regard to any volume or manner-of-sale limitations by reason of Rule 144, without the requirement for the Company to be in compliance with the current public information under Rule 144 under the Securities Act or any other rule of similar effect or (ii) all of the securities have been sold pursuant to this prospectus or Rule 144 under the Securities Act or any other rule of similar effect. The resale securities will be sold only through registered or licensed brokers or dealers if required under applicable state securities laws. In addition, in certain states, the resale securities covered hereby may not be sold unless they have been registered or qualified for sale in the applicable state or an exemption from the registration or qualification requirement is available and is complied with.

Under applicable rules and regulations under the Exchange Act, any person engaged in the distribution of the resale securities may not simultaneously engage in market making activities with respect to the common stock for the applicable restricted period, as defined in Regulation M, prior to the commencement of the distribution. In addition, the selling stockholders will be subject to applicable provisions of the Exchange Act and the rules and regulations thereunder, including Regulation M, which may limit the timing of purchases and sales of the common stock by the selling stockholders or any other person. We will make copies of this prospectus available to the selling stockholders and have informed them of the need to deliver a copy of this prospectus to each purchaser at or prior to the time of the sale (including by compliance with Rule 172 under the Securities Act).

## LEGAL MATTERS

The validity of the securities we are offering will be passed upon for us by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., New York, New York.

## EXPERTS

Squar Milner LLP, independent registered public accounting firm, has audited our financial statements included in our Annual Report on Form 10-K for the year ended December 31, 2019, as set forth in their report, which is incorporated by reference in this prospectus and elsewhere in this Registration Statement. Our financial statements are incorporated by reference in reliance on Squar Milner LLP's report, given on their authority as experts in accounting and auditing.

## WHERE YOU CAN FIND MORE INFORMATION

We are a public company and file annual, quarterly and current reports, proxy statements and other information with the SEC. Our SEC filings are available to the public at the SEC's web site at http://www.sec.gov, and on our web site at http://www.gnusbrands.com. The information contained on our web site is not included or incorporated by reference into this prospectus. In addition, our common stock is listed for trading on The Nasdaq Capital Market under the symbol "GNUS." You can read and copy reports and other information concerning us at the offices of the Financial Industry Reporting Authority located at 1735 K Street, N.W., Washington, D.C. 20006.

This prospectus is only part of a Registration Statement on Form S-3 that we have filed with the SEC under the Securities Act, and therefore omits certain information contained in the Registration Statement. We have also filed exhibits and schedules with the Registration Statement that are excluded from this prospectus, and you should refer to the applicable exhibit or schedule for a complete description of any statement referring to any contract or other document. You may:

- obtain a copy from the SEC upon payment of the fees prescribed by the SEC, or

- obtain a copy from the SEC's web site or our web site.

10

**INCORPORATION OF CERTAIN DOCUMENTS BY REFERENCE**

The SEC allows us to "incorporate by reference" information that we file with them. Incorporation by reference allows us to disclose important information to you by referring you to those other documents. The information incorporated by reference is an important part of this prospectus, and information that we file later with the SEC will automatically update and supersede this information. This prospectus omits certain information contained in the registration statement, as permitted by the SEC. You should refer to the registration statement and any prospectus supplement filed hereafter, including the exhibits, for further information about us and the securities we may offer pursuant to this prospectus. Statements in this prospectus regarding the provisions of certain documents filed with, or incorporated by reference in, the registration statement are not necessarily complete and each statement is qualified in all respects by that reference. Copies of all or any part of the registration statement, including the documents incorporated by reference or the exhibits, may be obtained upon payment of the prescribed rates at the offices of the SEC listed above in "Where You Can Find More Information." The documents we are incorporating by reference are:

- Our Annual Report on Form 10-K for the fiscal year ended December 31, 2019 filed on March 30, 2020.

- Our Quarterly Report on Form 10-Q for the quarter ended March 31, 2020 filed on May 18, 2020;

- Our Current Reports on Form 8-K (other than information furnished rather than filed) filed on May 7, 2020, May 8, 2020, May 15, 2020, May 18, 2020, May 28, 2020 and May 29, 2020;

- Our Definitive Proxy Statement on Schedule 14A for our Annual Meeting of Stockholders filed on April 14, 2020 as supplemented by the DEFA14A filed on May 12, 2020; and

- The description of our common stock contained in Exhibit 4.13 in our Form 10-K filed on March 30, 2020.

Any statement contained in this prospectus or in a document incorporated or deemed to be incorporated by reference into this prospectus will be deemed to be modified or superseded for purposes of this prospectus to the extent that a statement contained in this prospectus or any other subsequently filed document that is deemed to be incorporated by reference into this prospectus modifies or supersedes the statement. Any statement so modified or superseded will not be deemed, except as so modified or superseded, to constitute a part of this prospectus.

You may request, orally or in writing, a copy of any or all of the documents incorporated herein by reference. These documents will be provided to you at no cost, by calling us at (310) 373-4222 or by writing to us at the following address:

Genius Brands International, Inc.

190 N. Canon Drive, 4th Floor
Beverly Hills, CA 90210
Attn: Robert Denton

You should rely only on information contained in, or incorporated by reference into, this prospectus and any prospectus supplement. We have not authorized anyone to provide you with information different from that contained in this prospectus or incorporated by reference in this prospectus. We are not making offers to sell the securities in any jurisdiction in which such an offer or solicitation is not authorized or in which the person making such offer or solicitation is not qualified to do so or to anyone to whom it is unlawful to make such offer or solicitation.

**Genius Brands International, Inc.**

**60,100,617 Shares of Common Stock**

**PROSPECTUS**

**June 10, 2020**

Abraham Declaration Exhibit 169
(EMPGNUS0005753-62)

| | |
|---|---|
| **From**: | Jonathan Schechter [shex@theseg.com] |
| **Sent**: | 6/22/2020 11:14:01 PM |
| **To**: | brett.director@emperyam.com; notices [notices@emperyam.com]; Ryan Lane [Ryan.Lane@emperyam.com] |
| **CC**: | Schultz, Jeffrey [JSchultz@mintz.com]; Robert F. Charron [rcharron@egsllp.com]; Langer, Alan [AJLanger@mintz.com]; Joe Reda [reda@theseg.com] |
| **BCC**: | Martin.Hoe@emperyam.com; Alyson.Chung@emperyam.com; Bryan.Armenta@emperyam.com |
| **Subject**: | RE: GNUS |
| **Attachments**: | GNUS Leak-Out Agreement.docx |

Leak-out attached

---

**From:** Jonathan Schechter
**Sent:** Monday, June 22, 2020 5:37 PM
**To:** brett.director@emperyam.com; notices <notices@emperyam.com>; 'Ryan Lane' <Ryan.Lane@emperyam.com>
**Cc:** 'Schultz, Jeffrey' <JSchultz@mintz.com>; Robert F. Charron <rcharron@egsllp.com>; Langer, Alan <AJLanger@mintz.com>; Joe Reda <reda@theseg.com>
**Subject:** GNUS

Brett,

As discussed with Ryan, you will be funding your Investor Note and then converting all your debt into equity in return for the company agreeing to file a RS on Friday to register the common shares. Everyone is also agreeing to a Lock-Up Agreement in the same form and substance as last time. Alan will send the Lock-Up Agreement over to you asap.

Attached is the Note Conversion Agreement Rob and Jeff put together. Please provide them with your comments and complete the selling SS Questionnaire so we can file on time.

The goal is to put out an 8-K tomorrow pre-market.

Thanks!

Shex

Jon Schechter
Partner
The Special Equities Group "SEG"

150 E 58th St - 28th Floor
New York, NY 10155
(W) 212.258.2343
(C) 516-698-6887

(Email) shex@TheSEG.com

EMPGNUS0005753



The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************

This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

The Special Equities Group "SEG" is a Division of Bradley Woods & Co. Ltd.
*************************************************************** This email is only for use by the intended recipient and may contain information that is PRIVILEGED, PROPRIETARY, CONFIDENTIAL AND/OR OTHERWISE PROTECTED FROM DISCLOSURE. If you are not the intended recipient, then any review, dissemination, replication or distribution of this communication and any attachments is strictly prohibited. If you have received this communication in error, then please delete this email, any and all attachments, and copies. Unless otherwise provided herein, you may not duplicate, redistribute or forward this message, or any portion thereof, including any attachments, by any means to any other person whomsoever without the express permission of Bradley Woods & Co. Ltd. ("Bradley Woods"). Neither the information in this communication nor any opinion or recommendation expressed herein constitutes an offer to buy or sell any securities. The contents of this communication are for information purposes only, and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product. Attachments that are part of an electronic communication may have additional important disclosures and disclaimers, which you should read. The information contained herein is deemed to be reliable, but is in no case assured or warrantied by Bradley Woods. All messages are monitored and retained by Bradley Woods and are subject to regulatory disclosure. Bradley Woods & Co. Ltd. is a member of FINRA and SIPC.

EMPGNUS0005754

## LEAK-OUT AGREEMENT

June ___, 2020

This agreement (the "**Leak-Out Agreement**") is being delivered to you in connection with an understanding by and between GENIUS BRANDS INTERNATIONAL, INC., a Nevada corporation (the "**Company**"), and the person or persons named on the signature pages hereto (collectively, the "**Holder**").

Reference is hereby made to (a) the Securities Purchase Agreement, March 11, 2020, by and among the Company and  the Holder (the "**Purchase Agreement**") in connection with the offering (the "**Offering**") of the Company, pursuant to which the Holder and certain other purchasers acquired senior secured convertible notes ("**Notes**") and (b) common stock purchase warrants ("**Warrants**") in a private placement exempt from the registration requirements of the Securities Act.  Capitalized terms not defined herein shall have the meaning as set forth in the Purchase Agreement, unless otherwise set forth herein.

The Holder agrees solely with the Company that beginning on the time that the Company notifies the Holder (which shall be simultaneously with the time that the Company notifies all Other Holders (as defined below)) that a resale registration statement on Form S-3 registering the resale of the shares of Common Stock underlying the Note and Warrant issued to the Holder pursuant to the Purchase Agreement has been declared effective (the "**Effective Date**") and ending at 4:00 pm (New York City time) on the 90th day following the Effective Date (such period, the "**Restricted Period**"), neither the Holder, nor any affiliate of such Holder which (x) had or has knowledge of the transactions contemplated by the Purchase Agreement, (y) has or shares discretion relating to such Holder's investments or trading or information concerning such Holder's investments, including in respect of the Securities, or (z) is subject to such Holder's review or input concerning such affiliate's investments or trading (together, the "**Holder's Trading Affiliates**"), collectively, shall sell, dispose or otherwise transfer, directly or indirectly, (including, without limitation, any sales, short sales, swaps or any derivative transactions that would be equivalent to any sales or short positions) on any Trading Day during the Restricted Period (any such date, a "**Date of Determination**"), shares of Common Stock of the Company, or shares of common stock of the Company underlying any Common Stock Equivalents (as defined in the Purchase Agreement), held by the Holder on the date hereof, including the shares of Common Stock of the Company issuable upon conversion of Notes and the exercise of Warrants (collectively, the "**Restricted Securities**"), in an amount representing more than ___%[1] of the trading volume of the Common Stock as reported by Bloomberg, LP on each applicable Date of Determination ("**Leak-Out Percentage**"); provided, that the foregoing restriction shall not apply to any actual "long" (as defined in Regulation SHO of the Securities Exchange Act of 1934, as amended) sales by the Holder or any of the Holder's Trading Affiliates at a price greater than $2.00 (in each case, as adjusted for stock splits, stock dividends, stock combinations, recapitalizations or

---

[1]    30% in the aggregate, to be provided by SEG.

EMPGNUS0005755

other similar events occurring after the date hereof) provided, further, the foregoing restriction shall not apply to any actual "long" sales of shares of Common Stock purchased in open market transactions by the Holder or any of the Holder's Trading Affiliates during the Restricted Period.

Notwithstanding anything herein to the contrary, during the Restricted Period, the Holder may, directly or indirectly, sell or transfer all, but not less than all, of any Restricted Securities to any Person (an "**Assignee**") in a transaction which does not need to be reported on the consolidated tape on the Principal Market, without complying with (or otherwise limited by) the restrictions set forth in this Leak-Out Agreement; provided, that as a condition to any such sale or transfer an authorized signatory of the Company and such Assignee duly execute and deliver a leak-out agreement in the form of this Leak-Out Agreement.

The Company shall have no right to repay any portion of the Investor's debt during the period beginning on the date hereof and ending at the end of the Restricted Period.

Any notices, consents, waivers or other communications required or permitted to be given under the terms of this Leak-Out Agreement must be in writing and shall be given in accordance with the terms of the Purchase Agreement.

This Leak-Out Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior negotiations, letters and understandings relating to the subject matter hereof and are fully binding on the parties hereto.

This Leak-Out Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. This Leak-Out Agreement may be executed and accepted by facsimile or PDF signature and any such signature shall be of the same force and effect as an original signature.

The terms of this Leak-Out Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and their respective successors and assigns.

This Leak-Out Agreement may not be amended or modified except in writing signed by each of the parties hereto.

All questions concerning the construction, validity, enforcement and interpretation of this Leak-Out Agreement shall be governed by Sections 5.9 and Section 5.20 of the Purchase Agreement.

Each party hereto acknowledges that, in view of the uniqueness of the transactions contemplated by this Leak-Out Agreement, the other party or parties hereto may not have an adequate remedy at law for money damages in the event that this Leak-Out Agreement has not been performed in accordance with its terms, and therefore agrees that such other party or parties shall be entitled to seek specific enforcement of the terms hereof in addition to any other remedy it may seek, at law or in equity.

The obligations of the Holder under this Leak-Out Agreement are several and not joint with the obligations of any other holder of any of the Securities issued under the Purchase Agreement (each, an "**Other Holder**") or under any other agreement, and the Holder shall not be

EMPGNUS0005756

responsible in any way for the performance of the obligations of any Other Holder under any such other agreement. Nothing contained herein, in this Leak-Out Agreement or in any other agreement, and no action taken by the Holder pursuant hereto, shall be deemed to constitute the Holder and Other Holders as a partnership, an association, a joint venture or any other kind of entity, or create a presumption that the Holder and the Other Holders are in any way acting in concert or as a group with respect to such obligations or the transactions contemplated by this Leak-Out Agreement or any other agreement and the Company acknowledges that the Holder and the Other Holders are not acting in concert or as a group with respect to such obligations or the transactions contemplated by this Leak-Out Agreement or any other agreement. The Company and the Holder confirm that the Holder has independently participated in the negotiation of the transactions contemplated hereby with the advice of its own counsel and advisors. The Holder shall be entitled to independently protect and enforce its rights, including, without limitation, the rights arising out of this Leak-Out Agreement, and it shall not be necessary for any Other Holder to be joined as an additional party in any proceeding for such purpose.

The Company hereby represents and warrants as of the date hereof and covenants and agrees from and after the date hereof that none of the terms offered to any Other Holder with respect to any restrictions on the sale of Securities substantially in the form of this Leak-Out Agreement (or any amendment, modification, waiver or release thereof) (each a "**Settlement Document**"), is or will be more favorable to such Other Holder than those of the Holder and this Leak-Out Agreement. If, and whenever on or after the date hereof, the Company enters into a Settlement Document with terms that are materially different from this Leak-Out Agreement, then (i) the Company shall provide notice thereof to the Holder promptly following the occurrence thereof and (ii) the terms and conditions of this Leak-Out Agreement shall be, without any further action by the Holder or the Company, automatically amended and modified in an economically and legally equivalent manner such that the Holder shall receive the benefit of the more favorable terms and/or conditions (as the case may be) set forth in such Settlement Document, provided that upon written notice to the Company at any time the Holder may elect not to accept the benefit of any such amended or modified term or condition, in which event the term or condition contained in this Leak-Out Agreement shall apply to the Holder as it was in effect immediately prior to such amendment or modification as if such amendment or modification never occurred with respect to the Holder. The provisions of this paragraph shall apply similarly and equally to each Settlement Document.

[The remainder of the page is intentionally left blank]

EMPGNUS0005757

The parties hereto have executed this Leak-Out Agreement as of the date first set forth above.

Sincerely,

**GENIUS BRANDS INTERNATIONAL, INC.**

By: _____
       Name: Michael Jaffa
       Title:   General Counsel & Corporate Secretary

AGREED TO AND ACCEPTED:

**"HOLDER"**

_____

By: _____
    Name:
    Title:

# Withheld for Privilege

Confidential                                                                                                   EMPGNUS0005759

# Withheld for Privilege

EMPGNUS0005760

# Withheld for Privilege

EMPGNUS0005761

# Withheld for Privilege

EMPGNUS0005762