# Exhibit 7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TODD AUGENBAUM,<br><br>        Plaintiff,<br><br>    v.<br><br>ANSON INVESTMENTS MASTER FUND LP; BRIO CAPITAL MASTER FUND LTD.; BRIO SELECT OPPORTUNITIES FUND, LP; CVI INVESTMENTS, INC.; EMPERY ASSET MASTER, LTD.; EMPERY DEBT OPPORTUNITY FUND, LP; EMPERY TAX EFFICIENT, LP; EMPERY ASSET MANAGEMENT, LP; IROQUOIS MASTER FUND LTD.; IROQUOIS CAPITAL INVESTMENT GROUP, LLC; L1 CAPITAL GLOBAL OPPORTUNITIES MASTER FUND; M3A LP; RICHARD MOLINSKY,<br><br>        Defendants,<br><br>  -and-<br><br>KARTOON STUDIOS, INC.,<br><br>        Nominal Defendant. | Civil Action No. 1:22-cv-00249-AS |

## <u>DECLARATION OF RICHARD MOLINSKY</u>

1.    I, Richard Molinsky, am an individual defendant in the above-captioned proceeding. I submit this Declaration in support of Defendants' Joint Motion for Summary Judgment upon my own personal knowledge of the facts and circumstances set forth herein.

2.    My full-time occupation is managing my private investment portfolio across both public and private markets, which serves as my primary source of income. I have worked as an independent investor for over twenty years.

3.      I base my investment decisions on my personal industry experience, through review of public filings, direct engagement with company principals at investor conferences, and ultimately by using my own intuitive judgment.   I have had always remained autonomous over each of my investment determinations.

4.      Prior to the inception of this lawsuit, I have had no familiarity with the managers or principals of the other Defendants, with the exception of Richard Abbe of Iroquois Master Fund Ltd. and Iroquois Capital Investment Group LLC.  Even with respect to Mr. Abbe, I have no personal relationship with Mr. Abbe and have only known him as a professional acquaintance in the investment market place.

5.      I have been a long-time private shareholder in and noteholder of Genius Brands International ("Genius" or the "Company"), participating in a number of investments in the Company between 2014 and 2020.

6.      My initial investment in Genius occurred after being introduced to Andy Heyward, Genius's Chief Executive Officer, sometime between 2013 and 2014.  I viewed Mr. Heyward as an innovator whose personal financial investment in the Company exhibited his commitment to its growth.

7.      Over the subsequent years, I maintained an investment position in Genius through various transactions, including note purchases, warrant exercises, direct share purchases and sales, and to a lesser extent through public market trading.  I never owned more than 10% of the Company's registered securities.

8.      On September 20, 2019, I entered into an agreement with Genius to extend the payment due date of certain secured convertible notes that I acquired in August 2018.  I worked exclusively with Michael Jaffa, Genius's Chief Executive Officer, in executing the September

2

2019 agreement.  Prior to signing, I had no communications or coordination with any other Defendant regarding the terms of the agreement or my investment decision.

9.    In early December 2019, I received an email from Special Equities Group ("SEG") soliciting my participation in a warrant exercise for cash at a reduced price in exchange for new warrants at a discount (the "December 2019 Warrant Exercise").  At that time, I understood that Genius had retained SEG to manage the Company's debt obligations.  I indicated my interest and participated, exercising 35,000 pre-existing warrants from October 2017 and August 2018 for $0.21 in cash, and in exchange received new 5.5-year warrants for 35,000 shares.  Prior to signing, I had no communications or coordination with any other Defendant regarding the terms of the warrant exercise and exchange, or my investment decision.

10.    I am a long-standing client of SEG.  My business relationship with SEG has resulted in regular access to their investment opportunities.  As a long-term client, I have participated in multiple SEG-managed transactions beyond those involving Genius.

11.    As an individual investor in SEG-managed transactions, I am typically presented with deal opportunities in a "take-it-or-leave-it" fashion.  In other words, my position as a minor and individual investor is limited to accepting or declining predetermined transaction terms.  I have no participation in or visibility into the negotiation process.  Based on my long-standing professional relationship and trust in SEG, I generally rely on SEG's presentation of the investment terms rather than conducting my own review.

12.    In February 2020, I received an email from SEG soliciting my participation in a Genius PIPE (private investment in public equity) transaction.  I had no communications with anyone else investing in Genius, or of others who may have been contacted by SEG about the investment opportunity.

13.     I informed SEG of my decision to invest $85,000 in the PIPE transaction; a position I maintained through the deal's closing in March 2020 (the "March 2020 PIPE Transaction"), despite SEG's persistent efforts to secure a larger commitment.  Beyond specifying this investment amount, I had no input into any other transaction terms.  In connection with my participation in the March 2020 PIPE Transaction, I purchased $106,250 in convertible notes and received 505,952 warrants.

14.     Following the close of the March 2020 PIPE Transaction, Genius conducted four registered direct offerings of Genius common stock on May 7, May 8, May 18, and May 28, 2020 (the "May 2020 Transactions"), which I decided to purchase the following:

- May 7, 2020:  100,000 shares
- May 8, 2020:  100,000 shares
- May 18, 2020:  75,000 shares
- May 28, 2020:  75,000 shares

15.     Relatedly, I was informed that Genius offered to register the shares that would be obtained through the exercise of warrants issued in the March 2020 PIPE Transaction upon my execution of a leak-out agreement (the "May Leak-Out Agreement").  In June 2020, I was notified that the Company offered to register shares of common stock that would be converted from the convertible notes issued in the March 2020 PIPE Transaction in exchange for another leak-out agreement (the "June Leak-Out Agreement").

16.     I was notified of and indicated my desire to participate in the December 2019 Warrant Exercise, the March 2020 PIPE Transaction, the May 2020 Transactions, the May Leak-Out Agreement, and the June Leak-Out Agreement through communications with SEG alone. Consistent with my past practice and business relationship with SEG, I received the final drafts of all transaction documents from SEG and returned them with my signature.

17.     As with all SEG-managed transactions that I am involved in, I did not negotiate or have the ability to negotiate any terms of the December 2019 Warrant Exercise, the March 2020 PIPE Transaction, the May 2020 Transaction, or the May and June Leak-Out Agreements.  I did not have the ability to weigh-in on even the existence of these documents.  I did not communicate or coordinate my investment decisions with any other Defendant, nor did I consider their involvement.

18.     At all times, my conversion and cashless exercise of warrants was done independently and facilitated through direct communications with Genius.  I did not communicate or coordinate with any other Defendant about the number of warrants I would be exercising before the registration went into effect.

19.     In June and July 2020, I sold shares in Genius stock that I obtained by virtue of the March 2020 PIPE Transaction and the May 2020 Transactions.  My decision to sell my shares was made independently, without any communication or coordination with, or reliance on, any of the other Defendants.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Executed on: _____


_____

Richard Molinsky

17. As with all SEG-managed transactions that I am involved in, I did not negotiate or have the ability to negotiate any terms of the December 2019 Warrant Exercise, the March 2020 PIPE Transaction, the May 2020 Transaction, or the May and June Leak-Out Agreements. I did not have the ability to weigh-in on even the existence of these documents. I did not communicate or coordinate my investment decisions with any other Defendant, nor did I consider their involvement.

18. At all times, my conversion and cashless exercise of warrants was done independently and facilitated through direct communications with Genius. I did not communicate or coordinate with any other Defendant about the number of warrants I would be exercising before the registration went into effect.

19. In June and July 2020, I sold shares in Genius stock that I obtained by virtue of the March 2020 PIPE Transaction and the May 2020 Transactions. My decision to sell my shares was made independently, without any communication or coordination with, or reliance on, any of the other Defendants.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: 1/14/2025

Richard Molinsky

5