UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD AUGENBAUM,<br><br>              Plaintiff,<br><br>   v.<br><br>ANSON INVESTMENTS MASTER FUND LP; BRIO CAPITAL MASTER FUND LTD.; BRIO SELECT OPPORTUNITIES FUND, LP; CVI INVESTMENTS, INC.; EMPERY ASSET MASTER, LTD.; EMPERY DEBT OPPORTUNITY FUND, LP; EMPERY TAX EFFICIENT, LP; EMPERY ASSET MANAGEMENT, LP; IROQUOIS MASTER FUND LTD.; IROQUOIS CAPITAL INVESTMENT GROUP, LLC; Ll CAPITAL GLOBAL OPPORTUNITIES MASTER FUND; M3A LP; and RICHARD MOLINSKY,<br><br>              Defendants,<br><br>   -and-<br><br>KARTOON STUDIES, INC.,<br><br>              Nominal Defendant. | Civil Action No. 1:22-cv-00249-AS<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT L1 CAPITAL GLOBAL OPPORTUNITIES MASTER FUND'S MOTION FOR RECONSIDERATION**

## **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1

    I.    The Motion Relies on Controlling Second Circuit Authority, and CSX Supports Rather Than Undercuts L1 ................................................................................................................. 1

    II.    Plaintiff Cannot Seek Reconsideration Through an Opposition, and Its Position Confirms the Gap in Its Evidence. ..................................................................................................... 2

    III.    The Court Previously Said Plaintiff Would Have to Show Substantial Evidence; Plaintiff Has Not Done So as to L1 ................................................................................... 3

    IV.    Issuer or Placement-Agent Disclosures to Multiple Investors Cannot, Standing Alone, Create a Section 16(B) Jury Issue ................................................................................... 3

    V.    The Leak-Out Is Not Evidence of Investor Coordination ................................................... 4

CONCLUSION .......................................................................................................................... 5

# **TABLE OF AUTHORITIES**

Cases

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*,
  654 F.3d 276 (2d Cir. 2011) .................................................................................................. 1, 2, 6

*Lowinger v. Morgan Stanley & Co. LLC*,
  841 F.3d 122 (2d Cir. 2016) ...................................................................................................... 4, 5

*Morales v. Quintel Ent., Inc.*,
  249 F.3d 115 (2d Cir. 2001) ............................................................................................... 1, 2, 4, 5

*Schaffer ex rel. Lasersight Inc. v. CC Investments, LDC*,
  2002 WL 31869391 (S.D.N.Y. Dec. 20, 2002) ............................................................................. 5

*Wellman v. Dickinson*,
  682 F.2d 355 (2d Cir. 1982) ............................................................................................... 1, 2, 5, 6

Reconsideration exists for exactly this situation: the Court treated a very large, mixed record as if it applied uniformly to all defendants, when, as to L1, there is no evidence of inter-investor communication or coordinated action. Plaintiff says the motion is "improper" because it does not rely on controlling law. It does. L1 grounded its motion in two Second Circuit decisions the Court relied on—*Wellman v. Dickinson*, 682 F.2d 355 (2d Cir. 1982), and *Morales v. Quintel Ent., Inc.*, 249 F.3d 115 (2d Cir. 2001)—and in the Court's own statement at the pleading stage that plaintiff would ultimately have to produce substantial evidence of a group.

Plaintiff's answer is to invoke *CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276 (2d Cir. 2011). But *CSX* is fully consistent with L1's position: the Second Circuit there required "a precise finding, adequately supported by specific evidence, of whether a group existed…" *Id.* at 284, not a finding based on issuer-side emails and a non-negotiable deal term. Plaintiff also argues that, because the Court identified communications and coordination with respect to other defendants, the same result should follow for L1. That is the precise point L1 asked the Court to revisit. The Court said the record showed potential coordination as to those other defendants; it did not identify any such evidence as to L1 sufficient as a matter of law to create an issue of fact to place L1's participation before a jury, who may fail to distinguish different defendants and parallel versus group activity.

## ARGUMENT

I. **The Motion Relies on Controlling Second Circuit Authority, and *CSX* Supports Rather Than Undercuts L1**

Plaintiff contends L1 did not "focus on controlling law." L1 cited *Wellman*, 682 F.2d at 363–65 (discussing the evidence of coordinated activity that supported group status), and *Morales*, 249 F.3d at 124–25 (explaining that a group requires an agreement "to act together for the purpose

1

of acquiring, holding, voting or disposing" of securities). Those are the very cases the Court relied upon, and they require evidence of investor-driven coordination, not just parallel purchases.

Plaintiff argues that the truly controlling case is *CSX*. *CSX* helps L1. In *CSX*, the Second Circuit was dealing with a record that actually showed investor-to-investor interaction: the funds were in repeated contact about *CSX*, exchanged views, pursued a common activist strategy, coordinated the timing and structure of their *CSX* stake largely through cash-settled swaps, and even worked with counsel on disclosure and Schedule 13D issues together. *See CSX Corp.,* 654 F.3d at 280–83, 309. That is the kind of concrete, bilateral, or multilateral action that is required. Even with that, the Second Circuit remanded, requiring the district court to provide "a precise finding, adequately supported by specific evidence, of whether a group existed for purposes of acquiring CSX shares". *Id.* That is what L1 asks the Court to do here: make a precise, defendant-specific finding, supported by specific evidence, as to L1. On this record, such a finding cannot be made because—as Plaintiff effectively concedes—there is no L1-to-investor communication, no shared draft, no common counsel, and no investor-initiated plan that includes L1.

II.  **Plaintiff Cannot Seek Reconsideration Through an Opposition, and Its Position Confirms the Gap in Its Evidence.**

Plaintiff has not itself moved for reconsideration under Local Civil Rule 6.3. A party cannot seek reconsideration of the Court's ruling through an opposition to someone else's reconsideration motion. Plaintiff's effort implicitly concedes the point L1 is making: even Plaintiff does not contend it has adequate evidence of investor-to-investor coordination as to the initial investment, so it shifts the focus to the later registered directs and to a uniform, issuer-imposed leak-out agreement, which it looks to hang its entire claim against L1 on.

2

### III. The Court Previously Said Plaintiff Would Have to Show Substantial Evidence; Plaintiff Has Not Done So as to L1

In denying the motions to dismiss, the Court recognized that Plaintiff would have to demonstrate "substantial" evidence of a group at a later stage. Plaintiff's opposition does not confront that earlier standard. Instead, it quotes the more abstract formulation that it "takes no more than" combining for a common objective. That observation, drawn from Rule 13d-5(b), was made at the pleading stage and is incomplete. At summary judgment, the question is not whether a common objective is imaginable, but whether the record contains evidence that L1 *agreed with* and *combined with* anyone else for that objective. As to other defendants, the Court identified communications and conduct it viewed as potential coordination; as to L1, there is none. Even if a common objective to get repaid or have existing warrants exercised could suffice to form the basis for a Rule 16(b) group (and it should not), L1 had none of that and came in without prior interests or similar motives. Even *arguendo* if the leak-out agreement is viewed as evidence of coordination by L1, that would only apply to the later direct offerings, and L1 should be entitled to judgment as to the initial investment. The cited evidence as to L1's coordination as to the initial investment is only that they were told other parties were investing. This cannot be sufficient to raise an issue of fact as to that transaction, and the Court should not lump all transactions together as one issue of fact to present to a jury.

### IV. Issuer or Placement-Agent Disclosures to Multiple Investors Cannot, Standing Alone, Create a Section 16(B) Jury Issue

Plaintiff's theory is that because SEG/Genius told L1 that other investors were participating, and because L1 invested on the same terms, a fact issue automatically exists. If accepted, that rule would mean almost every multi-investor PIPE, private placement, or registered direct would evade summary judgment. Issuers and agents regularly tell prospective investors who

3

else is in or expected and provide that information in public SEC filings; investors always have a parallel economic goal (to close on the offered terms). Section 16(b) is a "blunt instrument" that must be confined to its "narrowly drawn purpose", not extended to sweep in ordinary capital-raising arrangements. *Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 129 (2d Cir. 2016). Parallel investment motive is not group evidence. Every investor in a PIPE wants to close, get stock, and preserve price. The Second Circuit requires an agreement to act together "for the purpose" of acquiring, holding, voting, or disposing—not simply acting at the same time for the same economic reason. *Morales*, 249 F.3d at 124–25. Turning every such deal into a 16(b) group question to be submitted to a jury would do exactly what the Second Circuit warns against, and it would radically disrupt the industry by creating unsustainable levels of uncertainty.

If the Court's position is that this kind of multi-investor transaction is, by itself, always enough to create a Section 16(b) group, then the Court should say so. That clarification would let investors know what they can and cannot do to avoid a jury trial when they are told (a) who else is participating or (b) that a term is mandatory, even though—like L1—they never communicated or coordinated with any other investor.

### V. The Leak-Out Is Not Sufficient Evidence of Investor Coordination

Plaintiff again relies on the leak-out agreement. The record shows that L1 objected and was told the term was a condition of investing. Agreeing to a non-negotiable, issuer-imposed condition is not the same thing as agreeing with other investors to act together. If it were, then every lock-up in an underwriting, every lender intercreditor, and every sponsor-side joinder would become group evidence. None of the controlling cases the Court cited—*Wellman*, 682 F.2d at 363–65; *Morales*, 249 F.3d at 124–25—adopt that rule, and *Lowinger* rejects it, citing the SEC's concerns. 841 F.3d at 131. *Schaffer* described similar evidence as "too minimal to factor into the Court's

4

inquiry into the existence or absence of sufficient evidence of group activity." *Schaffer ex rel. Lasersight Inc. v. CC Investments, LDC*, 2002 WL 31869391, at *5 (S.D.N.Y. Dec. 20, 2002). L1's position here is that its conduct is dissimilar to any party ever asked to face trial on group participation. It did not propose the term, did not negotiate it with other investors, and signed it begrudgingly only because the agent required it.

The opposition argues that L1 "accepted the benefit" of being part of a "class" of investors and therefore can be treated as having joined a group. Accepting an issuer's offer on the same economic terms as other investors is not 'benefitting from group activity'; it is simply taking the deal that was offered; the Second Circuit cases look for investor-initiated concerted action, not issuer-imposed uniformity.

Plaintiff also points to the use of "we" in L1, raising concerns about the leak-out. Individuals regularly use "we" when referring to their firm or company, and there is no evidence that L1 coordinated with others or that "we" was intended to be on behalf of any group. The relevant question, under *CSX* and the earlier Second Circuit cases, is whether there is specific evidence that L1 itself combined with others. *CSX,* 654 F.3d at 284; *Wellman*, 682 F.2d at 363–65. There is not.

## CONCLUSION

L1's motion did what a reconsideration motion is supposed to do: it pointed the Court back to controlling Second Circuit authority and to the Court's own statement of the evidentiary standard, and it showed that the specific, investor-to-investor evidence those authorities require is missing as to L1. Plaintiff's reliance on *CSX* only underscores the point, because *CSX* demanded a "precise finding, adequately supported by specific evidence" of a group. 654 F.3d at 283-284. On this record, such a finding cannot be made for L1. The Court should grant reconsideration and enter summary judgment in L1's favor as to all claims, but at a minimum as to its initial investment.

5

November 4, 2025
New York, New York

        HARRIS ST. LAURENT & WECHSLER LLP

        By: */s/ Yonaton Aronoff*
        Yonaton Aronoff
        Evan W. Bolla
        40 Wall Street, 53rd Floor
        New York, NY 10005
        Tel. 212-397-3370
        E: yaronoff@hs-law.com
        E: ewbolla@hs-law.com

        ELLIOTT KWOK LEVINE JAROSLAW NEILS LLP

        Jared R. Clark
        One Grand Central Place
        60 East 42nd Street, Suite 1570
        New York, NY 10165
        Tel. 917-287-1480
        E: jclark@ekljnlaw.com

        *Attorneys for Defendant L1 Capital Global Opportunities Master Fund*

## CERTIFICATE OF COMPLIANCE

    I, Yonaton Aronoff, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 6.3 of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") and Rule 8(C) of Judge Arnn Subramanian's Individual Practices in Civil Cases, that the foregoing Memorandum of Law was prepared using Microsoft Word, contains 1,646 words in accordance with the Local Rules. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated: October 14, 2025
       New York, New York

                                                               /s/ Yonaton Aronoff
                                                                Yonaton Aronoff