# Vinson&Elkins

Michael L. Charlson  mcharlson@velaw.com
Tel +1.415.979.6910  Fax +1.415.704.3264

December 11, 2025

**Via E-Filing**

Hon. Arun Subramanian
United States District Judge
U.S. District Court for the Southern District of New York
500 Pearl Street, Courtroom 15A
New York, New York 10007

Re:   *Augenbaum v. Anson Investments Master Fund L.P., et al.*, No. 1:22-cv-00249-AS
      **Nominal Defendant's Request for Court-Ordered Mediation**

Dear Judge Subramanian:

In our capacity as counsel of record for Nominal Defendant Kartoon Studios, Inc. (f/k/a Genius Brands International, Inc.) ("Genius" or the "Company"), we write to respectfully request that the Court order a near-term mediation in which the Company—the ultimate beneficiary of any recovery from the case—can meaningfully participate.

**The Action.** This lawsuit asserts a claim under Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act") seeking defendants' disgorgement of purportedly illicit profits from short-swing trading in Genius stock in 2020. Under Section 16(b), disgorged profits or settlement payments, net of fees awarded to plaintiff's counsel, would be paid to Genius. With the recent denial of cross-motions for summary judgement, this matter is now set for trial on June 8, 2026. Under the Court's scheduling order, the parties must meet in person for one hour prior to the pretrial conference to discuss settlement (ECF 296). While Genius appreciates the Court's directive for an in-person discussion, Genius respectfully urges that more than a one-hour meeting will be needed to settle the action. Moreover, guidance from the Court confirming the Company's legitimate role in any talks would, Genius believes, be quite helpful and could facilitate reaching an agreement.

**Issues Ripe for Compromise.** This is not a typical Section 16(b) case. It does not involve the common scenario in which a corporate director or officer somehow bought and sold company securities within six months. Rather, plaintiff must prove that the defendants acted as a Group within the meaning of Section 13(d) of the Exchange Act because it is only with aggregation of the defendant ownership interests that defendants, jointly, meet the threshold ownership level to potentially trigger Section 16(b) obligations. As Your Honor knows from the summary judgment motions, serious factual disputes surround this central question of a Group. The complex nature of the underlying transactions means that there are also significant questions about how much money defendants made from their trades. Even plaintiff's expert reports, which opine that profits were

Vinson & Elkins LLP  Attorneys at Law
Austin  Dallas  Denver  Dubai  Dublin  Houston  London
Los Angeles  New York  Richmond  San Francisco  Tokyo  Washington

555 Mission Street, Suite 2000
San Francisco, CA 94105
Tel +1.415.979.6900  Fax +1.415.651.8786  velaw.com



well into the nine figures, offer a range of damage estimates that spans nearly $100 million. With many serious unresolved questions of fact and law, this is a case where one should expect compromise.

**The Company's Interest.** A near-term settlement is very important to Genius. As the Company has disclosed publicly, it is and has been in serious financial straits for some time. The Company disclosed a going-concern risk in its Form 10-Q filing for the Second Quarter of 2025. And while immediate solvency issues appear to be in abeyance owing to a recent small infusion of new cash—the Company sold an equity interest of up to 42% of the Company for a mere $7.3 million (before expenses)—Genius' long-term success remains highly uncertain. With the Court's denial of summary judgment, the prospect of a recovery in this case could be a meaningful Company asset.

The alternative to settlement would be quite negative for Genius, which has already spent $1.5 million of its very limited resources on this litigation, primarily for responding to discovery demands. Beyond the additional expenses that the Company can anticipate as the action moves to and through trial, Genius is keenly aware of the timetable should there be no settlement. Even if plaintiff prevails, it will likely be years before the Company could realize on any judgment. Trial is set for next June. After the assumed verdict for plaintiff, there will be post-trial motions and an appeal, and possibly a second appeal to the U.S. Supreme Court. And if defendants win, an appeal by plaintiff seems likely. Depending on the appellate outcome, further proceedings in this Court, including a possible second trial, could be necessary. This timetable works to Genius' clear detriment given its current needs.

**Settlement Talks and Company (Non-)Involvement.** In recent discussions between Company counsel and counsel to several defendants, it appears that defendants are interested in settling. Plaintiff's counsel advises that he, too, wants to settle. The question is for what sum. The Company believes that plaintiff's prosecution of the action to date has taken an aggregate settlement of just a few million dollars off the table. But equally unproductive would be a strident demand that defendants pay a substantial nine-figure sum.

Plaintiff and defendants attempted to mediate the case last March. At plaintiff's insistence, Genius was excluded entirely from that mediation. Plaintiff—a person who holds all of 10 shares of Genius stock purchased for about $20—asserted that he should have absolute control over any settlement and settlement discussions, without regard to the impact on Genius. Indeed, notwithstanding the case caption and Genius' status as the lawful beneficiary of any settlement, plaintiff's counsel essentially contended that Genius was not even a party to the case. Because Genius very much wanted the parties to explore settlement in a good faith, meaningful way, Genius agreed to stand as a non-party that day; and Genius still knows nothing about the discussions with Mr. Murphy save that Plaintiff's counsel left the mediation abruptly, apparently unhappy with a defense (or a defendant's) settlement proposal.

**Recent Settlement Developments.** To Genius' knowledge, no meaningful settlement discussions have taken place since March. As noted, Genius has spoken with counsel to several defendants and believes there is interest in resolving the case. Genius has also tried engaging with plaintiff's counsel, offering to try to facilitate discussions and explaining why settlement now makes sense. Plaintiff's counsel rejected those overtures. Plaintiff's counsel said, for example, that it did not need Genius' help to engage with defendants about settlement; however, the Company is unaware that plaintiff's counsel has done more

than perhaps a *pro forma* call to one or another defense lawyer. The Company has no information that any real effort to reach a resolution has occurred or is in the making.

**The Company's Motion.** To Genius, this stagnation on the settlement front is troubling, as the window of opportunity for settlement may be open for only a short time. Accordingly, Genius respectfully requests that the Court direct the parties to a further mediation, to occur as promptly after the new year as possible. Genius further requests that the Court make clear that Genius should participate substantively in that mediation. Given Genius' status as the lawsuit's supposed beneficiary, it makes little sense to exclude Genius from efforts to settle it.

Genius wishes to be clear: plaintiff's prosecution of the action to this point has created what could be a valuable Company asset, and plaintiff's counsel should be paid for that work should the parties settle. But the Company respectfully disagrees with the assertion implicit in the rejection by plaintiff's counsel of Genius facilitation overtures—that is, that Genius' active involvement would somehow impede matters. To the contrary, Genius believes that its active involvement would help achieve a settlement that could be presented to the Court for approval. The Court's review of any proposed settlement should allay any concerns about the case being settled for well below its fair settlement value, or well above.

Genius thanks the Court for its consideration of this matter. Counsel is of course available to answer any questions the Court may have, and to respond to any comments to this letter from the other parties. (none of whom was shown this letter prior to its issuance).

Very truly yours,

VINSON & ELKINS LLP

Michael L. Charlson
*Attorneys for Nominal Defendant*
*Kartoon Studios, Inc.*

Cc: All Counsel of Record

The Court is happy to facilitate settlement discussions if everyone is on board. But the participants and nature of those discussions are up to the parties. Obviously the Company is now on record as to its views, which everyone should consider. If in light of those expressed views the Court can be of assistance, please let us know by way of a joint letter or motion on consent. For present purposes, the motion is denied without prejudice.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 298.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: December 12, 2025