**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TODD AUGENBAUM,

               Plaintiff,

       v.

ANSON INVESTMENTS MASTER FUND LP;
BRIO CAPITAL MASTER FUND LTD.; BRIO
SELECT OPPORTUNITIES FUND, LP; CVI
INVESTMENTS, INC.; EMPERY ASSET
MASTER, LTD.; EMPERY DEBT
OPPORTUNITY FUND, LP; EMPERY TAX
EFFICIENT, LP; EMPERY ASSET
MANAGEMENT, LP; IROQUOIS MASTER
FUND LTD.; IROQUOIS CAPITAL
INVESTMENT GROUP, LLC; L1 CAPITAL
GLOBAL OPPORTUNITIES MASTER FUND;
M3A LP; RICHARD MOLINSKY,

               Defendants,

    -and-

KARTOON STUDIOS, INC.,

               Nominal Defendant.

Civil Action No. 1:22-cv-00249-AS

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTIONS IN LIMINE**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

I.  MOTION IN LIMINE NO. 1: HEARSAY NON-PARTY DOCUMENTS ARE INADMISSIBLE AND SHOULD BE EXCLUDED ........................................................... 1

    A.  September 20, 2019, Genius/SEG Email Thread (PX-95) ..................................... 1

    B.  March 17, 2020, Genius Press Release (PX-405, PX-406, PX-407, PX-408, PX-412, PX-414, and PX-415) ................................................................ 2

    C.  May 7 and 8, 2020, Email Messages Between SEG and Hudson Bay Capital (PX-475 and PX-596) .............................................................................. 3

    D.  May 18, 2020, SEG Email Messages to Heyward re: "SEG Family" (PX-582) ........................................................................................................... 4

    E.  "May 28, 2020" SEG Internal Memorandum (PX-623) ...................................... 4

II.  MOTION IN LIMINE NO. 2: THE NOVEMBER 16, 2023, ORAL ARGUMENT TRANSCRIPT SHOULD BE EXCLUDED ...................................................................... 8

III.  MOTION IN LIMINE NO. 3: THE DECLARATION OF MICHAEL JAFFA SHOULD BE ADMITTED INTO EVIDENCE ................................................................... 9

IV.  PLAINTIFF SHOULD BE PRECLUDED FROM ADVANCING UNSUBSTANTIATED FACTUAL CONTENTIONS ...................................................... 10

    A.  MOTION IN LIMINE NO. 4: Plaintiff Should Be Barred From Contending That Defendants Engaged in a "Pump and Dump" Scheme ............. 10

    B.  MOTION IN LIMINE NO. 5: Plaintiff Should Be Precluded From Falsely Contending That Master Netting Agreements Between Each Defendants and Genius Caused Profits and Losses to Be Shared Among Defendants ........... 12

V.  PLAINTIFF SHOULD BE PRECLUDED FROM MAKING IRRELEVANT CONTENTIONS ............................................................................................................. 13

    A.  MOTION IN LIMINE NO. 6: Plaintiff Should Be Barred From Introducing Evidence of Defendants' Investments in Unrelated Securities ......... 13

    B.  MOTION IN LIMINE NO. 7: Plaintiff Should Be Precluded From Contending That Defendants' Agreement to the Same Form of Transaction Document Is Evidence of a Group ...................................................... 16

C.    MOTION IN LIMINE NO. 8: Plaintiff Should Be Precluded From Addressing Whether the Terms of Transaction Documents Were "Standard" Unless Plaintiff Shows That Issue Is Relevant to the Existence of a Group ........................................................................................................16

D.    MOTION IN LIMINE NO. 9: Plaintiff Should Be Precluded From Asserting That Leak-Out Agreements Between Defendants and Genius Are Evidence of a Group .......................................................................................18

E.    MOTION IN LIMINE NO. 10: Plaintiff Should Be Precluded From Contending That Voting or Lock-Up Agreements Between Genius and Its Stockholders Are Evidence of a Group ...............................................................19

VI.    MOTION IN LIMINE NO. 11: PLAINTIFF SHOULD BE PRECLUDED FROM CONTENDING THAT DEFENDANTS CVI, EMPERY, L1 CAPITAL, M3A, OR RICHARD MOLINSKY JOINED A PUTATIVE GROUP PRIOR TO MARCH 11, 2020 .....................................................................................................21

VII.    MOTION IN LIMINE NO. 12: IF THE COURT BIFURCATES ISSUES OF LIABILITY AND DISGORGEMENT, PLAINTIFF SHOULD BE BARRED FROM PRESENTING EVIDENCE OR ARGUMENT REGARDING ITS DISGORGEMENT CALCULATIONS ............................................................................21

VIII.    IF THE COURT DOES NOT BIFURCATE ISSUES OF LIABILITY AND PROFITS, PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING LEGALLY ERRONEOUS DISGORGEMENT CALCULATIONS ...............................23

A.    MOTION IN LIMINE NO. 13: Plaintiff Should Be Precluded From Advancing His Putative "*Loper Bright*" Disgorgement Calculations ...................23

B.    MOTION IN LIMINE NO. 14: Plaintiff Should Be Precluded From Offering Disgorgement Calculations That Include Any Putative Profits From Any Transaction by Which a Defendant Joined the Putative Group ...........25

C.    MOTION IN LIMINE NO. 15: Plaintiff Should Be Precluded From Offering Disgorgement Calculations That Include Any Fictional Purchases Associated With the May 2020 Repricing of Convertible Notes and Warrants ..................................................................................................................26

CONCLUSION ..................................................................................................................26

**TABLE OF AUTHORITIES**

**CASES**

*20230930-DK-Butterfly-1, Inc. v. Cohen*,
    No. 24-Civ. 5874 (NRB), 2025 WL 1151598 (S.D.N.Y. April 18, 2025) ........................24

*In re Amazon.com, Inc. eBook Antitrust Litigation*,
    No. 21-cv-00351 (GHW) (VF), 2023 WL 6006525 (S.D.N.Y. July 31, 2023), ...............19

*Austin v. Town of Farmington*,
    826 F.3d 622 (2d Cir. 2016)......................................................................................8

*Avalon Holdings Corp. v. Gentile*,
    No. 18cv7291 (DLC), 18cv8896 (DLC) 2023 WL 6566810
    (S.D.N.Y. Oct. 6, 2023) ........................................................................................22

*Bayoh v. Afropunk LLC*,
    No. 18cv5820 (DLC), 2020 WL 6269300 (S.D.N.Y. Oct. 26, 2020)................................17

*Beastie Boys v. Monster Energy Co.*,
    983 F. Supp. 2d 354 ......................................................................................14, 15

*Cartica Management, LLC v. Corpbanca, S.A.*,
    50 F. Supp. 3d 477 (S.D.N.Y. 2014)..........................................................................21

*Champion Parts Rebuilders, Inc. v. Cormier Corp.*,
    661 F. Supp. 825 (N.D. Ill. 1987) ..............................................................................2

*Chechele v. Dundon*,
    850 F. App'x 75 (2d Cir. 2021) ................................................................................24

*Chechele v. Scheetz*,
    819 F. Supp. 2d 342 (S.D.N.Y. 2011) ....................................................................19, 20

*Culley v. Edwards Manufacturing Co. of Alberta Lea*,
    No. 20-cv-7346 (NSR), 2024 WL 5145565 (S.D.N.Y. Dec. 17, 2024)..............................5

*Dingman v. Fuji Japanese Steakhouse Sushi Inc.*,
    No. 20-CV-4850 (NSR), 2023 WL 8032113 (S.D.N.Y. Nov. 17, 2023) ...........................7

*Donoghue v. Y-mAbs Therapeutics, Inc.*,
    No. 21-Civ. 7182 (KPF), 2024 WL 3675716 (S.D.N.Y. Aug. 5, 2024)...........................24

*Dreiling v. America Online Inc.*,
    578 F.3d 995 (9th Cir. 2009) ..................................................................................12

*Foremost-McKesson, Inc. v. Provident Securities Co.*,
    423 U.S. 232 (1976)..............................................................................................25

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)..................................................................................................11

*Hemispherx Biopharma, Inc. v. Johannesburg Consolidated Investments*,
   553 F.3d 1351 (11th Cir. 2008) ...............................................................................21

*Heublein, Inc. v. General Cinema Corp.*,
   722 F.2d 29 (2d Cir. 1983)........................................................................................12

*Highland Capital Management, L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008)......................................................................10

*Katona v. Federal Express Corp.*,
   No. 95 Civ. 10951 (JFK), 1998 WL 126059 (S.D.N.Y. Mar. 19, 1998) ...............7

*Kempen International Funds v. Syneos Health, Inc.*,
   No. 23-cv-8848 (AS), 2026 WL 880257 (S.D.N.Y. Mar. 31, 2026)...................11

*LaSalle Bank National Ass'n v. CIBC Inc.*,
   No. 08 Civ. 8426 (WHP) (HBP), 2012 WL 466785
   (S.D.N.Y. Feb. 14, 2012) ..........................................................................................18

*Litzler v. CC Investments, L.D.C.*,
   411 F. Supp. 2d 411 (S.D.N.Y. 2006)......................................................................16

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024).............................................................................................23, 24

*Lowinger v. Morgan Stanley & Co. LLC*,
   841 F.3d 122 (2d Cir. 2016).................................................................................17, 18

*Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
   No. 11-cv-681 (KBF), 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)...........17, 18

*Magma Power Co. v. Dow Chemical Co.*,
   136 F.3d 316 (2d Cir. 1998)......................................................................................12

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017)......................................................................15

*Mohamed v. Laz Parking*,
   79 F. App'x 482 (2d Cir. 2003) ..................................................................................7

*Morrison v. Madison Dearborn Capital Partners*,
   463 F.3d 312 (3d Cir. 2006)......................................................................................26

*New York State National Organization for Women v. Terry*,
   159 F.3d 86 (2d Cir. 1998)..........................................................................................8

iv

*Nosirrah Management, LLC v. AutoZone, Inc.*,
    No. 2:24-cv-2167, 2024 WL 4804083 (W.D. Tenn. Nov. 15, 2024) ...............................24

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*,
    38 F.3d 627 (2d Cir. 1994)....................................................................................................6

*Rodriguez v. Señor Frog's de la Isla, Inc.*,
    642 F.3d 28 (1st Cir. 2011)..................................................................................................10

*Rosenberg v. XM Ventures*,
    129 F. Supp. 2d 681 (D. Del. 2001)....................................................................................25

*Rosenberg v. XM Ventures*,
    274 F.3d 137 (3d Cir. 2001)...........................................................................................21, 25

*Roth v. LAL Family Corp.*,
    748 F. Supp. 3d 180 (S.D.N.Y. 2024)..................................................................................24

*In re Reserve Fund Securities & Derivative Litigation*,
    Nos. 09 MD.2011(PGG), 09 Civ. 4346(PGG), 2012 WL 12354219 (S.D.N.Y.
    Sept. 10, 2012) ................................................................................................................10, 15

*Rubenstein v. Knight-Swift Transportation Holdings Inc.*,
    664 F. Supp. 3d 523 (S.D.N.Y. 2023).................................................................................22

*S.E.C. v. Wyly*,
    56 F. Supp. 3d 260 (S.D.N.Y. 2014)....................................................................................22

*Saraf v. West Publishing Corp.*,
    No. 16-CV-1425 (VSB), 2018 WL 7107266 (S.D.N.Y. Dec. 20, 2018)..............................1

*Schaffer ex rel. Lasersight Inc. v. CC Investments, LDC*,
    No. 99 Civ. 2821(VM), 2002 WL 31869391 (S.D.N.Y. Dec. 20, 2002) ............................2

*United States v. Cummings*,
    858 F.3d 763 (2d Cir. 2017).........................................................................................2, 3, 4

*United States v. Lang*,
    589 F.2d 92 (2d Cir. 1978)....................................................................................................8

*United States v. Ulbricht*,
    79 F. Supp. 3d 466 (S.D.N.Y. 2015)....................................................................................15

*Wellman v. Dickinson*,
    682 F.2d 355 (2d Cir. 1982)..................................................................................................2

## **STATUTES**

11 U.S.C. § 101(38A) ...................................................................................................................12

v

15 U.S.C. § 78p(b) ..........................................................................................9, 23, 25

## **RULES**

Fed. R. Evid. 401(a) ................................................................................................8

Fed. R. Evid. 401 ................................................................................................13

Fed. R. Evid. 402 ................................................................................................13

Fed. R. Evid. 403 ........................................................................................ *passim*

Fed. R. Evid. 602 ..................................................................................................8

Fed. R. Evid. 801(c) ..............................................................................................5

Fed. R. Evid. 801(d)(1) .........................................................................................8

Fed. R. Evid. 802 ..............................................................................................1, 2

Fed. R. Evid. 803(1) ..............................................................................................7

Fed. R. Evid. 803(6)(A) .....................................................................................5, 6

Fed. R. Evid. 803(6)(E) .........................................................................................5

Fed. R. Evid. 804(a) ..............................................................................................9

Fed. R. Evid. 804(b)(3) .........................................................................................9

Fed. R. Evid. 804(b)(3)(A) ..................................................................................10

## **REGULATIONS**

17 C.F.R. § 16a-2(c) ...........................................................................................25

17 C.F.R. § 16b-6(a) ...........................................................................................26

17 C.F.R. § 240.16b-6(c)(2) ...........................................................................23, 24

Defendants respectfully submit this memorandum of law in support of their motions in limine.

## I.  MOTION IN LIMINE NO. 1: HEARSAY NON-PARTY DOCUMENTS ARE INADMISSIBLE AND SHOULD BE EXCLUDED

To advance Plaintiff's contention that Defendants constituted a "group," he asserts that Defendants coordinated their trading strategies before and after the March 2020 PIPE. (ECF No. 225 at 34–37.) He relies in part on factual claims set forth in documents created by non-parties Andy Heyward (the CEO of Kartoon Studios, Inc. ("Genius")) and Special Equities Group ("SEG"), Genius's placement agent. But it is hornbook law that "[e]mails and other out-of-court statements by third parties [are] almost certainly hearsay and thus inadmissible for the truth of the statements." *Saraf v. W. Publ'g Corp.*, No. 16-CV-1425 (VSB), 2018 WL 7107266, at *12 (S.D.N.Y. Dec. 20, 2018). Plaintiff does not propose to offer those exhibits for any non-hearsay purpose, and they are not subject to any of the hearsay exceptions that the Court discussed in its summary judgment order (ECF No. 287). Accordingly, they should be excluded. Fed. R. Evid. 802.

### A.  September 20, 2019, Genius/SEG Email Thread (PX-95)

PX-95 (previously submitted as ECF No. 226-57) is an email thread between Genius, Genius's outside counsel, and SEG. In that thread, Heyward and SEG's Joe Reda purport to recount communications that they had with various Defendants (and with one Defendant's counsel) regarding the terms on which certain Defendants might enter into transactions with Genius. Plaintiff cites this email as evidence that such communications occurred, *i.e.*, for the truth of its content. (*See* ECF No. 226-15 ¶ 38(a) (citing PX-95 to contend that Anson "threatened" a proposed bridge financing).) For PX-95 to be probative of whether Defendants agreed to act as a group, the jury would have to consider those out-of-court statements in PX-95 for their truth.

1

PX-95 may not be admitted for that purpose. Fed. R. Evid. 802; *United States v. Cummings*, 858 F.3d 763, 774 (2d Cir. 2017) (third-party statement that was "only probative if admitted for the truth of the matter asserted" was "inadmissible hearsay"). PX-95 is therefore inadmissible.

While in certain circumstances "communication between security holders can be evidence of an agreement" (ECF No. 287 at 8), Plaintiff cannot reasonably contend that PX-95 is evidence of communication between Defendants. The email does not reflect any plan to convey information between Defendants, and Genius and its placement agent SEG had every reason to discuss among themselves how investors might react to particular transaction terms that Genius might offer. Accordingly, it cannot be admitted.[1]

**B.    March 17, 2020, Genius Press Release
(PX-405, PX-406, PX-407, PX-408, PX-412, PX-414, and PX-415)**

These exhibits are copies of a March 17, 2020, Genius press release announcing that Genius had completed the March 2020 PIPE. (They were previously submitted as ECF Nos. 226-118 through -124.) The press release is entitled "CHAIRMAN AND CEO ANDY HEYWARD LEADS GROUP OF INVESTORS."

Plaintiff relies on this press release—an out-of-court, non-party statement—to assert that "a group was formed in connection with the March 2020 PIPE" with the meaning of Section 13(d)(3) of the Exchange Act, 15 U.S.C. § 78m(d)(3). (ECF No. 252 at 40.) That

---

[1]    The communications in the cases that the Court cited in its summary judgment decision were direct communications between investors. *See Wellman v. Dickinson*, 682 F.2d 355, 364 (2d Cir. 1982) (direct solicitation of and communication between group participants; no hearsay issue addressed in decision); *Schaffer ex rel. Lasersight Inc. v. CC Invs., LDC*, No. 99-CIV-2821(VM), 2002 WL 31869391, at *9 (S.D.N.Y. Dec. 20, 2002) ("conference call with . . . at least two of the Defendants"; no hearsay question addressed in decision); *Champion Parts Rebuilders, Inc. v. Cormier Corp.*, 661 F. Supp. 825, 832–34 (N.D. Ill. 1987) (direct communications between defendants concerning investment decisions; no hearsay issue addressed in decision).

2

contention is absurd: there is no reason that to believe that the author of this press release had Section 13(d)(3)'s definition of a "group" in mind or otherwise meant a "group" of investors to mean anything other than several investors. It would be unfairly prejudicial to Defendants to permit Plaintiff to offer this press release for that misleading purpose. *See* Fed. R. Evid. 403. In any event, the subjective beliefs of the unidentified author of this press release would not be at all probative of whether Defendants formed a group.

Plaintiff cannot offer this out-of-court, non-party statement to support a claim that Defendants were part of a Section 13(d)(3) "group of investors" led by Andy Heyward. *See Cummings*, 858 F.3d at 774. Plaintiff has no non-hearsay purpose for offering this document, and no exception applies.

### C.    May 7 and 8, 2020, Email Messages Between SEG and Hudson Bay Capital (PX-475 and PX-596)

In emails dated May 7 and 28, 2020, between non-parties SEG and Hudson Bay Capital, Hudson Bay Capital asks to "try and do some deal for GNUS" because the "stock is going crazy." SEG responds that that "[p]arty left the building" (PX-596, previously submitted as ECF No. 226-166) because Hudson Bay Capital "PASSED ON THE DEBT DEAL" (PX-475, previously submitted as ECF No. 226-165). No Defendant is copied on these emails. Relying on these non-party emails, Plaintiff contends that "[i]nvestors who did not participate in the March 2020 PIPE were prevented from participating" in Genius's March and May 2020 registered direct offerings. (ECF No. 225 at 20.) Because these non-party emails are probative only if the statements contained therein are accepted as true, they are inadmissible hearsay. *See Cummings*, 858 F.3d at 774. Plaintiff has no non-hearsay purpose for offering these emails, and no exception applies.

**D.**   **May 18, 2020, SEG Email Messages to Heyward re: "SEG Family"**
**(PX-582)**

In PX-582[2] (previously submitted as ECF No. 226-15), an email between non-parties on which some Defendants were blind-copied, SEG's Joe Reda says to Genius's Andy Heyward that "SEG has amazing relationships with a small basket of companies and investors because they are all part of the SEG FAMILY," and that "WE [SEG] ONLY DO BUSINESS WITH FRIENDS AND FAMILY." If Plaintiff is offering this email to show that certain Defendants who received blind copies of this email were putatively members of the "SEG FAMILY," PX-582 shows no such thing. It is impossible to determine on the face of the document who else, including non-Defendant parties, might have received this email. In any event, PX-582's only conceivable probative value is as evidence that Defendants were part of the "SEG FAMILY" in connection with their investments in Genius. (*See* ECF No. 225 at 11.) Because the probative value of PX-582 depends on the truth of its content, it is inadmissible hearsay. *See Cummings*, 858 F.3d at 774.

**E.**   **"May 28, 2020" SEG Internal Memorandum**
**(PX-623)**

PX-623 (previously submitted as ECF No. 226-162) is an internal memorandum titled "Notes to the Files" prepared by Dan Ripp, the president of Bradley Woods & Co. Ltd., of which SEG is a division. SEG's Jonathan Schechter stated that Mr. Ripp prepared the memo based on "a quick squib" that Mr. Schechter had supplied to him (ECF No. 232-16 at 139:22–140:4) and that Mr. Schechter did not review the memo after Mr. Ripp prepared it (*id.* at 326:17–18). No Defendants are alleged to have received this memorandum.

---

2   PX-582 is also included on Defendants' Exhibit List as DX-381, albeit conditionally: if the Court does not grant the relief requested by this Motion, Defendants would reserve the right to offer that document.

Plaintiff offers PX-623 to show that SEG received a joint call from Anson and Iroquois regarding Genius's May 28, 2020, registered direct transaction:

> We [SEG] received a call from Anson and Iroquois asking if the company [Genius] was willing to sell common stock off its shelf registration statement at $1.50.

(PX-623; *see also* ECF No. 225 at 21.) Offering this out-of-court statement by a non-party for its truth is textbook hearsay. Fed. R. Evid. 801(c). Plaintiff may examine witnesses at trial as to whether such a call occurred.

The Court has suggested that PX-623 might be admissible as a business record or present sense impression. (*See* ECF No. 287 at 8 n.1.) Respectfully, neither exception applies:

**(1) Not Admissible as a Business Record.** The business record exception applies only where "the record [of the event] was made at or near the time by—or from information transmitted by—someone with knowledge" *and* the party opposing admission "does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(A), (E). Those criteria cannot be met here. Mr. Ripp did not have direct knowledge of the May 28, 2020, registered direct transaction, and his account of that transaction could not be admitted under the business records exception. *Culley v. Edwards Mfg. Co. of Alberta Lea*, No. 20-CV-7346 (NSR), 2024 WL 5145565, at *4 (S.D.N.Y. Dec. 17, 2024) (form describing workplace accident inadmissible where individual completing form "did not witness the accident"). PX-623 could therefore be admitted only on the theory that Mr. Ripp was attempting to recount a description of the transaction transmitted to him by Mr. Schechter. But there is substantial reason to believe the description of the transaction set forth in PX-623 is untrustworthy, either because (i) Mr. Schechter inadvertently misdescribed the transaction to Mr. Ripp or (ii) Mr. Ripp's attempt to memorialize Mr. Schechter's statement—which Mr. Schechter did not review—introduced numerous errors. (*See* ECF No. 232-16, Schechter Dep. Tr. at 327:20–23 ("I

5

was just sloppy. And for all I know, Dan Ripp could have transcribed what I wrote and made typographical errors.").)

There is ample evidence that PX-623 lacks trustworthiness, because that document misstates numerous basic facts:

- PX-623 is putatively dated May 28, 2020, which is self-evidently incorrect. It refers in the past tense to an event that occurred on June 1, 2020, and the memorandum is contained in a file named "GNUS Memo 6.2.20.docx" attached to an email sent on June 2, 2020.

- PX-623 incorrectly states the size of that transaction as "15,000,000 shares" when in fact that transaction involved 20,000,000 shares. (ECF No. 232-72 at 2–3.)

- PX-623 incorrectly refers to "May 28, 202," an obvious typographical error which confirms that the memorandum was neither prepared carefully nor proofread.

Most fundamentally, there is no evidence that the telephone call that the memorandum purports to recount ever occurred. Mr. Schechter, Amin Nathoo (Anson), and Richard Abbe (Iroquois) each unequivocally testified there never was a call between SEG, Anson, and Iroquois. (ECF No. 232-16, Schechter Dep. Tr. at 141:5–7 ("I've never received a call from Richie [Abbe] and Amin [Nathoo] on the phone together, never in my life, unqualified."); ECF No. 232-11, Nathoo Dep. Tr. at 345:16–22 ("Q. Are you absolutely sure you did not call with Iroquois . . . ? A. Yes, I am quite certain I would not have done that given we don't make calls like that with other investors."); ECF No. 232-21, Abbe Dep. Tr. at 203:13–15 ("Q. Do you recall making a call with Anson? A. I never made a call with Anson.").)

The Second Circuit has observed that "the principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Potamkin Cadillac Corp. v. B.R.I. Coverage*

*Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) (citation omitted); *see also id.* at 633 (transaction history that "contained inaccuracies resulting from, *e.g.*, keypunch errors, misapplication of cash or billings among policies, mislabeling of policies, and miscodings" held inadmissible as business record). Because there is no reason to believe that PX-623 accurately describes the events it purports to recount, PX-623 must be excluded.

   ***(2) Not Admissible as a Present Sense Impression.*** A present sense impression must be made "while or immediately after the declarant perceived" an event or condition. Fed. R. Evid. 803(1). Here, the memorandum's file name, "GNUS Memo 6.2.20.docx," and reference to a transaction that "closed on Monday, June 1" suggests that PX-623 was prepared on Monday, June 1, or Tuesday, June 2, 2020—at least four or five days after SEG purportedly "received a call from Anson and Iroquois" on May 28. (PX-623.) A lapse of several days far too long to permit admission as a present sense impression. *See, e.g.*, *Mohamed v. Laz Parking*, 79 F. App'x 482, 483 (2d Cir. 2003) (statement made "the morning after" event did "not fall within" exception); *Katona v. Fed. Exp. Corp.*, No. 95-CIV-10951 (JFK), 1998 WL 126059, at *3 (S.D.N.Y. Mar. 19, 1998), *on reconsideration*, 1999 WL 13735 (S.D.N.Y. Jan. 12, 1999) (one hour lapse "just too long"); *see also Dingman v. Fuji Japanese Steakhouse Sushi Inc.*, No. 20-CV-4850 (NSR), 2023 WL 8032113, at *5 (S.D.N.Y. Nov. 17, 2023) ("uncertainty in time" between event and statement was "fatal" to applying exception).

* * *

   Even if these exhibits had some conceivable non-hearsay purpose, any probative value they might have will be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403. Plaintiff has made clear that he intends to rely on these documents for the truth of the matters asserted in them, and there is a significant

danger that the jury would rely on these documents for that same improper purpose. They should therefore be excluded.

## II.    MOTION IN LIMINE NO. 2: THE NOVEMBER 16, 2023, ORAL ARGUMENT TRANSCRIPT SHOULD BE EXCLUDED

PX-755 and PX-809 are copies of the transcript of the November 16, 2023, oral argument on Defendants' motion to dismiss (previously docketed as ECF No. 138). The only individuals recorded as speaking on the transcript other than the Court are the parties' counsel. Those counsel have no personal knowledge of any relevant facts in this action and are precluded from testifying as witnesses at trial. Fed. R. Evid. 602. For the same reason, any attempt by Plaintiff to introduce counsel's hearsay statements through the transcript would be improper. The Second Circuit has long held that, "[i]n a hearsay situation, the declarant is, of course, a witness, and neither [Rule 803] nor Rule 804 dispenses with [Rule 602's] requirement of firsthand knowledge." *United States v. Lang*, 589 F.2d 92, 98 (2d Cir. 1978) (quoting Fed. R. Evid. 803 advisory committee's note).

Even if counsel had personal knowledge, the transcript would still be inadmissible hearsay. Because the transcript reflects argument on a motion to dismiss, the arguments of counsel on such a motion are predicated on an assumption that the complaint's allegations are true. *See Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016) (standard of review on a motion to dismiss). As such, it follows that such arguments could not qualify as an adverse party's admission exempted from the rule against hearsay. *See* Fed. R. Evid. 801(d)(1); *cf. New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 97 n.7 (2d Cir. 1998) ("[J]udicial admissions . . . are statements of fact rather than legal arguments made to a court."). For the same reason, such arguments could not be even minimally relevant to the factual disputes before the Court. *See* Fed. R. Evid. 401(a)

8

(relevance means "any tendency to make a fact more or less probable"). Therefore, the transcript should be excluded.

### III. MOTION IN LIMINE NO. 3: THE DECLARATION OF MICHAEL JAFFA SHOULD BE ADMITTED INTO EVIDENCE

Both PX-775 and DX-442 (previously submitted as ECF No. 232-1) are the declaration of Michael Jaffa, who, at the times relevant to the action, served as Genius's General Counsel and Senior Vice President of Business Affairs, and who currently serves as Genius's Chief Operating Officer, General Counsel, and Corporate Secretary. (ECF No. 232-1 ¶¶ 1–2.) Defendants did not object to Plaintiff's inclusion of that declaration on his list (*see* ECF No. 327-6 at 86) but Plaintiff objected to Defendants' inclusion of that declaration on their list. (*See* ECF No. 327-7 at 42.) Having proposed it as an exhibit himself, Plaintiff should not be heard to object to Defendants' proposal to offer Mr. Jaffa's declaration, but for avoidance of doubt Defendants request that the Court enter an order in limine directing that that declaration may be entered into evidence if Mr. Jaffa is unwilling to appear at trial as a witness.

Mr. Jaffa is not a party to this action and, while he is listed on Defendants' witness list (ECF No. 327-3), he resides outside the subpoena jurisdiction of the Court and will be unavailable at trial unless he appears voluntarily. *See* Fed. R. Evid. 804(a). If Mr. Jaffa does not appear, the declaration cannot be excluded as hearsay, as it would be admissible as a statement against interest. Fed. R. Evid. 804(b)(3). If Plaintiff is ultimately successful in this action, Genius, not Plaintiff, will receive the disgorged profits. 15 U.S.C. § 78p(b) ("[A]ny profit realized" by a statutory insider in violation of Section 16(b) "shall inure to and be recoverable by the issuer."). Therefore, as he was and remains one of Genius's senior officers, Mr. Jaffa's statements in the declaration that support Defendants' contentions in this action—for example, that Genius "determined that Plaintiff's allegations, which hinge on the existence of a Section 13(d) Group among the

9

Defendants, [are] without merit" (ECF No. 232-1 ¶ 16)—were "so contrary to [his] . . . pecuniary interest" that would only have made such statements because he believed them to be true. Fed. R. Evid. 804(b)(3)(A). His declaration should therefore be admitted into evidence.

## IV.    PLAINTIFF SHOULD BE PRECLUDED FROM ADVANCING UNSUBSTANTIATED FACTUAL CONTENTIONS

Courts routinely enter orders in limine precluding parties from advancing unfairly prejudicial contentions for which no evidence has been adduced. *E.g.*, *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 192 (S.D.N.Y. 2008) (precluding plaintiff in limine from "coloring its case and wasting the jury's time with misleading and confusing testimony and evidence regarding securities law"); *In re Rsrv. Fund Sec. & Derivative Litig.*, No. 09-CIV-4346 (PGG), 2012 WL 12354219, at *8 (S.D.N.Y. Sept. 10, 2012) (excluding evidence purporting to show defendants failed to communicate information to trustees of unrelated fund due to risk of jury confusion); *accord Rodriguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 36 (1st Cir. 2011) (affirming exclusion as "speculation or conjecture" of defense contention that "depends on a chain of inferences far too strained and uncertain to have much probative worth, and certainly not enough to counterbalance its high potential for unfair prejudice"). Here, the Court should enter the orders requested below to avoid "unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403.

### A.    MOTION IN LIMINE NO. 4: Plaintiff Should Be Barred From Contending That Defendants Engaged in a "Pump and Dump" Scheme

Plaintiff has asserted that Defendants conducted "a pump and dump scheme [in Genius securities] with the pump being a torrent of press releases touting Genius that were withheld pending the March 2020 PIPE." (ECF No. 252 at 10.) But Plaintiff has adduced no evidence supporting that highly prejudicial contention, and should be barred from so contending:

10

*First*, there is no evidence that Defendants did anything to "pump" up Genius's stock price. Plaintiff contends that "a torrent of press releases . . . were withheld pending the March 2020 PIPE." (ECF No. 252 at 10.) But Genius issued those press releases, not Defendants. There is no evidence that Defendants knew anything about what they contained or whether they would have any impact on Genius's stock price, and SEG explicitly denied having shared any such information with Defendants. (ECF No. 232-16, Schechter Dep. Tr. at 61:12–22 ("Q. Was that [press release] something that you had ever discussed with the investors at any point in time before prior to the news coming out? . . . A. No. Investors don't want news before it comes out. That means they're restricted. And they can't do anything in the marketplace. It's a big no-no.").) Mere hints of good news in store for the company "are too general to be relied on, classic puffery, vague expressions of corporate optimism." *Kempen Int'l Funds v. Syneos Health, Inc.*, No. 23-cv-8848 (AS), 2026 WL 880257, at *6 (S.D.N.Y. Mar. 31, 2026). In short, when Defendants made their decisions to invest in Genius securities, they did not know anything that the market did not know, and there is no evidence that Defendants did anything else to affect Genius's stock price.

*Second*, Plaintiff has offered no evidence that any of those press releases actually had any impact on Genius's stock price. The stock market was extremely volatile in the early stages of the COVID pandemic, particularly for nanocap companies such as Genius. But there is no evidence that Genius's press releases caused any movements in its stock price during this period. As the Court is well aware, plaintiffs frequently "introduce evidence of the *existence* of price impact in connection with 'event studies'—regression analyses that seek to show that the market price of the defendant's stock tends to respond to pertinent publicly reported events." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 280 (2014). Plaintiff has not proffered any such study here.

11

***Third***, allowing Plaintiff to advance unfairly prejudicial and unsubstantiated claims of a "pump and dump scheme" would waste time because such claims are irrelevant here. Section 16(b) is a "strict liability" statute and "[n]o showing of actual misuse of inside information or of unlawful intent is necessary to compel disgorgement." *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320 (2d Cir. 1998). Accordingly, allegations of fraud or market manipulation are irrelevant. *Heublein, Inc. v. Gen. Cinema Corp.*, 722 F.2d 29, 31 (2d Cir. 1983) (rejecting attempt to conflate 16(b) and 10(b) allegations and noting that "Section 10(b) . . . is addressed to fraudulent use of inside information," while Section 16(b) was not "designed for this task"). Even if Defendants made "concerted efforts" to commit some kind of fraud, as Plaintiff appears to allege, such efforts "do not form a beneficial ownership group for Section 13(d) purposes." *See Dreiling v. Am. Online Inc.*, 578 F.3d 995, 1003 (9th Cir. 2009). Plaintiff should not be permitted to sidetrack the trial with an unsubstantiated and baseless claim of price manipulation.

**B.   MOTION IN LIMINE NO. 5: Plaintiff Should Be Precluded From Falsely Contending That Master Netting Agreements Between Each Defendants and <u>Genius Caused Profits and Losses to Be Shared Among Defendants</u>**

Each Defendant entered into a separate Master Netting Agreement with Genius in connection with that Defendant's investment in the March 2020 PIPE Transaction. Those agreements are commonplace and permit the immediate offsetting of two counterparties' obligations under multiple contracts between those same two parties in the event one party enters bankruptcy. *See* 11 U.S.C. § 101(38A) (defining "master netting agreement"); *id.* § 561 (creating safe harbor from automatic stay to permit netting pursuant to master netting agreement). By its very nature, then, a Master Netting Agreement could not have multiple Defendants as parties. Nevertheless, Plaintiff has asserted—without any factual basis—that the Master Netting Agreements provided for "'netting' of gains, losses, payments or obligations among the Defendants." (ECF No. 254 ¶ 196.) That claim has no basis in the agreements themselves. Plaintiff

should not be permitted to unfairly prejudice Defendants and to confuse and mislead the jury by making such false and unsubstantiated assertions in the presence of the jury.

## V.  PLAINTIFF SHOULD BE PRECLUDED FROM MAKING IRRELEVANT CONTENTIONS

### A.  MOTION IN LIMINE NO. 6: Plaintiff Should Be Barred From Introducing Evidence of Defendants' Investments in Unrelated Securities

Plaintiff intends to introduce 25 communications[3] regarding Defendants' actual or contemplated investments in securities of entirely unrelated issuers, including Iconic Brands, Inc. ("ICNB"), 22nd Century Group, Inc. ("XXII"), Uppercut Brands, Inc. ("UCUT"), Vuzix Corporation ("VUZI"), Tecogen, Inc. ("TGEN"), Smith Micro Software, Inc. ("SMSI"), GTC Corp ("GTXO"), Aboena Therapeutics, Inc. ("ABEO"), or Flotek Industries, Inc. ("FTK") (together, the "Unrelated Securities"). Such evidence is irrelevant to whether Defendants acted as a group with respect to Genius securities, and should be excluded. *See* Fed. R. Evid. 401, 402.

The operative complaint nowhere mentions any of these Unrelated Securities, nor did Plaintiff address any of these companies on summary judgment other than to generally assert that "SEG regularly solicits [a subset of the] Defendants to invest in new deals for which it is serving as the placement agent and these Defendants and Molinsky regularly invest in SEG deals." (ECF No. 226-15 ¶ 16; *see generally* ECF No. 105.) Yet, Plaintiffs' exhibit list contains twenty-five documents that principally discuss the Unrelated Securities. Nine of those never even mention Genius securities. For example:

---

[3]  PX-23, PX-27, PX-50, PX-58, PX-59, PX-406 (previously submitted as ECF No. 226-119), PX-445, PX-507, PX-509, PX-514, PX-582 (previously submitted as ECF No. 226-15), PX-586, PX-591, PX-619, PX-625, PX-626, PX-627, PX-740, PX-741, PX-742, and PX-747. The other documents are attached as Exhibits to the Transmittal Declaration of Andrew D. Gladstein, Esq., filed herewith. PX-741 is also included on Defendants' Exhibit List as DX-434, albeit conditionally: if the Court does not grant the relief requested by this Motion, Defendants would reserve the right to offer that document.

- **PX-23** is an email received by eight individuals (including two Defendants) regarding FTK and ABEO, without reference to Genius.

- **PX-27** is an email thread between certain Defendants and representatives of SEG relating to ICNB; it does not refer to Genius.

- **PX-58** and **PX-59** are emails between two Defendants forwarding materials regarding ICNB; they do not refer to Genius.

- **PX-445** is an email from Joe Reda of SEG to a single Defendant relating to UCUT without reference to Genius.

- **PX-507** and **PX-509** are emails between SEG, representatives of VUZI, and two Defendants regarding VUZI without any reference to Genius.

- **PX-586** and **PX-591** are emails involving two Defendants and a representative of TGEN without any reference to Genius.

- **PX-625** and **PX-626** are June 3, 2020, emails between representatives of SEG and a single Defendant regarding SMSI with a single mention of "other accounts [that] want to fund the $4mil stub piece for GNUS and cash exchange warrants that haven't been exercised."

If Plaintiff had any intention of drawing substantive connections between Defendants' investments in ICNB, TGEN, SMSI, or any other Unrelated Securities and Defendants' investments in Genius, he would have included on his witness list individuals with knowledge of the Unrelated Securities, and he would have included on his exhibit list documents specific to the Unrelated Securities. He did neither. Rather, his sole motivation for presenting these materials to the jury is to invite a speculative and unwarranted inference that because some subset of Defendants communicated about Unrelated Securities, they are more likely to have formed a group

14

with respect to the Genius transactions. Such an invitation is likely to confuse the jury and unfairly prejudice to the Defendants, and should be precluded by an order in limine. *See Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354. 359 (S.D.N.Y. 2014) (introduction of evidence of similar conduct by defendant would either "take up significant time" or permit the jury to draw an unfair inference "at grave risk to the truthseeking process"); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (precluding evidence of other litigations involving some of the same parties because the "jury could easily confuse any evidence regarding the merits of the [unrelated] Action with the merits of this case, causing undue prejudice").

Even if such evidence had some marginal probative value, it should nevertheless still be excluded because any such probative value would be substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, [and] needlessly presenting cumulative evidence." Fed. R. Evid. 403. Such evidence would only serve to confuse and mislead the jury by effectively creating a "mini-trial" regarding numerous other transactions with different actors and issues. *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492–93 (S.D.N.Y. 2015) (excluding evidence where its admission "may lead to a mini-trial on collateral issues"); *Beastie Boys*, 983 F. Supp. 2d at 358–59 (excluding evidence which would "require the paradigmatic 'trial within a trial' that Rule 403 disfavors"); *In re Rsrv. Fund Sec. & Derivative Litig.*, 2012 WL 12354219, at *8 ("The Court cannot permit the trial of this action to evolve into a mini-trial about [a collateral issue]."). Plaintiff's introduction of such evidence would require Defendants to rebut or offer context for such evidence that has nothing to do with the Genius transactions issue, which could require calling witnesses from other companies or other third-party

15

investors from each of those other transactions. *See Beastie Boys*, 983 F. Supp. 2d at 358–59.

Those documents should therefore be excluded.

**B.    MOTION IN LIMINE NO. 7: Plaintiff Should Be Precluded From Contending That Defendants' Agreement to the Same Form of Transaction Document Is Evidence of a Group**

Plaintiff should be precluded from contending in the presence of the jury that the

Defendants' agreement to substantially similar transaction documents is evidence of a group. It is

well established that "[g]eneral allegations of parallel investments by institutional investors do not

suffice to plead a 'group,'" including because "the circumstances of a private placement require a

single set of documents equally affecting all investors." *Litzler v. CC Invs., L.D.C.*, 411 F. Supp.

2d 411, 415 (S.D.N.Y. 2006). Accordingly, Plaintiff should not be permitted to assert before the

jury that the use of "a single set of documents" is evidence of a group.

**C.    MOTION IN LIMINE NO. 8: Plaintiff Should Be Precluded From Addressing Whether the Terms of Transaction Documents Were "Standard" Unless Plaintiff Shows That Issue Is Relevant to the Existence of a Group**

Whether a particular term in any of the transaction documents signed by Defendants is

common or uncommon, standing alone, does not make it any more or less likely that Defendants

agreed to act as a group. Accordingly, Plaintiff should be precluded from addressing at trial

whether a particular transaction term in those documents was common or uncommon unless

Plaintiff has offered a basis, founded in evidence, to believe that question is relevant to whether

Defendants acted as a group. Permitting Plaintiff to explore whether transaction terms are common

or uncommon without restriction will waste time and create an irrelevant trial-within-a-trial. As

the Court observed in its order on summary judgment, the question of whether transaction terms

were standard should not be treated "as a separate factual question for the jury to answer

independent of its implications as to the existence of a group." (ECF No. 287 at 13.)

16

Whether transaction terms are "industry standard," standing alone, is not relevant to the question of group formation in Section 13(d) or 16(b) cases. *See, e.g.*, Tr. of Oral Decision at 615:3–15, *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, No. 1:00-cv-01115 (S.D.N.Y. Feb. 23, 2001) (listing various group factors) (previously submitted as ECF No. 321-4). So far as Defendants are aware, the sole court to mention whether a particular term was common in connection with a Section 16(b) case was *Lowinger*, which involved a lock-up agreement among underwriters in connection with Facebook's initial public offering. After plaintiff's counsel in that action—the same counsel representing Plaintiff Augenbaum here—contended that lock-up agreement should be a basis for Section 16(b) liability, the Second Circuit noted that lock-up agreements are "common . . . even essential, to the typical IPO." *Lowinger v. Morgan Stanley & Co.*, 841 F.3d 122, 131 (2d Cir. 2016). But there is nothing in *Lowinger* to suggest that the Second Circuit intended to make an "industry standard" test part of the group analysis. Transaction terms necessarily reflect the needs and priorities of particular issuers and investors, and nothing in Section 16(b) requires the use of a particular set of transaction terms or penalizes the use of novel terms.

Permitting Plaintiff to contend that "the terms of the agreements differed markedly from industry practice" as a means of establishing the existence of a group will require the parties to try irrelevant factual questions of industry practice. Doing so will not only create a lengthy trial within the trial, but it will cause significant confusion for the jury, who will be asked to hear extensive testimony on the frequency of numerous complex transaction terms, none of which bears any relevance to whether Defendants acted as a group. That danger warrants excluding such contentions and testimony. Courts frequently exclude testimony about compliance with putative industry standards when such testimony is not relevant to the issues presented in the case. *E.g.,*

17

*Bayoh v. Afropunk LLC*, No. 18-cv-5820 (DLC), 2020 WL 6269300, at \*4 (S.D.N.Y. Oct. 26, 2020) (excluding expert testimony as to whether defendants complied with "industry standards" as "irrelevant and . . . likely to mislead and confuse the jury"); *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11-cv-681 (KBF), 2015 WL 5459662, at \*8 (S.D.N.Y. Sept. 16, 2015) (where obligations were defined by contract, expert testimony on "compliance with an industry standard" precluded as "irrelevant," "unhelpful and misleading to the trier of fact," and creating "danger that the jury would be seriously misled"); *LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, No. 08-Civ-8426 (WHP)-(HBP), 2012 WL 466785, at \*12 (S.D.N.Y. Feb. 14, 2012) (similarly). Such contentions should also be excluded here.

### D.  MOTION IN LIMINE NO. 9: Plaintiff Should Be Precluded From Asserting That Leak-Out Agreements Between Defendants and Genius Are Evidence of a Group

In May and June 2020, Defendants signed individual "leak-out agreements" with Genius. Plaintiff asserted in his summary judgment briefing that "the leak-out agreements created a combination among Defendants with respect to the holding of common stock." (ECF No. 252 at 26.) Plaintiff should be barred from making any such contention here.

*First*, the Second Circuit has recognized that agreements of this type have legitimate purposes that "do not implicate the purposes of Section 13(d) and its definition of a 'group.'" *Lowinger*, 841 F.3d at 132 (discussing lock-up agreements in context of IPO). Such agreements promote "an orderly market free of the danger of large sales of pre-owned shares depressing the share price." *Id.* at 131. Here, the leak-out agreements were made a condition of registering Defendants' shares not to benefit Defendants but rather to protect other Genius shareholders from sales by Defendants. While the Second Circuit noted in *Lowinger* that evidence of "coordination between…parties to a lock-up agreement with implications for control changes" might affect that analysis, *id.* at 132, Plaintiff has adduced no evidence that these leak-out agreements had any

18

control-related purpose or that Defendants had any interest in exercising control over Genius.[4]

Plaintiff should not be permitted to confuse and mislead the jury by suggesting, contrary to Second

Circuit precedent, that investors' assent to leak-out agreements are evidence—much less sufficient

evidence—that those investors constituted a Section 16(b) group.

*Second*, discovery has disproven Plaintiff's allegation that Defendants all entered into a

single leak-out agreement with Genius. (ECF No. 105 ¶ 83.) In fact, all Defendants entered into

separate leak-out agreements, no Defendant was a party to any other's Defendant's leak-out

agreement, and no Defendant could enforce the terms of any other Defendant's leak-out

agreement. They are not evidence of a group. *See Chechele v. Scheetz*, 819 F. Supp. 2d 342, 348

(S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012) ("primary flaw" with plaintiff's allegation

that lock-up agreements created a "group" was "that the alleged members of the shareholder group

were parties to separate Lock-Up Agreements"). Plaintiff should not be permitted to make any

such incorrect, confusing, and misleading assertion before the jury.

### E.  MOTION IN LIMINE NO. 10: Plaintiff Should Be Precluded From Contending That Voting or Lock-Up Agreements Between Genius and Its Stockholders Are Evidence of a Group

At summary judgment, Plaintiff asserted that the Voting Agreements and Lock-Up

Agreements that Genius entered into with its major shareholders prior to the March 2020 PIPE

transaction were evidence that Defendants had formed a Section 16(b) group. (*See* ECF No. 252

at 8–9.) Plaintiff should be barred from making either contention in the presence of the jury:

---

[4]   Plaintiff's putative expert Max Holmes suggested that the leak-out agreements were atypical because they provided for enforcement via specific performance and contained most-favored-nation provisions. (ECF No. 226-114 ¶¶ 90–91.) He provided no evidence for that contention, and indeed both types of provisions are standard in commercial contracts. *See, e.g.*, *In re Amazon.com, Inc. eBook Antitrust Litig.*, No. 21-cv-00351 (GHW) (VF), 2023 WL 6006525, at *3 n.5 (S.D.N.Y. July 31, 2023), *report and recommendation adopted*, 2024 WL 918030 (S.D.N.Y. Mar. 2, 2024) (MFNs are "common devices").

***Voting Agreements.*** The Voting Agreements do not show that Defendants formed a group. As Plaintiff conceded at summary judgment, Genius's March 2020 PIPE transaction could not have proceeded unless Genius's stockholders approved it. (ECF No. 254 ¶¶ 178–82 (citing Nasdaq Rule 5635(d)).) The Voting Agreements simply committed Genius's major stockholders to vote to approve that transaction (and did not otherwise limit their rights to vote their shares). (*Id.* ¶ 181.) Genius entered into those agreements with its own stockholders on March 3, 2020 (*id.*), more than a week before it entered into Securities Purchase Agreements with Defendants on March 11, 2020. (*See* ECF No. 226-103.) Genius had a perfectly sensible reason for entering into such agreements: if its stockholders had not approved the March 2020 PIPE transaction, the company's financing effort would have failed. No Defendant was a party to any Voting Agreement: those Voting Agreements were between Genius and its major shareholders. (ECF No. 254 ¶ 181.) *See Chechele*, 819 F. Supp. 2d at 349 ("[T]he Registration Rights Agreement attached to the motion papers can hardly form the basis for Section 16(b) liability, since neither Scheetz nor any other member of the alleged shareholder group was party to the agreement."). Plaintiff has adduced no evidence showing that these Voting Agreements indicated that Defendants had formed a group, and should not be permitted to make that unsubstantiated assertion in the presence of the jury.

***Lock-Up Agreements.*** The Lock-Up Agreements are likewise not probative of the existence of a group. It is undisputed that Genius entered into such agreements with its Principal Stockholders on March 10, 2020 (ECF No. 254 ¶¶ 187–88), before it entered into various Securities Purchase Agreements with Defendants on March 11, 2020. (*See* ECF No. 226-103.) No Defendant was a party to any Lock-Up Agreement. (ECF No. 254 ¶ 187.) *See Chechele*, 819 F. Supp. 2d at 349. Plaintiff has adduced no evidence showing that Defendants could be part of a group based on Lock-Up Agreements to which they were not parties—or that these Lock-Up

Agreements otherwise indicated that Defendants had formed a group—and should not be permitted to make that unsubstantiated assertion in the presence of the jury.

## VI. MOTION IN LIMINE NO. 11: PLAINTIFF SHOULD BE PRECLUDED FROM CONTENDING THAT DEFENDANTS CVI, EMPERY, L1 CAPITAL, M3A, OR RICHARD MOLINSKY JOINED A PUTATIVE GROUP PRIOR TO MARCH 11, 2020

No defendant can be a beneficial owner of a group before that Defendant acquired beneficial ownership of Genius securities. *See Cartica Mgmt., LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d 477, 495 (S.D.N.Y. 2014) ("Although the Second Circuit has not ruled on whether a person can be a member of a 'group' without being a 'beneficial owner,' a court in this district and two circuits have held that beneficial ownership of the equity securities is necessary in order to be a member of a 'group' as defined in section 13(d)."), c*iting Transcon Lines v. A.G. Becker Inc.*, 470 F. Supp. 356, 373 (S.D.N.Y. 1979); *Rosenberg v. XM Ventures*, 274 F.3d 137, 145 (3d Cir. 2001); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008).

Here, Plaintiff concedes that Defendants CVI, Empery, L1 Capital, M3A, and Richard Molinsky did not beneficially own Genius shares prior to March 11, 2020. (*See* ECF No. 226-13 at 207–09.) Accordingly, Plaintiff has conceded that none of these Defendants could have joined a group at any time prior to March 11, 2020. Plaintiff should be precluded from contending to the contrary in the presence of the jury.

## VII. MOTION IN LIMINE NO. 12: IF THE COURT BIFURCATES ISSUES OF LIABILITY AND DISGORGEMENT, PLAINTIFF SHOULD BE BARRED FROM PRESENTING EVIDENCE OR ARGUMENT REGARDING ITS DISGORGEMENT CALCULATIONS

As Defendants' accompanying Motion to Bifurcate contends, issues of liability and damages should be bifurcated for trial. If the Court agrees, Plaintiff should be precluded from presenting evidence or argument regarding its calculations of the alleged Section 16(b) profits realized by Defendants, including through the testimony of Plaintiff's experts, Max Holmes and

Andrew Chin. Such calculations are neither relevant to any issue the jury must decide nor admissible under the Federal Rules of Evidence.

*First*, Plaintiff's calculations do not bear on any issue the jury must decide. As Defendants' Motion to Bifurcate explains, the calculation of disgorgement damages is a purely mechanical and equitable remedy for a judge, not for a jury to determine. *See S.E.C. v. Wyly*, 56 F. Supp. 3d 260, 264 (S.D.N.Y. 2014) ("Because disgorgement is an equitable remedy, [t]he district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged.") (internal quotations omitted). The transaction data are undisputed, and so there are no factual disputes for the jury to resolve related to disgorgement damages. *See Avalon Holdings Corp. v. Gentile*, 2023 WL 6566810, at *19 (S.D.N.Y. Oct. 6, 2023), *report and recommendation adopted as modified*, No. 18CV7291 (DLC), 2024 WL 449278 (S.D.N.Y. Feb. 5, 2024), *aff'd*, No. 24-1002, 2025 WL 3012333 (2d Cir. Oct. 28, 2025) (no factual dispute on disgorgement because underlying trading data was "produced and stipulated as accurate" and application of the *Smolowe* matching exercise was mere "accounting").

*Second*, Plaintiff's disgorgement calculations should be excluded under Rule 403 because they would unfairly prejudice Defendants and mislead the jury. Plaintiff intends to present figures exceeding hundreds of millions of dollars. Not only are those calculations incorrect as a matter of law (as demonstrated below), but they are not a reflection of the actual profits that Defendants obtained, and thus have the potential to confuse the jury. *See Rubenstein v. Knight-Swift Transp. Holdings Inc.*, 664 F. Supp. 3d 523, 546–47 (S.D.N.Y. 2023) (due to the punitive design of Section 16(b), disgorgement calculations are typically "substantially greater

than the actual profits" received by the insider) (quoting Peter J. Romeo & Alan L. Dye,

Section 16 Treatise and Reporting Guide § 12.02 at 1227 (5th ed. 2019)).

Accordingly, the Court should preclude Plaintiff from offering evidence or argument

regarding its disgorgement calculations.

## VIII.  IF THE COURT DOES NOT BIFURCATE ISSUES OF LIABILITY AND PROFITS, PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING LEGALLY ERRONEOUS DISGORGEMENT CALCULATIONS

If Plaintiff is permitted to offer calculations of Defendants' putative profits, Plaintiff should

be precluded from offering calculations that do not follow the applicable legal principles for

computing such profits under Section 16(b).

### A.    MOTION IN LIMINE NO. 13: Plaintiff Should Be Precluded From Advancing His Putative "*Loper Bright*" Disgorgement Calculations

When Congress enacted the Exchange Act, it specifically authorized the SEC to exempt

from Section 16(b) "any transactions which the Commission by rules and regulations may exempt

as not comprehended within the purpose of this subsection." 15 U.S.C. § 78p(b). Decades ago,

pursuant to that statutory authority, the SEC promulgated Exchange Act Rule 16b-6(c)(2), which

details how Section 16(b) profits are to be calculated in the case of derivative transactions,

including by exempting certain derivative transactions from such calculations. *See* 17 C.F.R.

§ 240.16b-6(c)(2) (adopted by 56 Fed. Reg. 7270 (Feb. 21, 1991) and amended at 61 Fed. Reg.

30394 (June 14, 1996)).

Some of the SEC's determinations in Rule 16b-6 favor Plaintiff's calculation and some do

not. Plaintiff would prefer to pick and choose among them, jettisoning any parts of that Rule that

might reduce his claim to recovery.[5] Thus, relying on *Loper Bright Enterprises. v. Raimondo*, 603

---

[5]    Plaintiff selectively invokes Rule 16b-6 where he perceives it to be in his interest. *See* ECF No. 252 at 11–12; *see also id.* at 12 n.3 (invoking Rule 16a-1).

U.S. 369 (2024), Plaintiff argues that "this Court should disregard Rule 16b-6(c)(2)—and any other SEC rule not subject to the principles of statutory *stare decisis*." (ECF No. 225 at 40.) To that end, Plaintiff has proposed a set of "*Loper Bright*" disgorgement calculations based on his selective application of Rule 16b-6. The Court should reject Plaintiff's suggestion and preclude him from offering those calculations:

**First**, given that Congress has expressly delegated authority to the SEC to address Section 16(b) disgorgement calculations, *Loper Bright*'s change to how courts consider issues of agency deference is not applicable to Exchange Rule 16b-6. *See Loper Bright*, 603 U.S. at 394 ("In a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion. Congress has often enacted such statutes."); *see also Nosirrah Mgmt., LLC v. AutoZone, Inc.*, No. 2:24-CV-2167, 2024 WL 4804083, at *6 n.4 (W.D. Tenn. Nov. 15, 2024) (15 U.S.C. § 78p(b) provides statutory "authorization of the SEC's Rule 16a-13 exemption, satisfying *Loper Bright*").

**Second**, Rule 16b-6 has been the settled law for more than thirty years, and has regularly been applied by the courts. *See, e.g.*, *Chechele v. Dundon*, 850 F. App'x 75, 78 (2d Cir. 2021) (summary order). Even if revisiting Rule 16b-6 were appropriate (and it is not), there is no basis to hold that it is applicable to the events which occurred in 2019 and 2020, years before *Loper Bright*. *See 20230930-DK-Butterfly-1, Inc. v. Cohen*, No. 24-CIV-5874 (NRB), 2025 WL 1151598, at *9 (S.D.N.Y. Apr. 18, 2025) ("We reject plaintiff's attempt to retroactively apply the Supreme Court's decision in *Loper* to undermine the Cohen defendants' reliance on what has been the rule of law for more than thirty years."); *see also Roth v. LAL Family Corp.*, 748 F. Supp. 3d 180, 186 n.5 (S.D.N.Y. 2024) ("[N]o party has suggested that any of the SEC's regulations or interpretations that could potentially affect the application of Section 16 are invalid,"); *Donoghue*

24

*v. Y-mAbs Therapeutics, Inc.*, No. 21-CIV-7182 (KPF), 2024 WL 3675716, at *15 (S.D.N.Y. Aug. 5, 2024) (applying exemptions to Section 16(b) liability set out in SEC rulemaking post-*Loper Bright*).

> **B.     MOTION IN LIMINE NO. 14: Plaintiff Should Be Precluded From Offering Disgorgement Calculations That Include Any Putative Profits From Any Transaction by Which a Defendant Joined the Putative Group**

The statutory language of Section 16(b) makes clear that a transaction that brings an investor over the 10% beneficial ownership threshold cannot be included in the calculation of disgorgable profits. *See* 15 U.S.C. § 78p(b) ("This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security."); 17 C.F.R. § 16a-2(c) ("The transaction that results in a person becoming a ten percent beneficial owner is not subject to section 16 of the Act unless the person otherwise is subject to section 16 of the Act."); *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 249–50 (1976). That rule operates no differently in the context of an alleged group. *See Rosenberg v. XM Ventures*, 129 F. Supp. 2d 681, 686 (D. Del. 2001) (relevant question was whether plaintiff "has adequately pleaded that XM was a beneficial owner of Motient stock at the time the shares at issue were acquired, thus, subjecting the acquisition and subsequent sale to the terms of Section 16(b)"), *aff'd*, 274 F.3d 137 (3d Cir. 2001).

As discussed above, Plaintiff has acknowledged that five Defendants were not beneficial owners of Genius securities until they acquired such securities in the March 2020 PIPE transaction. For those Defendants, the securities they acquired in connection with the March PIPE transaction cannot be included in any "profit" calculation. Plaintiff therefore should be precluded from offering any disgorgement calculation for those Defendants which would include profits on such securities.

**C.**    **MOTION IN LIMINE NO. 15: Plaintiff Should Be Precluded From Offering Disgorgement Calculations That Include Any Fictional Purchases Associated With the May 2020 Repricing of Convertible Notes and Warrants**

Certain Genius convertible notes and warrants were repriced on May 15, 2020. Plaintiff should be precluded from offering a "profits" calculation that is premised on any fictional "buy" transaction associated with that repricing. Because the repricing of these derivative securities was automatic upon the shareholder vote as provided in the Securities Purchase Agreement, that event is exempted from any matching calculation used to calculate disgorgement under Section 16(b). *See* 17 C.F.R. § 16b-6(a); *Morrison v. Madison Dearborn Cap. Partners*, 463 F.3d 312, 315 (3d Cir. 2006).

## CONCLUSION

For the foregoing reasons, Defendants' motions in limine should be granted.

26

Dated: New York, New York
      May 4, 2026

Respectfully submitted,

**FRESHFIELDS US LLP**

/s/ Andrew D. Gladstein
Andrew D. Gladstein
Shannon Sciaretta

3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
(646) 231-7098
andrew.gladstein@freshfields.com
shannon.sciaretta@freshfields.com

*Counsel for Defendants Empery Asset Master, Ltd., Empery Debt Opportunity Fund, LP, Empery Tax Efficient, LP, and Empery Asset Management, LP*

**HOGAN LOVELLS US LLP**

/s/ Dennis H. Tracey
Dennis H. Tracey, III
Catherine Bratic (*pro hac vice*)
Elizabeth Cochrane

390 Madison Avenue
New York, New York 10017
(212) 918-3000
dennis.tracey@hoganlovells.com
catherine.bratic@hoganlovells.com
elizabeth.cochrane@hoganlovells.com

*Counsel for Defendant Anson Investments Master Fund LP*

27

**ELLENOFF GROSSMAN & SCHOLE LLP**

*/s/ John Brilling Horgan*
John Brilling Horgan
Joanna Rebecca Cohen

1345 Avenue of the Americas
11th Floor
New York, New York 10105
(646) 895-7158
jhorgan@egsllp.com
jcohen@egsllp.com

*Counsel for Defendants Brio Capital Master Fund Ltd. and Brio Select Opportunities Fund LP*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

*/s/ Susan L. Saltzstein*
Susan L. Saltzstein
Andrea Griswold
Kurt Wm. Hemr
Jeffrey Geier
Christopher R. Fredmonski

One Manhattan West
New York, New York 10001
(212) 735-3000
susan.saltzstein@skadden.com
andrea.griswold@skadden.com
kurt.hemr@skadden.com
jeffrey.geier@skadden.com
christopher.fredmonski@skadden.com

*Counsel for Defendant CVI Investments, Inc.*

28

**ELLIOTT LEVINE JAROSLAW NEILS LLP**

/s/ *Jared R. Clark*
Jared R. Clark

One Grand Central Place
60 East 42nd Street, Suite 1570
New York, New York
(212) 321-0510
jclark@eljnlaw.com

*Counsel for Defendant L1 Capital Global Opportunities Master Fund*

**CLARK SMITH VILLAZOR LLP**

/s/ *Christopher J. Clark*
Christopher J. Clark
Benjamin A. Butzin-Dozier
Diana Wang

666 Third Avenue, 21st Floor
New York, New York 10017
(212) 377-0854
clark@csvllp.com
benjamin.dozier@csvllp.com
diana.wang@csvllp.com

*Counsel for Defendants Iroquois Master Fund Ltd. and Iroquois Capital Investment Group, LLC*

29

**GOULSTON & STORRS PC**

*/s/ Nicholas Cutaia*
Nicholas Cutaia
Peiran Zhang
Ruth-Claire Pollioni

730 Third Avenue, 12th Floor
New York, New York 10017
(212) 878-6900
ncutaia@goulstonstorrs.com

Jennifer B. Furey
Mariana Korsunsky

One Post Office Square
Boston, Massachusetts 02109
(617) 574-3575
jfurey@goulstonstorrs.com

*Counsel for Defendant M3A LP*

**LITMAN, ASCHE & GIOIELLA, LLP**

*/s/ Richard Asche*
Richard Asche

350 Central Park West Suite 10F
New York, New York 10025
(917) 414-6951
richardasche@lagnyc.com

*Counsel for Defendant M3A LP*

**STINSON LLP**

*/s/ Kieran M. Corcoran*
Kieran M. Corcoran

140 Broadway, Suite 2330
New York, New York 10005
(646) 883-7471
kieran.corcoran@stinson.com

*Counsel for Defendant Richard Molinsky*

30

## CERTIFICATE OF COMPLIANCE

I, Andrew D. Gladstein, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) and Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases, that the foregoing Memorandum of Law was prepared using Microsoft Word, contains 8,484 words in accordance with Local Rule 7.1(c).

Dated: New York, NY
        May 4, 2025

/s/ *Andrew D. Gladstein*
Andrew D. Gladstein

31