UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TODD AUGENBAUM,

              Plaintiff,

     v.

ANSON INVESTMENTS MASTER FUND LP;
BRIO CAPITAL MASTER FUND LTD.; BRIO
SELECT OPPORTUNITIES FUND, LP; CVI
INVESTMENTS, INC.; EMPERY ASSET
MASTER, LTD.; EMPERY DEBT
OPPORTUNITY FUND, LP; EMPERY TAX
EFFICIENT, LP; EMPERY ASSET
MANAGEMENT, LP; IROQUOIS MASTER
FUND LTD.; IROQUOIS CAPITAL
INVESTMENT GROUP, LLC; L1 CAPITAL
GLOBAL OPPORTUNITIES MASTER FUND;
M3A LP; RICHARD MOLINSKY,

              Defendants,

    -and-

KARTOON STUDIOS, INC.,

            Nominal Defendant.

Civil Action No. 1:22-cv-00249-AS

**DEFENDANTS' OMNIBUS MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO BIFURCATE
DETERMINATION OF LIABILITY AND DAMAGES**

**TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................ ii

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND...................................................................................2

LEGAL STANDARD...............................................................................................2

ARGUMENT............................................................................................................3

    A.    The Liability and Damages Issues Are Distinct and Readily Separable....................................................................................................4

    B.    Liability Presents Issues for the Jury, While Disgorgement Presents Issues for the Court................................................................6

    C.    A Finding of No Liability Would Be Dispositive, Promoting Judicial Economy......................................................................................8

    D.    A Combined Trial Would Create a Substantial Risk of Juror Confusion and Unfair Prejudice to Defendants ..........................................9

    E.    Bifurcation Will Not Prejudice Plaintiff....................................................12

CONCLUSION........................................................................................................12

CERTIFICATE OF COMPLIANCE......................................................................17

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   No. 08 Civ. 7508 (SAS), 2013 WL 664176 (S.D.N.Y. Feb. 25, 2013) ......................................3

*Amato v. City of Saratoga Springs, N.Y.*,
   170 F.3d 311 (2d Cir. 1999)..........................................................................................2, 3, 8, 10

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
   494 U.S. 558 (1990)...................................................................................................................7, 8

*Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*,
   288 F.R.D. 335 (S.D.N.Y. 2013) ..............................................................................................6, 11

*Roth ex rel. Estee Lauder Cos. Inc. v. LAL Fam. Corp.*,
   138 F.4th 696 (2d Cir. 2025) ...........................................................................................................4

*Guidi v. Inter-Continental Hotels Corp.*,
   No. 95 Civ. 9006(LAP), 2003 WL 1846864 (S.D.N.Y. Apr. 8, 2003).........................................3

*Hamm v. Potamkin*,
   No. 98-CIV-7425, 1999 WL 249721 (S.D.N.Y. Apr. 28, 1999) ...................................................9

*HVLPO2 v. Oxygen Frog, LLC*,
   949 F.3d 685 (Fed. Cir. 2020).......................................................................................................11

*Segen ex rel. KFx Inc. v. Westcliff Cap. Mgmt., LLC*,
   299 F. Supp. 2d 262 (S.D.N.Y. 2004)..........................................................................................10

*Litzler v. CC Invs., L.D.C.*,
   411 F. Supp. 2d 411 (S.D.N.Y. 2006).............................................................................................4

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
   No. 92 Civ. 7584, 2000 WL 422399 (S.D.N.Y. Apr. 12, 2000).....................................................8

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
   223 F. Supp. 2d 435 (S.D.N.Y. 2001).............................................................................................4

*Morales v. Executive Telecard, Ltd.*,
   No. 95 Civ. 10202 (KMW), 1998 WL 788786 (S.D.N.Y. Nov. 10, 1998) ...................................7

*Morales v. Mapco, Inc.*,
   66 F.R.D. 99 (N.D. Okla. 1974).......................................................................................................7

*Norwood v. Child. & Youth Servs., Inc.*,
No. CV 10-07944, 2012 WL 12882757 (C.D. Cal. July 27, 2012) ..........................................9

*Reading Indus., Inc. v. Kennecott Copper Corp.*,
61 F.R.D. 662 (S.D.N.Y. 1974) ...................................................................................................3

*Reliance Elec. Co. v. Emerson Elec. Co.*,
404 U.S. 418 (1972) .....................................................................................................................2

*Ricciuti v. New York City Transit Auth.*,
796 F. Supp. 84 (S.D.N.Y. 1992) ...............................................................................................3

*Rubenstein v. Knight-Swift Transp. Holdings Inc.*,
664 F. Supp. 3d 523 (S.D.N.Y. 2023).......................................................................................11

*S.E.C. v. Cavanagh*,
445 F.3d 105 (2d Cir. 2006)........................................................................................................7

*Smolowe v. Delendo Corp.*,
136 F.2d 231 (2d Cir. 1943)................................................................................... *passim*

*Strategic Partners, Inc. v. FIGS, Inc.*,
No. 2:19-CV-02286, 2022 WL 17348175 (C.D. Cal. Sept. 26, 2022) ......................................9

*U.S. v. Curley*,
639 F.3d 50 (2d Cir. 2011).........................................................................................................11

*U.S. v. Figueroa*,
618 F. 2d 934 (2d Cir. 1980)......................................................................................................11

**Statutes**

15 U.S.C. § 78m.......................................................................................................................1, 2, 4

15 U.S.C. § 78p.............................................................................................................................1, 2

**Other Authorities**

Fed. R. Civ. P. 42 ......................................................................................................................1, 2, 3

Fed. R. Evid. 401 ............................................................................................................................5

Fed. R. Evid. 403 ..............................................................................................................1, 3, 11, 12

**INTRODUCTION**

Defendants respectfully ask this Court, pursuant to Federal Rule of Civil Procedure 42(b), to bifurcate trial of this action into two phases: first, a liability phase to determine whether Defendants formed a "group" within the meaning of Section 13(d)(3) of the Securities Exchange Act, 15 U.S.C. § 78m(d)(3) ("Section 13(d)(3)"), thereby subjecting them to the short-swing profit disgorgement provisions of Section 16(b) of the Securities Exchange Act, 15 U.S.C. § 78p(b) ("Section 16(b)"); and second, if and only if liability is established, a damages phase to calculate the amount of recoverable profits.

Bifurcation is warranted at the outset because the amount of alleged profit is irrelevant to the jury's determination of liability and would create a substantial risk of unfair prejudice if presented during the liability phase. The jury's task is limited to determining whether Defendants formed a "group" and exceeded the statutory ownership threshold. The amount of any alleged profits does not bear on those issues and would improperly influence the jury's consideration of liability. *See* Fed. R. Evid. 403.

This matter arises under Section 16(b) of the Securities Exchange Act and is currently set for trial before a jury beginning on June 8, 2026. The question of liability under Section 16(b) presents a fact question for a jury to decide, but the determination of damages to be disgorged under that section is a largely mechanical question. The parties' disputes on damages questions are matters of law that are for a judge, not a jury, to decide.

Accordingly, Defendants respectfully request that the upcoming jury trial be limited to resolving the issue of liability, with the amount of disgorgement (if any) to be determined by the Court at a later date after and only if any Defendants are found liable. Bifurcation of liability and damages will promote efficiency, preserve judicial resources, avoid juror confusion, and prevent substantial prejudice to Defendants.

### FACTUAL BACKGROUND[1]

Plaintiff brings this action under Section 16(b) alleging that Defendants formed a "group" within the meaning of Section 13(d)(3) and that this putative group collectively held more than ten percent of the outstanding shares of the company's common stock. Plaintiff further alleges that, as statutory insiders by virtue of this purported group status, Defendants engaged in short-swing transactions and are therefore liable for disgorgement of profits under Section 16(b). *See Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972) (describing the mechanical operation of Section 16(b)).

Defendants deny that they formed a group. The central and dispositive issue in this case is whether Defendants entered into an agreement or understanding such that they should be treated as a single entity for purposes of the beneficial ownership threshold under Section 13(d)(3). Whether Defendants realized disgorgeable profits, and in what amount, is a wholly separate inquiry that arises only if liability is first established.

### LEGAL STANDARD

Under Rule 42(b) of the Federal Rules of Civil Procedure, the Court "may order a separate trial of one or more separate issues" "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). The decision to bifurcate rests within the sound discretion of the trial court. *Amato v. City of Saratoga Springs, N.Y.,* 170 F.3d 311, 316 (2d Cir. 1999). In exercising this discretion, courts consider (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary

---

[1] More detail regarding the parties and the events underlying this lawsuit can be found in Defendants' Omnibus Memorandum of Law in Support of their Motion for Summary Judgment, ECF No. 233, and Defendants' Local Rule 56.1 Statement of Undisputed Material Facts as to which There Is No Genuine Issue to be Tried, ECF No. 234.

and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted. *See Reading Indus., Inc. v. Kennecott Copper Corp.*, 61 F.R.D. 662, 664 (S.D.N.Y. 1974). Bifurcation requires the presence of only one of these factors. *Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992) (citing *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y.1989), *aff'd,* 899 F.2d 183 (2d Cir.1990)).

Bifurcation is particularly appropriate where the issues to be tried in separate phases are distinct and where the resolution of the first phase could be dispositive of the entire case. *See Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006(LAP), 2003 WL 1846864, at *2 (S.D.N.Y. Apr. 8, 2003) (granting request to bifurcate damages and liability phase, finding that the overlap of evidence between the two phases was "extremely minimal"); *see also Amato,* 170 F.3d at 316. Where there is a risk that evidence pertinent only to damages would unduly prejudice a liability determination, courts in this Circuit have not hesitated to order separate trials. *See* Fed. R. Evid. 403 (authorizing exclusion of evidence whose probative value is substantially outweighed by the danger of unfair prejudice); *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS), 2013 WL 664176, at *1 n.4 (S.D.N.Y. Feb. 25, 2013) (bifurcating claims where potentially prejudicial evidence was irrelevant to issues to be tried in the first phase).

### ARGUMENT

Bifurcation is warranted under Rule 42(b) because (A) the liability and damages issues in this case are distinct and readily separable, and (B) liability presents issues for the jury while disgorgement presents issues for the Court, (C) a finding of no liability would be dispositive of damages, promoting judicial economy, (D) a combined trial would create a substantial risk of juror confusion and unfair prejudice to Defendants, while (E) bifurcation would not prejudice Plaintiff.

A.      **The Liability and Damages Issues Are Distinct and Readily Separable**

The first prerequisite for bifurcation—separability of issues—is plainly satisfied here.  The liability inquiry and the damages inquiry under Section 16(b) involve different legal questions, different bodies of evidence, and different analytical frameworks.

To establish liability under Section 16(b), Plaintiff must prove that "(1) an insider (2) has made a purchase and (3) a sale (4) within a six-month period (5) of substantively identical equity securities (6) and thereby realized a profit."  *See Roth ex rel. Estee Lauder Cos. Inc. v. LAL Fam. Corp.*, 138 F.4th 696, 703 (2d Cir. 2025).  In this case, Plaintiff's theory of liability turns on whether Defendants formed a "group" within the meaning of Section 13(d)(3).  To establish group formation, Plaintiff must prove that Defendants entered into an agreement, contract, or understanding to act together with respect to acquiring, holding, voting, or disposing of the company's securities.  *See* 15 U.S.C. § 78m(d)(3); *Litzler v. CC Invs., L.D.C.,* 411 F. Supp. 2d 411, 414–15 (S.D.N.Y. 2006).  The relevant evidence therefore centers on the presence or absence of communications, meetings, or agreements among Defendants, any shared investment strategy, the timing and pattern of their respective trades, and the nature of their relationships.  None of this evidence concerns the amount of profit, if any, that Defendants realized.

While Section 16(b) includes realization of profit as an element of liability, that element does not require the jury to engage in a full disgorgement calculation or to evaluate competing profit models.  The profit realization element may be satisfied by proof of any qualifying short-swing transaction that yields a profit under the governing framework.  *See Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 449 n.24 (S.D.N.Y. 2001) ("A profit is made when there is a purchase of a security that can be 'matched' against a higher priced sale of the security.").  Accordingly, Plaintiff need only establish that at least one matching purchase and sale produced a positive differential.  That limited showing does not require presenting

4

comprehensive calculations, expert models, or aggregate figures.    To the extent necessary, Defendants would be willing to stipulate that qualifying transactions resulted in a profit sufficient to satisfy that element of Plaintiff's liability case, thereby eliminating any need for the jury to consider detailed calculations, expert analyses, or aggregate figures.[2]  A detailed computation of total disgorgement—based on the matching of all transactions under the *Smolowe* framework—can remain a separate, mechanical exercise reserved for the Court.  *See Smolowe v. Delendo Corp.*, 136 F.2d 231, 239 (2d Cir. 1943).  Courts calculate this amount using a method that maximizes recoverable profits by matching the lowest purchase prices with the highest sale prices within a six-month window.  *See id*.  This calculation requires detailed transactional data—dates, prices, and volumes of securities bought and sold—that is wholly irrelevant to the threshold question of whether a group existed in the first place.  Nor does the jury need to consider the extensive expert analyses underlying competing disgorgement calculations, which are properly reserved for the Court.

The amount of profit Defendants may have earned from their respective transactions has no bearing on whether they entered into an agreement to act as a group.  Profit is an outcome of market activity, not evidence of coordination.  A defendant who trades profitably has not, by that fact alone, demonstrated that he or she acted in concert with others; conversely, a defendant who suffers losses is no less likely to have participated in a group arrangement.  *See* Fed. R. Evid. 401.

---

[2] The Defendants reserve the right to contest the numerous legal issues embedded in any profit calculation, as well as which transactions are considered in any profit calculation.  For example, there are legal issues concerning the exclusion of the first transaction from any profits calculation and Plaintiff's flawed attempt to invoke *Loper Bright* to increase damages, both of which have significant implications for any profit calculation.  *See* Defendants' Motions in Limine, filed herewith.

Because the evidence relevant to liability and disgorgement does not meaningfully overlap, bifurcation will not result in duplication or inefficiency. *Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, 288 F.R.D. 335, 337 (S.D.N.Y. 2013) (finding bifurcation appropriate specifically because the evidence against Credit Suisse was different in nature from evidence about settling defendants).

**B.      Liability Presents Issues for the Jury, While Disgorgement Presents Issues for the Court**

Bifurcation is also warranted because liability presents disputed factual issues for the jury, while disgorgement presents legal and equitable issues for the Court. While the question whether Defendants formed a "group" presents questions of fact appropriate for a jury, the formulaic calculation of disgorgement under Section 16(b) presents no disputed factual issue for the jury to resolve. Once liability is established, the remaining task is to apply the governing legal framework to the undisputed transactional record, which entails determining which transactions are matchable, how particular instruments must be treated under SEC rules, and how the *Smolowe* methodology applies. Those issues are questions of law, not fact, and are properly resolved by the Court.

To be sure, the calculation of disgorgement may involve detailed transaction data. But that does not transform the inquiry into one for the jury. Section 16(b) is a strict-liability statute with a predetermined formula for calculating damages, so there is no need for traditional fact-finding as to damages issues such as causation, reasonableness, or intent that would otherwise be presented to a jury. And the mechanical application of *Smolowe*, under which courts match the lowest purchase prices with the highest sale prices within a six-month period to derive the maximum theoretical profit, does not depend on credibility determinations or competing factual narratives; it requires only the application of predetermined rules to transactional data. 136 F.2d at 239.

Consistent with that principle, the parties' dispute over disgorgement does not turn on contested facts but on the application of law to undisputed trading data.   While Defendants and Plaintiff disagree on the amount of disgorgement damages, this disagreement results from Plaintiff's insistence on adopting a new damages framework never applied by any court and disregarding all exemptions established by the SEC's rulemaking process.   *See* Defendants' Omnibus Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 253 at 39–41.   These are disputes over how the governing legal framework applies to undisputed trade data rather than disputes over what trades occurred, when they occurred, or at what prices.   The question of damages therefore does not present a factual issue for determination by a jury.

The disgorgement calculation is also not subject to jury determination for the additional reason that it is an equitable remedy.   Section 16(b) provides for disgorgement of "any profit realized," a remedy designed to strip gains rather than compensate loss.[3]   *See S.E.C. v. Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006) (explaining disgorgement "consists of factfinding by a district court to determine the amount of money acquired through wrongdoing"); *see also Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990) (recognizing that "action[s]

---

[3] Plaintiff may rely on *Morales v. Executive Telecard, Ltd.* to argue that Section 16(b) damages must be submitted to a jury.  No. 95 Civ. 10202 (KMW), 1998 WL 788786 (S.D.N.Y. Nov. 10, 1998).   But *Executive Telecard* relied principally on *Mapco*, an out-of-circuit district court decision, and neither decision meaningfully addressed the equitable nature of disgorgement. *Morales v. Mapco, Inc.*, 66 F.R.D. 99, 100–01 (N.D. Okla. 1974).   *Mapco* analogized Section 16(b) recovery to an action for money damages because the claim sought "the recovery of a sum of money," and *Executive Telecard* adopted that reasoning.  *Mapco,* 66 F.R.D. at 100 (quoting 27A Am. Jur. 2d Equity § 112); *Executive Telecard,* 1998 WL 788786, at *3.  To the extent those decisions suggest that Section 16(b) disgorgement is not equitable, that reasoning cannot be reconciled with the non-compensatory nature of Section 16(b) and subsequent Second Circuit authority recognizing disgorgement as an equitable remedy administered by the Court.  *See S.E.C. v. Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006) (emphasizing disgorgement as "public protection, as opposed to simple compensatory relief, illustrat[ing] the equitable nature of the remedy.").

for disgorgement of improper profits" are equitable) (quoting *Tull v. United States*, 481 U.S. 412, 424 (1987)).

Accordingly, because the remaining issues concerning disgorgement calculation involve the application of law to undisputed facts, and because the remedy of disgorgement of profits is equitable, bifurcation of liability and damages is warranted.

### C.    A Finding of No Liability Would Be Dispositive, Promoting Judicial Economy

Bifurcation is strongly favored where, as here, a finding for the defendant on liability would eliminate the need for a damages trial entirely.  *See Amato*, 170 F.3d at 316; *see also LNC Invs., Inc. v. First Fid. Bank, N.A.,* No. 92 Civ. 7584, 2000 WL 422399, at \*1 (S.D.N.Y. Apr. 12, 2000) ("The presence of one circumstance favoring bifurcation is immediately apparent. If Defendants prevail on the liability phase, as they did at the first trial, then the need for jury consideration of complex, even arcane (from a lay point of view) damages issues is obviated, thereby advancing the cause of judicial efficiency.").

If Defendants prevail on liability, no damages proceeding will be necessary.  The question to be submitted to the jury is binary: did Defendants form a group that crossed the ten-percent ownership threshold, thereby rendering them statutory insiders subject to Section 16(b)?  If the answer is yes as to any set of Defendants, the Court may then proceed to calculate the disgorgement amount through a limited and streamlined proceeding.  If the answer is no, the case is over.  The parties, the Court, and the jury would be spared the burden of presenting and evaluating detailed transactional data and expert testimony on profit computation.  Conducting a unified trial that encompasses both issues would waste the time and resources of the Court and the parties in the event liability is not established.

**D.     A Combined Trial Would Create a Substantial Risk of Juror Confusion and Unfair Prejudice to Defendants**

The most compelling basis for bifurcation in this case is the acute risk of juror confusion and unfair prejudice that would result from the introduction of disgorgement profit evidence during the liability phase.  Evidence of disgorgement profits running into hundreds of millions of dollars is inherently inflammatory.  Courts routinely guard against precisely this type of prejudice via bifurcation, recognizing that financial evidence may be excluded or deferred where it risks inflaming the jury or distracting it from the issues of liability.  *See Strategic Partners, Inc. v. FIGS, Inc.,* No. 2:19-CV-02286, 2022 WL 17348175, at *2–3 (C.D. Cal. Sept. 26, 2022) (bifurcating trial regarding disgorgement of profits to prevent prejudice and the risk that the jury would conflate profit figures with liability or damages); *see also Hamm v. Potamkin*, No. 98-CIV-7425, 1999 WL 249721, at *2 (S.D.N.Y. Apr. 28, 1999) ("[B]ifurcation may be the preferred method of resolving disputed issues of liability and damages, as it prevents prejudice to the defendants by keeping financial evidence out of the liability phase of the trial.").

Here, the introduction of damages evidence would create a substantial danger that the jury would resolve close questions on group formation against Defendants, not because the evidence of coordination is persuasive, but because the magnitude of the alleged profits makes a finding of liability seem more "just" or equitable.  *See Norwood v. Child. & Youth Servs., Inc.,* No. CV 10-07944, 2012 WL 12882757, at *2–3 (C.D. Cal. July 27, 2012) (failure to bifurcate a trial may cause fact finders to "conflate the evidence relevant to the liability and damages issues" and to "abandon their objectivity and return a verdict based on passion and prejudice.").

This concern is not speculative.  The very nature of a Section 16(b) action—which seeks disgorgement of trading profits from persons alleged to be insiders—invites the factfinder to view Defendants as having reaped an undeserved windfall at the expense of ordinary investors.  To the

9

extent Plaintiff uses this profit evidence to suggest that Defendants must have been acting together because they were all successful, such an inference is speculative and improper. Multiple independent traders can and regularly do realize profits from the same security at the same time based on publicly available information, general market trends, or individual research. Bifurcation is the appropriate mechanism to ensure that this prejudicial evidence is kept from the jury during the liability phase while preserving Plaintiff's ability to introduce it should the case proceed to the damages phase. *See Amato*, 170 F.3d at 316.

The prejudice arises not only from the magnitude of these figures, but from the fact that they are premised on disputed liability assumptions that the jury has yet to decide. Plaintiff's disgorgement calculation necessarily assumes that Defendants acted as a "group" at all relevant times and that various combinations of Defendants collectively exceeded the 10% beneficial ownership threshold throughout the alleged six-month period. By presenting a disgorgement figure derived from those assumptions, Plaintiff effectively asks the jury to accept its theory of liability before the jury has had the opportunity to evaluate the underlying facts.

In addition to being prejudicial, disgorgement evidence in this case is unusually complex. The parties' damages expert submissions alone span more than 65 pages and involve highly technical analyses of transaction-level data and competing methodologies for applying the *Smolowe* formula. Injecting this material into the liability analysis would distract from those core liability questions the jury must assess.

The risk is further exacerbated by the very nature of the *Smolowe* formula, which is designed to calculate the maximum possible short-swing profit by pairing the lowest purchase prices with the highest sale prices within the relevant period. *Segen ex rel. KFx Inc. v. Westcliff Cap. Mgmt., LLC*, 299 F. Supp. 2d 262, 272 (S.D.N.Y. 2004) ("[T]he trades must be matched in a

manner that ***maximizes*** the disgorgeable amount . . . . This is accomplished by matching the highest

sale prices with the lowest purchase prices within the six month period.") (emphasis added).   It

does not reflect actual trading outcomes or real-world gains; instead, it produces a ceiling-level

figure that generally greatly exceeds a trader's actual profits.  *Rubenstein v. Knight-Swift Transp.*

*Holdings Inc.,* 664 F. Supp. 3d 523, 546–47 (S.D.N.Y. 2023) (quoting Peter J. Romeo & Alan L.

Dye, Section 16 Treatise and Reporting Guide § 12.02 at 1227 (5th ed. 2019)) (noting that under

the *Smolowe* formula, courts arrive at awards under Section 16(b) that are "substantially greater

than the actual profits" received by the insider).  This disparity further increases the risk of juror

confusion and conflation of unrelated issues.

This confusion would complicate jury instructions, lengthen the proceedings, and distract

from the true issues in the case.  *See Crown Cork & Seal Co.,* 288 F.R.D. at 337 (S.D.N.Y. 2013)

("In the court's view, eliminating the likelihood of juror confusion is the foremost factor in support

of bifurcating the trial.").

The risks of confusion and prejudice cannot be adequately mitigated through jury

instructions.   *U.S. v. Figueroa*, 618 F. 2d 934, 946 (2d Cir. 1980) ("[L]imiting instructions cannot

be  regarded  as  a guaranty against prejudice.");  *U.S. v. Curley*, 639 F.3d 50, 60 (2d Cir.

2011) (finding limiting instruction insufficient "given the low probative value of the evidence and

the high risk or prejudicial effect"); *HVLPO2 v. Oxygen Frog, LLC*, 949 F.3d 685, 688 (Fed. Cir.

2020) (vacating jury verdict where "[u]nder the circumstances . . . the district court's limiting

instruction was insufficient to cure the substantial prejudice")*; see also* Fed. R. Evid. 403 Advisory

Committee Notes ("In reaching a decision whether to exclude on grounds of unfair prejudice,

consideration should be given to the probable effectiveness or *lack of effectiveness of a limiting*

*instruction*" and noting that "[t]he availability of other means of proof may also be an appropriate

11

factor" (emphasis added)).   Once the jury is exposed to alleged profit figures approaching half a billion dollars, no instruction can realistically eliminate the risk that those figures will influence the jury's evaluation of liability.  Bifurcation is therefore the most effective mechanism to ensure that liability is decided on the merits, free from the distorting effect of assumption-driven disgorgement evidence.

## E.    Bifurcation Will Not Prejudice Plaintiff

On the other hand, bifurcation of liability and damages would not prejudice Plaintiff.  There is no need for Plaintiff to rely on damages evidence in the liability phase, as this evidence is not relevant and any limited probative value would be outweighed by the potential prejudice.  Fed. R. Evid. 403.

Nor is there any prejudice to Plaintiff in having to engage in a potential second proceeding if liability is established as to any Defendants.  The disgorgement phase will be streamlined, presented to the Court, rely primarily on expert testimony and documentary evidence, and can be resolved efficiently.  By contrast, a combined trial would lengthen proceedings and require presentation of complex expert evidence that may ultimately prove unnecessary.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant this motion and enter an order bifurcating the trial of this action, such that liability is tried to a jury in the first phase, and any determination of disgorgement is resolved by the Court in a subsequent proceeding, if necessary.  Defendants further request that the Court preclude Plaintiff from presenting or referring to any disgorgement calculations, damages amounts, or profit-related evidence during the liability phase of trial.

The liability and damages inquiries under Section 16(b) are readily separable, a defense verdict on liability would obviate the need for a damages trial entirely, and the introduction of

profit evidence during the liability phase would create a substantial and unacceptable risk of juror confusion and unfair prejudice to Defendants.  Bifurcation would promote convenience, avoid prejudice, and serve the interests of judicial economy.

Dated: New York, New York
      May 4, 2026

Respectfully submitted,

**FRESHFIELDS US LLP**

*/s/ Andrew D. Gladstein*
Andrew D. Gladstein
Shannon Sciaretta

3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
(646) 231-7098
andrew.gladstein@freshfields.com
shannon.sciaretta@freshfields.com

*Counsel for Defendants Empery Asset Master, Ltd., Empery Debt Opportunity Fund, LP, Empery Tax Efficient, LP, and Empery Asset Management, LP*

**HOGAN LOVELLS US LLP**

*/s/ Dennis H. Tracey, III*[*]
Dennis H. Tracey, III
Catherine Bratic (*pro hac vice*)
Elizabeth Cochrane

390 Madison Avenue
New York, New York 10017
(212) 918-3000
dennis.tracey@hoganlovells.com
catherine.bratic@hoganlovells.com
elizabeth.cochrane@hoganlovells.com

*Counsel for Defendant Anson Investments Master Fund LP*

---

[*] The electronic signatures for Defendants other than Iroquois Master Fund Ltd. and Iroquois Capital Investment Group, LLC are used with consent in accordance with Rule 8.5(b) of the

**ELLENOFF GROSSMAN & SCHOLE LLP**

*/s/ John Brilling Horgan\**
John Brilling Horgan
Joanna Rebecca Cohen

1345 Avenue of the Americas
11th Floor
New York, New York 10105
(646) 895-7158
jhorgan@egsllp.com
jcohen@egsllp.com

*Counsel for Defendants Brio Capital Master Fund Ltd. and Brio Select Opportunities Fund LP*

**SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP**

*/s/ Susan Saltzstein\**
Susan Saltzstein
Andrea Griswold
Kurt Hemr
Jeffrey Geier
Christopher Fredmonski

One Manhattan West
New York, New York 10001
(212) 735-3000
susan.saltzstein@skadden.com
andrea.griswold@skadden.com
kurt.hemr@skadden.com
jeffrey.geier@skadden.com
christopher.fredmonski@skadden.com

*Counsel for Defendant CVI Investments, Inc.*

---

Court's ECF Rules and Instructions.

14

**ELLIOTT LEVINE JAROSLAW NEILS LLP**

*/s/ Jared R. Clark\**
Jared R. Clark

One Grand Central Place
60 East 42nd Street, Suite 1570
New York, New York
(212) 321-0510
jclark@eljnlaw.com

*Counsel for Defendant L1 Capital Global Opportunities Master Fund*

**CLARK SMITH VILLAZOR LLP**

*/s/ Christopher J. Clark\**
Christopher J. Clark
Benjamin A. Butzin-Dozier
Diana Wang

666 Third Avenue, 21st Floor
New York, New York 10017
(212) 377-0854
clark@csvllp.com
benjamin.dozier@csvllp.com
diana.wang@csvllp.com

*Counsel for Defendants Iroquois Master Fund Ltd. and Iroquois Capital Investment Group, LLC*

15

**GOULSTON & STORRS PC**

*/s/ Nicholas Cutaia\**
Nicholas Cutaia
Peiran Zhang
Ruth-Claire Pollioni

730 Third Avenue, 12th Floor
New York, New York 10017
(212) 878-6900
ncutaia@goulstonstorrs.com

Jennifer B. Furey
Mariana Korsunsky

One Post Office Square
Boston, Massachusetts 02109
(617) 574-3575
jfurey@goulstonstorrs.com

*Counsel for Defendant M3A LP*

**LITMAN, ASCHE & GIOIELLA, LLP**

*/s/ Richard Asche\**
Richard Asche

350 Central Park West Suite 10F
New York, New York 10025
(917) 414-6951
richardasche@lagnyc.com

*Counsel for Defendant M3A LP*

**STINSON LLP**

*/s/ Kieran M. Corcoran\**
Kieran M. Corcoran

140 Broadway, Suite 2330
New York, New York 10005
(646) 883-7471
kieran.corcoran@stinson.com

*Counsel for Defendant Richard Molinsky*

16

## CERTIFICATE OF COMPLIANCE

I, Andrew D. Gladstein, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern District of New York ("Local Rules") and Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, and contains 3,927 words.  In making this calculation, I have relied on the word count of the word-processing program used to prepare the document.

Dated:  May 4, 2026
        New York, New York

                                        /s/ Andrew D. Gladstein
                                        Andrew D. Gladstein

17