

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

May 8, 2026

**By ECF**[1]

The Honorable Arun Subramanian
United States District Judge
United States District Court, Southern District of New York
500 Pearl St., Courtroom 15A
New York, NY 10007

> Re:   *Augenbaum v. Anson Investments Master Fund, L.P., et al.* Case No. 1:22-cv-0249

Dear Judge Subramanian:

I am co-counsel for Plaintiff and write in response to the Court's May 7, 2026 Order instructing Plaintiff to send a letter regarding Kartoon's request for entry of judgment. ECF No. 363. Plaintiff will oppose Kartoon's motion to enter judgment and stay the currently scheduled trial because the motion fails for at least three reasons.

*First*, Plaintiff has a primary right to assert a §16(b) claim, and even though Kartoon is the ultimate beneficiary of any recovery it lacks the statutory right to settle that claim. Section 16(b) is clear that before a shareholder can file a §16(b) claim, he must serve a demand on the issuer which then has sixty days to bring the claim. It is well settled that an issuer's refusal to timely act on a §16(b) demand "directly empower[s] the shareholder to sue; it is not a derivative or secondary right grounded on rights and interests possessed primarily by the corporation and emanating from common law." *In re XO Commc'ns, Inc.*, 330 B.R. 394, 430 (Bankr. S.D.N.Y. 2005) (citing *Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC*, 286 F. Supp. 2d 279, 282 (S.D.N.Y. 2003); Arnold S. Jacobs, *Section 16 of The Securities Exchange Act* §3:1, 3–12 (West July 2003) (a §16(b) claim "is not derivative at all; rather, it is one possessing an independent statutory origin."))[2] Notably, Kartoon fails to identify any cases where an issuer settled or released §16(b) claims *after* the issuer's actions caused a primary right to vest in a stockholder and, to Plaintiff's knowledge, no such authority exists. Indeed, even if Kartoon filed the claim – which it did not – Plaintiff still would have a statutory right to intervene of right if the Company failed to diligently prosecute the §16(b) claims. 15 U.S.C. §78p(b); *Pellegrino v. Nesbit*, 203 F.2d 463, 467-69 (9th Cir. 1953).

---

[1]   Plaintiff is filing this letter under seal in an abundance of caution because Dkt. 360 was filed under seal, but Plaintiff believes that Kartoon doing so was improper because the Protective Order (Dkt. 171) limits sealed filings to "Confidential Discovery Material" and Dkt. 360 contains no Confidential Discovery Material or references thereto.

[2]   *See also Magida v. Cont'l Can Co.*, 231 F.2d 843, 846–47 (2d Cir. 1956) (an issuer's active hostility to a §16(b) claim does not affect a shareholder's independent statutory right to prosecute that claim to judgment, which is practically inviolable because the Company is merely the instrument for the effectuation of the statutory policy); *Chechele v. Elsztain*, No. 11 CIV. 3320 (SAS), 2012 WL 12358221, at *1-2 (S.D.N.Y. Aug. 1, 2012) (explaining §16(b) claims are *sui generis*, not "derivative" in nature).

 

The Honorable Arun Subramanian
May 8, 2026
Page 2 of 4

*Pellegrino* explains that "the company's duty is not merely to determine diligently whether prosecution of the suit should continue [as Kartoon purports to do here], but, rather, the company has a duty *diligently to prosecute* the suit" which Kartoon has absolutely not done. *Id.* at 467.

*Second*, notwithstanding Kartoon's claims to the contrary, it is well-settled that the deference ordinarily afforded under the business judgment rule does not apply in §16(b) litigation. *Burks v. Lasker*, 441 U.S. 471, 479 (1979), is on point in refusing to allow the business judgment rule to affect claims under the express private right of action created by 15 U.S.C. §80a-35(b) because doing so would pose a "significant threat to an[ ] identifiable federal policy or interest[.]" *Burks* explains the same rule governs §16(b) actions "which authorizes shareholder suits to recover insider 'short swing' profits on behalf of the company notwithstanding the decision of the board of directors not to sue." *Id.* at n.13.[3] Accordingly, courts consistently hold the business judgment rule and other rules of equitable estoppel do not apply to §16(b) actions.[4]

Instead of employing the business judgment rule, "courts have **almost universally recognized that agreements purporting to resolve Section 16(b) proceedings must be scrutinized**" and often do so using Fed. R. Civ. P.23(e)(2), or some version thereof, with the statutory purpose of §16(b) serving as a special fairness factor. *Revive Investing LLC v. FBC Holdings S.A.R.L.,* 2021 WL 56905, at *6 (S.D.N.Y. Jan. 7, 2021), *R&R adopted*, 2021 WL

---

[3]    *Klein on behalf of Qlik Techs. Inc. v. Qlik Techs. Inc.*, upon which Kartoon relies, does not supplant *Burks* or *Magida* and is, instead, limited to circumstances where a plaintiff-shareholder loses standing to pursue a §16(b) claim with an issuer substituting under Fed. R. Civ. P. 17(a)(3), because "[a] district court determining whether a case has become moot maintains jurisdiction to determine whether a substitute plaintiff would avoid that result." 906 F.3d 215, 218 (2d Cir. 2018).

[4]    *See, e.g., Magida*, 231 F.2d at 846-47 (holding that a stockholder's §16(b) action after board refusal "**cannot be estopped by corporate acts**, even those having the apparent approval of a majority of stockholders.") (emphasis added); *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 729 (2d Cir. 1990), *aff'd sub nom. Gollust v. Mendell*, 501 U.S. 115 (1991) (noting that a Rule 23.1 derivative action "is not as effective as a §16(b) claim" because, among other things, it "may be countered with subjective considerations of intent or good faith, such as a business judgment defense."); *Pellegrino*, 203 F.2d at 466-67 (explaining the business judgment rule does not apply to Section 16(b) and otherwise "the opportunity for evasion of the statutory policy is obvious" and that deferring to a board of directors "would **frustrate the apparent congressional intent**, in providing for stockholder action, to create statutory safeguards against complete control by corporate management of Sec. 16(b) suits."); *Segen v. Comvest Venture Partners, LP*, 2005 WL 1320875, at *4 (D. Del. June 2, 2005) (rejecting an attempt to use the business judgment rule to dismiss a Section 16(b) claim), and; Arnold S. Jacobs, 5A *Disclosure & Remedies Under the Sec. Laws* §4:182 at text accompanying nn.10-11 (Dec. 2025 Update) (explaining that while "[i]n derivative actions, the general rule is that the board of directors, in the exercise of good faith and reasonable business judgment, can determine whether the best interests of the entity and its stockholders would be served by engaging in litigation[, t]he express language of Section 16(b) renders this general rule inapplicable to Section 16(b) suits.") (footnotes omitted, citing *Pellegrino*, *supra*; *Levner v. Saud*, 903 F. Supp. 452, 455 n.2 (S.D.N.Y. 1994), *judgment aff'd*, 61 F.3d 8 (2d Cir. 1995)).

Even if the business judgment rule applied – and it does not – Kartoon would carry a heavy burden of demonstrating that the members of the litigation committee were independent and acted in good faith. *See, e.g.*, *William J. Jenack Est. Appraisers & Auctioneers, Inc. v. Rabizadeh*, 22 N.Y.3d 470, 475 (N.Y. 2013) (citations omitted). Kartoon submits no admissible evidence establishing those requirements.

The Honorable Arun Subramanian
May 8, 2026
Page 3 of 4

734976 (S.D.N.Y. Feb. 25, 2021), *as amended* (Feb. 26, 2021) (emphasis added).  Thus, absent court approval, the sole effect of any payment to Kartoon is a dollar-for-dollar setoff at trial.[5]

 *Wolf v. Barkes*, 348 F.2d 994 (2d Cir. 1965), upon which Kartoon relies, distinguishably did not involve §16(b)'s limitations to the business judgment rule.  Moreover, *Wolf* actually holds that, absent court approval for fairness, a derivative plaintiff is free "to challenge the settlement" by, among other things, "pursuing the original action and attempting to overthrow the settlement." *Id.* at 997.  Perhaps seeking to make a vice out of a virtue, Kartoon ignores the very language it block quotes.  *See* Dkt. 360 at 15. Nevertheless, such an out-of-court settlement is "at its peril for such a settlement [] *fails to compromise or dismiss the derivative action*." *Kahn v. Kaskel*, 367 F. Supp. 784, 789 (S.D.N.Y. 1973) (emphasis added, cleaned up).  *Kahn* is consistent with the §16(b) cases cited in n.5, *supra.*

 *Finally*, Kartoon has not sought court approval for its settlement as being fair, reasonable or adequate because it knows perfectly well that a candid evaluation of the merits of this case could not possibly justify settling Plaintiff's §16(b) claims for approximately 11% of maximum recoverable short-swing profits. Although Plaintiff is attempting to resolve issues concerning disclosure of offers made during mediation which would further establish the substantive unfairness of Kartoon's proposal, the procedural deficiencies should give any reasonable person pause.  Kartoon's counsel, Aaron Morris, represents in this action Special Equities Group ("SEG"). SEG is the bank that worked hard to assemble and orchestrate the §16(b) group in this case and served as the conduit through which Defendants communicated with each other about the group's transactions.  Defendants are also repeat clients of SEG, which views them as "friends and family." (Dkt. 226-1 at 404-411.)  Defendant Anson – which is exposed to a potential judgment of more than $190 million – is also unquestionably able to strongly influence Kartoon's actions through a large equity stake and restrictive covenants enabling it to limit Kartoon's fundraising.[6]

---

[5] *See Lewis v. Wells*, 325 F. Supp. 382, 386 (S.D.N.Y. 1971) (rejecting an out-of-court settlement for 82% of disgorgeable profits because "allow[ing] a settlement, however well-intentioned, for less than the full amount of the realized profits not only negates congressional purpose to 'wring the profit out of short-swing transactions by insiders,' but carries with it the prospect of other abuses.") (footnotes omitted); *Volk v. Zlotoff*, 285 F. Supp. 650, 657 (S.D.N.Y. 1968) ("The settlement by a corporation of a Section 16(b) claim against an insider for an inadequate amount will not preclude an action by a shareholder."); *Blau v. Hodgkinson*, 100 F. Supp. 361, 370 (S.D.N.Y. 1951) ("payment by defendant [] of $890.09 in settlement of the corporation's claims under [§16(b)] is not a defense to this action, but that the amount thus paid should be credited against the sum [] for which Hodgkinson is liable"); *In re XO Commc'ns, Inc.*, 330 B.R. at 425 ("Certainly, the Debtor's Release, absent court approval process, would run afoul of Section 29(a) law in releasing Defendants from Section 16(b) liability and Defendants do not contest such a premise."). *Volk* also explains allowing violators to keep any short-swing profits without judicial approval violates the Exchange Act Section 29(a), an anti-waiver provision codified at 15 U.S.C. §78cc(a). 285 F. Supp. at 658.

[6] On October 20, 2025, Kartoon sold an equity interest of up to 42% of the Company for $7.3 million with Anson acting as lead investor.  *See* Dkt. 298 at 2; 2025 Form 10-K Ex. 10.30; and 11/19/25 Form S-1 at 19.  That financing restricted Kartoon's ability to issue common stock for two years but allows "an 'at the market' offering" provided Anson "has the right to participate in certain subsequent financings by [Genius] in an amount equal to 50% of such subsequent financings for 12 months following October 22, 2025." 2025 Form 10-K at 10. Kartoon's SEC filings are available at https://www.sec.gov/edgar/.

The Honorable Arun Subramanian
May 8, 2026
Page 4 of 4

Respectfully Submitted,

Jeffrey S. Abraham