

**Aaron T. Morris**
Partner
+1.332.240.4024
aaron@moka.law

May 10, 2026

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

> **RE:**   ***Augenbaum v. Anson Investments Master Fund LP, et al.,***
> **No. 22-cv-249 (AS) (S.D.N.Y.)**

Dear Judge Subramanian:

We write on behalf of Kartoon Studios, Inc. (the "Company") in response to Plaintiff's May 8, 2026 letter without prejudice to the diligent work of Plaintiff's counsel throughout this action. It is the Company's position that binding Second Circuit case law requires this Court to enter the proposed judgments, and Plaintiff's citations do not suggest otherwise.

## I.    The Settlement Is A Valid And Binding Corporate Action

Plaintiff argues that the "business judgment rule does not apply in §16(b) litigation" (ECF 367 at 2), but none of his citations are analogous.[1] Here, the Company has exercised its inherent authority, recognized by Second Circuit precedent (*see* Section III), to enter into an agreement as to its own claims. That determination is a valid and reasoned corporate action.[2]

---

[1] *See Segen v. Comvest Venture Partners, LP*, 2005 WL 1320875 (D. Del. June 2, 2005) (business judgment rule does not prevent derivative plaintiff from filing action after demand refused); *Burks v. Lasker*, 441 U.S. 471, 479 (1979) (same); *Levner v. Saud*, 903 F. Supp. 452, 455 n.2 (S.D.N.Y. 1994) (same); *Magida v. Cont'l Can Co.*, 231 F.2d 843 (2d Cir. 1956) (company's refusal to pursue Section 16(b) claims on equitable grounds does not estop plaintiff from bringing derivative claims); *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724 (2d Cir. 1990) (dicta noting that the "standing requirements for shareholder derivative suits are not applicable to a § 16(b) plaintiff"); *Pellegrino v. Nesbit*, 203 F.2d 463, 466 (9th Cir. 1953) (company's decision not to appeal trial loss did not preclude derivative plaintiff from intervening to attempt the appeal); *William J. Jenack Est. Appraisers & Auctioneers, Inc. v. Rabizadeh*, 22 N.Y.3d 470, 473 (2013) (auction dispute over "Fine Russian silver/enamel covered box").

[2] From the Company's perspective, the private investment made by Defendants in March 2020 looked no different than ordinary capital raising activities with one exception: shortly following the transaction, the developing global pandemic would cause a run-up in the Company's stock price that would render the Defendants' investment exponentially more profitable than anticipated. Nevertheless, in the Company's view at the time, the circumstances did not support a Section 16(b) claim because no Defendant owned over 10% of the Company's stock and the Company was not aware of coordination between the Defendants. Plaintiff's creativity in this lawsuit has produced an unanticipated opportunity to fundamentally transform the Company's capital position and eliminate a substantial litigation overhang at a point of great need for the Company. To determine how to best address the situation, the Board formed a Committee of two of its savviest members who negotiated a windfall settlement that substantially outweighs the risk-adjusted value of a trial and eliminates the potentially catastrophic outcome of a trial loss. Plaintiff argues that the Settlement is not enough. He has procedural options as discussed below (*see* Section III). But it would be patently inequitable to deprive the Company, in the interim, of this opportunity to monetize its asset.

The Honorable Arun Subramanian
May 10, 2026
Page 2

## II.    Plaintiff's Argument That He Has A "Primary Right" To The Claim Has No Basis

Plaintiff cites no legitimate authority for his assertion that he "has a primary right" to assert a Section 16(b) claim and ignores black letter law that the claims belong exclusively to the Company. *See* ECF 360 at 10. Plaintiff's citation to *XO Communications, Inc.* is erroneous and has been distinguished in this District. *See Gibbons v. Morgan*, 2017 WL 3917041, at *2 (S.D.N.Y. Sept. 6, 2017) (*XO Communications* was "concerned with an entirely different legal question" and "used the terms 'direct' and 'derivative' in a completely different sense").

## III.    *Blau* And Its Progeny Do Not Apply Here

Plaintiff's citations to *Blau* and its progeny have no application here because those cases: (1) impose a limited public policy exception to an issuer's settlement of *undisputed* disgorgement claims for something less than the undisputed amount; and (2) pre-date (as to *Blau*) and fail to consider (as to *Volk* and *Lewis*) the Second Circuit's ruling in *Wolf*.

In *Blau* v. *Hodgkinson*, there was "no dispute as to the amount due the corporation," which was $1,820.09, but the company settled with the defendant for $890. 100 F. Supp. 361, 374 (S.D.N.Y. 1951). The court held that "[w]here, as here, a director's or insider's liability is clear and the amount of the liability is *a matter of calculation* by following the methods defined by our appellate court, it would be against public policy to sustain a settlement of $890." *Id.* at 371 (emphasis added). Under that narrow circumstance, the court acknowledged that "[w]here the settlement is made with the corporation direct, although formal approval of the court is not required under Rule 23(c) because the corporation's suit is not a class action, the settlor must run the risk of any very detrimental 'mistakes' made in determining the amount of his liability." *Id.*

In *Volk v. Zlotoff*, officers of a company sold shares and then exercised options to purchase shares within a six-month period in violation of Section 16(b). 285 F. Supp. 650, 652-54 (S.D.N.Y. 1968). Rather than settle the disgorgement claim, the parties entered into an agreement "rescinding the exercise of the stock options"—*i.e.*, eliminating the matching purchases that violated Section 16(b). The court held that the "ex post facto rescission of the exercise of [defendants'] options does not exonerate them from [Section 16(b)] liability," and the amount owed was fixed based on "presently undisputed evidence." *Id.* at 658. Because the rescission had not eliminated the liability, the company had effectively settled *undisputed* disgorgement claims for $0, and thus the court held, citing *Blau*, that "[t]he settlement by a corporation of a Section 16(b) claim against an insider *for an inadequate amount* will not preclude an action by a shareholder." *Id.* at 657 (emphasis added).

In *Lewis v. Wells*, there was again "no claim that any substantial defense upon the merits existed to the right of the corporation to recover the short-swing profits." 325 F. Supp. 382, 386 (S.D.N.Y. 1971). Nevertheless, the directors—*who were also the defendants in the lawsuit*—settled the claim for "82% of calculated profits," and then attempted to justify the discount by arguing that "the attorneys for the corporation voluntarily waived any fee for services, estimated at least at 20%." *Id.* While the parties apparently did not dispute "the good faith" of the waiver, the court held "that such action carries the seeds of abuse," and that because "there is no dispute as to the amount of the profits" the full amount must be paid. *Id.*

The Honorable Arun Subramanian
May 10, 2026
Page 3

*Blau*, *Volk*, and *Lewis* are not analogous and do not consider the Second Circuit's ruling in *Wolf v. Barkes*, which enforced a company's post-litigation settlement of analogous statutory claims under Section 14(a) of the Exchange Act brought derivatively. 348 F.2d 994, 995 (2d Cir. 1965). Plaintiff cherry-picks a clause of the otherwise detailed, well-reasoned opinion to suggest that the plaintiff could still pursue the "original action." Not quite. The plaintiff admitted in *Wolf*, and the Court agreed, that the company's release would "extinguish the corporation's claims." *Id.* at 996.[3] To Plaintiff's point, the Second Circuit acknowledged that an unhappy plaintiff could seek an injunction to "overthrow the settlement" or bring "a new action against the directors." *Id.* As to the former, the Court clarified: "We cite, simply by way of illustrating what we have in mind, a case where the beneficiaries of the alleged improper dealing still dominated the board of directors and plaintiffs were able to make some proof that wrongdoing was afoot. But any such action would be taken under the general equity powers of the court." *Id.* at 998. As in *Wolf*, the Plaintiff here has made no such application, nor would he have any factual basis to do so.

## IV.    The Overwhelming Evidence Will Demonstrate That The Settlement Is Fair And In The Company's Best Interests

Plaintiff cites no case authorizing this Court to approve the settlement of the Company's own claims.[4] *See Wolf*, 348 F.2d at 994 ("[C]orporation's power to make its own out-of-court settlements, subject to normal shareholder redress, is not abolished by a procedural rule."). In any event, as submitted in the Company's opening brief (ECF 360 at 16 n.6), the terms of the Settlement and the circumstances under which they were negotiated would overwhelmingly support a finding that the Settlement "fairly and adequately serve[s] the interests of the corporation."[5] *See Revive Investing LLC v. FBC Holdings S.A.R.L.*, 2021 WL 56905, at *6 (S.D.N.Y. Jan. 7, 2021). If Plaintiff articulates, in his opposition papers, any basis whatsoever for the Company to seek such approval, the Company will address such arguments on reply. Nevertheless, the case should be stayed as to the Settling Defendants in the interim.[6]

---

[3] Indeed, the Court held that "[n]o one would contend that a corporation could not negotiate a release of corporate claims, even against insiders, before a derivative suit was started. The corporation's interest in achieving a favorable settlement does not cease because derivative litigation has begun; especially is this so when some of the defendants in the derivative suit have taken the initiative—as in the present case—in bringing their own actions against the corporation and settlement with them may be impossible unless it can be promptly consummated." *Id.* at 997.

[4] Plaintiff cites *Revive* for the proposition that "courts have almost universally recognized that agreements purporting to resolve Section 16(b) proceedings must be scrutinized and often do so using Fed. R. Civ. P.23(e)(2)," but those rulings are unsurprisingly limited only to stockholder derivative settlements. *See Revive Investing*, 2021 WL 56905 at *6 (citing exclusively stockholder derivative settlements).

[5] Plaintiff's wholly unsupported representation to the Court that "Defendant Anson [was] unquestionably able to strongly influence Kartoon's actions" is fabricated and baseless. *See* ECF 367 at 3. Indeed, counsel for the Company invited counsel for Plaintiff *for months* to review all materials relating to the Board's extensive evaluation of the Company's claims, but counsel refused to enter into a privilege agreement to permit such review.

[6] The Company is aware of the May 8, 2026 letter from the Settling Defendants (ECF 369), which the Company did not review or authorize. Defendants have no basis to argue the substantive or procedural fairness of the Settlement other than to parrot the Company's filing, and all such arguments belong exclusively to the Company. Defendants played no part in the Board's process and have no actual knowledge of the Board's deliberations leading to the Settlement except to the extent that they were counterparties to negotiations. No position asserted by Defendants should be attributed to the Company. The Company reserves all rights and waives none.

The Honorable Arun Subramanian
May 10, 2026
Page 4

Respectfully submitted,

Aaron T. Morris