**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TODD AUGENBAUM,<br><br>Plaintiff,<br><br>v.<br><br>ANSON INVESTMENTS MASTER FUND LP; BRIO CAPITAL MASTER FUND LTD.; BRIO SELECT OPPORTUNITIES FUND, LP; CVI INVESTMENTS, INC.; EMPERY ASSET MASTER, LTD.; EMPERY DEBT OPPORTUNITY FUND, LP; EMPERY TAX EFFICIENT, LP; IROQUOIS MASTER FUND LTD.; IROQUOIS CAPITAL INVESTMENT GROUP, LLC; L1 CAPITAL GLOBAL OPPORTUNITIES MASTER FUND; M3A LP; RICHARD MOLINSKY, and; GENIUS BRANDS INTERNATIONAL, INC.,<br><br>Defendants. | Civil Action No. 1:22-cv-00249-AS |

### DECLARATION OF JEFFREY S. ABRAHAM

I, Jeffrey S. Abraham, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.        I am a partner of Abraham, Fruchter & Twersky, LLP, counsel to Plaintiff Todd Augenbaum. I submit this declaration in opposition to the judgment sought by Genius Brands International, Inc., n/k/a Kartoon Studios, Inc. ("Genius" or the "Company") (Dkt. 359, the "Motion"; Dkt. 360, the "Memo.").

2.        Exhibit 1 hereto is a true and correct copy of Bradley Woods & Co. Ltd.'s ("Bradley Woods") June 24, 2024 response to a June 10, 2024, subpoena served by Plaintiff. Bradley Woods is a former parent company of the Special Equities Group ("SEG"). Page 8 of the response shows that BW was represented by Aaron Morris and other attorneys at Morris Kandinov LLP.

1

3.      On October 24, 2025, Michael J. Klein of my firm LLP ("Klein") and I attended a half-day in-person mediation between Plaintiff and CVI at Skadden Arps's Manhattan offices, in which David Murphy participated.

4.      On November 5, 2025, together with Mr. Klein, I met with Iroquois's counsel at Latham & Watkins's offices during which Mr. Clark, as Iroquois's incoming counsel, withdrew an earlier settlement offer and, instead, stated that Plaintiff had no clear path to trial.

5.      Exhibit 2 hereto is a true and correct copy of a letter from Michael L. Charlson, as counsel for the Company, to Christopher J. Clark, as counsel for Iroquois, concerning Iroquois's indemnification demand on the Company.

6.      Exhibit 3 hereto is a true and correct copy of an email string containing Anson's December 11, 2025 opening offer of $35 million to settle this litigation, made through Mr. Murphy. Anson's opening offer was subject to a most-favored-nation clause ("MFN") and was described as representing "21% of the claimed damages on a Chevron basis (the 'Settlement Percentage')". At that time, Plaintiff had not yet made any settlement demand on Anson.

7.      Exhibit 4 hereto is a true and correct copy of minutes of a meeting of the Board of Directors of Kartoon Studios, Inc. (the "Board") dated January 30, 2026, provided by Mr. Morris, with the redactions shown on the exhibit.

8.      Exhibit 5 hereto is a true and correct copy of minutes of a meeting of a "Litigation Committee" formed by the Board held on February 2, 2026, provided by Mr. Morris.

9.      Exhibit 6 hereto is a true and correct copy of an email string between me and Aaron Morris, with the subject Augenbaum/Kartoon Studios, spanning from Feb. 6, 2026 to April 20, 2026.

2

10.     Exhibit 7 hereto is an email from Aaron Morris to me, dated February 13, 2026, transmitting the Board's January 30, 2026, minutes that are attached to this Declaration as Exhibit 4, and recognizing the risk of privilege waiver Plaintiff faced if he agreed to the Company's proposed Rule 502(d) stipulation.

11.     Exhibit 8 hereto is a true and correct copy of an email string between Plaintiff's counsel and Mr. Murphy that Plaintiff's counsel initiated on February 24, 2026, faced with settlement talks stagnating. Plaintiff reached out to CVI, which reduced its prior offer, which Plaintiff believes was caused at least in part by the possibility of a potentially better deal from the Litigation Committee.

12.     Exhibit 9 hereto is a true and correct copy of a February 26, 2026, email from the Mediator stating that he believed CVI was still willing to settle the case for $7.5 million, which Plaintiff calculates as 28.1% of CVI's potential *Chevron*-based disgorgement of $26,691,400. *See* Dkt. 232-31 at Table 5.

13.     On March 4, 2026, Mr. Morris told me during a telephone call that he believed the Committee would be retaining Jay Lefkowitz to negotiate for the Committee, while Mr. Morris would remain counsel for the Company.

14.     Exhibit 10 hereto is a true and correct copy of minutes of a meeting of the Litigation Committee held on March 9, 2026, provided by Mr. Morris.

15.     Exhibit 11 hereto is a true and correct copy of an email string from March 10-18, 2026, between me and Mr. Lefkowitz.

16.     During a call on March 11, 2026, Mr. Lefkowitz stated he wanted to speak to Plaintiff's counsel "before [he] dove into" getting up to speed and negotiating.

17.     On March 18, 2026, Mr. Lefkowitz stated during a telephone call with me and Mr. Klein that he had only started looking at the summary judgment filings, was actively negotiating with Defendants, and could see reaching a settlement of $40-$50 million. I explained to him that settling at that level was below the range of reasonableness, that lumping Anson together with other Defendants was value-minimizing given the strength of the evidence against Anson, and that Plaintiff had been attempting to engage with Defendants individually to see if agreements could be reached.

18.     On April 20, 2026, Plaintiff's counsel participated in an approximately one-hour telephone conference call with Litigation Committee member Jeffrey Schlesinger as well as Messrs. Jaffa and Morris but which Mr. Lefkowitz did not attend, during which Plaintiff's counsel advised Messrs. Schlesinger, Jaffa, and Morris that Plaintiff had received higher offers from two Defendants than the Litigation Committee was considering accepting from six Defendants.

19.     On April 22, 2026, following an unsuccessful effort to arrange a call with the Mr. Murphy to discuss settlement issues, Mr. Lefkowitz demanded that Plaintiff provide a global counter-offer – rather than ones directed to the individual Defendants' settlement offers – otherwise Genius would move for Court approval.

20.     Exhibit 12 hereto is a true and correct copy of an email string from April 24-28, 2026, between me and Mr. Lefkowitz with the subject Pursuant to Rule 408. No meeting with Mr. Murphy or Mr. Lefkowitz took place.

21.     Exhibit 13 hereto is a true and correct copy of a May 12, 2026, letter from Mr. Chaz Rainey to the Hon. Anar Rathod Patel, J.S.C., in *Empery Asset Master, Ltd., et al. v. Kartoon Studios, Inc.*, Index No. 650906/2026, NYSCEF Doc. No. 24 (Sup. Ct., N.Y. Cnty.).

22.     Exhibit 14 hereto is a true and correct copy of an email string from May 11-12, 2026, between me, Mr. Morris, and others with the subject Augenbaum.

23.     Exhibit 15 hereto is a true and correct copy of an email string from April 29-May 3, 2026, between me, Mr. Morris, Mr. Lefkowitz, and others.

24.     On May 14, 2026, Plaintiff made new individual settlement demands.

25.     Empery has informed Plaintiff that it is not interested in settling at this time.

26.     On Monday, May 18, 2026, Plaintiff reached a settlement with L1 Capital for $3,550,000, representing an approximately 50% bump from the amount agreed to by the Litigation Committee.

27.     Michael Charlson was counsel for the special litigation committee in the case of *Sandys ex rel. Zynga, Inc. v. Pincus,* C.A. No. 9512-CB, brought in the Delaware Court of Chancery in which I acted as the plaintiff's counsel. In that case, based upon a review of my files, the special litigation committee's report totaled 329 pages long and attached 195 exhibits divided into seven separate categories.

28.     On March 31, 2004, my firm, representing the bankrupt estate of PurchasePro.com, Inc. ("PurchasePro"), settled the Section 16(b) action of *Levy v. Office Depot, Inc.*, Case No. 01-8529 (S.D. Fl.) for $9.4 million. The settlement amounted to approximately 54% of potential recoverable short-swing insider profits of $17.2 million. The primary, if only, factual issue in the case was whether Office Depot, Inc. was a director of PurchasePro within the meaning of Section 16(b) based upon one of its officers serving as a director of PurhasePro.

Executed on May 20, 2026.                    /s/ Jeffrey S. Abraham
                                             Jeffrey S. Abraham