# EXHIBIT 2

Case 1:22-cv-00249-AS     Document 388-2     Filed 05/20/26     Page 2 of 4

# Vinson&Elkins

Michael L. Charlson  mcharlson@velaw.com
Tel +1.415.979.6910  Fax +1.415.704.3264

November 12, 2025

**<u>Via Electronic and U.S. Mail</u>**

Christopher J. Clark
Clark Smith Villazor LLP
666 Third Avenue, 21st Floor
New York, New York 10017

> Re:  *Augenbaum v. Anson Investments Master Fund LP, et al.*
> **Indemnification Demand for Iroquois Capital Group, LLC and
> Iroquois Master Fund Ltd.**

Dear Mr. Clark:

I write on behalf of Kartoon Studios, Inc., f/k/a Genius Brands International, Inc., ("Kartoon Studios" or the "Company") in response to your November 7, 2025 letter (the "November 7 Letter"), which you sent on behalf of Iroquois Capital Group, LLC and Iroquois Master Fund (together "Iroquois"). After review of the November 7 Letter, and for at least the reasons noted below, the Company's position is that it has no obligation to indemnify Iroquois in connection with the amended complaint (the "Complaint") filed by Todd Augenbaum in the lawsuit pending in the United States District Court for the Southern District of New York and styled *Augenbaum v. Anson Investments Master Fund LP, et al.* Case No. 22-cv-00249 (the "Action"). As you know, plaintiff in the Action alleges that Iroquois violated Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78p(b); plaintiff's experts have calculated that Iroquois realized improper profits of at least $35.8 million.

The Company disagrees that Section 16(b) violations, however innocent, constitute indemnifiable conduct. There exists a long line of case law holding that indemnification for Section 16(b) violations is impermissible as a matter of public policy. For example, in *Bunker Ramo-Eltra Corp. v. Fairchild Indus., Inc.,* the federal district court in Maryland considered a stock purchase agreement that included an indemnity provision that covered "any claim or litigation commenced or threatened by . . . any shareholder of [the issuer company] that arises out of . . . [the agreement] and the transaction contemplated thereby." 639 F. Supp. 409, 414 (D. Md. 1986), *appeal dismissed,* 801 F.2d 393 (4th Cir. 1986). The court quoted Section 29(a) of the Exchange Act, 15 U.S.C. §78cc(a), an anti-waiver provision providing that contractual provisions that purport to waive compliance with any provision of, or rule or regulation promulgated under, the Act are void. *Id.* at 418-19. The court went on to hold that indemnification would "frustrate the public policy behind" the short-swing profit prohibition of Section 16(b). *Id.* at 419. Likewise, the United States Court of Appeals for the Tenth Circuit held, in *First Golden Bancorporation v. Weiszmann,*

**Vinson & Elkins LLP  Attorneys at Law**
Austin  Dallas  Denver  Dubai  Dublin  Houston  London
Los Angeles  New York  Richmond  San Francisco  Tokyo  Washington

555 Mission Street, Suite 2000
San Francisco, CA 94105
Tel +1.415.979.6900  Fax +1.415.651.8786  velaw.com

Case 1:22-cv-00249-AS    Document 388-2    Filed 05/20/26    Page 3 of 4

**V&E**

Christopher J. Clark
November 12, 2025
Page 2

that indemnification for securities law violations generally contravenes public policy and with these policy concerns being applicable to Section 16(b) cases. 942 F.2d 726, 729 (10th Cir. 1991).

Decisions from the United States District Court for the Southern District of New York are in accord. Rejecting a demand for indemnification in a Section 16(b) context, the court in *Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC,* held that indemnification for Section 16(b) violations would "frustrate the public policy behind the statute because liable parties would not have to return their short-swing profits to the [issuer company]." 286 F. Supp. 2d 279, 283 n.6 (S.D.N.Y. 2003). *See also, e.g., In re XO Communications, Inc.,* 330 B.R. 394, 441 (Bankr. S.D.N.Y. 2005) ("indemnification by the issuing corporation would run counter to public policy underlying Section 16(b)"); *Deephaven Cap. Mgmt., LLC v. Schnell,* No. 06-844 (JRT/FLN), 2007 WL 101821, at *3 (D. Minn. Jan. 8, 2007) ("indemnity for section 16(b) violations would undermine the deterrent purpose of section 16(b) by allowing a wrongdoer to recoup its disgorged profits"); *Jain v. J.P. Morgan Sec., Inc.,* 177 P.3d 117, 121 (Wash. App. 2008) ("It is well settled that an insider found to have violated section 16(b) may not seek indemnification for the ensuing liability.").

While courts base their prohibition of Section 16(b) indemnification on public policy considerations, the holdings of these cases are entirely logical. Indemnification for Section 16(b) violations would mean that profits improperly realized—profits that are supposed to be disgorged by the offending trader—would instead by round-tripped back to that trader. Indeed, beyond just retaining its improperly realized profits, the trader would presumably receive back more—specifically its costs of defense. It simply makes no sense that an investor who violates Section 16(b) could affirmatively benefit from that violation to the detriment of the issuer, not merely because the issuer would not receive the disgorged improper profits as Section 16(b) specifically contemplates, but also because the issuer would be responsible for the legal expenses for all of (a) the defendant investor, (b) the plaintiff shareholder's counsel, and (c) itself. Such a result would render the trading restrictions in Section 16(b) a nullity.

Even if indemnification for Section 16(b) violations were legally permissible, the indemnification language that you invoke in the November 7 Letter—language from Section 9 of the Securities Purchase Agreement dated March 11, 2020 (the "SPA")—does not extend to Section 16(b) claims. The Company respectfully disagrees with the assertions in the November 7 Letter that Mr. Augenbaum's allegations "arise out of, relate to, and result from the execution, delivery, performance and enforcement of the SPA and related transaction documents" or that the Action "squarely falls within the Company's indemnity and advancement obligations" under the SPA. The alleged Section 16(b) violations are not about Iroquois' decision to purchase Company securities pursuant to the SPA. Rather, liability, if there is any, would result from Iroquois' decisions to *dispose* of Company securities within the six-month period prohibited under the statute. These decisions by Iroquois to dispose of Company securities were matters that the Company did not (and did not purport to) control and with which the Company had no involvement. Your reference to indemnification for "transactions contemplated" by the SPA, when read in context, refers to

Case 1:22-cv-00249-AS    Document 388-2    Filed 05/20/26    Page 4 of 4

Iroquois' purchase of Company securities.  It cannot reasonably be read to concern later decisions to sell those securities, made independently of the Company.

Without belaboring matters further, the Company rejects Iroquois' demand and reserves all rights, remedies, and defenses, particularly in light of the threats you put forward before you abruptly terminated our brief telephone discussion on November 12.  Without limiting the generality of this reservation, the Company also rejects that Iroquois, as one of eight sets of defendants engaged in what we understand to be a joint defense of the Action, could have incurred "reasonable fees, costs, and expenses" to date of the (unsupported) $5.23 million demand amount set forth in the November 7 Letter.

Very truly yours,

Michael L. Charlson