# EXHIBIT 15

 Outlook

---

**Re: Re:**

---

**From** Jeffrey S. Abraham <Jsalaw@aftlaw.com>

**Date** Sun 5/3/2026 4:22 PM

**To** Lefkowitz, Jay P. <lefkowitz@kirkland.com>

**Cc** David Murphy <dmurphy@phillipsadr.com>; Michael Klein <mklein@aftlaw.com>; Aaron Morris <aaron@moka.law>

Dear Jay,

You are not writing on a blank slate in this matter. Michael Charlson as counsel for the Company previously wrote to the Court on December 11, 2025, requesting that the Court order a further mediation in which "the Court make clear that Genius should participate substantively in that mediation." ECF No. 299 at 3. The next day – before Plaintiff had the opportunity to correct the many factual inaccuracies contained in the December 11th letter – the Court *sua sponte* declined to enter any Order requiring the Company's participation. Instead, the Court noted that it was "happy to facilitate discussions if everyone is on board" while noting that "the participants and nature of those discussions are up to the parties." *Id*.

The December 11th letter itself followed Anson taking a major equity stake in the Company in an October 2025 financing referred to in letter without identifying Anson as the investor. It also followed a meeting at which Mr. Charlson threatened Plaintiff that the Company was considering a range of options to force through a settlement on its preferred terms.

At the time of the December 11th letter, Plaintiff was actively engaged in settlement discussions with CVI being facilitated by David Murphy who was a very experienced and in-demand mediator who was agreed upon by all parties. Not long after that, Anson made an unsolicited opening offer of $35 million – translating into an overall settlement amount according to Plaintiff's calculations of approximately $82 million and was also below the overall settlement value being discussed with CVI, which exceeded $100 million. After consulting with Mr. Murphy, Plaintiff made a demand which Anson found unsatisfactory and declined to further engage at that time.

Shortly thereafter, a series of events started to unfold related to claims for indemnification filed by Iroquois and Empery. First, Michael Charlson, who had represented the Company for over five years in this action, including dealing with the meritless claims for advancement and indemnification, disappeared from the case with a solo practitioner from California taking his place. Then, the Company established a "Litigation Committee" to address those indemnification claims and making a settlement recommendation. The Litigation Committee then oddly chose Aaron Morris, counsel for Special Equity Group, as its counsel

despite, among other things, SEG having a disputed indemnification claim with the Company in which the Company viewed the bills submitted by SEG for the work of Mr. Morris's firm as "excessive" as disclosed in the Company's most recent Form 10-K annual report.

After both Plaintiff and apparently certain Defendants were also concerned about Mr. Morris having a conflict, you appeared as counsel to negotiate with the parties, being engaged sometime after March 9, 2026. On our first telephone call on March 11, 2026, I inquired why you would be interested in a matter which you claimed would not generate much attorneys' fees to which you responded that you watched a lot of cartoons when you were a child. Count me skeptical, but I find that explanation hard to believe with the more likely explanation being that you are doing someone at or connected to Anson (or some other Defendant) a solid.

During our March 11th phone call you floated a $30 million overall settlement, after which I informed you that would be below the opening settlement offers of two Defendants. When we spoke again on March 18th, you advised me you have had a chance to speak with all of the defendants about how to calculate damages. You explained the percentage of any settlement would likely be larger than any Cornerstone average because of this case's posture, and Defendant's view of the case is that maximum damages are around $350 million. You said you can see pulling together a settlement of $40-$50 million, and I advised you I had more than that on the table from two of the defendants (which you advised me they denied). You asked for a rough indication of what Plaintiff was looking for, and I said this is a strong strict liability claim for over $350 million using the lower range of damages. You advised that you had started reading the summary judgment papers but not finished reviewing them, and that you thought Defendants might agree to pay $50 million and you could see the Company taking the position that is a good settlement and then seeking approval from Judge Subramanian. I also advised you that I believed collective negotiations were unproductive because the strength of claims differs among Defendants, and you disagreed.

On April 20th, I participated in an approximately one-hour telephone conversation with Jeffrey Schlesinger, one of the Litigation Committee's members, Michael Jaffa, the Company's general counsel, and Aaron Morris explaining, among other things, why a $50 million settlement would be inadequate.

On April 22nd, you contacted me again to tell me that the Company would move for approval of a proposed $50 million proposed settlement, albeit with only six of the eight Defendants. You later informed me that Empery and Brio were the Defendants who would not be participating in the Company's proposed settlement. The net effect is that the Company will be proposing to settle this case with six Defendants for about $2 million more than Anson's opening offer, which was expressly not its last-and-best offer.

On the April 22nd call, I informed you that this case is strongest against Anson and that Plaintiff would be pleased to proceed to a trial against Anson, Brio and Empery. At the same time, Plaintiff is more than happy to engage with any or all of the five other Defendants

(CVI, Iroquois, M3A, L1, and Richard Molinsky). A key problem is that the Company's opening proposal is well below where settlement discussions with CVI had previously been, which provides an indicative range for a fair settlement as a little bit more than double the $50 million suggested by the Company.

The other problem with the construct for settlement discussions the Company is seeking to impose on Plaintiff is that you are not a mediator. Similarly, the Company, which you claim to represent, has not been a neutral party in this action given that it has been consistently and actively hostile to Plaintiff's claim with Anson now having a very large equity interest in the Company.

Plaintiff is, as always, interested in a settlement which fairly reflects the value of the claim asserted. Plaintiff would urge the Company not to make a motion to approve the settlement currently being proposed because, as best Plaintiff can tell, any such motion would be frivolous. Instead, a better method would involve David Murphy in the negotiations or having Plaintiff interact directly with Defendants without the overhang of the Company's proposed frivolous motion. Another possibility is to take the Court up on its offer of assistance contained in the December 12th Order to be of assistance with negotiations.

Very truly yours,
Jeff Abraham

**Jeffrey S. Abraham**
Abraham, Fruchter & Twersky LLP
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
Fax: (212) 279-3655



---

**From:** Lefkowitz, Jay P. <lefkowitz@kirkland.com>
**Sent:** Thursday, April 30, 2026 10:10 PM
**To:** Jeffrey S. Abraham <JAbraham@aftlaw.com>
**Cc:** David Murphy <dmurphy@phillipsadr.com>; Michael Klein <mklein@aftlaw.com>
**Subject:** Re:

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

> **WARNING:** The sender of this email could not be validated and may not match the person in the "From" field.

Jeff - I wanted to give you one last opportunity to make a demand on the defense group that I can convey. Just saying 50 isn't high enough isn't constructive. Unless we can reach an agreement, the company will seek court approval of the reasonable and fair settlement offer it has received next week.

Jay

On Apr 29, 2026, at 11:40 AM, Jeffrey S. Abraham <JAbraham@aftlaw.com> wrote:

Jay,

To be clear, what I said to you is that Susan has always insisted on having any communications relating to potential settlements through David.  Susan is free, of course, to call me and you are free to try to set a time for Susan and I to talk.

Also to be clear, I have carefully explained to both you and Jeff from the Litigation Committee that Plaintiff does not view the strengths or weaknesses of the case against each of the six Defendants in your group as being equal.  Therefore, the concept of negotiating a single precentage for all of them seems highly unlikely to succeed.

As for my schedule, I am in the office tomorrow but I am taking an expert's deposition remotely in another matter starting at 10:00 a.m.  I don't anticipate the deposition taking all day but I am not thoroughly in control of how long the deposition takes.  I can try to arrange a break in the schedule and hopefully my opposing counsel and the deponent will cooperate.

Jeff

**Jeffrey S. Abraham**
Abraham, Fruchter & Twersky LLP
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
Fax: (212) 279-3655

<image.png>

---

**From:** Lefkowitz, Jay P. <lefkowitz@kirkland.com>
**Sent:** Wednesday, April 29, 2026 11:25 AM
**To:** David Murphy <dmurphy@phillipsadr.com>
**Cc:** Jeffrey S. Abraham <JAbraham@aftlaw.com>
**Subject:** Re:

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**WARNING:** The sender of this email could not be validated and may not match the person in the "From" field.

Thanks David.    I want to be clear. Jeff is the one who has said he thinks you are essential to speaking with the defendants on his behalf because he doesn't want to speak with them on his own as he has told me that won't be productive.

From my perspective, I am just trying to see if Jeff has a demand he wants to make to the defense group that I or he or you can convey before the company files a motion next week.

I also think we can carve out some time tomorrow during down time in the Kirkland mediation if you were inclined to take a call.  Jeff and I will obviously be at the office tomorrow.  So maybe you could take a few minutes to speak with Jeff.

Thx.

> On Apr 29, 2026, at 11:18 AM, David Murphy <dmurphy@phillipsadr.com> wrote:
>
>
>
> Jay,
>
> I've played no role in your recent negotiations.  I have no ability to assess or judge any defendant's capacity to pay.  And I am fully committed to four other full-day mediation sessions this week.   I am not inclined to parachute back into this at the end, after the cake is baked.
>
> I'm always happy to talk with both of you and apologize for being tied up yesterday mediating until 10pm last night.  I am free to talk at 6pm Eastern, but I rather doubt I can add anything to the mix right now.
>
> Best,
>
> David
>
> **David M. Murphy**  (bio)
> Mediator ◇ Arbitrator ◇ Independent Panelist
> Phillips ADR Enterprises LLC (PADRE)
> 917-446-0233 (CT & NYC)

---

**From:** Lefkowitz, Jay P. <lefkowitz@kirkland.com>
**Sent:** Wednesday, April 29, 2026 11:03:14 AM
**To:** JAbraham@aftlaw.com <JAbraham@aftlaw.com>; David Murphy <dmurphy@phillipsadr.com>
**Subject:**

David - we are getting ready to file our motion Monday to approve the settlement we have negotiated.  I have asked Jeff to make any final demand he would like to make and he has told me he believes that at least some of the defendants have more capacity than they are telling me. I think we would benefit from your engagement here if you could spare a few minutes to speak with us and also speak with Jeff and perhaps a couple of the defendants.

Thx. Jay

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.