# EXHIBIT 1

# KARTOON STUDIOS, INC.
(a Nevada corporation)
(the "Company")

## MINUTES OF A SPECIAL MEETING
## OF THE COMPANY'S BOARD OF DIRECTORS

**DATE:**       January 30, 2026
**TIME:**       10 a.m. PT
**PLACE:**      Conference Call

### DIRECTORS PRESENT:

1.  Mr. Andy Heyward

2.  Gov. Gray Davis (Telephone)

3.  Mr. Anthony Thomopoulos (Telephone)

4.  Ms. Margaret Loesch (Telephone)

5.  Jeff Schlesinger (Telephone)

### OTHERS PRESENT:

Michael Jaffa, Chief Operating Officer
Brian Parisi, Chief Financial Officer

### CALL TO ORDER

A meeting of the Company's Board of Directors (the "Board") was held at the date, time and place set forth above. After confirming that all could hear and be heard, Andy Heyward called the meeting to order and announced that a quorum of the Board was present and that the meeting, having been duly noticed and convened, was ready to proceed with its business.

### SECTION 16(b) LITIGATION AND RELATED MATTERS

Mr. Jaffa was asked to provide an update to the Board as to the pending litigation captioned *Augenbaum v. Anson Investments Master Fund LP, et al.*, Case No. 1:22-cv-00249 (S.D.N.Y.) (the "Section 16(b) Litigation"). Mr. Jaffa noted that: (i) the Section 16(b) Litigation asserts claims under Section 16(b) of the Securities Exchange Act of 1934 (sometimes called the short-swing profit rule) against certain institutional investors (the "Defendants") who are alleged to have

acquired and disposed of certain of the Company's securities in 2020 in violation of the statute; (ii) the Section 16(b) Litigation is derivative in nature, meaning that the claim belongs to the Company and any recovery would be payable exclusively to the Company; (iii) the Court denied the Defendants' motion to dismiss the Amended Complaint in January 2024; (iv) the Court denied the Defendants' motion for summary judgment in September 2025; and (v) a trial has been scheduled for June 8, 2026 with a final pre-trial conference scheduled for June 1, 2026.

Mr. Jaffa provided additional detail regarding the recent summary judgment ruling. Mr. Jaffa noted that both sides had moved for summary judgment and both motions were denied. The Court found that there is a triable question of fact as to whether the Defendants agreed to act together as a "group" within the meaning of Section 13(d) of the Exchange Act, which is a predicate to the liability theory plaintiff has alleged under Section 16(b). Mr. Jaffa explained that the plaintiff presented virtually no evidence of direct communication or coordination between the Defendants, but the Court found disputes of material fact precluding summary judgment based on communications between individual Defendants and their placement agent, an internal memo purportedly referencing a joint call between two Defendants, and the exchange of various drafts of transactional documents between a subset of the Defendants, the placement agent, and respective counsel. The Court concluded, under the applicable summary judgment standard, that this evidence could support an inference that Defendants agreed to act as a group. Mr. Jaffa further noted that the Court also made certain rulings on the parties' experts. The next procedural stage is a trial, which has been scheduled for June 8, 2026.

Discussion then turned to indemnification claims made against the Company by the Defendants in the Section 16(b) Litigation. Mr. Jaffa noted that, as previously considered by the Board, the Defendants have demanded indemnity as to their ongoing legal expenses in connection with the Section 16(b) Litigation as well as for any liability ultimately incurred in the litigation. Defendants purport to rely on Section 9(k) of the March 11, 2020 Securities Purchase Agreement ("SPA"), which states that the "Company shall defend, protect, indemnify and hold harmless each Buyer and each other holder of the Securities . . . from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages, and expenses in connection therewith . . . and including reasonable attorneys' fees and disbursements (the 'Indemnified Liabilities'), incurred by any Indemnitee as a result of, or arising out of, or relating to . . . (c) any cause of action, suit or claim brought or made against such Indemnitee by a third party (including for these purposes a derivative action brought on behalf of the Company)." Mr. Jaffa further noted that Defendants purport to rely on Section 9(k)(iii) of the SPA, which states that "[t]he indemnification required by this Section 9(k) shall be made by periodic payments of the amount thereof during the course of the investigation or defense, as and when bills are received or Indemnified Liabilities are incurred." While the Company has denied and contested its obligations to provide any indemnity or advancement of expenses to Defendants in connection with the Section 16(b) Litigation, Defendants have argued that even if they are not entitled to indemnity as to any ultimate liability, they are entitled at a minimum to advancement and

reimbursement of all costs incurred as a result of the Litigation, which is expected to be substantial at this stage of the Litigation.

Mr. Jaffa advised the Board that one lawsuit has been filed already against the Company by one of the Defendants to enforce the SPA's advancement provisions. On January 6, 2026, Iroquois Master Fund Ltd. and Iroquois Capital Investment Group filed a complaint against the Company in New York Supreme Court, Index No. 650077/2026 (the "Iroquois Litigation"). The Iroquois Litigation asserts claims for declaratory relief and breach of contract and alleges that the Company has failed to advance approximately $5.2 million in attorneys' fees and expenses incurred by the Iroquois entities in defending the Section 16(b) Litigation as of September 2025. The case has not yet been assigned to a judge. The Company is continuing to evaluate the claims and its options in responding to the complaint.

A discussion ensued as to the Section 16(b) Litigation and the Iroquois Litigation, including the nature and extent of the Company's potential liability in the Iroquois Litigation; the likelihood of other Defendants filing similar lawsuits; the implications of such additional litigation to the Company; the estimated scale of the Company's current potential indemnity liabilities to all Defendants; the estimated scale of the Company's future potential indemnity liabilities if the matter proceeds to trial; the potential monetary benefits to the Company of a settlement or favorable resolution of the Section 16(b) Litigation; and the likelihood of a favorable result for the Company at trial and factors that may render it difficult for the plaintiff to prevail at trial.

Mr. Jaffa noted that the parties in the Section 16(b) Litigation had previously attended a mediation with David Murphy of Phillips ADR, but the mediation did not result in a resolution of the matter. Mr. Jaffa further noted that the Company, as the real party in interest and owner of the claim being litigated, is entitled to directly engage in the potential resolution of the Litigation, including discussing and negotiating any potential settlement with the parties. Mr. Jaffa discussed whether the Board may wish to consider forming a committee to facilitate such direct discussions with the parties with the objective of achieving a value-maximizing outcome for the Company and its stockholders, taking into account both the potential recovery for the Company and the potential exposure to indemnification and advancement liabilities. Mr. Jaffa noted that the Company had submitted a letter to the Court on December 11, 2025 requesting that the Court instruct the parties to further mediation in 2026. While the Court declined to order mediation, it stated, in relevant part, that "the Company is now on record as to its views, which everyone should consider. If in light of those expressed views the Court can be of assistance, please let us know by way of a joint letter or motion on consent."

Further discussion ensued regarding the status of the litigations; the risks and options available to the Company in connection with the Section 16(b) Litigation and the Iroquois Litigation, including the magnitude of the Company's potential exposure for indemnity obligations under the SPA; the potentially catastrophic risk to the Company in view of those obligations in the

event that the plaintiff does not prevail at trial; the probability of such a failure at trial; the fact that the Company would incur, at a minimum, substantial defense costs of its own in the Iroquois Litigation and potentially other indemnity actions filed by other Defendants; and the anticipated scale of such defense costs. The Board further discussed the potential value of the Section 16(b) claim to the Company; the wherewithal of Defendants to pay such amounts whether by settlement or judgment; the likelihood that Defendants would engage in meaningful settlement discussions; the Company's current cash position, balance sheet and anticipated expenses and liabilities for FY 2026; and the Company's near-term strategic objectives.

Following extensive discussion between the members of the Board regarding the foregoing topics and related business factors relevant to the Company, the Board determined unanimously to form a Litigation Committee to further analyze the Company's litigation positions, explore potential settlement structures that could be value maximizing for the Company, test the potential to reach a resolution in the near term, and advise the Board with respect to the foregoing and recommended next steps. The Board discussed and acknowledged that forming a Litigation Committee is expected to be beneficial to the Company because the Committee would be properly resourced and better positioned to: (i) evaluate in detail the current status of the Company's claims in the Section 16(b) Litigation, the likelihood of success, and the potential net recovery after accounting for any offsetting expenses, indemnification and advancement obligations; (ii) evaluate the Company's position in the Iroquois Litigation, the strength of its defenses and the likelihood, if any, of exposure under the SPA to indemnity claims; (iii) engage directly in discussions with the parties to the Section 16(b) Litigation to explore the feasibility of a global resolution favorable to the Company; and (iv) recommend whether the Company should take action with respect to the Section 16(b) Litigation and, if so, what actions would be in the best interests of the Company and its stockholders.

## **FORMATION OF LITIGATION COMMITTEE**

After discussion, the following resolutions were presented to the Board for consideration and approval:

* * *

**WHEREAS**, the Company is the nominal defendant and the real party in interest in the pending litigation captioned *Augenbaum v. Anson Investments Master Fund LP, et al.*, Case No. 1:22-cv-00249 (S.D.N.Y.) (the "Section 16(b) Litigation"), which asserts claims under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), against certain institutional investors (the "Defendants") seeking disgorgement of alleged short-swing profits, with any recovery payable to the Company;

**WHEREAS**, the Court denied the Defendants' motion to dismiss in January 2024 and motion for summary judgment in September 2025, and the Section 16(b) Litigation is now scheduled for trial beginning June 8, 2026;

**WHEREAS**, certain Defendants have made indemnification and advancement demands on the Company pursuant to Section 9(k) of the Securities Purchase Agreement dated March 11, 2020 (the "SPA"), which contains provisions potentially requiring the Company to indemnify such investors for claims arising out of the SPA, including derivative actions brought on behalf of the Company, and potentially to make periodic payments of attorneys' fees and other expenses as they are incurred;

**WHEREAS**, on January 6, 2026, Iroquois Master Fund Ltd. and Iroquois Capital Investment Group filed a complaint against the Company in the Supreme Court of the State of New York, Index No. 650077/2026 (the "Iroquois Litigation"), seeking declaratory relief and damages for breach of contract based on the Company's alleged failure to advance approximately $5.2 million in attorneys' fees and expenses;

**WHEREAS**, the Board has determined that it is necessary and appropriate to conduct an independent and robust evaluation of (i) the value of the Company's claim in the Section 16(b) Litigation, risks and benefits of continued prosecution, and the feasibility of reaching a value-maximizing resolution of the claim; and (ii) the Company's potential exposure to indemnity claims by Defendants to the Section 16(b) Litigation, including with respect to the Iroquois Litigation and potential future indemnity litigation, and the effect of any such obligations on the Company's potential net recovery in the Section 16(b) Litigation;

**WHEREAS**, the Bylaws of the Company provide that the Board may designate one or more committees, each committee to consist of one or more directors of the Company;

**WHEREAS**, the Board deems it advisable and in the best interests of the Company and its stockholders to form a litigation committee (the "Litigation Committee") consisting of independent and disinterested directors to investigate, review, and further evaluate the pending Section 16(b) Litigation and the Iroquois Litigation, including with respect to the value of the Company's claim, the potential liability of the Company for indemnification and advancement claims, and potential strategic alternatives available to the Company;

**WHEREAS**, the Board deems it advisable and in the best interests of the Company and its stockholders that the Litigation Committee be empowered to engage directly with the parties to the Section 16(b) Litigation and their counsel in furtherance of the objectives set forth above;

**WHEREAS**, the Board has reviewed the background, relationships, affiliations and all other potential factors weighing on the independence of directors Jeffrey Schlesinger and Anthony D. Thomopoulos (collectively, the "Litigation Committee Members"), and has determined that

both Litigation Committee Members have no potential financial or other interest in, association with, relationship to, or connection of any kind to the Section 16(b) Litigation or the Iroquois Litigation, any party thereto, any counsel thereto, or any other person with any material interest of any kind relating to the litigations and the parties thereto, and thus both Litigation Committee Members are entirely independent and disinterested with respect to the claims asserted in the Section 16(b) Litigation and the Iroquois Litigation;

*WHEREAS*, the Board has likewise reviewed and discussed the experience and competencies of the Litigation Committee Members, and has determined that both Litigation Committee Members have extensive and substantial business experience weighing in favor of their selection to staff the committee, including that Mr. Schlesinger has more than three decades of operational, strategic, financial, and deal-making expertise from multiple senior executive roles, including President of all international television sales at Warner Bros. and Mr. Thomopoulos likewise is a veteran senior executive with a distinguished business career, including serving as President of the Broadcast Group of ABC, overseeing all network divisions including News and Sports, and serving as Chairman of United Artists Pictures;

*WHEREAS*, in light of the foregoing, and after weighing all relevant factors and exercising their independent business judgment, the Board has determined that it is advisable and in the best interests of the Company and its stockholders to form the Litigation Committee and appoint the Litigation Committee Members.

**NOW, THEREFORE, BE IT RESOLVED**, that the Board hereby establishes the Litigation Committee for the purpose of evaluating the status of the Section 16(b) Litigation, the status of the Iroquois Litigation, the potential value of the Company's claim and likelihood of success at trial, the potential exposure to related indemnification and advancement claims, and the Company's potential strategic options in connection with all of the foregoing;

**RESOLVED FURTHER**, that the Board hereby appoints Jeffrey Schlesinger and Anthony D. Thomopoulos to serve as co-Chairs of the Litigation Committee;

**RESOLVED FURTHER**, that the Litigation Committee be, and hereby is, delegated full power and authority to:

(i)     investigate, review, and evaluate the claim asserted in the Section 16(b) Litigation, including the merits, prior judicial rulings, procedural posture, potential recovery for the Company, and costs, benefits and probabilities of continued prosecution;

(ii)     investigate, review, and evaluate the Defendants' indemnification and advancement claims under the SPA, including the legal basis (if any) for such claim, any distinction between advancement and indemnification obligations, the exposure and defense costs associated with the Iroquois Litigation, and the potential effect

of any such obligations on the Company's net recovery in the Section 16(b) Litigation;

(iii)    engage in discussions with the parties to the Section 16(b) Litigation to ascertain the status of settlement efforts, anticipated material issues for the parties at trial, and the feasibility and value of potential resolutions favorable to the Company;

(iv)    evaluate and make recommendations to the Board as to whether continued prosecution, settlement, or other disposition of the claim asserted in the Section 16(b) Litigation, taking into account all relevant factors, is in the best interests of the Company and its stockholders; and

(v)    submit for the Board's consideration any specific proposal(s) for the potential settlement or prosecution of the Section 16(b) Litigation and/or settlement or defense of the Iroquois Litigation consistent with the Litigation Committee's objectives set forth above; and

**RESOLVED FURTHER**, that any proposal with respect to the prosecution or settlement of the Section 16(b) Litigation or the Iroquois Litigation shall require approval by the Board following presentation and recommendation by the Litigation Committee;

**RESOLVED FURTHER**, that the Litigation Committee be, and hereby is, authorized and empowered to retain independent legal counsel, financial advisors, and any other consultants, experts or other resources as the Litigation Committee may deem, in its sole discretion, necessary or appropriate to assist the Litigation Committee in the discharge of its duties and objectives set forth herein, and that the reasonable fees and expenses of such parties shall be paid by the Company;

**RESOLVED FURTHER**, that the Litigation Committee be, and hereby is, authorized to engage directly with the parties to the Section 16(b) Litigation and the Iroquois Litigation and their respective counsel, and the court, where appropriate, on behalf of the Company as may be deemed appropriate in connection with its mandate;

**RESOLVED FURTHER**, that the Litigation Committee be, and hereby is, authorized to adopt such rules and regulations relating to the conduct of its internal affairs as the Litigation Committee deems advisable, including setting the notice requirements for any meeting of the Litigation Committee;

**RESOLVED FURTHER**, that the officers, directors, employees, and agents of the Company are, and each individually is, hereby authorized and directed to make available to the Litigation Committee, and any of its advisors, agents, counsel, and designees, any and all documents and information that the Litigation Committee deems necessary to carry out its duties and to fully cooperate with the Litigation Committee's investigation;

**RESOLVED FURTHER**, that each officer of the Company is hereby authorized and empowered, for and on behalf of the Company, to take or cause to be taken any and all such actions and to enter into, execute and deliver any and all such acknowledgments, agreements, certificates, contracts, instruments, notices, statements and other documents as may be required or as any such officer may deem necessary, advisable or appropriate to effectuate and carry out the purposes and intent of the foregoing resolutions; and

**RESOLVED FURTHER**, that all actions heretofore taken by any officer or director of the Company in connection with the matters contemplated by the foregoing resolutions, if any, are hereby ratified, confirmed, approved and adopted as actions on behalf of the Company.

\* \* \*

Upon motion duly made and seconded, the foregoing resolutions were unanimously approved and adopted by the Board.

## ADJOURNMENT

There being no further business to come before the Board, the meeting was adjourned.

Michael Jaffa
Secretary