# EXHIBIT 3

**ATTORNEY WORK PRODUCT**
**PRIVILEGED AND CONFIDENTIAL**

---

**MEMORANDUM**

**TO:**     Litigation Committee of Kartoon Studios, Inc. (the "Company")

**RE:**     Background Matters Relating To *Augenbaum v. Anson Investments Master Fund LP, et al.*, No. 1:22-cv-00249

**DATE:**   February 13, 2026

At the request of the Committee, we have prepared the following outline of selected background information relating to the *Augenbaum* matter. This outline is not intended to be exhaustive but rather addresses with additional specificity areas of discussion during the Committee's meeting on February 2, 2026.

## I.     THE SECURITIES PURCHASE AGREEMENT

In early 2020 (*i.e.*, at the outset of COVID-19), the Company required near-term financing to avoid defaulting on prior debts. The Company hired Special Equities Group ("SEG") to assist in raising capital. In January 2020, the Company and SEG negotiated a Securities Purchase Agreement (the "SPA") with certain institutional investors (the "Investors") through which the Company would ultimately issue (i) $13.750 million in senior convertible notes; and (ii) warrants to purchase approximately 65.5 million shares of common stock exercisable at $0.21/share (after stockholder approval). Through the SPA, the Company raised $11 million, with $7 million in upfront cash and $4 million in promissory notes payable by the Investors. The transaction closed on March 17, 2020. A chart of the Investor participants is below.

| Investor[1] | Note Amount | Convert | Warrants | % of Total |
|---|---|---|---|---|
| Anson | $3,750,000 | 17,857,143 | 17,857,143 | 27.3% |
| Empery | $1,875,000 | 8,928,571 | 8,928,571 | 13.6% |
| Brio | $1,750,000 | 8,333,333 | 8,333,333 | 12.7% |
| CVI | $1,250,000 | 5,952,381 | 5,952,381 | 9.1% |
| Iroquois | $1,250,000 | 5,952,381 | 5,952,381 | 9.1% |
| M3A | $1,250,000 | 5,952,381 | 5,952,381 | 9.1% |
| L1 Capital | $750,000 | 3,571,429 | 3,571,429 | 5.5% |

---

[1] This list includes non-insider participants. The remainder of the SPA allocation was to insider parties who were not named in litigation.

| Investor[1] | Note Amount | Convert | Warrants | % of Total |
|---|---|---|---|---|
| Robert Molinsky | $106,250 | 505,952 | 505,952 | 0.8% |

After the March 2020 closing, the price of the Company's stock began to rise precipitously, driven by the theory that changes caused by COVID-19 would be favorable for the Company's business. The Company capitalized on this price increase through a series of registered direct offerings. Some Investors participated in these offerings and others did not. A chart of the registered directs during the period is below.

| Date | Shares | Price | Gross | SPA Investors |
|---|---|---|---|---|
| March 22, 2020 | 4,000,000 | $0.2568 | $1,027,200 | Anson, Brio |
| May 7, 2020 | 8,000,000 | $0.35 | $2,800,000 | Anson, Brio, CVI, Empery, Iroquois, L1 Capital, M3A, Molinsky |
| May 8, 2020 | 12,000,000 | $0.454 | $5,448,000 | Anson, Brio, CVI, Empery, Iroquois, L1 Capital, Molinsky |
| May 18, 2020 | 7,500,000 | $1.20 | $9,000,000 | Anson, Brio, CVI, Empery, Iroquois, L1 Capital, Molinsky |
| May 28, 2020 | 20,000,000 | $1.50 | $30,000,000 | Anson, Brio, CVI, Empery, Iroquois, L1 Capital, Molinsky |

In early May 2020, an Investor requested that the Company consider early registration of the shares issuable under the SPA in light of the increase in stock price. The Company ultimately agreed to the registration of certain of the note and warrant shares in exchange for early payment of the $4 million promissory notes as well as consent from certain of the Investors required to conduct the registered offerings listed above, which raised capital for the Company.

On June 4, 2020, the Company filed a registration statement for approximately 60 million shares, 31 million of which were issued in connection with the exercise of the SPA warrants by the Investors. On June 23, 2020, the Company entered into conversion agreements for the SPA notes and agreed to register the newly issued shares. On June 26, 2020, the Company filed a registration statement for approximately 59.5 million shares issued upon the conversion of the notes.

In connection with the registrations, the Company required Investors to enter into "leak-out" agreements that limited open-market sales for a certain period after registration, to no more than 30% of the daily trading volume *only* when the stock price was trading below a specified price (90 days and $1.65 in the first instance and 30 days and $2.00 in the second). The leak-out agreements were required by the Company to mitigate the effect of the Investors' sales on the Company's stock price, but because the Company's stock price never approached the price floors during the period, the restrictions never applied.

Following the registrations, the Investors sold the shares obtained through the SPA at various points and some Investors continued to buy and sell shares of the Company. We do not have access to trading data showing the actual proceeds received by the Investors, but the statutory profit calculations submitted by Plaintiff and Defendants are shown below.

## II.    THE *AUGENBAUM* LITIGATION

On January 11, 2022, Todd Augenbaum (the "Plaintiff"), a shareholder of the Company, filed a complaint in the U.S. District Court for the Southern District of New York against the Investors listed above (the "Defendants") and the Company as a nominal defendant. *See Augenbaum v. Anson Investments Master Fund LP, et al.*, No. 1:22-cv-00249 (S.D.N.Y.). The action asserts a claim under Section 16(b) of the Securities Exchange Act of 1934, which applies to so-called "short-swing" trading by insiders and other persons who beneficially own more than 10% of a company's outstanding stock. Section 16(b) prohibits such persons from profiting on purchases and sales of stock within a six-month period. The statutory remedy is disgorgement calculated by a "lowest price in, highest price out" matching method, which may result in damages under the statute that exceed actual accounting profits or losses.

Although none of the Investors individually owned more than 10% of the Company's shares, the Plaintiff alleges that the Investors formed a "group" within the meaning of Section 13(d) of the Exchange Act, and thus their holdings and trading should be considered in the aggregate for purposes of Section 16(b). The Investors' combined holdings exceeded 10% of the Company's outstanding shares and the acquisitions in March 2020 and sales thereafter fell within a six-month period, thus exposing them, in Plaintiff's view, to Section 16(b) liability.

On March 30, 2023, the Court dismissed the original complaint, and Plaintiff filed an Amended Complaint on May 1, 2023. On January 24, 2024, the Court denied the Defendants' motion to dismiss, and the case proceeded to discovery. Following discovery, including extensive document discovery and deposition testimony, both parties filed cross-motions for summary judgment. On September 30, 2025, the Court denied all summary judgment motions, finding triable questions of fact as to whether the Defendants agreed to act as a group within the meaning of Section 13(d). The Court scheduled a trial for June 1, 2026.

In connection with summary judgment, Plaintiff and Defendants retained experts to, among other things, calculate statutory disgorgement under Section 16(b). Plaintiff's expert submitted the following calculations:

| Defendant | Model 1 | % | Model 2 | % |
|---|---|---|---|---|
| Anson | $157,405,689 | 43.4% | $191,461,246 | 43.7% |
| Brio | $35,620,470 | 9.8% | $44,675,078 | 10.2% |
| CVI | $26,691,400 | 7.4% | $33,661,360 | 7.7% |
| Empery | $57,606,534 | 15.9% | $59,862,827 | 13.7% |
| Iroquois | $35,835,237 | 9.9% | $45,077,693 | 10.3% |
| L1 Capital | $16,455,209 | 4.5% | $21,247,023 | 4.8% |

| Defendant | Model 1 | % | Model 2 | % |
|---|---|---|---|---|
| M3A | $30,239,943 | 8.3% | $38,352,497 | 8.8% |
| Robert Molinsky | $3,224,737 | 0.9% | $3,961,979 | 0.9% |
| **Total** | **$363,079,218** | **100.0%** | **$438,299,703** | **100.0%** |

Defendants retained an expert to opine on the calculations above and contends that the properly calculated amounts are as follows:

| Defendant | Model 1 (Adj.) | % | Model 2 (Adj.) | % |
|---|---|---|---|---|
| Anson | $141,670,289 | 42.6% | $150,432,534 | 43.9% |
| Empery | $56,097,875 | 16.9% | $51,255,868 | 15.0% |
| Brio | $33,065,665 | 9.9% | $35,018,512 | 10.2% |
| Iroquois | $31,894,274 | 9.6% | $33,300,964 | 9.7% |
| CVI | $25,891,187 | 7.8% | $26,153,287 | 7.6% |
| M3A | $25,255,229 | 7.6% | $26,650,120 | 7.8% |
| L1 Capital | $15,447,874 | 4.6% | $16,284,807 | 4.8% |
| Molinsky | $3,223,602 | 1.0% | $3,342,167 | 1.0% |
| **Total** | **$332,545,995** | **100.0%** | **$342,438,259** | **100.0%** |

Based on the parties' briefing at summary judgment, it appears that a key issue at trial will be proof of group coordination under the securities laws, including:

- Whether participation in a financing transaction like the SPA can constitute group activity under the securities laws;

- Whether participating in the leak-out agreements could constitute group activity; and

- Whether other record evidence in the case demonstrates coordination, including (i) a document that plaintiff suggests demonstrates a "joint call" between two of the Investors, which is disputed by testimony; (ii) a draft term sheet sent by one Investor to the Company's placement agent, SEG, which was thereafter forwarded to a different Investor; (iii) communications sending drafts of deal documents from one Investor to counsel for another; and (iv) separate communications between SEG and individual Investors regarding deal terms, participants or economics.

Our review of the claims and defenses at trial is only beginning and we will provide further analysis to the Committee at future meetings.

## APPENDIX

## TIMELINE OF SELECTED EVENTS

| Date | Event | Stock Price† |
|---|---|---|
| Mar. 11, 2020 | Company enters into SPAs with each Investor. | $2.40 |
| Mar. 17, 2020 | PIPE closes and raises $7M cash with notes for additional $4M. Cash proceeds used, in part, to repay $2.9M in prior secured notes. | $2.25 |
| Mar. 22, 2020 | First registered direct: 4M shares for $1.03M gross. | $2.75 |
| May 7, 2020 | Second registered direct: 8M shares for $2.8M gross. | $8.35 |
| May 8, 2020 | Third registered direct: 12M shares for $5.45M gross. | $5.80 |
| May 15, 2020 | Stockholders approve PIPE; conversion and warrant prices reduced. | $15.00 |
| May 18, 2020 | Fourth registered direct: 7.5M for $9M gross. | $13.80 |
| May 28, 2020 | Fifth registered direct: 20M shares for $30M gross. Company agrees to register warrant shares. | $18.10 |
| June 4, 2020 | Company files registration statement for ~31M shares from warrant exercises (60.1M total shares registered). | $68.60 |
| June 10, 2020 | SEC declares June 4 registration statement effective. | $45.10 |
| June 23, 2020 | Company enters into conversion agreements and agrees to register conversion shares by June 26. | $31.30 |
| June 26, 2020 | Company files registration statement for conversion shares. | $24.50 |
| July 6, 2020 | SEC declares June 26 registration effective. | $26.60 |
| Jan. 11, 2022 | Augenbaum files complaint in S.D.N.Y. asserting Section 16(b) claim. | $10.60 |

† Closing prices from Bloomberg (TOON US Equity). Prices are adjusted for the 1-for-10 reverse stock split.