# EXHIBIT 5

**ATTORNEY WORK PRODUCT**
**PRIVILEGED AND CONFIDENTIAL**

_____

**MEMORANDUM**

**TO:**         Litigation Committee of Kartoon Studios, Inc. (the "Company")

**RE:**         Chronology of Indemnification Claims Relating to
                *Augenbaum v. Anson Investments Master Fund LP, et al.*, No. 1:22-cv-00249

**DATE:**       March 27, 2026


At the request of the Committee, the following is a summary of the indemnification claims asserted by certain of the defendants in the *Augenbaum* matter, each of which participated in the March 2020 Securities Purchase Agreement (the "SPA") with the Company.

## I.    INDEMNIFICATION PROVISIONS

The SPA contained the following provisions (in relevant part), which defendants have argued require the Company to indemnify defendants for liability incurred in *Augenbaum* and to periodically advance defense costs in the interim:

(k) Indemnification.

(i) In consideration of each Buyer's execution and delivery of the Transaction Documents and acquiring the Securities thereunder and in addition to all of the Company's other obligations under the Transaction Documents, the Company shall defend, protect, indemnify and hold harmless each Buyer and each other holder of the Securities and all of their stockholders, partners, members, officers, directors, employees and direct or indirect investors and any of the foregoing Persons' agents or other representatives (including, without limitation, those retained in connection with the transactions contemplated by this Agreement) (collectively, the "Indemnitees") from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages, and expenses in connection therewith (irrespective of whether any such Indemnitee is a party to the action for which indemnification hereunder is sought), and including reasonable attorneys' fees and disbursements (the "Indemnified Liabilities"), incurred by any Indemnitee as a result of, or arising out of, or relating to (a) any misrepresentation or breach of any representation or warranty made by the Company in the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby, (b) any breach of any covenant, agreement or obligation of the Company contained in the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby or (c) any cause of action, suit or claim brought or made against such Indemnitee by a third party (including for these purposes a derivative action brought on behalf of the Company) and arising out of or resulting from (i) the execution, delivery, performance or enforcement of the Transaction Documents or any other certificate, instrument or

1

document contemplated hereby or thereby, (ii) any transaction financed or to be financed in whole or in part, directly or indirectly, with the proceeds of the issuance of the Securities, (iii) any disclosure made by such Buyer pursuant to Section 4(i) or (iv) the status of such Buyer or holder of the Securities as an investor in the Company pursuant to the transactions contemplated by the Transaction Documents. To the extent that the foregoing undertaking by the Company may be unenforceable for any reason, the Company shall make the maximum contribution to the payment and satisfaction of each of the Indemnified Liabilities which is permissible under applicable law.

. . . .

(iii) The indemnification required by this Section 9(k) shall be made by periodic payments of the amount thereof during the course of the investigation or defense, as and when bills are received or Indemnified Liabilities are incurred.

(iv) The indemnity agreements contained herein shall be in addition to (x) any cause of action or similar right of the Indemnitee against the indemnifying party or others, and (y) any liabilities the indemnifying party may be subject to pursuant to the law.

SPA, Ex. A at § 9(k) (emphasis added).

## II.    INITIAL DEMANDS FOR INDEMNIFICATION

**Empery Demand.** On April 15, 2022, Schulte Roth & Zabel LLP, on behalf of Empery Asset Master, Ltd., Empery Debt Opportunity Fund, LP, and Empery Tax Efficient, LP ("Empery"), made a demand on the Company's counsel, pursuant to § 9(k) of the SPA, for indemnification and advancement of expenses in connection with the *Augenbaum* matter. Empery argued that the *Augenbaum* action arose from Empery's status as an investor under the SPA and therefore the claims fell within the scope of contractual indemnification. Empery acknowledged a carve-out for claims arising from "any violations . . . of state or federal securities laws," but argued that Section 16(b) "seeks disgorgement of alleged profits" and is not a securities violation. Empery further argued that it was entitled to advancement because § 9(k)(iii) requires "periodic payments of the amount thereof during the course of the investigation or defense, as and when bills are received or are incurred."

**Company Rejects Empery's Demand.** On April 22, 2022, the Company, through counsel at Vinson & Elkins, rejected Empery's indemnification demand. The rejection rested on two principal grounds. First, the Company argued that indemnification for Section 16(b) liability is impermissible as a matter of public policy, citing applicable case law finding that indemnification for such liability would undercut the purpose of the statute and contravene the anti-waiver provisions of Section 29(a) of the Exchange Act. Second, the Company contended that the SPA's indemnification language does not extend to Section 16(b) claims because the alleged violations resulted from the investor's independent decisions to dispose of the Company's securities, not from their participation in the SPA.

**CVI Demand.** On April 22, 2022, Skadden, Arps, Slate, Meagher & Flom LLP, on behalf of CVI Investments, Inc. ("CVI"), made a demand for advancement on the Company's counsel pursuant to § 9(k). CVI noted that it had "been named as a defendant" in *Augenbaum* "in

connection with the securities acquired pursuant to the SPAs" and thus requested "periodic payments of amounts as and when bills are received or are incurred."

**Company Rejects CVI's Demand.** On April 26, 2022, the Company, through counsel, rejected CVI's demand on the same grounds as the Empery rejection, citing case law holding that public policy precludes indemnification of Section 16(b) liability and arguing that such a claim would fall outside of the scope of indemnification under the SPA.

**Empery Proposes To Waive Indemnity In Exchange For Advancement.** On May 24, 2022, Empery responded to the Company's rejection of its demand and argued a distinction between indemnification for disgorgement liability under Section 16(b) and advancement of interim defense costs. Empery acknowledged that indemnification for disgorged profits may implicate public policy concerns, but argued that indemnification for reasonable legal fees does not, citing an authority stating that if a Section 16(b) claim ultimately fails, indemnification of costs is clearly permissible. Further, Empery argued that the Section 16(b) claim is covered by the indemnification language in the SPA because, citing the plaintiff's allegations, it is based on an alleged group formed by purchase of the Company's securities and Empery was named as a defendant because it was among the "signatories to the Transaction Documents." Based on the above, Empery offered to waive its claim for indemnity as to any ultimate Section 16(b) liability if the Company agreed to advance defense costs pursuant to the SPA. Empery offered an undertaking to return the advanced funds in the event that it is ultimately found liable.

**CVI Reaffirms Demand For Indemnity And Advancement.** On June 2, 2022, CVI sent a short letter to the Company's counsel reaffirming its indemnification demand. Like Empery, the CVI letter drew a distinction between indemnification and advancement of interim costs, stating that "in contending that public policy or Section 29(a) prevent indemnification, the Response conflates indemnification for ultimate disgorgement under Section 16(b), and advancement/indemnification for legal fees incurred in defending against unmeritorious Section 16(b) claims." CVI did not offer to waive indemnity in exchange for advancement.

### III.    TOLLING AND STANDSTILL AGREEMENTS

**Empery Agrees To A Standstill Agreement.** On August 22, 2022, the Company and Empery entered into a Standstill Agreement pursuant to which the Company agreed to pay Empery's then-current defense costs of $407,581.93. The agreement provides, in relevant part, that the payment would be made without prejudice to the Company's arguments that it does not owe indemnification  or advancement obligations and the parties would defer further efforts to resolve the indemnification claims, including any litigation, until 20 business days following the resolution of motions to dismiss the *Augenbaum* action. The parties agreed that the statute of limitations on all claims relating to Empery's indemnification demand would be tolled during the standstill period.

**CVI Agrees To Tolling And Standstill Agreement.** On May 24, 2023, the Company and CVI entered into a similar tolling and standstill agreement. By this time, the Court had dismissed the original complaint in *Augenbaum* and the plaintiff had filed an amended complaint. The agreement provided that the statute of limitations relating to CVI's indemnification claims would be tolled until May 24, 2024. The parties agreed to defer all efforts to resolve the indemnification

claims until 10 calendar days following the decision on the motions to dismiss the amended complaint or 14 days prior to the expiration of the tolling period.

**Court Denies Motion To Dismiss Amended Complaint.** On January 24, 2024, the District Court denied defendants' motions to dismiss the *Augenbaum* case and the case proceeded to discovery.

## IV.    NEW AND RENEWED INDEMNITY DEMANDS

**Court Denies Summary Judgment.** On September 30, 2025, the District Court in the *Augenbaum* case denied defendants' motions for summary judgment. Thereafter, the Company began to receive new and/or renewed demands for indemnification pursuant to the SPA.

**Iroquois Demand.** On November 7, 2025, Clark Smith Villazor LLP, on behalf of Iroquois Capital Investment Group, LLC and Iroquois Master Fund Ltd. ("Iroquois"), sent a demand for advancement of $5.2 million of defense costs pursuant to Section 9(k)(iii) of the SPA. The demand asserts that the claim is covered by the SPA because "the [Augenbaum] allegations arise out of, relate to, and result from the execution, delivery, performance and enforcement of the SPA and related transaction documents, the transactions financed in whole or in part by the issuance of the securities under the SPA, disclosures made in connection therewith, and Iroquois' status as an investor in the Company pursuant to the transactions contemplated by the SPA."

**Company Rejects The Iroquois Demand.** On November 12, 2025, the Company rejected Iroquois's demand on grounds similar to those addressed above (*i.e.*, that indemnification of Section 16(b) liability is impermissible as a matter of public policy and the SPA language does not extend to Section 16(b) claims). The Company also questioned the reasonableness of the $5.2 million of defense costs that Iroquois claimed to have incurred solely as to its own defense.

**Molinsky Demand.** On January 9, 2026, Stinson LLP, on behalf of Richard Molinsky ("Molinsky"), made a demand on the Company for indemnity and advancement of $650,000 in interim expenses. The demand makes materially identical arguments as those above.

**Company Rejects The Molinsky Demand.** On January 14, 2026, the Company rejected Molinsky's demand on similar grounds as described above. The letter likewise questioned the reasonableness of Molinsky's purported expenses of $650,000.

**Anson Demand.** On February 6, 2026, Hogan Lovells, on behalf of Anson Investments Master Fund LP ("Anson"), made a demand on the Company and counsel, pursuant to § 9(k), for advancement of $2.8 million in defense costs between January 2022 and December 2025. Similar to the other defendants, Anson argued that the claim in *Augenbaum* is derivative and arises "from the execution, delivery, performance and enforcement of the SPA and related transaction documents, the transactions financed in whole or in part by the issuance of the securities under the SPA, disclosures made in connection therewith, and Anson's status as an investor in the Company." Anson further argued that, although it had not made a demand earlier in the litigation, the Company already had sufficient notice of its indemnity obligations.

**Brio Demand.** On February 10, 2026, Ellenoff Grossman & Schole LLP, on behalf of Brio Capital Master Fund Ltd. and Brio Select Opportunities Fund, LP ("Brio"), made a demand on the

Company and counsel for indemnity and advancement of $468,070.18 in interim defense costs based on materially the same arguments as set forth above.

**The Company Rejects The Anson And Brio Demands.** On February 10, 2026 and February 12, 2026, the Company rejected the Anson and Brio Demands, respectively, for materially the same reasons described in connection with the prior rejections above. The rejection likewise questioned the reasonableness of the expenses purportedly incurred.

**M3A Demand.** On February 12, 2026, Litman, Asche & Gioiella, LLP, on behalf of M3A LP ("M3A"), made a materially identical demand on the Company and counsel for indemnification and advancement pursuant to § 9(k). Unlike the other demands, M3A did not specify a dollar amount for incurred expenses.

## IV.    INDEMNIFICATION LITIGATION

**Iroquois Lawsuit.** On January 6, 2026, Iroquois filed a lawsuit in New York state court seeking advancement from the Company. *See Iroquois Master Fund Ltd., et al. v. Kartoon Studios, Inc.*, No. 650077/2026. The complaint asserts two causes of action against the Company: (i) a claim for declaratory judgment "declaring that [the Company] must advance and hold harmless Plaintiffs against fees and expenses for any and all actions, causes of action, suits, claims (including legal fees and expenses reasonably incurred in connection with the Augenbaum Action) incurred by Plaintiffs by virtue of Section 9(k) of the SPA"; and (ii) a breach of contract claim alleging that the Company breached its advancement obligations by "refusing to advance periodic payments to Plaintiffs for the expenses, including attorneys' fees and expenses, they have incurred and will incur in the future as a result of the *Augenbaum* Action." On February 4, 2026, the *Iroquois* action was removed to federal court. On March 13, 2026, Iroquois filed a notice of voluntary dismissal in light of the subsequently filed Empery lawsuit (discussed below). Counsel for Iroquois stated:

> Plaintiffs are dismissing this action in the interest of judicial economy. As reflected in the attached correspondence between counsel, the parties recently discussed a related advancement action in New York state supreme court involving virtually identical issues of law and fact, *Empery Asset Master, Ltd., et al. v. Kartoon Studios, Inc.*, arising from the same securities purchase agreement at issue in this case. *See* Ex. A. The related action in state court is not removable to federal court due to a lack of complete diversity, and the overlapping issues therefore will necessarily be litigated in state court. If this action were to continue to proceed in parallel, it would result in unnecessary duplication of proceedings. Thus, Plaintiffs have determined that dismissal of this action without prejudice will best conserve the resources of the Court and the parties.

**Empery Lawsuit.** On February 12, 2026, Empery filed a materially identical action in New York state court. *See Empery Asset Master, Ltd., et al. v. Kartoon Studios, Inc.*, No. 650906/2026. The complaint alleges that Empery has incurred expenses in excess of $3.5 million.

Pursuant to a stipulation between the parties, the Company has until April 20, 2026 to answer or otherwise respond to the complaint.

*          *          *

As of the date of this memo, the aggregate amount demanded by defendants for advancement is approximately $12.6 million, but this amount is understated because additional expenses have likely been incurred since the original demands and not all defendants have disclosed the amount of expenses incurred.