# EXHIBIT 10

# KARTOON STUDIOS, INC.
(a Nevada corporation)
(the "Company")

## MINUTES OF A SPECIAL MEETING
## OF THE COMPANY'S BOARD OF DIRECTORS

**DATE:**    April 20, 2026
**TIME:**    5:00 p.m. PT
**PLACE:**   Conference Call

### DIRECTORS PRESENT:

Andy Heyward, Chairman
Joseph "Gray" Davis
Jeffrey Schlesinger
Cynthia Turner-Graham, MD
Anthony D. Thomopoulos

### OTHERS PRESENT:

Michael Jaffa, Chief Operating Officer
Brian Parisi, Chief Financial Officer
Jeffrey Goldfine, Kirkland & Ellis LLP
Aaron Morris, Morris Kandinov LLP

### CALL TO ORDER

A meeting of the Company's Board of Directors (the "Board") was held at the date, time and place set forth above. After confirming that all could hear and be heard, Mr. Heyward called the meeting to order and announced that a quorum of the Board was present and that the meeting, having been duly noticed and convened, was ready to proceed with its business.

### SECTION 16(b) LITIGATION AND RELATED MATTERS

Mr. Jaffa was asked to provide an update to the Board as to *Augenbaum v. Anson Investments Master Fund LP, et al.*, Case No. 1:22-cv-00249 (S.D.N.Y.), the work of the Litigation Committee (the "Committee") since its formation in January 2026, and the potential settlement with certain of the parties in *Augenbaum*. Mr. Jaffa stated that counsel for the Committee had negotiated a global resolution at $50 million with six of the eight defendants participating *pro rata*, reflecting a gross cash settlement payment of $36.5 million.

Mr. Jaffa reminded the Board that the *Augenbaum* matter asserts claims under Section 16(b) of the Securities Exchange Act of 1934 against certain of the Company's institutional investors (the "Defendants") who are alleged to have acquired and disposed of certain of the Company's securities in 2020 in violation of the statute. The Section 16(b) claim is derivative in nature, meaning that the claim belongs to the Company and any recovery would be payable exclusively to the Company. The parties are currently preparing for a trial. Mr. Jaffa also provided an overview of the indemnity claims previously discussed with the Board and an update as to the two pending indemnity litigations. Mr. Jaffa stated that the purpose of the meeting was to consider the findings and observations of the Litigation Committee, consisting of Mr. Schlesinger and Mr. Thomopoulos, and the potential value of the settlement to the Company.

Mr. Morris was then asked to provide an overview of the Committee's work. Mr. Morris stated that his firm had been engaged by the Company as special counsel to support the work of the Committee. The Committee had considered and approved the engagement in advance. Mr. Morris reminded the Board that Section 16(b) prohibits an owner of 10% or more of an issuer's outstanding stock, including a group of investors that holds in the aggregate 10% or more of a company's stock, from profiting from purchases and sales within a 6-month period. The *Augenbaum* matter arises from a March 2020 securities offering by the Company that raised capital from Defendants, which subsequently sold offering shares with the Company's consent in exchange for early payment to the Company of the investor notes. In January 2022, Todd Augenbaum, a stockholder, filed suit under Section 16(b) alleging that the Defendants are liable for short-swing trading. Although no Defendant owned more than 10% of the Company's stock, Mr. Augenbaum alleged that they acted as a group and thus their holdings should be considered in the aggregate, rendering them liable under Section 16(b). The Company initially rejected Mr. Augenbaum's demand to bring litigation because, among other reasons, the Company had no reason to believe that Defendants had improperly coordinated or otherwise acted as a group under the securities laws. However, in January 2024 the Court denied the Defendants' motion to dismiss and the case proceeded to discovery. In September 2025, the Court denied the Defendants' summary judgment motions on the basis that Mr. Augenbaum had set forth sufficient evidence of the formation of a group to justify proceeding to trial.

Mr. Morris stated that the Committee's evaluation consisted of three primary categories: (1) understanding the merits of the claims in *Augenbaum* and the parties' respective positions; (2) maximizing the immediate-term value of the claims in response to the Company's current cash needs; and (3) minimizing the Company's exposure to indemnity and advancement claims.

As part of the Committee's evaluation process, the Committee met five times and received voluminous materials relating to the case, including three legal memoranda regarding (i) the claims made in *Augenbaum* and liability exposure of each Defendant; (ii) the pending indemnity and advancement claims by the Defendants against the Company; and (iii) the evidentiary record of the case and the arguments and evidence likely to feature at trial. The Committee also received

summaries of the deposition testimony in the case and the court papers, including the parties' briefing from summary judgment and evidentiary exhibits. Through counsel, the Committee also solicited direct input from the parties in the case, including from counsel for Mr. Augenbaum, Jeffrey Abraham. As to the indemnity and advancement claims, Mr. Morris stated that, while the Company has always disputed liability, the Committee had determined that total advancement claims could reach or exceed $30 million if the case proceeds through trial. Although there are strong arguments that the Company is not liable for indemnity and advancement, two litigations had already been filed and others are likely to follow, suggesting substantial defense costs.

Mr. Morris stated that following the Committee's initial analysis, and partially in response to initial engagement with the Defendants, the Committee had determined to retain Jay Lefkowitz and Jeffrey Goldfine of Kirkland & Ellis to handle settlement negotiations and obtain the highest settlement amount achievable under the circumstances. In response to a question from Governor Davis, a discussion ensued about the reasons the Committee selected Kirkland & Ellis to handle negotiations, which included Mr. Lefkowitz's extensive experience in handling commercially important securities matters. The Committee authorized Mr. Lefkowitz to attempt to negotiate the highest settlement possible under the circumstances, and Mr. Lefkowitz had negotiated extensively with counsel for the parties and the mediator in the case, David Murphy, resulting in the proposed settlement valuing the claims in the matter at $50 million with partial participation by the Defendants, resulting in gross proceeds of $36.5 million to the Company, or between 11% and 15% of total exposure depending on which damages model is utilized.

Mr. Jaffa then asked Mr. Schlesinger and Mr. Thomopoulos to present the Committee's findings and observations. Mr. Thomopoulos stated, as an initial matter, that Kirkland and Morris Kandinov had worked diligently throughout the process and had answered all questions and provided all materials requested by the Committee. Mr. Thomopoulos stated that the negotiations by Kirkland increased the settlement number significantly throughout the process, and the Committee believes the result of a $36.5 million settlement for the Company is a tremendous result in light of the substantial risks of trial and the Company's financial position and need for near-term financing. Mr. Thomopoulos noted the advantages of a guaranteed settlement now given that a judgment at trial likely would be appealed and the Company would bear continued litigation risk, and the settlement would clear the pending litigation and claims regarding indemnity and advancement. Mr. Heyward noted that all funds received through a settlement of the *Augenbaum* matter would be a non-dilutive source of capital, which would benefit all stockholders. A discussion ensued regarding the merits and terms of the potential settlement.

Following the discussion, Mr. Schlesinger reiterated the Committee's goal of understanding the risks and upside of the claims, risks of the indemnity and advancement claims, and the possibility of creating significant capital in the short term for the Company in lieu of dilutive financing. Mr. Schlesinger noted that the Plaintiff had been diligent in pursuing the action to date, but proving the existence of a group would be extremely difficult at trial on the current

record, the evidence of coordination is limited, and Plaintiff's counsel had been unreasonable with respect to his view of the settlement value of the claims. Mr. Schlesinger noted that he had spoken with counsel for Plaintiff and understood that the counsel believed the settlement was too low because of his confidence that he will prevail at trial. Mr. Schlesinger stated that the Committee ultimately determined that the settlement provides tremendous value to the Company in the near-term that would guarantee substantial payment on the claims, avoid the risks of trial and further defense costs and exposure as to the indemnity and advancement claims, and provide capital to the Company in the immediate term, including through a bridge loan component that would provide $5 million up front.

A discussion then ensued between the members of the Board, Mr. Jaffa and Mr. Parisi as to the foregoing topics and related business factors relevant to the Company, including the Company's current financial position, need for capital, the timing of the settlement payment, the likelihood of obtaining a greater settlement amount for some or all Defendants, the risks at trial, and the timing of receipt of any judgment obtained at trial. In response to questions from Governor Davis, Mr. Jaffa discussed the potential net amount payable to the Company under the settlement after attorneys' fees as well as the expected timeline of payment under the terms of the settlement.

Discussion then turned to next steps and the Committee's discussions with Plaintiff's counsel. Mr. Morris noted that counsel for Plaintiff indicated on his call with Mr. Schlesinger that he believes he could negotiate a higher amount. He also made clear that he will not support a settlement in the range of $50 million. A discussion ensued regarding the possibility of approving the current settlement but permitting counsel for Plaintiff additional time to conduct negotiations in an effort to increase the current amount payable to the Company.

After a fulsome discussion of the topics above, the Board unanimously agreed to the following resolutions:

\* \* \*

**WHEREAS**, the Company is the nominal defendant and the real party in interest in the pending litigation captioned *Augenbaum v. Anson Investments Master Fund LP, et al.*, Case No. 1:22-cv-00249 (S.D.N.Y.) (the "Section 16(b) Litigation"), which asserts claims under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), against certain institutional investors seeking disgorgement of alleged short-swing profits, with any recovery payable to the Company;

**WHEREAS**, through its Litigation Committee, the Board conducted an independent and robust evaluation of the potential value of the Company's claim in the Section 16(b) Litigation, risks and benefits of continued prosecution, potential exposure to indemnity and advancement claims by Defendants, and current financial condition and the Company's need for capital;

*WHEREAS*, the members of the Litigation Committee have proposed approval of a global resolution with the Defendants of $50 million with six of the eight defendants participating *pro rata*, reflecting a gross cash settlement payment of $36.5 million (the "Proposed Settlement");

*WHEREAS*, for all of the reasons discussed herein, and based on the observations and findings of the Litigation Committee, after weighing all relevant factors and exercising their independent business judgment, the Board has determined that it is advisable and in the best interests of the Company and its stockholders to approve the Proposed Settlement;

**NOW, THEREFORE, BE IT RESOLVED**, that the Board approves the Proposed Settlement as in the best interests of the Company and its stockholders;

**RESOLVED FURTHER**, that the Board's approval of the Proposed Settlement will not be immediately disclosed to the Defendants so as to permit an opportunity for Plaintiff's counsel to attempt to further negotiate an improvement to the terms;

**RESOLVED FURTHER**, that Kirkland & Ellis will advise counsel for Plaintiff of the Board's approval of the Proposed Settlement and invite counsel to make a counter to Defendants or otherwise negotiate a higher amount; and

**RESOLVED FURTHER**, that each officer of the Company is hereby authorized and empowered, for and on behalf of the Company, to take or cause to be taken any and all such actions and to enter into, execute and deliver any and all such acknowledgments, agreements, certificates, contracts, instruments, notices, statements and other documents as may be required or as any such officer may deem necessary, advisable or appropriate to effectuate and carry out the purposes and intent of the foregoing resolutions; and

**RESOLVED FURTHER**, that all actions heretofore taken by any officer or director of the Company in connection with the matters contemplated by the foregoing resolutions, if any, are hereby ratified, confirmed, approved and adopted as actions on behalf of the Company.

\* \* \*

Upon motion duly made and seconded, the foregoing resolutions were unanimously approved and adopted by the Board.

**ADJOURNMENT**

There being no further business to come before the Board, the meeting was adjourned.

Michael Jaffa
Secretary