**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TODD AUGENBAUM,

                Plaintiff,

     v.

ANSON INVESTMENTS MASTER FUND LP;
BRIO CAPITAL MASTER FUND LTD.; BRIO
SELECT OPPORTUNITIES FUND, LP; CVI
INVESTMENTS, INC.; EMPERY ASSET
MASTER, LTD.; EMPERY DEBT
OPPORTUNITY FUND, LP; EMPERY TAX
EFFICIENT, LP; EMPERY ASSET
MANAGEMENT, LP; IROQUOIS MASTER
FUND LTD.; IROQUOIS CAPITAL
INVESTMENT GROUP, LLC; L1 CAPITAL
GLOBAL OPPORTUNITIES MASTER FUND;
M3A LP; RICHARD MOLINSKY,

                Defendants,

    -and-

KARTOON STUDIOS, INC.,

                Nominal Defendant.

Civil Action No. 1:22-cv-00249-AS

## DECLARATION OF CHRISTOPHER J. CLARK IN SUPPORT OF SETTLING DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO KARTOON'S MOTION FOR JUDGMENT

I, Christopher J. Clark, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.     I am a partner at Clark Smith Villazor LLP ("CSV") and counsel of record for Defendants Iroquois Master Fund Ltd. and Iroquois Capital Investment Group, LLC (together, "Iroquois") in the above-captioned action.

2.      I submit this declaration in support of the Settling Defendants' Reply in further Support of Kartoon Studios Inc.'s (the "Company") Motion for Judgment (Dkt. 358, the "Motion") and in Response to Plaintiff's Opposition thereto (Dkt. 387, the "Opposition").

3.      I have personal knowledge of the matters set forth herein based on my direct involvement in settlement negotiations and proceedings in this action.

4.      On or about November 5, 2025, I participated in a meeting with Plaintiff's counsel Jeffrey Abraham and Michael Klein of Abraham, Fruchter & Twersky, LLP, at which Iroquois' prior settlement suggestion of between $1-3 million was briefly discussed.  After I questioned aspects of Plaintiff's proposed damages calculations in this matter, and within five minutes of the beginning of that meeting, Plaintiff's counsel called the meeting to an end and began walking out of the conference room.  As counsel walked out, I made clear that to the extent that Iroquois had conveyed any suggestion of settlement to that date, Iroquois revoked any such suggestion and would wait to hear back from Plaintiff's counsel.

5.      From November 5, 2025, until the Court conference in this matter on May 13, 2026, I never once heard from counsel for the Plaintiff about the potential resolution of this matter in any way shape or form, either through Mr. Murphy, the mediator, or otherwise.

6.      On January 6, 2026, Iroquois filed a complaint seeking from the Company certain fees and costs which the Company had agreed to advance.  That action is captioned *Iroquois Master Fund Ltd. and Iroquois Capital Investment Group v. Kartoon Studios, Inc.*, 650077/2026 (N.Y. Sup. Ct.).  To be clear, Iroquois' claim does not seek indemnification for any disgorgement under Section 16, but rather seeks advancement and indemnification of Iroquois' legal fees connected with this matter, as the Company had promised in Section 9(k) of the March 11, 2020 Securities Purchase Agreement (the "SPA").  Section 9(k)(i) provides that "in consideration of

2

each Buyer's execution and delivery of the Transaction Documents and acquiring the Securities,"
Defendant shall:

> defend, protect, indemnify and hold harmless each Buyer and each other holder of the Securities and all of their stockholders, partners, members, officers, directors, employees and direct or indirect investors and any of the foregoing Persons' agents or other representatives … from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages, and expenses in connection therewith … and including reasonable attorneys' fees and disbursements (the 'Indemnified Liabilities'), incurred by any Indemnitee as a result of, or arising out of, or relating to…(c) any cause of action, suit or claim brought or made against such Indemnitee by a third party (including for these purposes a derivative action brought on behalf of the Company) and arising out of or resulting from: i. the execution, delivery, performance or enforcement of the [Transaction Documents]; ii. any transaction financed or to be financed in whole or in part, directly or indirectly, with the proceeds of the issuance of the Securities; iii. any disclosure made by such Buyer pursuant to Section 4(i) [of the SPA, or]  iv. the status of such Buyer or holder of the Securities as an investor in the Company pursuant to the transactions contemplated by the Transaction Documents."

In turn, Section 9(k)(iii) of the SPA mandates advancement: "The indemnification required by this Section 9(k) shall be made by periodic payments of the amount thereof during the course of the investigation or defense, as and when bills are received or Indemnified Liabilities are incurred."

7.    Iroquois' claim for advancement has clear merit.  Iroquois' claim is based not just on Section 9(k) of the SPA, but on the fact that the Company had previously advanced fees to certain Defendants in this matter, thereby conceding the merits of the claim for advancement.  In addition, these payments constitute a course of performance under the SPA.  I have reviewed Mr. Abraham's declaration and exhibits thereto, and I am unable to reconcile Mr. Abraham's statements that the claims are "frivolous" (*see* Abraham. Decl. Ex. 15) with the provisions of the SPA and with my understanding that the Company has advanced fees to certain Defendants in this matter.

8.    On May 22, 2026, Iroquois sent a renewed indemnification demand to the Company, which included the current amount of unpaid expenses incurred in connection with the defense of this action: $7,780,603.35.  I have every expectation that if we do not agree to a settlement, we will obtain this amount in a judgment.  I am aware that the other Settling Defendants have incurred many millions of dollars in legal fees. A true and correct copy of Iroquois' May 22, 2026 renewed indemnification demand is attached hereto as Exhibit 1.

9.    Sometime in February 2026, it came to my attention that the Company had formed a Litigation Committee.  Following the formation of the Litigation Committee on January 30, 2026, I learned that the Company intended to engage Kirkland & Ellis LLP ("Kirkland") to negotiate with Defendants regarding a potential settlement.

10.    On March 13, 2026, Jay Lefkowitz of Kirkland emailed me to discuss the Litigation Committee and whether or not Iroquois (as well as the other Defendants) might be interested in engaging in settlement discussions with the Committee.  I told Mr. Lefkowitz that I had received no information from Plaintiff since our November 2025 meeting, that I believed the Company had significant exposure on the advancement claims, and that I would be happy to provide the Litigation Committee with any information that could be helpful.

11.    I believe I participated in all meetings and discussions between counsel for the Settling Defendants and the Litigation Committee.  The Company solely involved counsel from Kirkland.  Although I was informed that the Company had also retained Morris Kandinov, I had no contact with the Morris Kandinov firm regarding the litigation or settlement prior to the instant motion.

12.    Between March 13, 2026, and the signing of the Settlement Agreement, I spoke with Mr. Lefkowitz on numerous occasions about the work of the Litigation Committee.

4

13.     In mid-April, Mr. Lefkowitz informed me that the Committee would consider a term sheet composed by the Settling Defendants, provided it met certain economic and legal thresholds.  On April 14, I provided such a term sheet.

14.     On May 5, 2026, the Settling Defendants and the Company executed the Settlement Agreement, based, to some degree, on the term sheet I provided.

15.     On May 14, 2026, in response to the Court's instruction at the May 13, 2026 hearing, Plaintiff submitted demands to Defendants.  Iroquois' individual amount was $22 million. The aggregate amount for all Settling Defendants was over $290 million.

16.     On May 15, 2026, the Settling Defendants countered by raising their offer to $45 million contingent on Plaintiff's release of the Settling Defendants on conditions substantially similar to the conditions with the Company. My understanding of the justification for the increase in cash was, as the Court suggested, the Settling Defendants' willingness to pay a premium to avoid the costs and delay of an appeal.  A true and correct copy of my May 15, 2026 letter to David Murphy acknowledging Plaintiff's aggregate demand of over $290 million and raising the Settling Defendants' offer to $45 million contingent on Plaintiff accepting the response is attached hereto as Exhibit 2.

17.     On May 17, 2026, Plaintiff's counsel emailed Mr. Murphy purportedly responding to the Settling Defendants' counteroffer, declining to counter, and stating that he "believes the settlement process will, unfortunately, not prove productive."  A true and correct copy of an email chain among Mr. Murphy, Plaintiff's counsel, and Iroquois counsel dated May 16-18, 2026 is attached here to as Exhibit 3.

18.     On May 18, 2026, my partner Benjamin Dozier wrote to Mr. Murphy to inform him that the settling Defendants would keep their $45 million contingent cash offer open through the hearing on the motion for judgment.  *See* Exhibit 3.

19.     During the course of the above-captioned litigation, Plaintiff Todd Augenbaum produced what purports to be evidence of ownership of Company stock.  A true and correct copy of Augenbam0001, which Plaintiff produced in the above-caption litigation, is attached as Exhibit 4.

Executed:  May 25, 2026

/s/ *Christopher J. Clark*_____
Christopher J. Clark