UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD AUGENBAUM,<br><br>                    Plaintiff,<br><br>          -against-<br><br>ANSON INVESTMENTS MASTER FUND LP; BRIO CAPITAL MASTER FUND LTD.; BRIO SELECT OPPORTUNITIES FUND, LP; CVI INVESTMENTS, INC.; EMPERY ASSET MASTER, LTD.; EMPERY DEBT OPPORTUNITY FUND, LP; EMPERY TAX EFFICIENT, LP; EMPERY ASSET MANAGEMENT, LP; IROQUOIS MASTER FUND LTD.; IROQUOIS CAPITAL INVESTMENT GROUP, LLC; L1 CAPITAL GLOBAL OPPORTUNITIES MASTER FUND; M3A LP; and RICHARD MOLINSKY,<br><br>                    Defendants.<br>          -and-<br>KARTOON STUDIOS, INC.<br><br>               Nominal Defendant. | 22-cv-249 (AS)<br><br>ORDER |

ARUN SUBRAMANIAN, United States District Judge:

On May 6, 2026, Kartoon Studios (the "company") filed a motion for entry of judgment, asking this Court to approve a private settlement between it and seven of the defendants in this case (the "Settling Defendants"). That settlement purports to release all of Todd Augenbaum's claims against those defendants. Because Section 16(b) of the Securities Exchange Act of 1934 does not authorize a security issuer to release a security holder's claims under these factual circumstances, the company's motion is DENIED.

The statute provides that suits to recover short-swing profits "may be instituted . . . by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter." 15 U.S.C. § 78p(b). In other words, the statute gives a security owner a primary—not derivative—right to pursue claims if a company fails to act on a demand within sixty days. *See* Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide* § 9.02[8][b] (6th ed. 2024) ("It is clear that a security holder of an issuer has an express unfettered right, rather than a derivative right, to sue under Section 16(b) if the issuer rejects the security

1

holder's demand that it recover short-swing profits."); *id.* § 9.03[1][a][ii] ("Section 16(b) expressly creates a primary right, not a derivative or secondary right . . . ."); Arnold S. Jacobs, 5A *Disclosure & Remedies Under the Sec. Laws* § 4:182 (Dec. 2025 Update) ("[A] Section 16(b) cause of action is a statutorily created right, not a derivative or secondary right."); *see also, e.g.*, *Chechele v. Elsztain*, 2012 WL 12358221, at *2 (S.D.N.Y. Aug. 1, 2012) ( "[T]he instant Section 16(b) action is not a derivative action."); *Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC*, 286 F. Supp. 2d 279, 281 (S.D.N.Y. 2003) ("[A] § 16(b) cause of action is a statutory enabling right directly empowering the shareholder to sue; it is not a derivative or secondary right grounded on rights and interests possessed primarily by the corporation and emanating from common law."); *Blau v. Oppenheim*, 250 F. Supp. 881, 885 (S.D.N.Y. 1966) (same).

That makes sense given the statutory purpose of Section 16(b). *DiLorenzo v. Murphy*, 443 F.3d 224, 228 (2d Cir. 2006) ("The judicial tendency, especially in this circuit, has been to interpret Section 16(b) in ways that are most consistent with its legislative purpose." (cleaned up and quotation omitted)). That purpose is to protect the public from insider trading. *See, e.g.*, *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 180 (2d Cir. 2012) ("Congress enacted § 16(b) to serve a general interest in safeguarding the integrity of the stock market against insider trading."); *Silverman v. Re*, 194 F. Supp. 540, 542 (S.D.N.Y. 1961) ("[T]he Act was primarily intended as an instrument of a statutory policy of which the general public is the ultimate beneficiary."). And it explains why, unlike traditional common-law derivative actions, Section 16(b) "authorizes shareholder suits to recover insider 'short swing' profits on behalf of the company notwithstanding the decision of the board of directors not to sue." *Burks v. Lasker*, 441 U.S. 471, 484 n.13 (1979); *see also, e.g.,* Jacobs, 5A *Disclosure & Remedies Under the Sec. Laws* § 4:182 (noting that while a board of directors' business judgment is relevant in a derivative action, "the express language of Section 16(b) renders this general rule inapplicable to Section 16(b) suits"); Romeo & Dye, *Section 16 Treatise & Reporting Guide*, § 9.03[1][a][ii] ("[U]nlike derivative actions, an action under Section 16(b) by a security holder may proceed even if the issuer's board does not favor it.").

While it arose in a different context, the Second Circuit's decision in *Magida v. Continental Can Company* reinforces these principles. There, the defendant brought an estoppel defense to a shareholder's Section 16(b) claim based on the company's approval of the purchase-and-sale transaction at issue. 231 F.2d 843, 846–47 (2d Cir. 1956). The court rejected that defense, observing that:

> Since the policy of the statute is to protect minority stockholders and the public against manipulated market fluctuations, certainly this stockholder, who became such after the acts in question had taken place, *cannot be estopped by corporate acts, even those having the apparent approval of a majority of stockholders*.

*Id.* (emphasis added).

So, under the statute, the issuer is given a right of first refusal to bring the action to vindicate the statutory purpose and its own financial interests. But if it sits on its rights or otherwise fails to

2

diligently prosecute the action, then a plaintiff-shareholder may step in to do so. In that situation, the primary right to prosecute the case is vested in the plaintiff-shareholder, who assumes the responsibility to protect minority shareholders and the public.

Here, no one seems to dispute that Augenbaum properly initiated this action after the company failed to act on his demand to sue. But the company asserts that it may enter into a settlement that would release Augenbaum's claims against the Settling Defendants. Dkt. 360-1 at 13, Section 4.1 ("[A]ny stockholder of Kartoon . . . shall fully and forever release . . . any and all claims . . . in the [federal and state court actions].").

The company identifies nothing in the statute that expressly allows this. But it highlights that a security holder may sue "in the name and in behalf of the issuer," 15 U.S.C. § 78p(b), and that "any recovery will inure only to the issuer's benefit," *Gollust v. Mendell*, 501 U.S. 115, 127 (1991). True enough. That doesn't change the fact that, to serve its primary purpose, the statute gives a security holder a primary right to prosecute an action after the issuer chooses not to. *See id.* at 124–25 ("Congress clearly intended to put a private-profit motive behind the uncovering of this kind of leakage of information, by making the stockholders its policemen." (cleaned up)). "If, subsequent to commencement of suit, a corporation's board of directors can determine with finality that prosecution of insiders will not be in the best interests of the company, and thereby foreclose stockholder action, the opportunity for evasion of the statutory policy is obvious." *Pellegrino v. Nesbit*, 203 F.2d 463, 467 (9th Cir. 1953).

The Court is also unconvinced by the cases the company marshals in support of its view. Asked whether "there [is] any case under Section 16(b) where an issuer has been permitted to settle the case after a security holder properly initiated the suit under the statute," the company's counsel replied that they were "not aware of a case specifically." May 13, 2026 Hearing Tr. at 13:19–23. They then argued that under *Wolf v. Barkes*, 348 F.2d 994 (2d Cir. 1965), settlement is "something that the issuer would have a right to do because the claim is a derivative claim." *Id.* at 13:25–14:2. But *Wolf* didn't deal with Section 16(b) at all. Instead, *Wolf* involved a more traditional derivative action under Section 14(a), which lacks an express right of action for shareholders and, as at least some courts have held, is subject to the business judgment rule. *See J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) (observing that despite the lack of an express right of action for shareholders under Section 14(a), a derivative action should be implied); *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, 2006 WL 2849783, at *1, 7 (S.D.N.Y. Oct. 4, 2006) ("Section 14(a) claims" alleging "materially misleading proxy statements" are "indisputably derivative in nature and thus are subject to the . . . business judgment rule."). As discussed above, while Section 16(b) shareholder actions bear some similarities to conventional derivative actions, they are not, in fact, derivative.

After the hearing, the company raised *Gibbons v. Morgan*, 2017 WL 3917041 (S.D.N.Y. Sept. 6, 2017), which did dismiss a Section 16(b) case after a parallel settlement had been reached that covered any "derivative" claims. But that case muddles the key point. In *Gibbons*, the court largely evaluated the case under Delaware law—not federal securities law—and then held that the Section 16(b) claim was derivative and thus foreclosed by the separate settlement. To rebut one case

3

holding that derivative and Section 16(b) claims are different, the court emphasized only that the statute says that the claims are brought in the name of the issuer, and the profits are recoverable by the issuer. But the court didn't grapple with what makes Section 16(b) suits distinct: that the statute explicitly grants a right to sue to the stockholder, that this was a *new* cause of action that didn't exist at common law, that the business judgment rule doesn't apply, or the explicit statutory purpose in favor of the public attached to Section 16(b). Indeed, the Jacobs treatise makes a point of contrasting *Gibbons* from the "thoughtful" cases recognizing the distinctions between derivative actions and Section 16(b) suits. Jacobs, 5A *Disclosure & Remedies Under the Sec. Laws* § 4:182. So the Court declines to follow *Gibbons*.

Otherwise, the company points to cases that don't involve the facts presented here. A prime example is *Revive Investing LLC v. FBC Holdings S.A.R.L.*, 2021 WL 734976 (S.D.N.Y. Feb. 25, 2021). In that case, the district court, adopting a magistrate judge's report and recommendation, approved a settlement involving two shareholders, the issuer, and the defendant in a Section 16(b) case, over the objection of the plaintiff, another shareholder. But there, the non-settling plaintiff hadn't invoked its right to sue, instead waiting over a year after the settlement was reached to file suit. *Id*. at *1–2. *Revive* says nothing about the issuer's right to settle a case *after* a plaintiff-shareholder has sued (in this case, four years after the case was filed and just weeks before trial).

The company also relies on *Silverman v. Re*, 194 F. Supp. at 542. There, the court permitted the corporation to join the lawsuit where it believed the plaintiff was not vigorously prosecuting the action. *Id*. It reasoned that prohibiting the corporation from joining the suit would "disregard[] the remedial purposes of the Act," which is to benefit the general public. *Id.* In other words, consistent with the pro-enforcement purpose of Section 16(b), sometimes the corporation can join the suit when the plaintiff fails to prosecute. Unlike in *Silverman*, here the company hasn't asserted that Augenbaum has failed to vigorously prosecute this action, and likely for that reason, hasn't tried to intervene. Similarly, in *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215 (2d Cir. 2018), the court allowed a company to step into the case under Federal Rule of Civil Procedure 17 to prevent its dismissal, after the plaintiff-shareholder lost her financial stake in the action. *Id.* at 226–28.

*Klein* did say that a contrary holding would "contravene the purpose of shareholder derivative suits." *Id*. at 227. *But see id*. at 229 (Lohier, J., dissenting) (rejecting the "analogy between . . . a Section 16(b) action" and "shareholder derivative suits" for standing purposes, in part because "'[t]he standing requirements for shareholder derivative suits are not applicable to a § 16(b) plaintiff'" (quoting *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 728 (2d Cir. 1990)). However, that nomenclature isn't surprising, given that "a Section 16(b) case and a derivative action have much in common." Jacobs, 5A *Disclosure & Remedies Under the Sec. Laws* § 4:182. Nevertheless, as explained above, they "are distinguishable in a number of ways," *id*., including those directly relevant here, such as the express statutory right granted to shareholders, the inapplicability of the business judgment rule, and the legislative policy to benefit the general public. The mere invocation of derivative-suit language in cases like *Klein* doesn't give the company the right to shut down this case in the way it envisions, the opposite of the outcome *Klein*

4

effectuated by keeping the case going. Augenbaum remains a shareholder and is continuing to prosecute this case.

To be clear, the Court is not deciding issues that are not presented here. It is not deciding whether the company would be permitted to intervene to prosecute this suit if Augenbaum fails to do so diligently, or whether the company could enter into a settlement that leaves Augenbaum's claims intact. Similarly, the Court doesn't decide whether a company may settle a claim before a security holder properly files suit; or after an action is assigned back to a company; or whether and what type of Court review would apply to a valid settlement. At issue here is whether the Court, under these factual circumstances, will approve a private settlement that doesn't include the lone plaintiff and which purports to release his claims. The answer is no.

And zooming out, the opposite conclusion would lead to a host of dicey legal questions. Here are just a few: Does the Court have authority to approve or disapprove the company's settlement with the Settling Defendants? If so, what is the legal authority for that and what standards apply? While the parties have suggestions, drawing from standards applicable to class actions and the like, they haven't pointed to any statute or rule of procedure that would clearly apply under the circumstances. Would notice to shareholders be warranted? No formal notice has been provided in this case, which is heading to trial in two weeks. *See* Fed. R. Civ. P. 23.1(c) (noting that for traditional derivative-action settlements, "[n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders"). And what about the arguments made by Augenbaum? There is no suggestion that he hasn't prosecuted this case diligently. And he and his counsel have invested significant time and resources into this case over the past four years. Augenbaum argues that the company's settlement undervalues this case and was negotiated under circumstances that, at least from his perspective, suggest it wasn't an arm's length deal. Can the Court consider those arguments, and what weight should they be given? These difficult questions underscore why permitting an issuer to settle a case under these circumstances is not permitted.

For the reasons stated above, the company's motion for entry of judgment is DENIED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 358.

SO ORDERED.

Dated: May 27, 2026
      New York, New York

ARUN SUBRAMANIAN
United States District Judge