## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TODD AUGENBAUM, *derivatively on behalf of Kartoon Studios, Inc.*,<br><br>    Plaintiff,<br><br>    v.<br><br>ANSON INVESTMENTS MASTER FUND LP; BRIO CAPITAL MASTER FUND LTD.; BRIO SELECT OPPORTUNITIES FUND, LP; CVI INVESTMENTS, INC.; EMPERY ASSET MASTER, LTD.; EMPERY DEBT OPPORTUNITY FUND, LP; EMPERY TAX EFFICIENT, LP; EMPERY ASSET MANAGEMENT, LP; IROQUOIS MASTER FUND LTD.; IROQUOIS CAPITAL INVESTMENT GROUP, LLC; L1 CAPITAL GLOBAL OPPORTUNITIES MASTER FUND; M3A LP; and RICHARD MOLINSKY,<br><br>    Defendants,<br><br>-and-<br><br>KARTOON STUDIOS, INC.,<br><br>    Nominal Defendant. | Civil Action No. 1:22-cv-00249-AS<br><br>**CONFIDENTIAL**<br><br>**FILED UNDER SEAL** |

### KARTOON STUDIOS, INC.'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION FOR ENTRY OF JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND .....................................................................................................3

      A.     This Litigation ...............................................................................................3

      B.     Defendants' Indemnity and Advancement Claims..................................................3

      C.     The Company's Financial Condition....................................................................4

      D.     The Company's Evaluation Of The
Potential Value Of The Claims In This Action .........................................................4

      E.     The Settlement Terms.........................................................................................8

ARGUMENT .........................................................................................................................10

I.     JUDGMENT SHOULD BE ENTERED
AGAINST THE SETTLING DEFENDANTS ..................................................................10

      A.     The Section 16(b) Claim Belongs Exclusively To The Company .........................10

      B.     The Board Properly Exercised Its Authority To Negotiate
A Value-Maximizing Settlement With The Settling Defendants.........................12

      C.     The Company-Negotiated Settlement
Does Not Require Court Approval ......................................................................14

II.    THIS ACTION SHOULD BE STAYED
AS TO THE SETTLING DEFENDANTS.........................................................................16

CONCLUSION ......................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*AEC One Stop Grp., Inc. v. Bain Cap. Fund IV L.P.*,
  9 F. App'x 53 (2d Cir. 2001) ................................................................................ 13

*In re Amerco Derivative Litig.*,
  127 Nev. 196 (2011) ............................................................................................ 12

*Analytical Survs., Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012) .................................................................................. 10

*Auerbach v. Bennett*,
  47 N.Y.2d 619 (1979) ..................................................................................... 11, 12

*Avalon Holdings Corp. v. Gentile*,
  597 F. Supp. 3d 640 (S.D.N.Y. 2022) .................................................................. 10

*Craftsman Fin. & Mortg. Co. v. Brown*,
  64 F. Supp. 168 (S.D.N.Y. 1945) ..................................................................... 2, 14

*Donoghue v. Bulldog Invs. Gen. P'ship*,
  696 F.3d 170 (2d Cir. 2012) .......................................................................... 10, 11

*Gibbons v. Morgan*,
  2017 WL 3917041 (S.D.N.Y. Sept. 6, 2017) ....................................................... 10

*Gollust v. Mendell*,
  501 U.S. 115 (1991) ............................................................................................. 10

*Jones v. Nuclear Pharmacy, Inc.*,
  741 F.2d 322 (10th Cir. 1984) ............................................................................. 12

*Kahn v. Kaskel*,
  367 F. Supp. 784 (S.D.N.Y. 1973) ...................................................................... 15

*Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*,
  906 F.3d 215 (2d Cir. 2018) ................................................................................ 10

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ............................................................................................. 16

*Los Angeles City Employees' Ret. Sys. v. Sanford*,
  2026 WL 125986 (Del. Ch. Jan. 16, 2026) ..................................................... 11, 12

*Milliken v. Am. Realty Cap. Hosp. Advisors, LLC*,
  2018 WL 3745669 (S.D.N.Y. Aug. 7, 2018) ........................................................................ 16

*In re Oracle Corp. Derivative Litig.*,
  808 A.2d 1206 (Del. Ch. 2002) ........................................................................................... 11

*Philip Morris Inc. v. Heinrich*,
  1997 WL 781907 (S.D.N.Y. Dec. 18, 1997) ........................................................................ 16

*Prince v. Am. Airlines*,
  2011 WL 2534965 (S.D.N.Y. June 24, 2011) ...................................................................... 16

*Revive Investing LLC v. FBC Holdings S.A.R.L*,
  2021 WL 56905 (S.D.N.Y. Jan. 7, 2021) ............................................................................ 15

*Safe & Green Holdings Corp. v. Shaw*,
  2023 WL 5509319 (S.D.N.Y. Aug. 25, 2023) ...................................................................... 10

*Salovaara v. Jackson Nat. Life Ins. Co.*,
  246 F.3d 289 (3d Cir. 2001) ................................................................................................ 15

*Smolowe v. Delendo Corp.*,
  136 F.2d 231 (2d Cir. 1943) .......................................................................................... 10, 11

*Spiegel v. Buntrock*,
  571 A.2d 767 (Del. 1990) .................................................................................................... 11

*Star v. TI Oldfield Dev., LLC*,
  962 F.3d 117 (4th Cir. 2020) ............................................................................................... 15

*Wolf v. Barkes*,
  348 F.2d 994 (2d Cir. 1965) ............................................................................................ 2, 14

*Zapata v. Maldonado*,
  430 A.2d 779 (Del. 1981) ............................................................................................... 11, 12

## **Statutes**                                                                                     **Page(s)**

  8 Del. C. § 141(a) ................................................................................................................ 11, 12

  15 U.S.C. § 78 .................................................................................................................*passim*

iv

**PRELIMINARY STATEMENT**

This derivative action asserts claims pursuant to Section 16(b) of the Securities Exchange Act of 1934 on behalf of Kartoon Studios, Inc. ("Kartoon" or the "Company"). While the Company initially rejected the Plaintiff's demand to bring the claims itself, the Board of Directors (the "Board") launched a process beginning in January 2026 to reevaluate the potential value of the claims following the Court's denial of Defendants' summary judgment motions, renewed indemnity and advancement demands by certain of the Defendants, and a significant decline in the Company's operating capital. The efforts were spearheaded by a Litigation Committee (the "Committee"), which considered substantial analysis and advice regarding the claims, the likelihood of success at trial, and the Company's financial condition and potential liabilities. The Committee engaged extensively with the parties, including Plaintiff's counsel, through special counsel at Kirkland & Ellis, which was provided a single mandate: to negotiate the largest settlement available to the Company under the circumstances.

The process culminated in a negotiated settlement of the Section 16(b) claims at a valuation of $50 million. Currently, six of the eight Defendants (the "Settling Defendants")[1] have agreed to participate *pro rata*, which would result in gross cash proceeds to the Company of $36.5 million (the "Settlement"). The Settlement includes an immediate bridge payment of $5 million to the Company (structured as a loan until entry of judgment) as well as the release of all pending and threatened claims for indemnity and advancement by the Settling Defendants, which total at least $13 million as of today and are expected to multiply through trial.

---

[1] The Settling Defendants are Anson Investments Master Fund LP, CVI Investments, Inc., Iroquois Master Fund Ltd., Iroquois Capital Investment Group, LLC, L1 Capital Global Opportunities Master Fund, M3A LP, and Richard Molinsky.

This motion seeks entry of judgment against the Settling Defendants in furtherance of the Settlement. The Section 16(b) claims in this action are, and have always been, property of the Company and subject to the Board's authority to manage the Company's affairs in the best interests of stockholders. The Second Circuit has long recognized that a corporation retains the power to settle its own claims even after a derivative action has been filed, and that Rule 23.1's approval requirement was never intended to reach company-negotiated settlements of this kind. *See, e.g., Craftsman Fin. & Mortg. Co. v. Brown*, 64 F. Supp. 168, 178-79 (S.D.N.Y. 1945); *Wolf v. Barkes*, 348 F.2d 994, 996-97 (2d Cir. 1965).

Pending the Court's entry of judgment, the Company also requests that the Court immediately stay this action solely as to the Settling Defendants, triggering the Settling Defendants' obligation to make the $5 million bridge payment under the Settlement Agreement (for the avoidance of doubt, the Company does not seek to disrupt the currently scheduled trial as to the non-settling Defendants). The Settlement is of *critical* importance to the Company's operations: it will double the Company's market capitalization, provide operating capital for the Company to continue operations indefinitely without expensive and dilutive financing, and avoid further litigation and defense costs as to the Settling Defendants' indemnity and advancement claims. ██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████ Under these circumstances, the Board believes that the Settlement is not only in the Company's best interests but is necessary for its survival.

For these reasons and as set forth in further detail below, the Court should enter the proposed judgment filed herewith and stay this Action solely as to the Settling Defendants.

2

# FACTUAL BACKGROUND

### A.    This Litigation

On October 28, 2020, Plaintiff made a demand on the Company to pursue claims against Defendants pursuant to Section 16(b) of the Securities Exchange Act of 1934. In light of concerns over the viability of Plaintiff's legal theory, the Company elected not to pursue the claims itself. Declaration of Michael Jaffa ("Jaffa Dec.") ¶ 14. In January 2022, Plaintiff filed this Action asserting the Section 16(b) claims derivatively "for the benefit of Genius Brands" (n.k.a. Kartoon Studios, Inc.). *See, e.g.,* ECF No. 105 at 44.

In January 2024, the Court denied Defendants' Motion to Dismiss. ECF No. 142. In September 2025, the Court denied the parties' cross-motions for summary judgment. ECF No. 287.

### B.    Defendants' Indemnity and Advancement Claims

Following the filing of this action, certain Defendants made demands on the Company for indemnity and advancement of costs pursuant to the Securities Purchase Agreement ("SPA") at issue in this case.[2] Jaffa Dec. ¶ 15. The Company rejected the demands on the grounds that indemnification of Section 16(b) liability is impermissible as a matter of public policy and the language of the SPA does not extend to Section 16(b) claims. *Id.* In May 2023, solely in order to avoid further litigation burden and expense, the Company agreed to a tolling and standstill agreement with certain of the Defendants pursuant to which the Company paid $407,581.93 in interim costs incurred in this action. *Id.* The standstill expired after the Court's ruling on Defendants' motions to dismiss. *Id.*

---

[2] Defendants claim that § 9(k) of the SPA requires the Company to advance defense costs incurred in this Action and ultimately indemnify Defendants for any liability, which the Company has repeatedly rejected. The Company reserves all rights and waives none.

Following the Court's ruling on summary judgment, certain Defendants began to renew their claims for indemnity and advancement, which the Company again rejected.[3] Jaffa Dec. ¶ 16.

On January 6, 2026, Defendant Iroquois filed a lawsuit in New York state court seeking advancement from the Company. *See Iroquois Master Fund Ltd., et al. v. Kartoon Studios, Inc.*, No. 650077/2026. On February 3, 2026, the *Iroquois* action was removed to federal court but subsequently dismissed in light of the subsequent *Empery* filing discussed below.

On February 12, 2026, Defendant Empery filed a materially identical action in New York state court. *See Empery Asset Master, Ltd., et al. v. Kartoon Studios, Inc.*, No. 650906/2026. The complaint alleges that Empery is entitled to advancement of expenses in excess of $3.5 million.

### C.    The Company's Financial Condition

### D.    The Company's Evaluation Of The
### Potential Value Of The Claims In This Action

On January 30, 2026, the Board convened a special meeting to discuss the developments in the Action, including the Court's ruling denying summary judgment, the Company's current

---

[3] On November 7, 2025, Defendant Iroquois made a demand for advancement of $5.2 million of defense costs. In the ensuing months, the Company received similar indemnification demands from Defendants Molinsky (January 9, 2026 for $650,000), Anson (February 6, 2026 for $2,800,000), Brio (February 10, 2026 for $468,070.18), and M3A (February 12, 2026 for an unspecified dollar amount). Jaffa Dec. ¶ 16. Total advancement claims received to date are approximately $13 million. *Id.*

financial condition, the potential value of the claims to the Company, and the indemnification and advancement demands made by certain of the Defendants. Jaffa Dec. ¶ 2. Following extensive discussion, the Board determined unanimously to form the Committee to further analyze the Company's litigation positions, explore potential settlement structures that could be value maximizing for the Company, test the potential to reach a resolution in the near term, and advise the Board with respect to the foregoing and recommended next steps. *Id.* The Board appointed Jeffrey Schlesinger and Anthony Thomopoulos to serve as co-Chairs of the Committee. *Id.* ¶ 3. The Board authorized and empowered the Committee to, among other things, evaluate the merits and potential value of the Section 16(b) claims in the Action; evaluate the Defendants' indemnification and advancement claims; engage directly with the parties to the Action, including the mediator, David Murphy of Phillips ADR, to discuss a potential resolution of the claims; make recommendations to the Board as may be, in the Committee's view, in the best interests of the Company and its stockholders; and submit for the Board's consideration any specific proposals for the potential settlement or prosecution of the Section 16(b) claims. *Id.* The Committee was empowered to retain advisors deemed necessary to fulfill its mandate and was given full access to the Company's officers and employees as necessary. *Id.*

On February 2, 2026, the Committee met and determined to retain Aaron Morris of Morris Kandinov LLP in connection with the Action and the work of the Committee. *Id.* ¶ 4. At the time, the Committee was aware of Morris Kandinov's prior representation of a non-party, Special Equities Group, which had previously received a subpoena in the Action. *Id.* The Committee determined that the prior representation did not present a conflict of interest with respect to the Company. *Id.* Mr. Morris provided the Committee an overview of the history and procedural status of the Action, including the claims asserted therein, and the history and status of the Defendants'

5

indemnification and advancement claims. *Id.* The Committee thereafter authorized counsel to make an initial outreach to the other parties and the mediator in the Action, Mr. Murphy. *Id.* On February 13, 2026, at the Committee's request, the Committee received a memorandum from counsel regarding the history and background of the Action. Id. ¶ 5.

On March 9, 2026, the Committee met to discuss further developments relating to the Action following initial discussions with counsel for the Plaintiff, Jeffrey Abraham, the mediator, Mr. Murphy, and counsel for Defendants. *Id.* ¶ 6. To avoid even the appearance of a conflict relating to Morris Kandinov's prior representation, the Committee determined to engage Kirkland & Ellis ("K&E") to represent the Committee in connection with all settlement negotiations between the parties. *Id.*

On March 27, 2026, at the Committee's request, the Committee received a detailed memorandum from counsel regarding the nature, status, and history of the Defendants' claims for indemnification and advancement under the Securities Purchase Agreement at issue in the Action. *Id.* ¶ 7.

Also on March 27, 2026, the Committee met to receive an update as to discussions between K&E and the other parties to the Action. *Id.* ¶ 8. Based on these discussions, K&E informed the Committee that it believed that a resolution of the Section 16(b) claims appeared to be possible with certain of the Defendants, potentially in the range of $35 million to $50 million. *Id.* The Committee authorized K&E to continue these discussions. *Id.*

On April 6, 2026, at the request of the Committee, the Committee received a memorandum from counsel regarding the legal principles, evidentiary record, and central disputes in the Action, including an overview of the law under Sections 16(b) and 13(d) of the Securities Exchange Act of 1934, Plaintiff's anticipated evidence and testimony at trial, and Defendants' anticipated

6

evidence and testimony at trial. *Id.* ¶ 9. The memorandum included, as exhibits, relevant deposition testimony of the parties and was transmitted with electronic access to the full case file and deposition transcripts for the Committee's convenience. *Id.*

On April 16, 2026, the Committee met to discuss ongoing settlement communications with the parties and potential next steps. *Id.* ¶ 10. K&E advised the Committee that, after significant back and forth, Defendants had agreed to a global resolution at $50 million with six of the eight defendants participating *pro rata*, reflecting a gross cash settlement payment of $36.5 million. *Id.* Following substantial discussion by the Committee regarding, among other things, the merits of the potential settlement, the Company's current financial condition and cash position, the potential of the settlement to provide a cash infusion that could avoid or mitigate the need for near-term financing, the pending indemnity and advancement claims, the likelihood of a recovery at trial, and the potential delay in receiving an award at trial caused by an appeal, the Committee concluded that it was satisfied with the efforts of K&E to maximize the dollar amount of a settlement pre-trial and that the risks to the Company of the claims proceeding to trial were high in light of the probability of success and the Company's current need for additional capital. *Id.*

On April 20, 2026, Mr. Schlesinger, on behalf of the Committee, participated in a call with counsel for Plaintiff, Mr. Abraham, regarding the Action, the potential settlement, and Plaintiff's view as to settlement. *Id.* ¶ 11.

Later in the day on April 20, 2026, the full Board met to receive an update and recommendation from the Committee. *Id.* ¶ 12. The Board received an update as to, among other things, the procedural history of the Action and the Section 16(b) claims asserted, the Committee's evaluation process and recent discussion with counsel for Plaintiff, the pending claims for indemnity and advancement made by the Defendants, the negotiation with the parties and the

potential gross and net value of the potential settlement with the Settling Defendants, the Company's financial position and current cash and financing requirements, and the likelihood of success at trial and the timing of payment of any verdict in favor of the Company. *Id.* Mr. Schlesinger and Mr. Thomopoulos addressed the Board directly as to their observations and findings throughout the process and the numerous business factors relevant to the Company's decision as to whether to settle the Section 16(b) claims or prosecute them at trial. *Id.* After an extensive discussion among all directors present at the meeting, the Board resolved to approve the settlement with the Settling Defendants, but to delay acceptance in order to allow counsel for Plaintiff additional time to participate directly in the negotiations to the extent that counsel was willing to do so. *Id.*

On or about May 1, 2026, K&E informed the Company that counsel for Plaintiff had not substantively engaged in subsequent settlement discussions and was unlikely to participate in further settlement negotiations.[4] *Id.* ¶ 13. Therefore, pursuant to the authority provided by the Board at its April 20, 2026 meeting, the Company executed the Definitive Settlement Agreement with the Settling Defendants. *See* Jaffa Dec., Ex. 1.

### E.    The Settlement Terms

The relevant terms of the Settlement are as follows:

- The Settling Defendants will collectively pay the Company $36.5 million. Jaffa Dec., Ex. 1 at § 2.3.

---

[4] During the April 20, 2026 call between Mr. Schlesinger and counsel for Plaintiff, Mr. Schlesinger acknowledged and expressed appreciation for counsel's work on behalf of the Company thus far in the litigation. Ultimately, however, counsel did not put forward a settlement demand or otherwise attempt to meaningfully participate in settlement discussions with Defendants. *See* Jaffa Dec. ¶ 13.

- Within five days of the Court's entry of a stay of proceedings as to the Settling Parties, the Settling Defendants will collectively advance $5 million to the Company, structured initially as a loan. *Id.* § 2.3(a)-(b).

- Upon entry of judgment, all accrued interest under the loan will be forgiven and the Company will retain the $5 million as well as the additional $31.5 million, which will be deposited in escrow within 45 days. *Id.* § 2.3(b). If the Court declines to enter judgment or judgment is reversed or modified on appeal, the initial payment plus accrued interest is repayable by the Company within fifteen business days. *Id.*

- The Company and the Settling Defendants will provide mutual releases of all claims that were or could have been asserted relating to the Action, expressly including any claims for indemnity or advancement of defense costs asserted by Defendants against the Company. *Id.* § 4.1.

- The Settling Parties may terminate the Agreement if the Court has not entered a stay within twenty-one days of execution or if the Court declines to enter judgment as requested by the Company. § 3.3.

**ARGUMENT**

## I.    JUDGMENT SHOULD BE ENTERED AGAINST THE SETTLING DEFENDANTS

### A.    The Section 16(b) Claim Belongs Exclusively To The Company

Section 16(b), 15 U.S.C. § 78p, created a statutory claim for issuers (*i.e.*, companies) to police the trading in their shares by "insiders," including those who own more than ten percent of the company's stock. *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.,* 906 F.3d 215, 219, 226 (2d Cir. 2018) (noting that "the issuer of the securities at issue, is the real party in interest"). Derivative plaintiffs have "no direct financial interest in the outcome of the litigation" because Section 16(b) claims may be brought "solely on the corporation's behalf" and "any recovery will inure only to the issuer's benefit." *See Gollust v. Mendell*, 501 U.S. 115, 125 n.7, 127 (1991). The "express purpose" of the statute is to "prevent misuse of the corporation's information, not any individual stockholder's." *See Gibbons v. Morgan*, No. 14-CV-9061 (KBF), 2017 WL 3917041, at *5 (S.D.N.Y. Sept. 6, 2017). Accordingly, companies regularly litigate Section 16(b) claims directly. *See, e.g.*, *Safe & Green Holdings Corp. v. Shaw*, No. 23CV2244 (DLC), 2023 WL 5509319, at *1 (S.D.N.Y. Aug. 25, 2023) (company alleging § 16(b) claim against greater than 10% group); *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 42 (2d Cir. 2012) (company obtaining judgment against greater than 10% holder); *Avalon Holdings Corp. v. Gentile*, 597 F. Supp. 3d 640 (S.D.N.Y. 2022) (same).

The statute also permits stockholders of the issuer to pursue a Section 16(b) claim derivatively on the company's behalf if the company initially declines to pursue the claim itself. 15 U.S.C. § 78p(b) ("Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after

request or shall fail diligently to prosecute the same thereafter."); *Smolowe v. Delendo Corp.*, 136 F.2d 231, 241 (2d Cir. 1943) ("Ordinarily the corporate issuer must bring the action; and only upon its refusal or delay to do so, as here, may a security holder act for it in its name and on its behalf."); *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 175 (2d Cir. 2012) (Where a "shareholder plaintiff pursues a § 16(b) claim on behalf of an issuer, the claim is derivative in the sense that the corporation is the instrument").

A company's refusal to initially pursue a Section 16(b) claim does not waive or divest a company's ownership of the claim or entitlement to pursue or manage it. Rather, as the Second Circuit held in *Qlik Techs., Inc.*, a "company that rejects a [Section 16(b)] demand to sue does so with the knowledge that a shareholder can sue on its behalf." 906 F.3d 215, 227-28 (2d Cir. 2018). If, thereafter, the "company were disallowed from joining a suit under Rule 17(a)(3) merely because it had rejected a shareholder's demand, its ability (and the ability of its other shareholders) to recover assets of which it was illegally deprived would stand or fall with the continuing financial interest of the representative shareholder," causing companies to "reasonably doubt whether relying on a derivative shareholder to protect their interests would be prudent." *Id.*; *cf. In re Oracle Corp. Derivative Litig.*, 808 A.2d 1206, 1212-13 (Del. Ch. 2002) (denying plaintiff's motion for voluntarily dismissal in favor of a different forum because the motion sought to "usurp the authority of the Committee before the Committee has even had a reasonable time to complete its review and investigation"); *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990) (granting committee's motion because the "decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation").

11

### B.    The Board Properly Exercised Its Authority To Negotiate A Value-Maximizing Settlement With The Settling Defendants

The power of a corporation, through its directors, to manage its own claims is fundamental and recognized by courts across jurisdictions. *See* 8 Del. C. § 141(a); *Los Angeles City Employees' Ret. Sys. v. Sanford*, No. 2024-0998-KSJM, 2026 WL 125986, at *20 (Del. Ch. Jan. 16, 2026) ("Litigation assets are like any other assets; the board of directors controls them"); *Zapata v. Maldonado*, 430 A.2d 779, 785–86 (Del. 1981) (After a litigation demand the board "never would have lost its statutory managerial authority. The demand requirement itself evidences that the managerial power is retained by the board."); *Auerbach v. Bennett*, 47 N.Y.2d 619, 631-32 (1979) ("[T]he very nature of the corporate organization" requires that "it [is] only the existing board of directors which had authority . . . to decide whether to prosecute" claims); *In re Amerco Derivative Litig.,* 127 Nev. 196, 232 (2011) ("Among the matters entrusted to a corporation's directors is the decision to litigate—or not to litigate—a claim by the corporation against third parties.").[5]

It is beyond dispute that companies regularly settle Section 16(b) claims with and without litigation. Even where a derivative action has been filed, a company retains authority to settle its Section 16(b) claims with or without the participation of the derivative plaintiff. *Compare Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324-26 (10th Cir. 1984) (approving Section 16(b) settlement negotiated by the plaintiff and approved by a special litigation committee over the objections of other stockholders); *with AEC One Stop Grp., Inc. v. Bain Cap. Fund IV L.P.*, 9 F. App'x 53, 54 (2d Cir. 2001) (Section 16(b) claim was assigned and then "settled without participation by [Plaintiff's] counsel").

---

[5] Kartoon Studios, Inc. is a Nevada corporation. "Nevada courts look to Delaware law for guidance on issues of corporate law." *See Green on Behalf of Smith & Wesson Holding Corp. v. Monheit*, 2010 WL 11579099 at *5 (D. Nev. Mar. 3, 2010).

Here, the Board's decision to monetize the Section 16(b) claims as to the Settling Defendants falls well within its fundamental authority to manage the assets and affairs of the Company. Although the Board initially declined to pursue the Section 16(b) claims directly, the landscape with respect to both the viability of the claim and financial position of the Company changed significantly following the Court's summary judgment ruling in September 2025, including that the Court's validation of the liability theory increased the settlement value of the claims substantially. Moreover, the Company's cash available to fund its ongoing operations had declined meaningfully, defense costs arising from multiple indemnity and advancement demands and litigations further jeopardized the already difficult cash position, and the potential indemnity liability had grown into an existential threat that only continued to increase as Defendants incurred defense costs in connection with trial preparation.

The Board's determination to reevaluate the potential value of the Company's claims in January 2026 was wholly consistent with—*if not required by*—its fiduciary duties to the Company and stockholders. The Board's process for understanding and evaluating the claims, led by its Litigation Committee, was extensive and its negotiations were guided by experienced counsel at Kirkland & Ellis, who engaged in numerous rounds of negotiations with counsel for all parties and the mediator to obtain an outcome at the high-end of the range of the Company's initial valuation of the claims.

13

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ That reasoned decision should be respected and

judgment entered against the Settling Defendants.

### C.    The Company-Negotiated Settlement Does Not Require Court Approval

Because the settlement was negotiated directly by the independent, empowered managers

of the Company, this Court need not approve it pursuant to Rule 23.1, which is designed only to

protect the company's interests in settlements negotiated by a *derivative plaintiff*, which may or

may not have the consent of the company's managers. *Craftsman Fin. & Mortg. Co. v. Brown*, 64

F. Supp. 168, 178-79 (S.D.N.Y. 1945) (the original "evil" addressed by Rule 23.1 was "private

settlements under which the plaintiff stockholder and his attorney got the sum paid in settlement,

and the corporation got nothing—although it was the corporation's claim that was being settled").

The Company's resolution of its own claims—which are, at this point, its single largest asset—is

guarded by wholly different mechanisms of fiduciary duty, corporate waste, and other legal

standards governing the conduct of a company's fiduciaries. For example, in *Wolf v. Barkes*, the

Second Circuit drew a clear distinction between settlements negotiated by even a *conflicted* board

(unlike the independent board here) and those negotiated by a derivative plaintiff:

> While a board of directors dominated by the defendants with whom
> settlements are made would find it hard to provide a release that
> would survive charges of self-dealing, dismissal or compromise by
> an independent stockholder, with the corporation simply standing
> idle, would not be subject to such easy attack. A new derivative suit
> against management for fraud or waste in releasing corporate claims
> for inadequate payment can redress improper settlements even
> without setting them aside; finding a management target when the
> derivative shareholder has terminated the corporate claim may be a
> harder assignment. When the acquiescence of a derivative plaintiff
> to a dismissal or a consent judgment has in effect been purchased by
> the defendants, the supposed vigorous champion of the shareholders

> at large has been retired; far from policing the disposition of the corporate claim, he may well assist in seeing that the news does not leak out to stir other shareholders to inquiry. No such silencing of the derivative plaintiff occurs when the corporation settles out of court with some of the defendants. Indeed, he is the very person most likely to challenge the settlement, either by pursuing the original action and attempting to overthrow the settlement or by bringing a new action against the directors in which the settlement itself is the gravamen of the complaint.

348 F.2d 994, 996-97 (2d Cir. 1965). The court noted that "[n]o one would contend that a corporation could not negotiate a release of corporate claims, even against insiders, before a derivative suit was started," and the "corporation's interest in achieving a favorable settlement does not cease because derivative litigation has begun." *Id.* While the "commencement of a derivative suit provides a handle for judicial supervision not present when the corporation negotiates at an earlier stage," the court ruled that "the corporation's power to make its own out-of-court settlements, subject to normal shareholder redress, is not abolished by a procedural rule [Rule 23.1] that does not embrace these either in its language or in its primary rationale." *Id.*; *see also Kahn v. Kaskel*, 367 F. Supp. 784, 789 (S.D.N.Y. 1973) ("There is nothing in Rule 23.1 which in any way prohibits a corporation from making an out-of-court settlement and giving a general release merely because a derivative action, brought on its behalf, is pending in a federal court."); *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 296 (3d Cir. 2001) ("A corporation may enter into a settlement despite the existence of a derivative action when doing so is in the corporation's best interests."); *Star v. TI Oldfield Dev., LLC*, 962 F.3d 117, 133 (4th Cir. 2020) ("[S]ettlements that are in the best interests of the company, entered by a disinterested board, [will]

moot a related derivative suit asserting identical or similar claims arising out of the same underlying facts.").[6]

## II.   THIS ACTION SHOULD BE STAYED AS TO THE SETTLING DEFENDANTS

This Court has broad discretion to stay this Action as to parties and claims, which "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *Prince v. Am. Airlines*, 2011 WL 2534965, at *1 (S.D.N.Y. June 24, 2011) ("broad discretion" for the Court to stay proceedings while parties seek resolution); *Milliken v. Am. Realty Cap. Hosp. Advisors, LLC*, 2018 WL 3745669, at *4 (S.D.N.Y. Aug. 7, 2018) (staying case pursuant to the "Court's discretionary power to manage its docket" in part to "assist the parties' settlement negotiations"); *Philip Morris Inc. v. Heinrich*, 1997 WL 781907 (S.D.N.Y. Dec. 18, 1997) (granting stay as to one defendant while allowing action to continue against other defendants).

Here, a stay as to the Settling Defendants is both justified and imperative to the operations of the Company. If, because of Plaintiff's stated opposition to the Settlement, the Court does not immediately enter judgment, it should grant the requested stay in the interim to permit the

---

[6] While the Company contends that *Wolf* constitutes binding precedent and establishes clearly that Rule 23.1 has no application to the Company's negotiated settlement, the terms otherwise easily satisfy the approval standard because the Settlement "fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted." *Revive Investing LLC v. FBC Holdings S.A.R.L*, 2021 WL 56905, at *6 (S.D.N.Y. Jan. 7, 2021), report and recommendation adopted 2021 WL 734976 (S.D.N.Y. Feb. 25, 2021). For all of the reasons set forth above, the Settlement is anticipated to be *transformative* for the Company (its entire market cap as of today is only $36.8 million) ██████████████████████████████████ Plaintiff's counsel has not made a superior offer (or suggested how the Company might obtain one), and no rational businessperson could choose to expose the Company to the risks of trial over the current Settlement terms.

Company to receive the bridge payment of $5 million pursuant to the Settlement Agreement, ███ ██████████████████████████████████████████ Parisi Dec. ¶¶ 3-4. Thereafter, the Company will expeditiously seek to effectuate the Settlement, including by participating in any briefing the Court may order in light of Plaintiff's opposition. Holding otherwise would not only be inequitable to the parties seeking to resolve this matter (which would then be required to prepare for trial in parallel) but would be harshly prejudicial to the Company and would undercut the Board's rationale in structuring the Settlement as a means of providing immediate, non-dilutive capital ███████████████████████████. As to the Plaintiff, the stay will cause no prejudice because Plaintiff may continue to prepare for trial against the non-settling Defendants and need not commit time and resources as to claims that have been resolved.

## CONCLUSION

For the foregoing reasons, Kartoon Studios, Inc. respectfully requests that the Court grant its Motion, enter the attached proposed judgment, and stay this proceeding solely as to the Settling Defendants.

Respectfully submitted,

By: /s/ Aaron T. Morris

**MORRIS KANDINOV LLP**
Aaron T. Morris (#5675178)
Andrew W. Robertson (#4288882)
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473
aaron@moka.law
andrew@moka.law

Counsel for Kartoon Studios, Inc.

17