**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TODD AUGENBAUM,<br><br>          Plaintiff,<br><br>    v.<br><br>ANSON INVESTMENTS MASTER FUND LP; BRIO CAPITAL MASTER FUND LTD.; BRIO SELECT OPPORTUNITIES FUND, LP; CVI INVESTMENTS, INC.; EMPERY ASSET MASTER, LTD.; EMPERY DEBT OPPORTUNITY FUND, LP; EMPERY TAX EFFICIENT, LP; IROQUOIS MASTER FUND LTD.; IROQUOIS CAPITAL INVESTMENT GROUP, LLC; L1 CAPITAL GLOBAL OPPORTUNITIES MASTER FUND; M3A LP; AND RICHARD MOLINSKY,<br><br>          Defendants,<br><br>  -and-<br><br>KARTOON STUDIOS, INC.<br><br>          Nominal Defendant. | Civil Action No. 1:22-cv-00249-AS<br><br><br>**STIPULATION OF DISMISSAL**<br>**PURSUANT TO F.R.C.P. 41(a)(2)** |

WHEREAS, Plaintiff Todd Augenbaum ("Plaintiff") filed this Action alleging that Defendants' trades in the securities of Kartoon Studios, Inc. (f/k/a Genius Brands International, Inc.) ("Kartoon") violated §16(b) of the Securities Exchange Act, 15 U.S.C. §78p(b); and

WHEREAS, Plaintiff, Kartoon, and L1 Capital Global Opportunities Master Fund ("L1") have entered into the Settlement Agreement attached hereto as Exhibit A (the "Agreement") resolving all claims Plaintiff and Kartoon have against L1; now, therefore,

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff, Kartoon and L1, that subject to the Court's approval, this action is hereby dismissed with prejudice as to L1, without

costs or fees to any party except as set forth in the Agreement, pursuant to Federal Rule of Civil Procedure 41(a)(2); and

IT IS FURTHER HEREBY STIPULATED AND AGREED, by and between Plaintiff, Kartoon and L1, that the Court shall retain jurisdiction over the Agreement as and to the extent contemplated by the Agreement.

By: /s/ Jeffrey S. Abraham
Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
450 7th Avenue, 38th Floor
New York, New York 10123
Telephone: (212) 279-5050
Email: jabraham@aftlaw.com
      mklein@aftlaw.com

Evan Mandel
Robert Glunt
**MANDEL BHANDARI LLP**
80 Pine Street, 33rd Floor
New York, New York 10005
Telephone: (212) 269-5600
Email: em@mandelbhandari.com
      glunt@mandelbhandari.com

*Counsel to Plaintiff Todd Augenbaum*

By: /s/ Aaron T. Morris
Aaron T. Morris (#5675178)
Andrew W. Robertson (#4288882)
**MORRIS KANDINOV LLP**
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473
aaron@moka.law
andrew@moka.law

*Counsel to Nominal Defendant Kartoon Studios, Inc.*

2

By: /s/ Jared R. Clark
Jared R. Clark
**ELLIOTT LEVINE JAROSLAW NEILS LLP**
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, New York 10165
(917) 287-1480
jclark@eljnlaw.com

*Counsel to Defendant L1 Capital Global Opportunities Master Fund*

SO ORDERED.

Hon. Arun Subramanian
United States District Judge

Dated:                    June 2  , 2026

3

# EXHIBIT A

# SETTLEMENT AGREEMENT

**This Definitive Settlement Agreement** (this "Agreement") is entered into as of May 29, 2026, by and among the following parties (collectively, the "Settling Parties"):

**Kartoon Studios, Inc.** (f/k/a Genius Brands International, Inc.), a corporation organized under the laws of the State of Nevada (the "Company" or "Kartoon");

**Todd Augenbaum** ("Plaintiff"); and

and **L1 Capital Global Opportunities Master Fund** ("L1," and together with the Company and Plaintiff, the "Settling Parties").

## RECITALS

**WHEREAS**, the Settling Parties are parties to the action captioned *Augenbaum v. Anson Investments Master Fund LP et al.*, Case No. 1:22-CV-00249-AS, pending in the United States District Court for the Southern District of New York (the "Action");

**WHEREAS**, the Settling Parties, through extensive and arm's-length negotiations, have reached a resolution of the Action as it relates to claims against L1 (and only L1) and desire to memorialize the terms of their settlement in this Agreement;

**WHEREAS**, L1 denies any liability, wrongdoing, or fault, and enters into this Agreement for the purpose of avoiding the cost, burden, and uncertainty of continued litigation;

**WHEREAS**, Plaintiff believes he is prosecuting meritorious claims that are likely to succeed at trial, and enters into this Agreement for the purpose of avoiding the uncertainty of continued litigation; and

**WHEREAS**, the parties to the Action filed a proposed Joint Pretrial Order on April 29, 2026, Docket No. 327 (the "Proposed Pretrial Order"), in which all defendants agreed to provide certain witnesses, including David Feldman of L1, to testify live without the need for a trial subpoena.

**NOW, THEREFORE**, in consideration of the mutual covenants, representations, warranties, and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Settling Parties agree as follows:

## ARTICLE I — DEFINITIONS

**Section 1.1 — Definitions.** As used in this Agreement, the following terms shall have the meanings set forth below:

"Approval Order" means an order of the Court approving this Agreement in all respects, substantially in the form of Exhibit 1 hereto.

"Court" means the United States District Court for the Southern District of New York.

"Court Approval" means the Court's entry of an Approval Order.

1

"Effective Date" means the date on which the Court enters the Approval Order.

"Escrow Payment" has the meaning set forth in Section 2.2.

"Final" when referring to the Approval Order means exhaustion of all possible appeals, meaning (i) if no appeal or request for review is filed, the day after the date of expiration of any time for appeal or review of the Approval Order, and (ii) if an appeal or request for review is filed, the day after the date the last-taken appeal or request for review is dismissed, or the Approval Order is upheld on appeal or review in all material respects, and is not subject to further review on appeal or by certiorari or otherwise; provided, however, that no order of the Court or modification or reversal on appeal or any other order relating solely to the amount, payment, or allocation of attorneys' fees and expenses shall constitute grounds for cancellation or termination of this Agreement or affect its terms, including the release in Section 4.1, or shall affect or delay the date on which the Approval Order becomes Final.

"L1 Released Claims" has the meaning set forth in Section 4.1.

"L1 Releasing Parties" means L1's respective officers, directors, managers, employees, agents, attorneys, predecessors, successors, parents, subsidiaries, affiliates, and assigns.

"Other Defendants" means all defendants in the Action excluding L1, and for the avoidance of doubt including the Company.

"Settlement Payment" means the aggregate sum of $3,550,000.00 to be paid by L1 to the Company in accordance with this Agreement.

## ARTICLE II — SETTLEMENT PAYMENT

**Section 2.1 — Settlement Amount.** L1 shall pay the Settlement Payment to resolve all claims against L1 in the Action, subject to the conditions on the Escrow Payment set forth in Section 2.2.

**Section 2.2 — Payment Terms.** Subject to Section 2.3 below, L1 shall pay fifty (50) percent of the Settlement Payment, or $1,775,000, to Kartoon within two (2) business days of the latest to occur of (a) entry of the Approval Order, and (b) L1's receipt of wire instructions and a Form W-9. L1 shall pay fifty (50) percent of the Settlement Payment, or $1,775,000, into an escrow account (the "Escrow Payment" (as subject to modification in Section 2.3 in the event that an objection to the Approval Order is filed and not withdrawn by the time the Approval Order is entered)) within five (5) business days of the latest to occur of (a) execution of this Agreement, and (b) receipt of all reasonably requested tax and Know Your Customer (KYC) information. The Escrow Payment shall be deposited into an interest-bearing escrow account (the "Escrow Account") established in accordance with an escrow agreement in a form mutually agreed upon by the Settling Parties (the "Escrow Agreement") substantially in the form of Exhibit 2 hereto. The Escrow Payment shall remain in the Escrow Account until Kartoon and Plaintiff agree to resolve Augenbaum's Fee and Expense Application (defined below) or the Court rules on Augenbaum's Fee and Expense Application and the Approval Order becomes Final. Once the Court rules on Augenbaum's Fee and Expense Application and the Approval Order becomes Final, Augenbaum and his counsel shall be paid the amounts that they are entitled to under the Court's ruling. After Augenbaum and his counsel are paid any and all amounts that they are owed, the balance of the escrowed funds, if any, shall be paid to Kartoon. The Escrow Account shall, at all times, maintain a sufficient balance

to satisfy any amount sought in Augenbaum's Fee and Expense Application. Augenbaum shall make the Fee and Expense Application after the trial in this Action if he is unable to reach an agreement with the Company.

**Section 2.3 — Effect of Objection.** In the event that an objection to the Approval Order is filed and not withdrawn by the time the Approval Order is entered, notwithstanding any other provisions in this Agreement, the definition of Escrow Payment in Section 2.2 shall be modified to be identical to the definition of Settlement Payment. In the event an objection to the Approval Order is filed and not withdrawn by the time the Approval Order is entered, the Escrow Payment shall remain in the Escrow Account until the Approval Order becomes Final, except any Fee Award (as defined below) may be paid on the terms and conditions set forth in Section 10.2. If all objection(s) to the Approval Order are overruled, $1,775,000 shall become payable to Kartoon upon the Approval Order becoming Final, and the balance of the Escrow Account, except for anticipated tax obligations, shall be paid to Kartoon after Plaintiff's counsel's entitlement to a Fee Award is resolved.

**Section 2.4 — Tax Treatment.** Except as set forth in the Escrow Agreement attached hereto as Exhibit 2, each Settling Party shall be responsible for its own tax obligations arising from the Settlement Payment. Nothing in this Agreement shall be construed as tax advice to any Settling Party, and each Settling Party is advised to consult with its own tax advisors regarding the tax consequences of the Settlement Payment.

**Section 2.5 — Reservation of Rights.** L1 reserves all rights to obtain the return of or collect the Settlement Payment if the Approval Order is vacated or modified on appeal or is materially modified by the Court, whether in bankruptcy or otherwise, and the provisions of this Section 2.4 shall survive any termination of this Agreement.

**ARTICLE III — PROCEDURE FOR DISMISSAL OF CLAIMS AGAINST L1**

**Section 3.1 — Dismissal of Claims.** Within one (1) business day of the execution of this Agreement, the Settling Parties will file with the Court and seek issuance of the proposed Approval Order in the form of Exhibit 1 hereto. By executing this Agreement, counsel are authorizing Plaintiff's counsel to affix their respective signatures thereto or, if this Agreement is executed by counsel other than the signatory thereto, is confirming that the signatories to the proposed Approval Order consent to their signatures being affixed thereto.

**Section 3.2 — Reversal on Appeal.** In the event that any appellate court reverses or modifies the Court Approval, this Agreement shall be null and void and the Settlement Payment shall be returned to L1, with all accrued interest within thirty (30) days of such reversal or modification becoming final, and the parties shall be restored to their respective positions as they existed prior to the execution of this Agreement. The Company and the Plaintiff shall cooperate with securing the release of the Escrow Account, including by providing a joint instruction to return the funds to L1 in accordance with this Section.

# ARTICLE IV — MUTUAL RELEASES

**Section 4.1 — Releases.** Upon the Approval Order becoming Final, each of (a) the Company, on behalf of itself and its respective officers, directors, managers, employees, agents, attorneys, predecessors, successors, parents, subsidiaries, affiliates, and assigns, and (b) Plaintiff, for

promises and undertakings and other good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, hereby shall fully and forever release and discharge L1, and each of L1's owners, officers, directors, partners, members, managers, principals, employees, agents, attorneys, predecessors, successors, parents, subsidiaries, affiliates, and assigns from any and all claims, demands, actions, causes of action, suits, damages, losses, obligations, judgments, and liabilities, including without limitation any claims for indemnity or advancement of defense costs, whether known or unknown, asserted or unasserted, that were or could have been asserted by any Settling Party in the Action against L1, and all claims related to the prosecution of this Action against L1.

Upon the Approval Order becoming Final, L1, on behalf of itself and the L1 Releasing Parties, for promises and undertakings and other good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, hereby shall fully and forever release and discharge Kartoon, and its respective officers, directors, managers, employees, agents, attorneys, predecessors, successors, parents, subsidiaries, affiliates, and assigns from any and all claims, demands, actions, causes of action, suits, damages, losses, obligations, judgments, and liabilities, including without limitation any claims for indemnity or advancement of defense costs, whether known or unknown, asserted or unasserted, that were or could have been asserted by L1 against Kartoon in the Action, and all claims by L1 against Kartoon related to the prosecution of this Action against L1. In addition, upon the Approval Order becoming Final, the L1 Releasing Parties shall fully and forever release and discharge Plaintiff and his counsel and agents from any and all claims, demands, actions, causes of action, suits, damages, losses, obligations, judgments, and liabilities, including without limitation any claims for indemnity or advancement of defense costs, whether known or unknown, asserted or unasserted, that were or could have been asserted by L1 against Plaintiff and his counsel and agents in the Action, and all claims by L1 against Plaintiff and his counsel and agents related to the prosecution or defense of this Action against L1 (collectively, the "L1 Released Claims").

**Section 4.2 — Reservation of Rights.** Notwithstanding Section 4.1, the releases set forth therein shall not include: (a) claims to enforce the terms of this Agreement; (b) claims that arise after the date of execution of this Agreement and are unrelated to the subject matter of the Action; or (c) claims against any of the Other Defendants.

## ARTICLE V — CONFIDENTIALITY OBLIGATIONS

**Section 5.1 — Confidentiality of Mediation.** Nothing in this Agreement shall be construed to waive or modify the confidentiality protections afforded to the mediation proceedings, including to the exchange of any drafts of this Agreement, under the mediation confidentiality agreement or under Federal Rule of Evidence 408.

**Section 5.2 — Permitted Disclosures.** Notwithstanding the confidentiality obligations set forth in Section 5.1, the Settling Parties will publicly disclose this Agreement and exhibits to this Agreement to the United States District Court for the Southern District of New York, including Judge Arun Subramanian, in the Action to effectuate the entry of the Approval Order or enforce the terms of this Agreement. For the avoidance of doubt, this Agreement and exhibits to this Agreement may be disclosed through an ECF filing on the public PACER docket. The Settling Parties may also disclose the terms of this agreement to their respective attorneys, accountants,

4

auditors, tax advisors, insurers, and financial advisors and as otherwise required by law, including any disclosures required by federal securities law.

## ARTICLE VI — NO ADMISSION OF LIABILITY

**Section 6.1 — No Admission.** This Agreement reflects a compromise and settlement of disputed claims. Nothing in this Agreement or any related document shall be construed as an admission of liability, wrongdoing, or fault by any Settling Party. L1 expressly denies that it acted as part of a "group" within the meaning of Section 16(b) of the Securities Exchange Act of 1934. Similarly, nothing in this Agreement or any related document shall be construed as exculpating any Settling Party. Plaintiff believes the claims he is prosecuting against L1 are meritorious and can be proven by admissible evidence at trial.

**Section 6.2 — Inadmissibility.** This Agreement and any discussions, negotiations, or proceedings relating thereto shall not be offered or received in evidence in any action or proceeding as an admission, concession, or evidence of liability, wrongdoing, or fault, pursuant to Federal Rule of Evidence 408 and any analogous state rule or statute.

## ARTICLE VII — COOPERATION

**Section 7.1 — General Cooperation.** The Settling Parties shall cooperate fully and in good faith to effectuate the dismissal of the Action as against L1 and the entry of the Approval Order in the Action relating to L1, and only L1, in accordance with this Agreement. Without limiting the generality of the foregoing, each Settling Party agrees to promptly execute and deliver such additional documents and instruments as may be reasonably necessary or desirable to carry out the purposes and intent of this Agreement.

## ARTICLE VIII — REPRESENTATIONS AND WARRANTIES

**Section 8.1 — Representations and Warranties.** Each Settling Party represents and warrants to each other Settling Party that:

(a) *Authority.* Such Settling Party has the full right, power, and authority to enter into this Agreement and to perform its obligations hereunder.  The Settling Parties enter into this Agreement knowingly, intentionally, willingly, voluntarily and without reservation, at arm's length.

(b) *Represented by Counsel.*  The Parties each acknowledge they have each had the opportunity to retain and consult their own separate independent counsel to review this Agreement, and to seek the legal advice of such independent counsel of their choosing in connection with this Agreement, and each of the Parties has done so before executing this Agreement.

(c) *Due Authorization.* This Agreement has been executed by a person duly authorized to bind such Settling Party.

(d) *No Assignment of Claims.* Such Settling Party has not assigned, transferred, or encumbered any of the claims released as set forth in Section 4.1.

(e) *Voluntary Execution.* Such Settling Party enters into this Agreement voluntarily and with full knowledge of its terms.

(f) *No Other Agreements.* No promise or inducement has been offered or made to such Settling Party, except as set forth in this Agreement, to induce it to enter into this Agreement.

(g) *No Presumption Against Drafter.* There shall be no presumption against the drafter with respect to this Agreement, and this Agreement shall not be construed less favorably against the party who may have drafted (or whose counsel may have drafted) any of the language contained in this Agreement. This Agreement shall be deemed to have been drafted jointly by the Settling Parties. Any ambiguity found to exist shall be resolved by construing the terms of this Agreement fairly and reasonably in accordance with the purpose of this Agreement.

## ARTICLE IX — GOVERNING LAW

**Section 9.1 — Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts-of-law principles.

**Section 9.2 — Continuing Jurisdiction.** The Court will retain jurisdiction over the enforcement of the terms of this Agreement.

## ARTICLE X — ATTORNEYS' FEES AND COSTS

**Section 10.1 — Attorneys' Fees.** Each Settling Party shall bear its own attorneys' fees, costs, and expenses incurred in connection with the Actions and the negotiation and execution of this Agreement, except as set forth in Section 10.2.

**Section 10.2 — Augenbaum Fees.** Augenbaum's counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Escrow Payment for: (a) an award of attorneys' fees; plus (b) reimbursement of costs and expenses, including experts and consultants, incurred in connection with prosecuting the Action, plus any interest on such attorneys' fees, costs and expenses at the same rate and for the same periods as earned by the Escrow Account (until paid) as may be awarded by the Court. Promptly after the Court enters an order awarding Augenbaum's counsel fees and expenses ("Fee Award") and the Approval Order becomes Final, all amounts awarded by the Court shall be released from the Escrow Account in accordance with the terms of the Escrow Agreement and wired as directed by Augenbaum's counsel. These payments shall be subject to refund or repayment within thirty (30) days by Augenbaum's counsel, if the Court or any appellate court enters an order reversing or reducing any amount of the Fee Award. L1 shall take no position as to any Fee and Expense Application.

## ARTICLE XI — MISCELLANEOUS PROVISIONS

**Section 11.1 — Entire Agreement.** This Agreement, together with the Escrow Agreement and any other exhibits attached hereto, sets forth the entire agreement among the Settling Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, representations, and understandings, whether oral or written.

**Section 11.2 — Amendments.** This Agreement may not be modified, amended, or supplemented except by a written instrument executed by all Settling Parties.

**Section 11.3** — **Testimony at Trial**. As provided in Section 10 of the Proposed Pretrial Order, which Section Plaintiff has declined to waive as part of this Agreement, L1 shall make David Feldman available to Plaintiff to provide testimony at the trial in this Action as part of Plaintiff's case in chief, waiving any need for Plaintiff to serve a trial subpoena; however, such testimony may be provided remotely, subject to the Court's approval, if in good faith Mr. Feldman cannot travel to New York in person due to toddler related obligations. For the avoidance of doubt, if the Court does not approve Mr. Feldman testifying remotely, Mr. Feldman will testify in person as part of Plaintiff's case in chief if Plaintiff requests he do so.

**Section 11.4 — Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Facsimile, electronic (*i.e.*, Docusign), and PDF signatures shall be deemed original signatures for all purposes.

**Section 11.5 — No Third-Party Beneficiaries.** This Agreement is intended for the benefit of the Settling Parties and their respective successors and permitted assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person or entity.

**Section 11.6 — Waiver.** The failure of any Settling Party to insist upon or enforce strict performance of any provision of this Agreement shall not be construed as a waiver of any future default of the same or similar nature. No waiver of any provision of this Agreement shall be effective unless made in writing and signed by the waiving Settling Party.

**Section 11.7 — Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Settling Parties and their respective successors and permitted assigns. No Settling Party may assign its rights or obligations under this Agreement without the prior written consent of all other Settling Parties.

**Section 11.8 — Construction.** This Agreement has been negotiated by the Settling Parties at arm's length and with the benefit of legal counsel, and no provision of this Agreement shall be construed against any Settling Party on the ground that such Settling Party drafted or proposed such provision.

**Section 11.9 — Headings.** The article and section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**Section 11.10 — Notices.** All notices, requests, demands, or other communications required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given when (a) delivered personally, (b) sent by registered or certified mail, return receipt requested, postage prepaid, (c) sent by nationally recognized overnight courier service, or (d) sent by email with confirmation of receipt, to the Settling Parties at the following address:

If to Todd Augenmbaum:

Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER & TWERSKY LLP**
450 Seventh Avenue, 38th Floor

New York, NY 10123
Tel: (212) 279-5050
jsalaw@aftlaw.com
mklein@aftlaw.com

If to Kartoon Studios, Inc:

Jay Lefkowitz
Jeffrey Goldfine
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
lefkowitz@kirkland.com
jeffrey.goldfine@kirkland.com

If to L1 Capital Global Opportunities Master Fund:

Jared R. Clark
**ELLIOTT LEVINE JAROSLAW NEILS LLP**
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, New York 10165
(917) 287-1480
jclark@eljnlaw.com

**[SIGNATURE PAGES FOLLOW]**

**KARTOON STUDIOS, INC.**

By: _____

Name: michael Jaffa

Title: COO

*[signatures continued on next page]*

9

**TODD AUGENBAUM**

By: _____

Name: Jeffrey S. Abraham

Title: Counsel

*[signatures continued on next page]*

**L1 CAPITAL GLOBAL OPPORTUNITIES MASTER FUND**

By: _____

Name:   David Feldman

Title:      Portfolio Manager


4907-8414-7888, v. 2

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TODD AUGENBAUM, | Civil Action No. 1:22-cv-00249-AS |
| Plaintiff, | |
| v. | **STIPULATION OF DISMISSAL PURSUANT TO F.R.C.P. 41(a)(2)** |
| ANSON INVESTMENTS MASTER FUND LP; BRIO CAPITAL MASTER FUND LTD.; BRIO SELECT OPPORTUNITIES FUND, LP; CVI INVESTMENTS, INC.; EMPERY ASSET MASTER, LTD.; EMPERY DEBT OPPORTUNITY FUND, LP; EMPERY TAX EFFICIENT, LP; IROQUOIS MASTER FUND LTD.; IROQUOIS CAPITAL INVESTMENT GROUP, LLC; L1 CAPITAL GLOBAL OPPORTUNITIES MASTER FUND; M3A LP; AND RICHARD MOLINSKY, | |
| Defendants, | |
| -and- | |
| KARTOON STUDIOS, INC. | |
| Nominal Defendant. | |

WHEREAS, Plaintiff Todd Augenbaum ("Plaintiff") filed this Action alleging that Defendants' trades in the securities of Kartoon Studios, Inc. (f/k/a Genius Brands International, Inc.) ("Kartoon") violated §16(b) of the Securities Exchange Act, 15 U.S.C. §78p(b); and

WHEREAS, Plaintiff, Kartoon, and L1 Capital Global Opportunities Master Fund ("L1") have entered into the Settlement Agreement attached hereto as Exhibit A (the "Agreement") resolving all claims Plaintiff and Kartoon have against L1; now, therefore,

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff, Kartoon and L1, that subject to the Court's approval, this action is hereby dismissed with prejudice as to L1, without

costs or fees to any party except as set forth in the Agreement, pursuant to Federal Rule of Civil Procedure 41(a)(2); and

IT IS FURTHER HEREBY STIPULATED AND AGREED, by and between Plaintiff, Kartoon and L1, that the Court shall retain jurisdiction over the Agreement as and to the extent contemplated by the Agreement.

By: /s/ D-R-A-F-T
Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
450 7th Avenue, 38th Floor
New York, New York 10123
Telephone: (212) 279-5050
Email: jabraham@aftlaw.com
mklein@aftlaw.com

Evan Mandel
Robert Glunt
**MANDEL BHANDARI LLP**
80 Pine Street, 33rd Floor
New York, New York 10005
Telephone: (212) 269-5600
Email: em@mandelbhandari.com
glunt@mandelbhandari.com

*Counsel to Plaintiff Todd Augenbaum*

By: /s/ D-R-A-F-T
Aaron T. Morris (#5675178)
Andrew W. Robertson (#4288882)
**MORRIS KANDINOV LLP**
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473
aaron@moka.law
andrew@moka.law

*Counsel to Nominal Defendant Kartoon Studios, Inc.*

14

By: /s/ D-R-A-F-T
Jared R. Clark
**ELLIOTT LEVINE JAROSLAW NEILS LLP**
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, New York 10165
(917) 287-1480
jclark@eljnlaw.com

*Counsel to Defendant L1 Capital Global
Opportunities Master Fund*

SO ORDERED.


_____
Hon. Arun Subramanian
United States District Judge

Dated: _____, 2026


4907-8414-7888, v. 2

15

# Exhibit 2

# CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated May __, 2026 is made among **ABRAHAM, FRUCHTER & TWERSKY LLP** ("Plaintiff's Counsel"), **KIRKLAND & ELLIS LLP** and **MORRIS KANDINOV LLP** ("Company Counsel") and **ELLIOTT LEVINE JAROSLAW NEILS LLP** ("Defendant's Counsel" and with Company Counsel "Defense Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Custodian/Escrow Agent").

## Recitals

A.      This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Stipulation of Settlement (the "Settlement Agreement") dated May __, 2026 attached hereto as Exhibit A, entered into by, among others, Plaintiff's Counsel on behalf of the Plaintiffs and Defense Counsel on behalf of L1 Capital Global Opportunities Master Fund (the "Defendant") and Kartoon Studios, Inc (the "Company"), respectively, will be paid to partially settle the action captioned *Augenbaum v. Anson Investments Master Fund LP et al.*, Case No. 1:22-CV-00249-AS (the "Action"), pending in United States District Court for the Southern District of New York (the "Court").

B.      Pursuant to the terms of the Settlement Agreement, the Defendant has agreed to pay or cause the Settlement Amount in settlement of the claims brought against the Defendant in the Action, as defined in Section 2.1 of the Settlement Agreement.

C.      The Settlement Amount, together with any interest accrued thereon, is to be deposited into Custodian/Escrow and used to satisfy any Fee Award (as defined in the Settlement Agreement), payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement, with any remainder inuring to the Company.

D.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## Agreement

1.      <u>Appointment of Custodian/Escrow Agent</u>.  The Custodian/Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.      <u>The Custodian/Escrow Account</u>.  The Custodian/Escrow Agent shall establish and maintain one or more Custodian/Escrow accounts titled as Augenbaum v. Anson Settlement Account, with a sub-title L1 Settlement (the "Custodian/Escrow Account").  Pursuant to the Settlement Agreement, the Defendant shall the Escrow Payment, as defined in Sections 2.2 and 2.3 of the Settlement Agreement  to the Custodian/Escrow Account within 5 (five) business days following of the latest to occur of (a) execution of this Agreement, and (b) L1's receipt of wire instructions and a Form W-9.  Custodian/Escrow Agent shall receive the Escrow Payment into the

Custodian/Escrow Account; the Escrow Payment and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein and shall be released by Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement.

3.      Investment of Settlement Fund.  At the written direction of Plaintiff's Counsel, Custodian/Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government.  Defendant and the Company shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Custodian/Escrow Agent.

4.      Use of Settlement Funds.  All interest from the Qualified Settlement Fund will be paid directly to the Qualified Settlement Fund.  No payments, rebates, or financial compensation will be exchanged between Huntington and any third parties aside from approved investments set forth in Section 3 for this Custodian/Escrow Account.

5.      Custodian/Escrow Funds Subject to Jurisdiction of the Court.  The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court, if necessary.

6.      Tax Treatment & Report.  The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1.  Plaintiff's Counsel and, as required by law, the Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date.  For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Plaintiff's Counsel.  Plaintiff's Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1.  Plaintiff's Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

7.      Tax Payments of Settlement Fund.  All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Custodian/Escrow Agent shall timely pay such Taxes out of the Settlement Fund without prior order of the Court, as directed by Plaintiff's Counsel.  Plaintiff's Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law.  Plaintiff's Counsel may engage an

2

accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund by the Custodian/Escrow Agent at Plaintiff's Counsel's direction. The Settlement Fund shall indemnify and hold the Defendant harmless for any taxes that may be deemed to be payable by the Defendant by reason of the income earned on the Settlement Fund, and Custodian/Escrow Agent, as directed by Plaintiff's Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendant pursuant to the terms of the Settlement Agreement, the Defendant shall provide Custodian/Escrow Agent with a properly completed Form W-9.

8.      <u>Disbursement Instructions</u>

(a)      Plaintiff's Counsel may instruct Custodian/Escrow Agent to disburse the funds necessary to pay Notice and Administration Expenses if required by the Court.

(b)      Disbursements other than those described in paragraph 8(a), including disbursements for distribution of Settlement Funds, must be authorized by (i) an order of the Court, or (ii) at the written direction of Jeffrey S. Abraham or Jack G. Fruchter of Plaintiff's Counsel, Jared R. Clark or Mark M. Elliott of Defendant's Counsel, and Jeffrey Goldfine or Aaron Morris of Company Counsel.

(c)      In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Custodian/Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b).  To assure accuracy of the instructions it receives, Custodian/Escrow Agent may record such callbacks.  If Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Custodian/Escrow Agent.  Plaintiff's Counsel and Defense Counsel agree to notify Custodian/Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of Custodian/Escrow Agent's error, Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d)      The Custodian/Escrow Agent shall not be liable for any losses, costs or

3

expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

9.     Termination of Settlement.  If the Settlement Agreement terminates in accordance with its terms, Plaintiff's Counsel and Defense Counsel shall jointly notify Custodian/Escrow Agent of the termination of the Settlement Agreement.  Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Plaintiff's Counsel and Defense Counsel, shall be returned to the Defendant in accordance with instruction from the Defendant's Counsel.

10.     Fees.  The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit 2. These fees and expenses of Custodian/Escrow Agent shall be paid solely from the Settlement Fund.  The Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Plaintiff's Counsel.  If Custodian/Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

11.     Duties, Liabilities and Rights of Custodian/Escrow Agent. This Custodian/Escrow Agreement sets forth all of the obligations of Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

(a)     Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Plaintiff's Counsel or Counsel for the Defendant, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine and may assume that such person has been properly authorized to do so.

(b)     Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions

4

hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Custodian/Escrow Account only (i) upon approval by Plaintiff's Counsel and the Defendant or (ii) pursuant to an order of the Court.

(c)     The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)     Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     The Custodian/Escrow Agent shall not bear any risks related to the investment or reinvestment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Custodian/Escrow Agreement. The Custodian/Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, losses, liabilities and expenses (including reasonable legal fees and expenses of any in-house or outside attorneys) as and when incurred, to the extent arising out of or in connection with such investment or reinvestment activities, arising out of or in connection with (a) any act, omission, alleged act or alleged omission by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Custodian/Escrow Agent of any of the Custodian/Escrow Agent's duties under this Agreement relating to the investment or reinvestment of the Settlement Fund, except as a result of the Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence; or (b) the Custodian/Escrow Agent following any investment-related instructions or other directions from Plaintiff's Counsel, Defense Counsel, or the Court, except to the extent that its following any such instruction or direction is expressly prohibited by the terms hereof. The parties hereto acknowledge that the foregoing indemnities shall survive the resignation or removal of the Custodian/Escrow Agent and the termination of this Custodian/Escrow Agreement. Anything in this Custodian/Escrow Agreement to the contrary notwithstanding, in no event shall the Custodian/Escrow Agent be liable for special, indirect or consequential losses or damages of any kind whatsoever arising from such investment or reinvestment activities, even if the Custodian/Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

(f)     Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall

be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

12. <u>Non-Assignability by Custodian/Escrow Agent</u>. Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Plaintiff's Counsel and the Defendant.

13. <u>Resignation of Custodian/Escrow Agent</u>. Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein. On the effective date of such resignation, Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement. If a successor Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

14. <u>Notices</u>. Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

| If to Plaintiff's Counsel: | Jeffrey S. Abraham |
| | Jack G. Fruchter |
| | Michael J. Klein |
| | **ABRAHAM, FRUCHTER & TWERSKY LLP** |
| | 450 Seventh Avenue, 38th Floor |
| | New York, NY 10123 |
| | Tel: (212) 279-5050 |
| | jsalaw@aftlaw.com |
| | jfruchter@aftlaw.com |
| | mklein@aftlaw.com |
| If to Defendant: | Jared R. Clark |
| | **ELLIOTT LEVINE JAROSLAW NEILS LLP** |
| | One Grand Central Place |
| | 60 East 42nd Street, Suite 1570 |
| | New York, New York 10165 |
| | (917) 287-1480 |
| | jclark@eljnlaw.com |

| If to the Company: | Jay Lefkowitz |
| | Jeffrey Goldfine |
| | **KIRKLAND & ELLIS LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | (212) 446-4800 |
| | lefkowitz@kirkland.com |
| | jeffrey.goldfine@kirkland.com |
| | |
| | Aaron T. Morris |
| | **MORRIS KANDINOV LLP** |
| | 305 Broadway, 7th Floor |
| | New York, NY 10007 |
| | (212) 431-7473 |
| | aaron@moka.law |
| | |
| If to Custodian/Escrow Agent: | THE HUNTINGTON NATIONAL BANK |
| | Liz Lambert, Senior Managing Director |
| | 650 Swedesford Road, Suite 310 |
| | Wayne, PA 19087 |
| | Telephone: (215) 756-1962 |
| | E-mail: liz.lambert@huntington.com |
| | |
| | Susan Brizendine, Trust Officer |
| | Huntington National Bank |
| | 7 Easton Oval – EA5W63 |
| | Columbus, Ohio 43219 |
| | Telephone: (614) 331-9804 |
| | E-mail: susan.brizendine@huntington.com |

15. <u>Patriot Act Warranties</u>. Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information"). The parties to this Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

16. <u>Entire Agreement</u>. This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto. Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

17.     Governing Law.  This Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Custodian/Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Custodian/Escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

18.     Termination of Custodian/Escrow Account.  The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement. The Custodian/Escrow Agent shall perform its duties solely in accordance with the terms of this Agreement, and upon termination of the Custodian/Escrow Account shall have no further obligations or liabilities related to this Agreement.

19.     Miscellaneous Provisions.

(a)     Counterparts.  This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

(b)     Further Cooperation.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Custodian/Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement in order (a) to give Custodian/Escrow Agent confirmation and assurance of Custodian/Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Custodian/Escrow Agreement, each in such form and substance as may be acceptable to Custodian/Escrow Agent.

(c)     Electronic Signatures. The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Custodian/Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Custodian/Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

(d)     Non-Waiver.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

8

THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow Agent

By: _____
        Liz Lambert, Senior Managing Director

Plaintiff's Counsel

By: _____

Defendant's Counsel

By: _____

Company Counsel

By: _____

**Exhibit A**

**Settlement Agreement**

## Exhibit B

### Fees of Custodian/Escrow Agent

**Acceptance Fee:**                                                     **$2,500**

The Acceptance Fee includes the review of the Custodian/Escrow
Agreement, acceptance of the role as Custodian/Escrow Agent,
establishment of Custodian/Escrow Account(s), and receipt of funds.
Fee will be waived if using Huntington Bank's standard
Custodian-Escrow Agreement.

**Annual Administration Fee:**                                         **$10,000**

The Annual Administration Fee includes the performance of
administrative duties associated with the Custodian/Escrow
Account including daily account management, generation of
account statements to appropriate parties, and disbursement of
funds in accordance with the Custodian/Escrow Agreement.
Administration Fees are payable annually in advance without
proration for partial years. Fee will be waived if funds are invested
in an FDIC-insured account.

**Out of Pocket Expenses:**                                            **At Cost**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees. Fee will be waived if funds are
invested in an FDIC-insured account.

4907-8414-7888, v. 2

11