**MB**

**MANDEL BHANDARI** LLP

80 Pine Street │ 33rd Floor │ New York, NY │ 10005 │ T. (212) 269-5600 │ F. (646) 964-6667 │ www.mandelbhandari.com

June 7, 2026

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> Re:    ***Augenbaum v. Anson Investments Master Fund LP, et al.***
>          <u>**Case No.: 22-cv-249 (AS)**</u>

Dear Judge Subramanian:

We are co-counsel for Plaintiff Todd Augenbaum in this action and write in response to Defendants' June 6, 2026 letter motion to preclude what Defendants call a "registration rights relinquishment theory of group formation." ECF 443 at 2. Defendants' motion is meritless.

At the June 1 pre-trial conference, Empery represented to the Court that "this is the first time anybody in this room has heard a theory that the defendants coordinated together to remove registration from the transaction because they knew it would send the stock price higher." Tr at 45:15-23. This representation was demonstrably false. As Empery's summary judgment declaration concedes, "I was concerned that the filing of a registration statement might impact the share price of the Company at a point in time when the registration statement was unlikely to receive SEC approval, meaning the filing could impact the stock price for no good reason." PX-778 ¶ 33. In its June 6 letter (ECF 443), Empery now claims that it had no idea that its demand that all of the investors agree not to register the March 2020 PIPE shares was at issue in this case. Its June 6 letter is no more accurate than its prior representations.

**First**, there was no omission of the registration rights theory from Plaintiff's Interrogatory Response. The Interrogatory at issue – Number 1 – asked Plaintiff to identify the date on which each Defendant first became a part of the group and "the communication or other event that caused [each Defendant] to become a part of the group." ECF 436-1 at 3. The registration rights are addressed in three documents: (1) the executed PIPE term sheet, which provided for the PIPE shares to be registered (PX-202 at 2 ("The Company will file a registration statement with the SEC"); (2) the PIPE SPA, which provided for the PIPE shares not to be registered (PX-387 at p.5, § 2(i) ("the Securities have not been and are not being registered"), and (3) the conversion and leak-out agreements that belated provided for the shares to be registered (ECF 287 at 5 (describing these agreements)). The Interrogatory Response makes crystal clear that the Defendants joined a group when all three of the documents addressing the registration rights were executed:

The Honorable Arun Subramanian
June 7, 2026
Page 2

- "On January 22, 2020, Anson and the Company entered into a term sheet…. The Term Sheet's **provisions** were the product of collaboration and input from at least the following Defendants: Anson, Brio, Empery, and Iroquois…. [I]nteractions relating to negotiations demonstrate the existence of a group in this case." ECF 436-1 at 3-4 (emphasis added).

- "Defendants also formed a group by no later than March 11, 2020," the date the PIPE SPA was signed. (*Id.* at 4.) The Interrogatory then quotes Genius's announcement of the PIPE SPA as admitting that "CHAIRMAN AND CEO ANDY HEYWARD LEADS GROUP OF INVESTORS." (*Id.* at 5.)

- "Defendants also formed a group no later than entering into the first leak-out agreement, on or about May 17, 2020, because in doing so they agreed to the terms upon which they would hold and could sell Genius common stock once the Company's registration statement became effective." *Id.* at 7. "Defendants also formed a group no later than the negotiation and execution of the conversion and second leak-out agreement, on or about June 23, 2020." *Id.* at 8.

Because the Interrogatory Response explicitly states that a group was formed on each occasion on which an agreement addressing registration was executed, Defendants' argument appears to be that Plaintiff should have identified each and every **term** in these agreements that affected group formation. But, that is not what the Interrogatory sought. It sought only the "date" on which each Defendant became a part of the group and "the communication or other event that caused [each Defendant] to become a part of the group." *Id.* at 3. The events that caused Defendants to join the group were the execution of the term sheet, PIPE SPA, and leak-out and conversion agreements. As a result, the Response fully satisfied the Interrogatory without needing to identify each and every term in the identified contracts that supported an inference that Defendants formed a group.

Even Defendants are not suggesting that Plaintiff should be precluded from discussing any and all of the terms of these agreements because each term was not separately mentioned in the Response. Instead, the one exception is the registration term, and Defendants provide no coherent argument as to why Plaintiff should be precluded from discussing one specific term when they are free to discuss all of the other terms in these agreements.

**Second**, Defendants argue that they are prejudiced because they did not have an opportunity to discuss registration at summary judgment or during expert discovery. (ECF 443 at 2.) Again, this is false. It was addressed both during expert discovery and at summary judgment.

At summary judgment, Plaintiff argued:

> However, as Empery's previously conceded, a §13(d)(3) group exists if Defendants "***jointly negotiated***" terms. ECF No. 138 at 32:4-33:16

The Honorable Arun Subramanian
June 7, 2026
Page 3

> (emphasis added) That is precisely and unquestionably what happened here, with Empery's continued comments on the provisions of Anson's January 22, 2020 term sheet with Genius resulting in, among other things, the provision for a registration rights agreement being removed and the terms of the agreements entered into with respect to the March 2020 PIPE reflecting Empery's specific preferences.

ECF 258 at 4. *See also* ECF 225 at 10 ("[O]n February 3, 2020, the term sheet was amended in response to Empery's refusal to participate if registration rights were included."); ECF 258 at 2 ("Empery prevailed upon Anson to eliminate registration rights from the proposed transaction.") Both parties' Rule 56.1 statement specifically cited the evidence that it was Empery that demanded that the registration statement not be filed and the negotiation that followed. ECF 226-15 ¶¶ 58-59, ECF 234 ¶¶ 135-36. As discussed above, Empery also submitted a declaration explaining its supposed rationale for not wanting to register the shares. PX-778 ¶ 33.

Defendants' expert Michael Maline opined that it would not be "unusual" for the PIPE shares to be unregistered:

> "[b]ecause the SEC has an interpretation that whenever you are trying to register shares, underlying convertible instruments that are substantially larger than the amount that are outstanding, the SEC uses that potentially as a disguised primary offering. It does not allow you to register them.

> So, in order to help the company raise money, I would imagine the investors here took one for the – for the, you know, benefit of getting the deal done and agreed to postpone the request to register until later so they could actually raise the initial money."

ECF 226-13 at 192:8-193:18. He also opined on why the shares were not registered. *Id.* 201:5—203:9 (opining on why the shares were not registered).

Defendants' claim that they have been ambushed by the "registration rights relinquishment theory" is meritless, to put it politely.

Respectfully submitted,

/s/ Evan Mandel

Evan Mandel

cc:      Counsel of Record (via ECF)