

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

June 9, 2026

Honorable Arun Subramanian
United States District Judge
Southern District of New York

Re:    *Augenbaum v. Anson Investments Master Fund, LP, et al.*, No. 1:22-cv-0249-AS

Dear Judge Subramanian:

Defendants write to address comments made by Plaintiff during openings, which merit a mistrial, or at the very minimum a curative instruction and necessary rebuttal cross of Plaintiff.

## I.    A Mistrial Is Required in Light of Opening Statements

During opening argument, Plaintiff repeatedly violated the Court's rulings precluding Plaintiff from advancing arguments concerning unpled pump-and-dump or fraud theories (Defendants' MIL No. 4) or from discussing Defendants' profits before the jury (Defendants' MIL No. 12).  By repeatedly introducing these prohibited statements, Plaintiff prejudiced the jury and insinuated an intentional fraud case entirely different case than the Section 16(b) case he pled.

Plaintiff's impermissible statements are highly prejudicial and have infected the proceeding from the start, denying Defendants the opportunity for a fair trial.  Although the Court has already recognized that Plaintiff's comments require, at minimum, multiple curative instructions, *see* June 8 Tr. at 95:2–8, Defendants respectfully submit that such instructions would be insufficient to cure the prejudice created here, and that a mistrial is necessary.

Plaintiff's violation of the Court's motions in limine were not mere oversights or passing references, but repeated violations of the Court's orders.  Plaintiff's inflammatory and prohibited statements included:

- "[D]efendants made a huge profits flipping stock."  June 8 Tr. at 71.

- "[L]ike a pack of wolves, [Defendants] teamed up to take advantage of a children's cartoon company that was experiencing financial distress." *Id.*

- Section 16(b) is "designed to prevent corporate insiders from swindling ordinary investors by trading in the company stock" and "designed to prevent scams."  *Id.* at 72–73.

- "The defendants worked together to take everything they could from this company, and they ultimately made out like bandits."  *Id.* at 84:6–8.

- Defendants made "tons of money."  *Id.* at 85.

- Defendants "earned enormous profits by selling their stock on the market at break-neck

speed." *Id.*

- Defendants "worked collectively to get a children's cartoon company to sign a lopsided deal that earned them huge profits." *Id.* at 90.

"Courts have the power to declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Klein*, 582 F.2d 186, 190 (2d Cir. 1978) (citation omitted). Plaintiff's references to Defendants' profits were incurably prejudicial. The Court excluded evidence of the amount of Defendants' profits for a because it is irrelevant to the liability issue that the jury must decide, inflammatory, and tends to create bias against the Defendants. By repeatedly telling the jury that Defendants made "enormous profits," Plaintiff inflicted precisely the harm the Court sought to prevent. A curative instruction telling the jury that the amount of profits are irrelevant cannot "unring the bell" of the jury hearing those comments. *See United States v. Millan*, 817 F. Supp. 1086, 1090 (S.D.N.Y. 1993) (granting a mistrial when alternative measures cannot cure prejudice); *Koufakis v. Carvel,* 425 F.2d 892, 902 (2d Cir. 1970) (finding grounds for new trial when "[counsel's] themes throughout his opening statement, his remarks during the trial, and his summation was that the case was one which pitted a 'little' and virtuous man of modest resources against a powerful and unscrupulous [party] with untold wealth.... can be taken as suggesting that the defendant should respond in damages").

Similarly, Plaintiff's references to unpled "scams," "swindling," and other intentional dishonesty carries unique moral culpability that changes the case's entire tenor. Once that label attaches, Defendants are fighting not just the merits of the claims but also the perception that they are bad actors, in a case where intent is not an element of any claim.

Even if the Court might consider a curative instruction sufficient for a single, isolated violation, the cumulative effect of multiple violations of separate motions in limine during opening crosses the threshold into incurable prejudice and requires mistrial. The jury has been exposed to a narrative in which defendants engaged in "scams" to earn "enormous profits" like "bandits"—a combination that paints a vivid, deeply prejudicial picture that no curative instruction can realistically erase. *See Davidson v. Smith*, 9 F.3d 4, 7 (2d Cir. 1993) (curative instruction insufficient when inaccurate statements were elicited in flagrant disregard of Court's instructions).

The fact that these impermissible statements occurred in opening argument, misframing the case from the outset, undeniably compounds the prejudice to Defendants. *See Arizona v. Washington*, 434 U.S. 497, 512 (1978) ("An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal."); *see also United States v. Peng,* 602 F. Supp. 298 (S.D.N.Y.), *aff'd,* 766 F.2d 82 (2d Cir. 1985).

Now that Plaintiff has introduced these statements, Defendants have been indelibly prejudiced. The jury's repeated exposure to prejudicial information cannot be remedied through a limited instruction. *See United States v. Novak*, 918 F.2d 107, 110–11 (10th Cir. 1990) (finding court's limiting instruction was insufficient to "cure the extensive prejudice resulting from the prosecutor's opening statement"). The comments were so inflammatory "such as to impair gravely the calm and dispassionate consideration of the case by the jury." *Allstate Ins. Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988). Defendants accordingly ask for a mistrial.

In the alternative, Defendants ask at the very minimum that the Court issue the following curative instruction: *The issue you must decide is whether the defendants intentionally formed a group within the meaning of Section 16(b) of the Securities Exchange Act. Whether any party committed fraud is not a relevant issue in this case. You must therefore disregard any suggestion in Plaintiff's opening statement that Defendants committed fraud or "swindled" investors. The Court has previously ruled that any such suggestion is improper.*

## II.    Scope of Cross-Examination of Plaintiff

In any case, if the Court is not inclined to grant a mistrial, Defendants ask that the Court revisit the proper scope of cross-examination of Todd Augenbaum. Plaintiff filed motions *in limine* to preclude Defendants from referring to other litigations Mr. Augenbaum has initiated, as well as to Plaintiff's counsel's contingency fee. The Court granted both motions, while warning Plaintiff against opening the door to such questions. June 1 Pretrial Conference Tr. at 25:21–25, 28:15–19. Because Plaintiff's opening put these subjects at issue, Defendants respectfully request that the Court revisit its rulings and permit Defendants to elicit testimony in response.

Plaintiff's opening statement placed both his motivation for bringing this case and the identities of the parties who would benefit from a judgment in Plaintiff's favor squarely at issue. Plaintiff's counsel began by asking the jury, "Now, you may be wondering, who is Todd Augenbaum, the plaintiff, and what does he get out of all this?" June 8 Trial Tr. at 75:7– 8. He continued, "Todd has authorized this case, but he does not personally profit from this case. Any profits that the defendants have to turn over will go back to the cartoon company and not to Todd Augenbaum." *Id.* at 75:11–14. Plaintiff's counsel concluded this portion of the opening statement by promising that the jury would "hear from him [*i.e.* Mr. Augenbuam] why he chose to authorize the lawsuit." *Id.* at 75:14–15. These portions of Plaintiff's opening statement raise two key issues:

*First*, Plaintiff may of course testify regarding his motivation for authorizing this lawsuit, but Defendants respectfully request the right to cross-examine Plaintiff on the same subject. Defendants anticipate the testimony will show Mr. Augenbaum is a serial litigant who has served as plaintiff in more than a dozen securities cases filed by Mr. Abraham, whom Plaintiff's counsel identified as one of "the lawyers who uncovered this scheme." *Id.* at 71:20–24.

*Second*, Defendants request the opportunity to correct the record regarding the beneficiaries of any recovery. Counsel for Plaintiff told the jury Defendants were "a pack of wolves," who "teamed up to take advantage of a children's cartoon company that was experiencing financial distress." *Id.* at 71:7–9. He then reassured the jury that "[a]ny profits that the defendants have to turn over will go back to the cartoon company." *Id.* at 75:12–14. That is of course incorrect—Plaintiff's counsel (and potentially Plaintiff himself) are likely to receive a significant percentage of any judgment. Defendants would not elicit testimony or otherwise suggest that Plaintiff's counsel's fee arrangement is in any way inappropriate, but Defendants should be permitted to set the record straight given that Plaintiff has put this subject squarely at issue.

Respectfully submitted,

*/s/ Catherine Bratic*
Catherine Bratic

cc:    Counsel of Record (via ECF)

3