**MB**

**MANDEL BHANDARI** LLP

80 Pine Street | 33rd Floor | New York, NY | 10005 | T. (212) 269-5600 | F. (646) 964-6667 | www.mandelbhandari.com

June 9, 2026

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> **Re:** *Augenbaum v. Anson Investments Master Fund LP, et al.*
> **Case No.: 22-cv-249 (AS)**

Dear Judge Subramanian:

We are co-counsel for Plaintiff Todd Augenbaum in this action and write to address the admissibility of the inside information that Defendants possessed, *i.e.*, the fact that Genius was intentionally withholding positive press releases.[1]

**I.    Background**

The first thing that members of Defendants' group did was to ensure that Heyward strategically withheld and divulged information about the company in a manner that maximized their profits.  Beginning at least as early as September 4, 2019, Anson placed pressure on Genius not to issue press releases until Defendants invested so that Defendants could invest in Genius at the lowest possible price.  As Heyward admitted, "Amin [Nathoo of Anson] doesn[']t want [u]s doing any press or Amin will blow the deal."  PX-70.  Anson's pressure campaign worked.  On September 24, Heyward explains to Mr. Nathoo that "though we have not announced" positive events that have already occurred, "these items are already there, and we have not been touting them **because of the debt."**  PX-103 at 2 (emphasis added).

By February, Defendants' plan was that "[w]e will put out an additional release on the same day regarding Rainbow Rangers, and additional release of big news which we have not released heretofore for each of the following seven days.  We will also announce an investor conference call that will be in this overall press amount."  PX-255.  Later in February, Mr. Heyward discusses a proposed "press release announcing the upcoming deal" and confirms that "[w]e have a lot of exciting release[s] coming."  PX-259.

Mr. Heyward intentionally withheld positive news from the public before the March 11, 2020 PIPE.  PX-295 at 1.  Then, after the PIPE closed, Mr. Heyward began publicizing the news

---

[1] Unless noted otherwise, internal citations quotation marks, and footnotes have been omitted.

The Honorable Arun Subramanian
June 9, 2026
Page 2

that he had been intentionally withholding: "That [PIPE] financing has now been put in place, and I anticipate to announce it next Monday. At that time, we will begin to roll out a series of important press items. *Id.*

On March 17, Mr. Heyward told Brio to "[s]tandby" because "much more [news] coming in the coming days. Thank you for being a part of what we are building!" Ex. A. On March 25, 2020, Mr. Heyward admitted the same thing to Anson, explaining that "[w]e have a boatload of news… good news. We will be rolling it out continuously for the next few weeks." PX-439. In a separate communication Mr. Heyward again admitted, "[w]e have literally 20 stories backed up." PX-410 at 4.

Mr. Heyward delivered as promised. Between March 23, 2020 and August 10, 2020, Genius issued at least thirty-six press releases. ECF No 226-15 ¶ 87.

## II.     Discussion

First, Defendants argue that a Section 16(b) group is "analogous with conspiracy." ECF 439 (paraphrasing *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F. Supp. 2d 169, 176 (S.D.N.Y. 2000) ("it is well to bear in mind that the allegation that defendants are acting as a group is analogous to a charge of conspiracy.")) To the extent that is accurate, Defendants' inside information is indisputably admissible. "[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole[;] and in a case like the one before us, the duty of the jury was to look at the whole picture and not merely at the individual figures in it." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *see also Transnor (Bermuda) Ltd. v. BP N. Am. Petroleum*, 738 F. Supp. 1497, 1498 (S.D.N.Y. 1990) ("Where evidence even remotely tends to establish conspiracy, the trial court has wide discretion and must allow the jury to scrutinize the behavior of the defendant[s] in its entirety and understand the intent, motive, and method behind its activities."); *United States v. Ibrahim*, No. 07-CR-543 DLI SMG, 2011 WL 1868563, at *2 (E.D.N.Y. May 13, 2011) ("Even though motive does not bear directly on the elements of a charged crime, evidence offered to prove motive is commonly admitted."); *Sims v. Blot*, 354 F. App'x 504, 507 (2d Cir. 2009) (holding that plaintiff's presence in prison psychiatric unit was admissible to show intent).

Second, Defendants, SEG, and Heyward admitted to each other that they were engaged in wholly improper conduct – withholding material, non-public information. This suggests a very high level of trust and cooperation. If they were not operating as a group, the group members would have had no incentive to conceal each other's misconduct, and might even have attempted to use or sell the material non-public information. The fact that they relied on each other not to do so strongly indicates that there had been a meeting of the minds to profit together.

The Second Circuit has repeatedly held that the "mutual trust" between two persons supports a finding that the persons are conspiring with each other. *See United States v. Hawkins*, 547 F.3d 66, 76 (2d Cir. 2008); *United States v. Aleskerova*, 300 F.3d 286, 294 (2d Cir. 2002) ("That she was sent to view the art, was trusted to know its location, and was told the combination to the suitcase strongly suggests her full, knowing participation in the conspiracy.") In fact, prior

The Honorable Arun Subramanian
June 9, 2026
Page 3

criminal acts are admissible for the specific purpose of showing that co-conspirators shared a mutual trust.  *See United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) ("We have held repeatedly that it is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators."); *accord United States v. Williams-Dorsey*, No. 22-1360-CR, 2023 WL 8015469, at *7 (2d Cir. Nov. 20, 2023).  If historical criminal acts should be admitted to show parties' relationships, then the fact that the instant Defendants were concealing material information about Genius during the pendency of the group should certainly be admitted.

For all of these reasons, the Court should admit evidence of Defendants' possession of inside information.

Respectfully submitted,

/s/ Evan Mandel

Evan Mandel

cc:    Counsel of Record
       (via ECF)