**MB** **MANDEL BHANDARI** LLP

80 Pine Street | 33rd Floor | New York, NY | 10005 | T. (212) 269-5600 | F. (646) 964-6667 | www.mandelbhandari.com

June 10, 2026

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> Re:    *Augenbaum v. Anson Investments Master Fund LP, et al.*
>        <u>Case No.: 22-cv-249 (AS)</u>

Dear Judge Subramanian:

We are co-counsel for Plaintiff Todd Augenbaum in this action and write to address whether Mr. Heyward and SEG sufficiently coordinated with Defendants to trigger Rule 801(d)(2)(e) (hereinafter, "Rule 801").

Defendants argue that SEG and Mr. Heyward are counter-parties to the Defendants and, as a result, cannot coordinate with them under Rule 801. That is not correct.

As a factual matter, much of the evidence establishing that SEG and Mr. Heyward coordinated with Defendants is set forth in ECF 426. There is extensive additional evidence.

Although Mr. Heyward was an employee of Genius, he was also an investor in the March 2020 PIPE. So, he actually sat on the same side of the transaction as Defendants. Two central aspects of Defendants' coordination with respect to the PIPE were (1) making sure that the investors did not sell their shares and (2) guaranteeing that the Genius shareholders voted to approve the reduction in the price of their investment. Mr. Heyward signed both a lock-up agreement that prevented him from selling his shares and a voting agreement that required him to vote his shares in favor of the transaction. PX-363, PX-297. Further, Mr. Heyward worked with Defendants to recruit other shareholders to also sign voting agreements and vote in favor of the PIPE price reduction. PX-511. In addition, at Defendants' insistence, Mr. Heyward withheld positive news stories until after the PIPE was completed and shared this concealment with Defendants. *See* ECF 458.

As part of its fee, SEG received warrants from the March 2020 PIPE deal that were substantially similar to the ones received by investors. As a result, its incentives were perfectly aligned with those of the investors: it wanted the lowest possible exercise price on the warrants. Mr. Reda of SEG explained that Ryan Lane of Empery was participating in the PIPE because:

> he knows I own 7bil shares and work my ass off

The Honorable Arun Subramanian
June 10, 2026
Page 2

> i NEVER stop
> I'm 24/7
> he likes that
> my passion
> i'm all in….
> I'm not stopping
> wont stop
> cant stop

PX-166 at 2-3.  Like Mr. Heyward, SEG also worked to ensure that the shareholders voted to lower the warrant prices.  PX-511, PX-512.  And they worked closely with Mr. Heyward to time the issuance of press releases.  PX-410 at 4-5

Under these circumstances, there is no question that Rule 801 is satisfied.  *See Golden v. Terre Linda Corp.*, No. 95 C 0657, 1996 WL 426760, at *3, n.5 (N.D. Ill. July 26, 1996) ("Here, Plaintiffs provide ample independent evidence from which the Court can conclude that a conspiracy existed between Freeman and McDonald—the express agreement between Aldon and Terre Linda; the various letters written by Freeman in which he acknowledges his agreement with McDonald and recognizes that McDonald will solicit investors; the Ramey letter, prepared while Freeman was Chairman of the Board, promising investors that the stock would be registered; McDonald's mysterious disappearance, etc."); *United States v. Nelson*, 732 F.3d 504, 509-10, 516 (5th Cir. 2013) (Holding that attendance and discussion at dinner was sufficient to show that two individuals "engaged in a common scheme to recruit [ ] business to their towns"); *United States v. Gewin*, 471 F.3d 197, 198, 200 (D.C. Cir. 2006) (Rule 801(d)(2)(e) satisfied where participants engaged "in a common enterprise of stock promotion," including a pump-and-dump); *United States v. Ferris*, No. CR-18-159-D, 2019 WL 3935102, at *6 (W.D. Okla. Aug. 20, 2019) ("The United States demonstrated some community of purpose among Dr. Ferris, Dossey, and Isbell – for example, to "ensure better service and care for [PAH] patients" by having their Schedule II prescriptions filled exclusively at the Wellston Clinic Pharmacy and delivering those prescriptions to the patients' homes.")

Respectfully submitted,

/s/ Evan Mandel

Evan Mandel

cc:    Counsel of Record
       (via ECF)