# FRESHFIELDS

**New York**

3 World Trade Center
175 Greenwich Street
New York, NY  10007

**Andrew Gladstein**
**T**  +1 (212) 277-4000
**T**  +1 (212) 230-4685 (direct)
**E**  andrew.gladstein@freshfields.com

**freshfields.us**

<u>By ECF</u>

June 10, 2026

Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, New York 10007

**RE:    Augenbaum v. Anson Investments Master Fund, LP, et al., No. 1:22-cv-0249-AS**

Dear Judge Subramanian:

We represent the Empery Defendants and write in further support of Defendants' objection to PX-730, submitted to Chambers earlier this evening.  Respectfully, PX-730 should not be admitted under Fed. R. Evid. 402, Fed. R. Evid. 403, and this Court's ruling on Defendants' Motion in Limine #4.

PX-730 is a Bloomberg chat between Ryan Lane and Amin Nathoo that takes place on July 8, 2020, after Empery and Anson had sold out of their positions in Genius.  In the chat—the only documented communication between Lane and Nathoo regarding Genius, Lane congratulates Nathoo on the success of the March 2020 transaction and asks Nathoo a single question about the amount of his profits—reflecting that Lane previously had no idea what Anson made in the transaction.  Lane and Nathoo then reflect on a conversation that they had four years earlier in Las Vegas.

Relevant evidence is that which has any tendency to make a fact more or less likely than it would be without the evidence.  The fact must be of consequence in determining the issue in the case.  *United States v. Malka*, 602 F. Supp. 3d 510, 527 (S.D.N.Y. 2022).  Relevant evidence may still be excluded if its probative value is substantially outweighed by a danger of prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403; *see id.*  District courts have "broad discretion" to balance probative value against possible prejudice.  *United States v. Hsu*, 669 F.3d 112, 119 (2d. Cir. 2012).

The conversation in PX-730 is irrelevant and has little probative value in determining whether Defendants formed a group with respect to the transaction at the center of this case.  It did not occur within sufficient proximity to the March SPA, but in July 2020, months after the alleged group was formed.  At this time, both Mr. Lane and Mr. Nathoo no longer held their positions in Genius.  Additionally, the Las Vegas trip referenced in the chat happened four years prior to the March SPA.

*First,* that Mr. Nathoo and Mr. Lane were both at the same conference in Las Vegas four years prior to the transaction at issue is not probative of whether the Defendants formed a group during the relevant time period.  To the extent Plaintiff intends to offer this to show Defendants knew each other before the March SPA, Plaintiff has already established this fact through the testimony of Mr. Nathoo.  *See* June 9 Tr. 372:10-22.  Plaintiff has indicated they will call Mr. Lane

# FRESHFIELDS

as a witness, and will have an opportunity to ask him directly about his relationship with Mr. Nathoo.  Admitting this document will thus enable Plaintiff to infect the jury with improper insinuations based on otherwise unrelated facts.  *See United States v. Delvecchio*, 816 F.2d 859, 863–864 (2d Cir. 1987) (excluding evidence that defendants dined at expensive restaurants several months before the alleged conspiracy began based on irrelevance and prejudice.)

*Second*, there is a significant risk that the jury will be misled.  This document demonstrates only that Mr. Lane and Mr. Nathoo separately attended the same conference and spoke to each other, nothing more.  Indeed, as demonstrated by Mr. Nathoo's testimony, Tr. 415:13–416:6, 418:4–9, the conversation reflects that neither investor ever knew how much the other made from the Genius deal.  Rather, Plaintiff plainly seeks to play to the prejudices of the jury by focusing on the fact that Nathoo and Lane were in Las Vegas, Nevada together, likely to paint a picture of stereotypical hedge fund managers consistent with the theme of their opening statement.  Plaintiff should not be permitted to confuse the jury by exaggerating the nature of the Defendants' business relationship—nor should Plaintiff be able to imply that either Mr. Lane or Mr. Nathoo had significant knowledge of the other's investment.

Again, this chat is the only communication between Nathoo and Lane regarding Genius in this case.  Plaintiff's motivation to present it to the jury is to invite speculative and unwarranted inferences that Mr. Lane and Mr. Nathoo had a years-long, personal relationship during which they invented a scheme to invest in Genius.  Plaintiff should not be permitted to impart this baseless claim on the jury and PX-730 should be excluded.

Respectfully submitted,

*/s/ Andrew Gladstein*

Andrew Gladstein

cc:    All counsel (by ECF)