# FRESHFIELDS

<u>**Via ECF**</u>

June 11, 2026

Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, New York 10007

**Washington, DC**

700 13th Street, NW, 10th Floor
Washington, DC  20005

**Jacob Johnston**
**T**  +1 (202) 777-4500
**T**  +1 (202) 777-4554 (direct)
**E**  jacob.johnston@freshfields.com

**freshfields.us**

Re:    *Augenbaum v. Anson Investments Master Fund, LP, et al.*, No. 1:22-cv-0249-AS

Dear Judge Subramanian:

We write on behalf of Empery in opposition to Plaintiff's June 10, 2026 letter regarding the application of Rule 801(d)(2)(E) of the Federal Rules of Evidence to statements made by Andy Heyward and principles of SEG.  ECF No. 460 (***Letter***).

*First,* Plaintiff relies on the wrong standard. Rule 801(d)(2)(E) applies only to statements made by a "*coconspirator* during and in furtherance of the conspiracy."  Fed. R. Evid. 801 (emphasis added).  It does not—as Plaintiff suggests—apply to parties who "coordinate."  Letter at 1.  Rather, the "extension of the coconspirator exception to lawful joint ventures is 'based on concepts of agency and partnership law.'" *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, 636 F. Supp. 3d 144, 153 (D.D.C. 2022).

*Second*, neither Heyward nor SEG conspired with Defendants. Plaintiff's assertion that Heyward "sat on the same side of the transaction as Defendants" is incorrect.  Letter at 1.  He was heavily invested in Genius prior to the PIPE (personally and financially), and he was subject to a lock-up agreement.  Plaintiff's citation to PX-511 and to ECF 458 does not change the analysis.  In PX-511, Heyward appears to be working towards a shareholder vote endorsing the March PIPE, which makes perfect sense: a successful shareholder vote would facilitate material cash inflows.  Defendants have addressed the arguments in ECF 458 at ECF 462 and will not repeat the same points here.  There is therefore no evidence in Plaintiff's letter (or elsewhere) that Heyward "conspired" with Defendants or did anything other than attempt to fulfill Genius's contractual obligation to secure shareholder approval for the March PIPE.

SEG was agent to Genius, Defendants' contractual counterparty.  *See* ECF No. 451.  Its incentives were not, as Plaintiff asserts, "perfectly aligned" with Defendants—*e.g.* SEG's compensation was predicated on total deal size while Defendants were incentivized to limit their exposure to a potentially risky investment.  But even if they were, that would not make SEG a "coconspirator."  PX-166 does not suggest otherwise.  Plaintiff mischaracterizes the cited portion of that document, which is dated January 6, 2020 (before the PIPE term sheet was signed) and refers to an unrelated deal involving another issuer.  Nor is it clear how correspondence between SEG and Heyward regarding the shareholder vote or press releases has any relevance to any conspiracy between SEG and Defendants.

# FRESHFIELDS

None of the cases Plaintiff cites affects this analysis. Neither *United States v. Gewin*, 471 F.3d 197 (D.C. Cir. 2006), nor *United States v. Nelson*, 732 F.3d 504 (5th Cir. 2013), involves contractual counterparties. The purported conspirators in *United States v. Ferris*, No. CR-18-159-D, 2019 WL 3935102 (W.D. Okla. Aug. 20, 2019), were a doctor, the doctor's employer, and the owner of a pharmacy in the same building as a related medical clinic. The conspirators in *Golden v. Terre Linda Corp.*, No. 95 C 0657, 1996 WL 426760 (N.D. Ill. July 26, 1996), do appear to have been parties to at least one contract, but the co-conspiracy involved a broad array of other conduct.

Here, there is neither evidence of a conspiracy between Defendants on the one hand and Heyward or SEG on the other, nor a clear statement of what that conspiracy would be other than to negotiate and close a transaction. That is simply not enough to trigger Rule 801(d)(2)(E). *See, e.g.*, *Fairholme Funds, Inc.*, 636 F. Supp. 3d at 153–54 ("Agreeing to a contract is not the same thing as entering an agency or partnership relationship, and it would make little sense to extend the rule further, to any statements made by a party's contractual counterparty made in furtherance of negotiating a contract between them."); *Pac. Steel Grp. v. Com. Metals Co.*, No. 20-CV-07683-HSG, 2024 WL 4546317, at *2 (N.D. Cal. Oct. 22, 2024) ("The Court has not found any case in which counterparties to an arms-length commercial contract like the agreement here have been found to be agents or joint venturers of one another simply by virtue of the agreement."). Plaintiff has not cited any authority suggesting an exception to this general principle when an agent for one of the negotiating parties stands to receive a commission, and Defendant is aware of none.

For the foregoing reasons, Defendants respectfully request that Plaintiff's letter motion be denied.

Respectfully submitted,

*/s/ Jacob Johnston*

Jacob Johnston

cc: All Counsel of Record via ECF