**MB**

**MANDEL BHANDARI** LLP

80 Pine Street | 33rd Floor | New York, NY | 10005 | T. (212) 269-5600 | F. (646) 964-6667 | www.mandelbhandari.com

June 11, 2026

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> **Re:** ***Augenbaum v. Anson Investments Master Fund LP, et al.***
> <u>**Case No.: 22-cv-249 (AS)**</u>

Dear Judge Subramanian:

We are co-counsel for Plaintiff Todd Augenbaum in this action. We write concerning the testimony of Mr. Reda, who is expected to testify either late tomorrow afternoon or on Monday. We write to request that Plaintiff's counsel proceed by leading question in Mr. Reda's examination.

In light of the Court's ruling today concerning Mr. Heyward, we conferred with counsel for Defendants who indicated that they would object to any leading questions of Mr. Reda. We believe that such objections should be overruled given Mr. Reda's close alignment with Defendants with respect to the issues and occurrences of this case.

FRE 611(c) controls the questioning of witnesses at trial. It provides:

> (c)    Leading Questions. Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:
>
> (1)    on cross-examination; and
>
> (2)    when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

"The term 'witness identified with an adverse party' is intended to apply broadly to an identification based upon employment by the party or by virtue of a demonstrated connection to an opposing party." *United States v. Patel*, Case No. 3:21-CR-220 (VAB), 2023 WL 2643815, at *29 (D. Conn. Mar. 27, 2023). For example, "a witness is identified with an adverse party, for purposes of Rule 611, when the witness is 'an employee, agent, friend, or relative of an adverse party.'" *Keefe v. LendUS, LLC*, 659 F. Supp. 3d 196, 202 (D.N.H. 2023). While the categories often overlap, "a hostile witness is one who is evasive or uncooperative during examination, or a

The Honorable Arun Subramanian
June 11, 2026
Page 2

person who sympathizes with an opponent's case." *Bencosme v. Metro-N. R.R. Co.*, Case No. 3:22-CV-01430, 2024 WL 4198325, at *3 (D. Conn. Sept. 16, 2024).

There is ample evidence in the record that Mr. Reda qualifies both as "a witness identified with an adverse party" and a "hostile witness" by virtue of his role in the facts giving rise to this case, his business interest in the outcome, and his close personal friendship with Defendants. In addition, the identification of Mr. Reda as a witness by Defendants and the lack of prejudice also weigh in favor of leading questioning.

***First***, as the court has already found, that there is evidence that SEG played a significant role in enabling the precise conduct that would give rise to Defendants' liability. In particular, the Court held that "there is a sufficient factual predicate to say that there was coordinated action here in connection with the transactions at issue in this case." June 5, 2026 Conference Transcript at 13. On the basis of this holding, the Court has admitted, pursuant to FRE 801(d)(2)(E), a series of documents "involving SEG or Mr. Heyward that are in furtherance of those transactions." *Id.* While SEG itself is not a named defendant, SEG is thoroughly involved in Defendants' conduct and stands accused of acting as a go-between for coordinating a 16(b) group. As the owner of SEG, Mr. Reda's interest in avoiding that determination is wholly aligned with Defendants and unambiguously in opposition to the Plaintiff.

***Second***, SEG's strong business interest in the outcome of the case was admitted by Mr. Reda's business partner, Jonathan Schecter in his deposition. When asked if the case was bad for his business, Schecter answered, first evasively, "It would be better for the industry if the defendants were found not liable" and then admitted on further questioning that his personal business would also be affected. (ECF 232-16 (Deposition Transcript of Jonathan Schecter, dated October 22, 2024 ("Schecter Tr.") at 353:19-354:3.) He further claimed that, if an issuer's CEO is found to be part of a Section 16(b) group alongside investors – a claim Plaintiffs make in this case – "[i]t would be impossible to conduct my business." (*Id.* at 42:2-11.) In addition, Schecter testified that investors expect to have the same deal terms as each other, and "I would never be able to get a deal done with more than one investor" if investors had different deal terms. (*Id.* at 55:9-57:9.) With respect to voting agreements – which are explicitly prohibited by Section 16(b) in many cases – Schecter claimed that it is "imperative" that key shareholders signed one here in order to support Defendants' transactions. (*Id.* at 268:10-269:5.)

***Third***, the record is replete with references to Mr. Reda's longstanding personal relationships with agents of the Defendants. *See e.g.*, PX 27 ("let's make $x on ICNB and then celebrate the newfound wealth with a huge party somewhere"); PX 67 ("You know I love and respect you... Let's do sushi and keep an open mind"); PX 111 ("Shaye … Love you either way"); PX 370 ("Thank you Ryan!!!! We Couldn't have done this one without you You're a great partner and an even better friend."). As a "friend" of several of the Defendants, Mr. Reda "is identified with an adverse party" for the purposes of Rule 611. *Keefe*, 659 F. Supp. 3d at 202.

***Fourth***, Mr. Reda also appears on Defendants' witness list. If Defendants intend to elicit testimony from Mr. Reda beyond the scope of the specific questioning by Plaintiff (which has been Defendants' position for witnesses that appear on both lists) Plaintiff would be entitled to

The Honorable Arun Subramanian
June 11, 2026
Page 3

cross examine on any topics or questioning raised by Defendants.  The Court could direct that Plaintiff save any "leading" questions for "redirect" examination, but this would likely result in inefficient duplication of questioning for key topics likely to be covered by Plaintiff and Defendants.  Plaintiff submits that this elevates form over substance to no obvious benefit.

*Fifth*, Defendants cannot conceivably claim to be prejudiced by Plaintiff's cross examination of Mr. Reda.  The allowable questions for their own examinations of Mr. Reda are unaffected by Plaintiff's questioning.    And the harm typically associated with leading questions—that an attorney will vouch for a witnesses' testimony or use a sympathetic witness as a mouthpiece for the attorney—is not present here, where Mr. Reda has no connection to Plaintiff or his counsel and is clearly adverse to their interests.

Respectfully submitted,

/s/ Evan Mandel

Evan Mandel

cc:    Counsel of Record
       (via ECF)