**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TODD AUGENBAUM,

Plaintiff,

v.

BRIO CAPITAL MASTER FUND LTD.; BRIO SELECT OPPORTUNITIES FUND, LP; EMPERY ASSET MASTER, LTD.; EMPERY DEBT OPPORTUNITY FUND, LP; EMPERY TAX EFFICIENT, LP; EMPERY ASSET MANAGEMENT, LP,

Defendants,

-and-

KARTOON STUDIOS, INC.,

Nominal Defendant.

Civil Action No. 1:22-cv-00249-AS

**ORAL ARGUMENT REQUESTED**

**EMPERY'S MEMORANDUM OF LAW IN**
**OPPOSITION TO PLAINTIFF'S POST-TRIAL MOTIONS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. THE JURY WAS REASONABLE TO CONCLUDE THAT PLAINTIFF FAILED TO MEET HIS BURDEN OF PROVING A GROUP ..... 4

A. The Jury Had a Sufficient Basis to Conclude that Pre-Closing Negotiations Did Not Reflect an Intentional Agreement ..... 4

B. The Jury Had a Sufficient Basis to Reject Plaintiff's Post-Transaction Conduct Theory ..... 7

C. The Jury Had a Sufficient Basis to Conclude that Empery and Heyward Were Not a Group ..... 9

II. PLAINTIFF IS NOT ENTITLED TO A NEW TRIAL UNDER RULE 59 ..... 10

A. Plaintiff Is Not Entitled to a New Trial Merely Because He Disagrees with the Jury's Verdict ..... 11

B. Exclusion of "Pump and Dump" Evidence Was Proper and Is Not Ground for a New Trial ..... 11

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ABKCO Music, Inc. v. Sagan*,
50 F.4th 309 (2d Cir. 2022) ....................10

*Carroll v. Cnty. of Monroe*,
712 F.3d 649 (2d Cir. 2013)....................3

*Cash v. Cnty. of Erie*,
654 F.3d 324 (2d Cir. 2011)....................3

*Galdieri-Ambrosini v. Nat'l. Realty & Dev. Corp.*,
136 F.3d 276 (2d Cir. 1998)....................5

*Huang v. Ohio State U.*,
116 F.4th 541 (6th Cir. 2024) ....................13

*ING Glob. v. UPS Oasis Supply Corp.*,
757 F.3d 92 (2d Cir. 2014)....................10

*Lowinger v. Morgan Stanley & Co. LLC.*,
841 F.3d 122 (2d Cir. 2016)....................8, 9

*Mallis v. Bankers Tr. Co.*,
717 F.2d 683 (2d Cir. 1983)....................11

*Meloff v. N.Y. Life Ins. Co.*,
240 F.3d 138 (2d Cir. 2001)....................3

*Newton v. City of New York*,
171 F. Supp. 3d 156 (S.D.N.Y. 2016)....................10

*Raedle v. Credit Agricole Indosuez*,
670 F.3d 411 (2d Cir. 2012)....................10, 11

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)....................3, 9

*Slack v. Cnty. of Suffolk*,
50 F. Supp. 3d 254 (E.D.N.Y. 2014) ....................10

*Valentin v. Cnty. of Suffolk*,
342 Fed. App'x 661 (2d Cir. 2009)....................13

*Warren v. Pataki*,
823 F.3d 125 (2d Cir. 2016)....................3

**Cases** **Page(s)**

*Yates v. Evatt*,
500 U.S. 391 (1991)....................10

**Statutes**

Fed. R. Civ. P. 61....................10–11

Defendants Empery Asset Master, Ltd., Empery Debt Opportunity Fund, LP, Empery Tax Efficient, LP, and Empery Asset Management, LP (collectively, "Empery") respectfully submit this Memorandum of Law in Opposition to Plaintiff Todd Augenbaum's Post-Trial Motions for judgment as a matter of law under the Federal Rules of Civil Procedure (the "Rules") 50(b) and 59, and either conditionally or in the alternative for a new trial (the "Motion"). ECF No. 515.[1]

**PRELIMINARY STATEMENT**

For four years, Plaintiff contended that the determination of whether Empery and other investors formed a "group" by participating in certain 2020 financing transactions with Genius[2] was a question of fact that must be left for a jury, and this Court ultimately agreed. The jury heard the evidence. It then spoke unanimously. Plaintiff failed to meet his burden of proving that Empery joined a Section 13(d) group in connection with its acquisition of Genius securities. Now, having lost on the issue, Plaintiff asks this Court to take it out of the jury's hands, and to dismiss the jury's assessment of the credibility of the witnesses and the strength of the evidence. There is no basis to do so.

Indeed, as to Empery, this was not a close case. The jury heard substantial, unrebutted evidence that Empery invested in Genius independently, irrespective of the views or desires of any other participating investor. It also saw contemporaneous evidence reflecting Empery's insistence

---

[1] Empery incorporates by reference the arguments made in Defendants' Omnibus Memorandum of Law in Support of their Motion for Summary Judgment, dated January 15, 2025, ECF No. 233, Empery's Memorandum of Law in Support of its Motion for Summary Judgment, dated January 15, 2025, ECF No. 242, and Empery's Memorandum of Law in Support of its Motion for Judgment as a Matter of Law, dated June 18, 2026, ECF No. 487.

[2] Capitalized terms have the meanings ascribed in Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, dated January 15, 2025. ECF No. 234. Citations to "Tr." refer to the transcripts of the jury trial conducted between June 8, 2026 and June 18, 2026.

that it was not acting as a group with any other investor. At the conclusion of the case, in the few hours it took the jury to deliberate, the jury asked not one question about Empery.

That result is unsurprising. Plaintiff bore the burden of proving his case. Yet, not a single witness called at trial testified that Empery intended to be part of a group, that they perceived Empery to be part of a group, or even that Empery was agreeable to the demands of any other Defendant. Rather, Empery was consistently described as the most fiercely independent, the most sophisticated and experienced, and the most indifferent investor to the views of others participating in and negotiating the transactions. Each of the three Empery witnesses called to the stand testified unequivocally that they did not intend to form a group with any other Defendant.

The documentary evidence presented to the jury told the same story. Empery's principal refused to participate in any investment with Genius for seven months, telling SEG in emails presented to the jury that there was "[n]o chance" of Empery signings on, and that he was "[n]ot investing with a dirtbag CEO named H[e]yward." When Empery finally agreed to look at the March 2020 Transaction, the evidence reflects that it waited until minutes before signing the March 11 SPA to make its investment decision. Just days earlier, Empery's General Counsel demanded that the Company remove Empery from a schedule of investors because Empery was "not acting as a group with any other investors." And ten days after signing, upon being presented with a follow-on offering led by its purported co-conspirator, Anson, Empery's principal labeled that offering "one of the dumbest things" he had ever heard.

The absence of evidence that could support a contrary conclusion also cannot be ignored. Apart from a handful of communications from Empery's General Counsel providing Empery's input on the transaction documents to the lawyer "holding the pen," (*i.e.*, parallel investment activity), the record was devoid of any communications or meetings between Empery and any

other investor, much less evidence that could support a finding that Empery intentionally combined with those investors in furtherance of its investment in Genius.

In short, the jury had all of the basis in the world to conclude that Empery did not form a group. There is no basis now to disturb its finding. Plaintiff has not raised a valid basis for judgment as a matter of law or a new trial. His Motion should be denied in its entirety.

## LEGAL STANDARD

Judgment as a matter of law is an extraordinary remedy that "should be granted cautiously and sparingly." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001). Rule 50 provides that a motion for judgment as a matter of law will be granted only if there was no "legally sufficient evidentiary basis" for the jury to find for the nonmoving party. *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). Where, as here, the jury "has deliberated" and "returned its verdict" for the nonmovant, the party moving under Rule 50 faces a "particularly heavy burden." *Carroll v. Cnty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013). The Court may "set aside a verdict 'only if there exists such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result of sheer surmises or conjecture…." *Id.* In evaluating the question, the Court is "not [to] make credibility determinations or weigh the evidence," and must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions"); *accord Warren v. Pataki*, 823 F.3d 125, 139 (2d Cir. 2016) (verdict stands unless the evidence would have "compelled" a reasonable juror to accept movant's view).

# ARGUMENT

## I. THE JURY WAS REASONABLE TO CONCLUDE THAT PLAINTIFF FAILED TO MEET HIS BURDEN OF PROVING A GROUP

The Court is intimately familiar with the "group" standard charged to the jury in this case. After motion practice, supplemental briefing, and numerous arguments, the Court instructed the jury that, in order to find the existence of a group, it must find that Empery "intentionally agree[d] to act together for the purpose of acquiring, holding, voting, or disposing of the issuer's securities." Tr. 1811:12–16 (charge). The Court's instruction distinguished between parallel investment activity in commonplace multiple-investor transactions, and conduct that reflected a "combin[ation] in furtherance of a common objective." *Id.* at 1811:16–1812:9 (charge). The Court told the jury that its determination of a group "need not be formal or written, and it may be proved by direct or circumstantial evidence. It may be express or implied from the parties' words, conduct, relationships, or coordinated actions. Parties can agree to combine . . . even though they might not always march in lockstep." *Id.* at 1811:16–22 (charge).

As explained below, the jury had more than sufficient basis to conclude that Empery engaged in independent but parallel investments in Genius and was therefore, under the Court's unambiguous charge, *not* a group.

### A. The Jury Had a Sufficient Basis to Conclude that Pre-Closing Negotiations Did Not Reflect an Intentional Agreement

Plaintiff first attacks the jury's verdict on the basis that Empery's counsel engaged in "substantive negotiations" of the transaction documents and provided Empery's markups, including the removal of registration rights from the transaction, to outside counsel for the lead investor, Anson. Mot. at 10. According to Plaintiff, because Empery wanted "to be part of the transaction proposed by Anson so long as [Empery] could get the terms that Empery demand[ed],"

the jury had no basis to conclude anything other than that Empery intended to combine with the other investors. *Id.* at 9. The Court instructed the jury otherwise:

> [C]ommunications among investors or their lawyers, or investors' awareness of each other's activities without an intentional agreement to act together in furtherance of a common objective of acquiring, holding, voting, or disposing of the issuer's securities, is insufficient to form a group. Without more, a group is not formed by parallel, but independent, investment decisions.

Tr. 1812:3–9 (charge).

Because the jury was permitted to conclude that the evidence of Empery's pre-investment communications did not rise to the level of proof necessary to deem it a group member, the Court must defer to the jury's evidentiary determination. *Galdieri-Ambrosini v. Nat'l. Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) ("the court must give deference to all credibility determinations and reasonable inferences of the jury . . ."). That is particularly true where *every fact witness in the case* testified that there was no intentional agreement of any kind. *See, e.g.*, Tr. 860:22–5 (Lane); 1273:1–3 (Hoe); 1566:1–14 (Director); 387:12–19 (Nathoo); 828:21–23 (Hirsch); 1338:8–10 (Schechter).

Indeed, the jury heard that Empery resisted any deal with Genius for months. Lane told SEG there was "[n]o chance" he would participate in a transaction in August 2019, Tr. 850:2–6 (Lane), and that he was unwilling to commit "a single dollar" just one month later. *Id.* at 850:18–851:3 (Lane); 852:17–21 (Lane). What ultimately drew Empery in were the terms presented in the January 2020 term sheet. Lane testified that those terms "provided downside protection. We had security in assets of the company . . . and there was also good upside. So it was a good risk/reward." *Id.* at 854:13–19 (Lane). Lane, his co-founder, Martin Hoe, and their General Counsel, Brett Director, adamantly denied any intention to act with any other investor. *Id.* at 992:8–10 (Lane); 1273:1–3 (Hoe); 1531:11–20 (Director). Put differently, Plaintiff implies that

each of these witnesses lied under oath regarding their intent. The law does not permit the Court on a Rule 50 motion to do the same.

When Empery did become involved, after receiving an executed term sheet between the Company and the lead investor, Anson, Empery's General Counsel, Brett Director, provided Anson's outside counsel, Rob Charron, with Empery's markups and comments to the transaction documents. Tr. 960:10–17 (Lane). As counsel to the lead investor, Charron was "holding the pen" on the documents. *Id.* at 962:23–963:1 (Lane). Each of Empery's three witnesses at trial, Anson's witness, both bankers who negotiated the transaction for the Company, and even Plaintiff's own expert testified that such communications were standard practice in a parallel transaction and necessary for one investor's counsel to communicate its demands for participation to the other's counsel. *See e.g.*, *id.* at 959:12–15 (Lane); 1273:4–9 (Hoe); 1533:23–25 (Director); 608:24–609:10 (Nathoo); 1152:1–5 (Reda); 1303:3–7 (Schechter); 1235:25–1236:10 (Holmes). There was no testimony—none—that these communications reflected an intent to agree to act together in acquiring Genius securities.

Plaintiff focuses on Empery's demand during these negotiations for the removal of registration rights. He argues that the jury was required to conclude that Empery became part of a group with the other investors upon their acquiescence to that demand. Mot. at 11 ("It is undisputed that, by agreeing not to register the shares, Defendants were agreeing that absent future action the shares could not be sold on the open market for six months."). This argument is: (i) no different than any other demand made by any other investor for an investment term in a transaction document, and (ii) entirely circular.[3] If the *exclusion* of registration rights creates an agreement to

[3] Lane testified that registering this convertible structure was close to futile because the probability of a registration statement "actually go[ing] effective in less than six months, was

hold the stock for "six months," as Plaintiff suggests, the *inclusion* of registration rights creates an agreement to facilitate the sale of the stock within six months. Put differently, under Plaintiff's theory, any negotiation around registration rights, in any direction, would constitute an agreement with respect to holding or selling the security. That cannot be the case.

### B. The Jury Had a Sufficient Basis to Reject Plaintiff's Post-Transaction Conduct Theory

Plaintiff next contends that he is entitled to judgment as a matter of law because Anson, Brio, and Empery "continued coordinating" after the March 2020 Transaction closed by participating in various registered direct offerings. Mot. at 11. According to Plaintiff, the mere fact of these subsequent investments establishes a group. *Id.* at 14. That does not follow, and the jury had a sound basis to conclude otherwise.

Empery refused the March 22, 2020 Registered Direct Offering outright. Tr. 982:2–25 (Lane). Ten days after the March 2020 Transaction, Lane refused to join a registered direct transaction led by one of the supposed "group" members, calling it "one of the dumbest things I've ever heard[,]" *id.* at 982:2–25 (Lane), and saying that Empery instead would pass, *id.* at 983:3–7 (Lane). Even though Empery had no burden, conduct of this kind is irreconcilable with membership in a group, and it alone gave the jury a reasonable basis to find in Empery's favor.

Plaintiff's fallback that "no provision of the SPA allows them to invest cash for registered direct offerings," Mot. at 11, is wrong. The March 11 SPA prevented Genius from entering into

---

close to zero." Tr. 869:11–14 (Lane). Director said the same thing, that SEC review "was likely to take a long time and be complicated," and waiting six months "was just the easier path forward." *Id.* at 1535:6–1535:12 (Director). Empery did not do any "convincing." Lane testified "[t]hrough my counsel, we made our demands . . . one of our demands was to remove registration[,]" *id.* at 872:13–18 (Lane), and "[m]y counsel communicated that to Anson's attorney[,]" *id.* at 875:14–15 (Lane). Director explained that he routed the comment to Anson's counsel "[b]ecause he was the one that was in contact with the issuer's counsel." *Id.* at 1236:2–10 (Director).

any future transactions while the notes were outstanding without the consent of those investors. PX-387 § 4(o)(ii). Nothing in that provision compels participation by the supposed group members; investors were free to decline—as Empery did. And, when Empery did decide to invest, the record supports that it did so independently. Tr. 991:22–24 (Lane) ("Q. Did Empery coordinate its decision to participate in any of those transactions with any other investor? A. Absolutely not."). In any event, a company's decision to look to existing investors for future financing is standard market practice, given the plain efficiencies. *Id.* at 623:2–5 (Nathoo) ("In my experience, the next investment is shown to the existing investors first. Q. That's just . . . how it's done? A. That's how it's done.").

Nor does the fact that Anson, Brio, and Empery each entered into leak-out agreements, Mot. at 12, compel judgment in Plaintiff's favor. The leak-outs affirmatively negate group conduct, as they were negotiated and signed individually between those investors and Genius. Tr. 326:21–22 (Holmes); 817:7–17 (Hirsch); 498:20–22 (Nathoo); 987:4–17 (Lane); 1559:17–1560:1 (Director). As Plaintiff's own expert testified, the leak-outs "put a cap on how many shares are dumped onto the market at any moment in time[,]" *id.* at 326:7–8 (Holmes), and that it was a "win-win" for Genius, *id.* at 326:13–14 (Holmes). None required Defendants to sell their shares at any particular time or to sell at all. *See, e.g.*, *id.* at 407:17–24 (Nathoo); 987:11–20 (Lane). The structure of these agreements is the opposite of coordination, and Empery's witnesses once again testified that they had no intent to act together with any other shareholder by executing its own Leak-Out Agreements with the Company.

In *Lowinger v. Morgan Stanley & Co. LLC*, the Second Circuit recognized that lock-up agreements are "common" and that "such an agreement, without more" does not form a group under Section 13(d). 841 F.3d 122, 130–31 (2d Cir. 2016). That *Lowinger* was decided in the IPO

context, Mot. at 17, does not render it inapplicable. Its holding was based on the purpose of 13(d): "to alert public investors about possible changes in control . . ." *Lowinger*, 841 F.3d at 132. The court explained that this is why the inquiry focuses on a group of investors that seeks to "pool their voting or other interests" to "evad[e]" Section 13(d)'s requirements. *Id.* That same reasoning is applicable here, and the jury was justified in concluding on the trial record that the Leak-Out agreements do not reflect an intent to form a group.

### C. The Jury Had a Sufficient Basis to Conclude that Empery and Heyward Were Not a Group

Plaintiff suggests that the so-called "collective procurement" of Heyward's Voting and Lock-Up Agreements provides a basis to set aside the jury's verdict. Mot. at 17. But as Plaintiff concedes, Defendants were not a party to those agreements and never entered into a "formal, written, bilateral agreement" with Heyward, including because Empery's General Counsel, Brett Director "specifically cautioned them against doing so." *Id.* at 18 (citing Tr. 1530:11–1531:16 (Director)). Nor does Plaintiff point to any evidence that Empery and Heyward in fact coordinated their investments in Genius, and certainly not intentionally. These admissions undermine Plaintiff's theory, and foreclose relief on his current Motion. *See Reeves*, 530 U.S. at 136 (jury may "reject [Plaintiff's] explanation" when "enough evidence" is introduced).

Plaintiff's argument regardless fails as basis for judgment as a matter of law because it rests on a theory no court has ever endorsed. Plaintiff cites no decision holding that a CEO's parallel investment in his own company creates a 'group' with other investors—nor could he. This is unsurprising, since, as Plaintiff's nowhere disputes, CEOs and funds owe distinct fiduciary obligations—the former to maximize long-term shareholder value, the latter to maximize investor profit. It is, moreover, commonplace for insiders to participate in PIPE transactions, particularly with small, thinly capitalized companies, as Heyward previously did on at least three prior

occasions for Genius. *See* ECF No. 233 at 19–20. For these reasons, this argument does not warrant setting aside the jury's verdict.

## II. PLAINTIFF IS NOT ENTITLED TO A NEW TRIAL UNDER RULE 59

New trial motions "ordinarily should be denied unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 324 (2d Cir. 2022) (cleaned up). A verdict "should not be disturbed except in an egregious case[.]" *ING Glob. v. UPS Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014); *see also Slack v. Cnty. of Suffolk*, 50 F. Supp. 3d 254, 263 (E.D.N.Y. 2014) ("The general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; [or] (3) substantial errors occurred . . .").

As Plaintiff's own authorities hold, a court "should rarely disturb a jury's evaluation of a witness's credibility, . . . and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury[.]" *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) (cleaned up); *see also* Mot. at 20–21 (quoting *Raedle*). Given the "high degree of deference accorded to the jury's evaluation of witness credibility . . . jury verdicts should be disturbed with great infrequency." *Raedle*, 670 F.3d at 418. Where, as here, the verdict "is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Id.* at 418–19.

Evidentiary rulings warrant a new trial only for "substantial errors," *Newton v. City of New York*, 171 F. Supp. 3d 156, 164 (S.D.N.Y. 2016), and any such error is harmless if the excluded proof was "unimportant in relation to everything else the jury considered." *Yates v. Evatt*, 500 U.S. 391, 403 (1991); *see also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in

admitting or excluding evidence . . . is ground for granting a new trial, [or] for setting aside a verdict . . .”).

**A. Plaintiff Is Not Entitled to a New Trial Merely Because He Disagrees with the Jury’s Verdict**

Plaintiff first incorporates his arguments from his Rule 50(b) motion and argues that “the evidence elicited at trial indisputably establishes” a group and “unambiguously supports” a new trial. Mot. at 21. As Empery has shown, *supra* at 5–7, 9–10, Plaintiff’s characterization plainly distorts the record and ignores substantial evidence to the contrary. In any case, Plaintiff nowhere even attempts to identify the seriously erroneous result or the miscarriage of justice that Rule 59 requires. Mere “disagreement with the jury’s verdict is not sufficient reason to grant a new trial.” *Mallis v. Bankers Tr. Co.*, 717 F.2d 683, 691 (2d Cir. 1983). That is particularly true here, where the verdict was predicated on the jury’s assessment of Defendants’ intent and credibility. *Raedle*, 670 F.3d at 418–19; *accord ING Glob.*, 757 F.3d at 99.

**B. Exclusion of “Pump and Dump” Evidence Was Proper and Is Not Ground for a New Trial**

Plaintiff argues the Court erred by excluding his “pump and dump” theory—that Defendants profited from Genius withholding press releases—while allowing Defendants to argue their financing rescued the company. Mot. at 1–2, 20–25. That argument fails for multiple reasons.

*First*, the “pump and dump” evidence was properly excluded. The Court concluded that Plaintiff failed to provide “some connecting of the dots” showing Defendants were involved with the allegedly withheld press releases and that the supposed scheme bore on the group issue. June 1, 2026 Pretrial Conf. Tr. 33:21–34:16. Notwithstanding the absence of any such evidence connecting the press releases to Empery, Plaintiff only ever pleaded a strict-liability Section 16(b) case, not a fraud case. Am. Compl., ECF No. 105 ¶¶ 100–106. No Rule 10b-5 claim was pleaded

against Empery, and Plaintiff's counsel disclaimed any fraud theory at trial. Tr. 1688:3–5. In any event, the Court only conditionally excluded that evidence on motion in limine and properly reaffirmed its exclusion mid-trial because Plaintiff had still failed to make the required showing. Tr. 448:11–449:13.

Moreover, to the extent Plaintiff argues that he should have been permitted to introduce evidence of Defendants' profits gained from the supposed scheme because they were relevant to Defendants' motives, Mot. at 22–23, that argument fails, too. The Court granted Empery's motion in limine with respect to "disclosure of the numbers concerning disgorgement" but denied it "as to the relevant evidence concerning profits and the concerns about profits[,]" permitting the evidence "[t]o the extent a nexus to the group formation and group existence can be shown" by Plaintiff. June 1, 2026 Pretrial Conf. Tr. 48:10–19. Plaintiff's argument that he was prevented from countering Defendants' narrative thus rings hollow. He was free throughout trial to argue that profit motivated Defendants to act together, and did just that, repeatedly:

- *in opening*, Tr. 81:19–24 (opening) ("Now, Anson and Brio were already cutting a really hard deal against the company; but they wanted Empery in the group because they knew that if Empery was part of the group . . the ultimate terms would be that much . . . more lucrative to them.");

- *on cross-examination*, *id.* at 392:17–21 (Nathoo) ("Q. So you made more money by agreeing with Empery and the other investors that the shares would not be registered, isn't that correct? A. . . . yes, we ended up making more money. We got lucky.); 734:19–23 (Hirsch) ("Q. If you could make more money for your investors by cooperating with Anson, you will cooperate with Anson? A. Again, we make the decisions that make sense for our fund."); and

- *in summation*, *id.* at 1708:22–24 ("And that's why Brio chose to act as a group with Anson and Empery. It knew it could get a better deal working together with them than it could get by itself."); 1715:20–22 ("[Empery] wanted a deal it could only get by working together with the other hedge funds."); 1719:6–7 ("So were they working together as a group? Did they help each other to get the best deal of their lives?"); 1729:15–18 ("Would you expect them to admit that

> they worked together if it means they have to return whatever they made on what Mr. Nathoo claimed was the best deal of his life?"); 1731:18–20 ("Genius was in desperate condition and needed help, and instead, the defendants worked together to get what they characterized as the best deal of their lives.").

The jury nevertheless rejected it.[4]

*Second*, the Motion conflates two separate issues. Genius's financial condition was proper evidence before the jury. It rebutted Plaintiff's theory that the investors shared a common objective by showing that the terms they obtained reflected the company's distress and not evidence of agreement. It does not bear on Plaintiff's excluded pump and dump evidence. The investors obtained the terms of the March 2020 Transaction and its subsequent offerings because Genius was distressed and needed to offer investor friendly terms to compensate for that risk. Tr. 1418:17–23 (Jaffa); 335:9–12 (Holmes). Genius's General Counsel testified that the company was in a "weak position," *id.* at 14:22:6–8 (Jaffa), Defendants' expert Michael Maline explained that distressed companies "have inherently more risk to investors," *id.* at 1244:6–14 (Maline), and Plaintiff's own expert conceded that distressed issuers "need to offer better terms to investors," *id.* at 201:8–12 (Holmes).[5]

---

4 Plaintiff relies on a single out-of-circuit case, *Huang v. Ohio State U.*, 116 F.4th 541 (6th Cir. 2024). Mot. at 23–24. That case is inapposite. *Huang* concerned a trifurcated trial in which the district court severed a retaliation claim and excluded evidence directly responsive to the defendants' own defense. *Huang*, 116 F.4th at 554–555, 564 ("Here, the district court carved up the trial in a manner that excluded categories of relevant evidence as to whether Rizzoni improperly touched Huang.").

5 Plaintiff's argument that this evidence should have been excluded should likewise be rejected because it is raised for the first time post-trial. Not one of Plaintiff's seven motions in limine sought its exclusion, ECF No. 347, despite Defendants previously advancing it, *see, e.g.*, ECF Nos. 233, 234; *see also Valentin v. Cnty. of Suffolk*, 342 Fed. App'x 661, 663 (2d Cir. 2009) (Rule 59 argument waived by "not rais[ing] any objection" to the evidence "before the district court as required by Fed. R. Evid. 103(a)(1)").

*Finally*, contrary to Plaintiff's conclusory insistence otherwise, Mot. at 25, any error was harmless. Plaintiff identifies no basis by which the press releases could have changed the jury's verdict. Plaintiff failed to show any connection between Empery and the press releases. No witness placed Empery in any role drafting, timing, or approving Genius's press releases, and Genius's own General Counsel confirmed the investors did not draft them. Tr. 1474:14–16 (Jaffa). Further, no evidence showed that Empery was even aware of any of the allegedly withheld press releases. The excluded material was silent as to Empery.

It was also harmless against the backdrop of overwhelming evidence that Empery did not form a group. The jury weighed Lane's seven months of refusals, *see e.g.*, *id.* at 850:2–6 (Lane); his last-minute investment decision, *id.* at 978:3–21 (Lane); 979:10–16 (Lane); and his refusal to follow other investors into a later offering, *id.* at 982:2–25 (Lane). The jury also heard about Hoe's total absence of contact with Heyward, *id.* at 1263:6–12 (Hoe), or Hirsch, *id.* at 1273:10–15 (Hoe); and Director's insistence the waiver paperwork be split so Empery was not acting as a group, *id.* at 1531:7–16 (Director); *see also* DX-272 ("We are not acting as a group with any other investors and want these agreements to be entered into only with the company"); among other evidence, *supra* at 5–7, 9–10. Plaintiff has no answer to these facts.

**CONCLUSION**

For the foregoing reasons, Empery respectfully requests that the Court deny Plaintiff's Motion.

Dated: August 31, 2026
New York, New York

**FRESHFIELDS US LLP**

/s/ Andrew D. Gladstein
Andrew D. Gladstein
Timothy Howard
Nicholas A. Caselli
Alexandra Carlton
Shannon Sciaretta
Sruthi Rao

3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (646) 231-7098
andrew.gladstein@freshfields.com
timothy.howard@freshfields.com
nicholas.caselli@freshfields.com
alexandra.carlton@freshfields.com
shannon.sciaretta@freshfields.com
sruthi.rao@freshfields.com

Jacob Johnston
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jacob.johnston@freshfields.com

*Counsel for Defendants Empery Asset Master, Ltd., Empery Debt Opportunity Fund, LP, Empery Tax Efficient, LP, and Empery Asset Management, LP*

**CERTIFICATE OF WORD COUNT**

I, Andrew D. Gladstein, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") and Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word and contains 4,730 words in accordance with the Local Rules and the Individual Rules. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated: August 31, 2026
New York, New York

*/s/ Andrew D. Gladstein*
Andrew D. Gladstein